UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YANPING CHEN**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF INVESTIGATION,** *et al.*, <br><br> Defendants. | Case No. 18-cv-3074 (CRC) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Yanping Chen moves to compel the Federal Bureau of Investigation ("FBI") to respond to discovery requests concerning its use of U.S. Army Chief Warrant Officer Stephen Rhoads to help investigate her. Dr. Chen contends that this information is relevant to her ongoing Privacy Act lawsuit against the FBI and other federal agencies, and that any response would be harmless because Mr. Rhoads has already stated on national television that he served as an FBI informant. The government opposes the motion, asserting the law enforcement privilege.

The Court will deny Chen's motion, without prejudice to renewal based on future developments. Despite Rhoads's public statement about his purported role as an "informant," the government still has a legitimate interest in refusing to confirm or deny whether it used Rhoads as an investigative source. Chen's need for the information at this stage is not sufficient to outweigh that governmental interest, given that there appears to be at least one potential way for Chen to win her lawsuit without obtaining the discovery she seeks to compel.

**I. Background**

The parties are familiar with the facts alleged in the Complaint and those revealed so far through discovery. Briefly, Chen is a naturalized citizen of the United States and the founder of

the University of Management and Technology ("UMT"), an educational institution that historically attracted a significant number of military servicemembers who attended with tuition assistance from the Department of Defense ("DOD"). Compl. ¶¶ 12-13, 42. Starting in 2010, Chen was the focus of an FBI investigation concerning statements she made on immigration forms about her work in China in the 1980s. Compl. ¶ 15. In December 2012, the FBI executed search warrants for Chen's home and the main office of UMT. Id. ¶ 18. The FBI allegedly collected large volumes of personal and business records during these searches, including family photographs. Id. ¶ 20.

In March 2016, prosecutors informed Chen that no charges would be filed against her. Id. ¶ 22. Almost a year later, Fox News ran a series of television segments about Chen, her university, and her alleged ties to the Chinese military. Id. ¶¶ 25–31. In the first Fox News segment, which aired February 24, 2017, reporter Catherine Herridge interviewed Rhoads, a U.S. Army warrant officer and former employee of UMT. Ms. Herridge asked Rhoads whether the FBI asked him to be "an informant" against Chen; Rhoads responded "yes." See Taxpayer-funded School Suspected of Chinese Military Ties, Fox News (Feb. 24, 2017).[1] Herridge then asked Rhoads how long he served as an informant, to which Rhoads replied, "about three years." Id. The February 24, 2017 broadcast also featured family photographs of Chen; excerpts from Chen's immigration forms; an excerpt from what appears to be the FBI's contemporaneous summary of an interview conducted for the investigation; and a screenshot of an email sent by an FBI employee to Rhoads in September 2014, describing Chen's "renewal with DoD" as "[i]ncredible." Id.

---

[1] Available at https://www.youtube.com/watch?v=jh2Xk42PVA8 (last accessed May 10, 2021).

In December 2018, Chen filed this Privacy Act lawsuit against the FBI, DOD, and two other federal agencies, alleging "[o]n information and belief" that "one or more agents of the FBI (or, possibly, other Defendants) unlawfully disclosed to one or more persons associated with Fox News various records and information pertaining to Dr. Chen and her private affairs that the FBI had collected or generated in the course of its investigation of her[.]"  Compl. ¶ 23.

Through discovery in this case, Chen has learned that in addition to the September 2014 email displayed on Fox News, Rhoads sent and received other emails while the FBI investigation was pending that appear to reference the investigation.  For example, Rhoads once emailed another Army officer about "an ongoing investigation since 2009 involving The University of Management and Technology in Arlington, Virginia."  Jones Decl. Exh. 6 at 1, ECF No. 36-7; see also Jones Decl. Exh. 2, ECF No. 36-3 (email from Rhoads to an FBI employee stating that he was "obligated as an Army officer to inform" his superior "about the ongoing investigation I have been assisting you with").  On February 16, 2017—one week before the first Fox News segment aired—Rhoads forwarded numerous emails about Chen from his government email address to his personal account.  Jones Decl. ¶ 13, ECF No. 36-1.  Rhoads then forwarded Herridge the September 2014 email that would later appear on Fox's February 24, 2017 broadcast about Chen.  Jones Decl. Exh. 11, ECF No. 36-12.

Believing that Rhoads may also have been Fox's source for the other documents it displayed onscreen, Chen has sought discovery on Rhoads's relationship with the FBI.  In particular, she served the following discovery requests on the FBI, which give rise to the present motion:

> **Request for Admission No. 5**: Admit that, during the course of the Investigation, the FBI used Stephen Rhoads to gather information about Dr. Chen.

3

> **Request for Production No. 14**: Produce all documents related to, concerning, or reflecting any employment, agent, or informant relationship between the FBI and Stephen Rhoads, including but not limited to personnel records, employment history, disciplinary records, promotion records, records of any payments or compensation of any nature, and/or agreements.

Jones Decl. Exh. 13 at 5, ECF No. 36-14; Jones Decl. Exh. 17 at 3-4, ECF No. 36-18. The FBI objected to these requests, asserting the law enforcement privilege. Jones Decl. Exh. 14 at 3-4, ECF No. 36-15; Jones Decl. Exh. 18 at 2, ECF No. 36-19.

In January 2021, Chen moved to compel the FBI to respond to Request for Admission No. 5 ("RFA No. 5") and Request for Production No. 14 ("RFP No. 14"), arguing that because Rhoads has described himself as an FBI informant on national television, the FBI has little remaining interest in shielding information about its relationship with Rhoads. The government filed an opposition, supported by two declarations from FBI Assistant Director Alan E. Kohler, Jr.—an unclassified declaration filed on the public docket, and a classified declaration submitted *ex parte* to the Court for *in camera* review. The government also filed a supplemental memorandum, and Chen filed a reply in support of her motion.

On April 19, 2021, the Court held a sealed, *ex parte* status conference with counsel for the government. Discussion at the status conference was limited to issues concerning the classified Kohler Declaration. The Court then held a motion hearing on April 28, 2021, with both Chen and the government represented. The Motion to Compel is now ripe for decision.

## II.    Legal Standard

The law enforcement privilege is "a qualified privilege that protects against the release of documents whose disclosure might reveal law enforcement investigative techniques or sources." Tuite v. Henry, 98 F.3d 1411, 1413 (D.C. Cir. 1996). To establish that the privilege applies, the government must satisfy three preconditions:

> (1) [T]here must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988).

After finding that these prerequisites are met, a court is "required to weigh the public interest in nondisclosure against the [requesting party's] need for access to the privileged information." Tuite, 98 F.3d at 1417 (cleaned up).

> To achieve this end, a number of factors must be considered, including: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; [and] (10) the importance of the information sought to the plaintiff's case.

Id.

### III. Analysis

To resolve Chen's motion, the Court therefore must (1) determine whether the government has shown, as an initial matter, that the law enforcement privilege applies to the withheld information, and if so, (2) weigh the public interest in nondisclosure against Chen's need for the information.

A. <u>The FBI has satisfied the preconditions to invoke the law enforcement privilege.</u>

To begin, the FBI has carried its initial burden to show that the law enforcement privilege applies to the information being withheld from Chen.

First, there has been "a formal claim of privilege by the head of the department having control over the requested information." In re Sealed Case, 856 F.2d at 271.  According to his uncontroverted public declaration, Assistant Director Kohler is the head of the FBI's Counterintelligence Division and has been delegated the authority to assert the law enforcement privilege for the FBI.  Unclassified Kohler Decl. ¶¶ 1-2, ECF No. 38-1.  Kohler has formally asserted the privilege in this case.  Id. ¶ 7.

Second, the assertion of privilege is "based on actual personal consideration" by Kohler. In re Sealed Case, 856 F.2d at 271.  Kohler asserts as much in his unclassified declaration, Unclassified Kohler Decl. ¶¶ 3, 7, and Chen does not dispute this fact.

Third, Kohler has specified "the information for which the privilege is claimed . . . with an explanation why it properly falls within the scope of the privilege." In re Sealed Case, 856 F.2d at 271.  Specifically, Kohler asserts the law enforcement privilege over "the information sought by Chen's discovery requests RFP 14 and RFA 5, including whether or not Stephen Rhoads served as an 'informant' or witness for the FBI."  Unclassified Kohler Decl. ¶ 7.  Kohler further explains that "[t]he FBI relies on individuals, including Confidential Human Sources (CHSs) and other witnesses, to provide information in furtherance of its investigations," and disclosure of whether an individual played such a role "would threaten serious broader harm to the United States' law enforcement interests by discouraging other current or potential CHSs or other witnesses from cooperating with the FBI and other law enforcement agencies."  Id. ¶ 8. This is a logical, credible explanation of the harm that could result from production of the information Chen seeks.  And, as the Court will explain in more detail below, the fact that Rhoads has publicly described himself as an FBI "informant" does not necessarily nullify the

6

government's legitimate interest in refusing to confirm or deny that it used Rhoads to gather information on Chen.

Accordingly, the information Chen seeks falls within the scope of the law enforcement privilege.

> B. The public interest in nondisclosure outweighs Chen's interest in accessing the privileged information at this stage of the litigation.

Next, the Court must "weigh the public interest in nondisclosure against [Chen's] need for access to the privileged information." Tuite, 98 F.3d at 1417 (cleaned up). Applying the D.C. Circuit's non-exhaustive, ten-factor test, the Court finds that the balance tips in the government's favor, at least at this stage of the case.

The Tuite factor most relevant to an assessment of "the public interest in nondisclosure" here is the first: "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information." Id. As already noted, the FBI Assistant Director in charge of the Counterintelligence Division has offered his expert assessment that the FBI's confirmation or denial of a source relationship with Rhoads "would threaten serious broader harm to the United States' law enforcement interests by discouraging other current or potential CHSs or other witnesses from cooperating with the FBI and other law enforcement agencies." Unclassified Kohler Decl. ¶ 8. Chen disagrees, arguing that, "in large part because Mr. Rhoads himself chose to advertise his work as an FBI informant to Fox News, any remaining law enforcement interests are vanishingly small." Mem. in Support of Mot. to Compel at 2.

Chen has a point. Rhoads's televised affirmation that he was an FBI informant does, to some extent, mitigate the concern that responding to Chen's discovery requests would "discourag[e] citizens from giving the government information." Tuite, 98 F.3d at 1417.

However, the government persuasively argues that despite Rhoads's public remarks, an official confirmation or denial would still be harmful: "regardless of whether a person claims to have been an FBI source — a claim that might or might not be true — any disclosure *by the FBI* of whether a person was an FBI source would compromise the FBI's ability to develop and retain sources in other investigations." Opp'n at 10 (citing Unclassified Kohler Decl. ¶ 8). The FBI attracts sources in part by providing an "assurance of confidentiality," which could be eroded if the agency were to make even rare, narrow exceptions to its policy of refusing to disclose who is or is not an FBI source. Id. at 11. Indeed, the D.C. Circuit has recognized that in some circumstances, official confirmation or denial of information that has already been reported in the press or otherwise leaked to the public can be independently harmful to national security. See Afshar v. Dep't of State, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (noting that "official acknowledgment by an authoritative source" of a fact "might well be new information that could cause damage to the national security," even if that fact "is the subject of widespread media and public speculation" or "[u]nofficial leaks").

All told, the public interest in nondisclosure of FBI source relationships is not at its zenith in this case, but it is still substantial. The evidence before the Court supports the conclusion that granting Chen's Motion to Compel could "thwart governmental processes by discouraging citizens from giving the government information." Tuite, 98 F.3d at 1417.[2]

---

[2] Kohler's classified declaration provides further support for this conclusion. However, the government's public filings alone are sufficient to show a substantial public interest in nondisclosure, and as further discussed below, Chen has not established an overriding present need for the requested discovery. Therefore, the Court need not, and does not, rely on the classified declaration in deciding Chen's motion.

On the other side of the scale, the Court must weigh Chen's need for the privileged information she seeks. This assessment is informed primarily by the last three Tuite factors: "whether the plaintiff's suit is non-frivolous and brought in good faith; whether the information sought is available through other discovery or from other sources; [and] the importance of the information sought to the plaintiff's case." 98 F.3d at 1417 (internal numbering omitted).

By all indications, Chen is litigating in good faith and pursuing non-frivolous claims. The Court may also assume, for present purposes, that no alternative source of discovery could fully substitute for the disputed requests Chen has served on the FBI. Nevertheless, the Court finds that Chen's need to access the privileged information at this time is relatively low, because there is a strong possibility that the information will turn out to be unimportant to her claim.

Chen ultimately seeks to prove, among other things, that two disclosures occurred: (1) the FBI provided information about Chen to Rhoads from the agency's system of records, and (2) Rhoads then provided some or all of that information to Fox News. See Mem. in Support of Mot. to Compel at 11, 14; Hearing Tr. at 4-6. Chen argues that both of these alleged disclosures were potentially violations of the Privacy Act, but she needs discovery on Rhoads's relationship with the FBI to support both theories of liability. Mem. in Support of Mot. to Compel at 13-14. The problem with this argument is that, at the present stage of the litigation, there appears to be a viable path forward in which Chen could prove that at least the first alleged transfer of information (from the FBI to Rhoads) constituted a violation of the Privacy Act without obtaining discovery on any source relationship Rhoads might have had with the FBI.[3] Unless

---

[3] As to the second alleged transfer of information (from Rhoads to Fox News), Chen may be correct that proving liability based on that disclosure would require her to show that Rhoads's actions can be imputed to the FBI, which in turn would require discovery on the nature of any relationship between Rhoads and the FBI. But given the availability of an alternative theory of

and until this path reaches a dead end, Chen has only a diminished need for the information implicated by the present motion.

The Privacy Act provides, subject to certain exceptions, that a federal agency shall not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency." 5 U.S.C. § 552a(b).  One exception is that an agency may disclose records "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." Id. § 552a(b)(1).  In her motion papers and at oral argument, Chen anticipated that the government would argue that, because Rhoads was (she alleges) acting as an FBI informant, any disclosure of records to Rhoads was authorized by the Privacy Act's officers-and-employees exception.  Mem. in Support of Mot. to Compel at 14; Hearing Tr. at 7-8.  However, at oral argument, the government's counsel stated that the Privacy Act's exceptions "function much like affirmative defenses, and *we are not invoking those here*." Hearing Tr. at 8-9 (emphasis added).  While the government stopped short of conceding that any disclosure of investigative information about Chen to Rhoads would necessarily violate the Privacy Act, it made clear that it does not plan to rely on Rhoads's alleged informant role to defend against the claim that the FBI illegally disclosed the records to Rhoads. The Court accepts this representation and expects the government to honor it.

In support of her motion, Chen also points out that to obtain damages under the Privacy Act, she must prove that any violation was willful or intentional.  Hearing Tr. at 3-4, 10; Mem. in Support of Mot. to Compel at 14, ECF No. 36 (citing 5 U.S.C. § 552a(g)(4)).  However, there is no readily apparent reason why Chen would need discovery on Rhoads's alleged informant role

---

liability, the Court need not delve into the legal standard for imputing individuals' acts to an agency under the Privacy Act to decide the present motion.

to prove that the FBI willfully or intentionally disclosed records to Rhoads. The government's counsel explained at oral argument that the government has "not withheld any evidence of an FBI to Rhoads disclosure based on this assertion of law enforcement privilege or any other ground." Hearing Tr. at 19. If the fact that the FBI disclosed (or did not disclose) records to Rhoads is not privileged, the Court presumes that the circumstances relevant to determining whether any such disclosure was willful and intentional are not privileged, either.

Finally, Chen suggests that by declining to force the FBI to disclose whether it used Rhoads to gather information at this time, the Court would be inefficiently "bifurcating or trifurcating discovery." Hearing Tr. at 15. This exaggerates the effect of the Court's decision. The Court is not requiring Chen to exhaust alternative theories of liability before she can obtain *any* discovery related to Rhoads's alleged relationship with the FBI. See Chen v. FBI, No. 20-mc-107 (CRC), 2020 WL 7668880, at *3-5 (D.D.C. Dec. 24, 2020) (partially enforcing third-party subpoena for Rhoads's cell phone records, in part because those records might provide evidence "that Rhoads had an FBI 'handler' in his dealings with Fox News"). The Court holds only that, for now, Chen's need for the *privileged* information at issue in the present motion is outweighed by the government's legitimate law enforcement interest in withholding it. Therefore, it would be inappropriate to compel disclosure of this information, at least until Chen has pursued the other discovery available to her.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's [36] Motion to Compel is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>May 11, 2021</u>