**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YANPING CHEN,

        Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendants.

Civil Action No. 1:18-cv-3074-CRC

**PLAINTIFF YANPING CHEN'S OPPOSITION TO DEFENDANT**
**FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

BACKGROUND...................................................................................................... 2

I.    Dr. Chen's Rule 30(b)(6) Topics Are Relevant And Proportional To The Needs Of The Case.................................................................................................................. 6

    A.    Testimony As To The FBI's Case File And PowerPoint Is Highly Relevant............ 6

        1.    Fox News Accessed FBI Records Beyond Those Displayed Onscreen ............... 7

        2.    Disclosures To Stephen Rhoads Could Constitute Separate Privacy Act Violations And Inform Other Issues.................................................................... 9

        3.    Information About The Records Related To Dr. Chen Sheds Light On Important Issues, Even If Disclosure Of Those Records To Fox News Or Mr. Rhoads Is Unknown............................................................................... 10

    B.    Additional Factors Favor Testimony Regarding The Chen Case File.................... 12

II.    Dr. Chen's 30(b)(6) Topics Are Not Unduly Burdensome....................................... 14

    A.    The FBI Has Not Described Its Burden With The Required Specificity................. 15

    B.    The FBI Exaggerates The Burden Of The Proposed Deposition Topics................. 18

    C.    The Burden Is Reasonable Under This Court's Precedent.................................... 20

CONCLUSION..................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Alexander v. FBI*, 188 F.R.D. 111 (D.D.C. 1998)............................................................2, 11, 21

*Alexander v. FBI*, 194 F.R.D. 305 (D.D.C. 2000)......................................................2, 5, 16, 19

*Ass'n of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454 (D.D.C. 1993)................... 15

*Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004) ................................. 23

*Bartel v. FAA*, 725 F.2d 1403 (D.C. Cir. 1984)....................................................................8, 12

*Buie v. Dist. of Columbia*, 327 F.R.D. 1 (D.D.C. 2018).......................................2, 5, 21, 22, 23

*BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347 (D.D.C. 2018) ................................................... 13

*Caldwell v. Ctr. for Corr. Health & Pol'y Studies*, 228 F.R.D. 40 (D.D.C. 2005)...................... 5

*Chekkouri v. Obama*, 158 F. Supp. 3d 4 (D.D.C. 2016)............................................................ 17

*Cherokee Nation v. U.S. Dep't of Interior*, 531 F. Supp. 3d 87 (D.D.C. 2021).......................... 13

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52 (D.D.C. 1984).................... 15

*Cloonan v. Holder*, 768 F. Supp. 2d 154 (D.D.C. 2011)............................................................ 8

*Conservation Force v. Salazar*, 916 F. Supp. 2d 15 (D.D.C. 2013).......................................... 17

*D.L. v. Dist. of Columbia*, 251 F.R.D. 38 (D.D.C. 2008) .......................................................... 15

*Danik v. DOJ*, 463 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................... 19

*Doe v. U.S. Postal Serv.*, 317 F.3d 339 (D.C. Cir. 2003) ........................................................... 9

*Fagan v. Dist. of Columbia*, 136 F.R.D. 5 (D.D.C. 1991) ......................................................... 22

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
    No. 1:13-cv-1053-RCL, 2019 WL 5864595 (D.D.C. Nov. 8, 2019)........... 2, 6, 14, 15, 16

*Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194 (D.D.C. 2019)................... 14

*In re Vitamins Antitrust Litig.*, 216 F.R.D. 168 (D.D.C. 2003).................................................... 5

*Jones v. Mukasey*, 565 F. Supp. 2d 68 (D.D.C. 2008)............................................................... 17

*McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208 (D.C. Cir. 1986)....................................... 17

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
    322 F.R.D. 1 (D.D.C. 2017)................................................................ 13

*Speaker v. HHS Ctrs. For Disease Control & Prevention*,
    623 F.3d 1371 (11th Cir. 2010)........................................................ 8

*U.S. ex rel. Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11 (D.D.C. 2006)...............................16, 23

*Williams v. Johanns*, 235 F.R.D. 116 (D.D.C. 2006)...........................................5, 14

## DOCKETED CASES

*Chen v. FBI*, 1:20-mc-00107-CRC (D.D.C.)...............................................3, 8, 9, 11

## STATUTES AND RULES

5 U.S.C. § 552a...........................................................................2, 4, 9 ,11

Fed. R. Civ. P.
    Rule 26(b)(1) ................................................................................6, 12
    Rule 26(c)....................................................................................2, 5, 6
    Rule 30(b)(6) .......................................................................1, 2, 3, 5, 6, 12, 21

## LEGISLATIVE MATERIALS

S. Rep. No. 1183 (1974) ................................................................ 12

## OTHER AUTHORITIES

Catherine Herridge, et al., *Fox News Investigation:  DoD-funded School at Center
    of Federal Probes Over Suspected Chinese Military Ties*, Fox News (Feb.
    24, 2017) https://www.foxnews.com/politics/fox-news-investigation-dod-
    funded-school-at-center-of-federal-probes-over-suspected-chinese-
    military-ties................................................................................ 7

8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2103 (3d ed.
    2021)........................................................................................ 20

## INTRODUCTION

Plaintiff Yanping Chen seeks testimony from Defendant Federal Bureau of Investigation about how the FBI handled records about her. That testimony is foundational to her Privacy Act claim because a wide variety of documents and information about her from FBI systems were illegally disclosed to Fox News. Like any party, the FBI is obliged to designate a witness who "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). After conferring with the FBI, Dr. Chen has substantially narrowed the topics on which she seeks FBI testimony. But the FBI now aims to further circumscribe its obligation to testify, asking this Court to limit those topics to encompass information pertaining to only 10 specific documents.[1]

The FBI's bare-bones motion seeks to avoid its obligations by asserting that only a "discrete handful [of] records" were leaked. The FBI's attempts to minimize the breadth of the illegal disclosures fall flat in the face of evidence that Fox News had wide-ranging access to the FBI's case file on Dr. Chen. Beyond the six photographs, two immigration documents, and two FD-302s that Fox News actually broadcast or posted online, the Fox News reports included a multitude of other statements that appear to have been drawn from unpublished FBI records. Fox News expressly stated that it had reviewed additional "[e]mails and other documents" about the FBI investigation. Beyond the disclosures to Fox News, self-proclaimed FBI informant Stephen Rhoads said he had obtained "documents, emails, recordings a[n]d pictures that nobody else has," ECF No. 42-4—disclosures that may themselves have violated the Privacy Act.

---

[1] The ten documents are Dr. Chen's certificate of naturalization, one immigration form, six photographs, and two FBI interview memorandums. *See* ECF No. 60-1 ("Mot.") at 4.

The FBI tries to evade its obligations under Rule 30(b)(6) by pressing an unsubstantiated and exaggerated claim of burden.  While the FBI claims that testifying on certain topics would be unduly burdensome, it does not specify the burden in concrete terms, as is required.  Courts in this district frequently reject such vague burden claims by federal agencies.  *See, e.g.*, *Alexander v. FBI*, 194 F.R.D. 305, 315 (D.D.C. 2000); *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053-RCL, 2019 WL 5864595, at *3-4 (D.D.C. Nov. 8, 2019).  Nor does the FBI explain how its narrowed version of these topics would meaningfully reduce the preparation needed.  It instead imagines that it would need to conduct a privilege review of every document in the case file, which would be wholly unnecessary to testify on the relevant topics.  Indeed, Dr. Chen's proposed topics resemble what courts in this district have required of government agencies in similar cases.  *See Alexander v. FBI*, 188 F.R.D. 111, 118-20 (D.D.C. 1998); *Buie v. Dist. of Columbia*, 327 F.R.D. 1, 7-13 (D.D.C. 2018).

The FBI has not met its burden to show "good cause" for limiting its obligation to designate a witness to testify on these topics.  Fed R. Civ. P. 26(c).  Cutting off Dr. Chen's ability to obtain discovery as the FBI suggests would place off-limits highly relevant information about systems, policies, and practices that the FBI can provide for without incurring an undue burden.  It would similarly exclude important information about the storage, accessibility, and distribution of Dr. Chen's documents, which is critical to proving the identity of the leaker(s), the willfulness of the leaks, and that the leaked information came from a "system of records."  The FBI's motion should therefore be denied.

## BACKGROUND

Dr. Chen brings a claim for violations of the Privacy Act, 5 U.S.C. § 552a, against the FBI and other federal agencies.  After an FBI investigation into Dr. Chen ended without charges, Fox News published three reports in 2017 on Dr. Chen that drew heavily on confidential records

2

from FBI systems.  Fox News displayed onscreen several photographs of Dr. Chen with her family, her immigration forms, and an FBI memorandum of an interview with Dr. Chen's daughter.  The highlighting, annotation, and cropping of the displayed records suggest that Fox News likely had access to a PowerPoint presentation about Dr. Chen created by FBI Special Agent Timothy Pappa (the "Pappa PowerPoint").  *See Chen v. FBI*, 1:20-mc-00107-CRC (D.D.C. Oct. 22, 2021), ECF No. 41-7.  The Fox News reports also quoted from an FBI memorandum of an FBI interview of Dr. Chen, and published a wide range of additional confidential information contained in other FBI records.  *See infra* at I.A.1.  These disclosures inflicted serious personal and professional harm on Dr. Chen.

Dr. Chen served the FBI with a Rule 30(b)(6) deposition notice seeking the agency's testimony on eighteen topics.  The parties conferred about the scope of the topics on multiple occasions, and Dr. Chen offered to substantially narrow the scope of the original topics, including the seven topics at issue in the FBI's motion.  On December 3, 2021, however, the FBI moved for a protective order to limit those seven topics as unduly burdensome.  Those topics, as Dr. Chen has offered to narrow them, are as follows:

### Topics About FBI Systems, Policies, and Practices With Respect to Dr. Chen's Records

- Topic 1: "The FBI's recordkeeping and document retention practices concerning the classes and/or types of information, documents, or tangible items that (a) were disclosed or referenced in the Fox News reports, (b) were contained in DHS_00000298 or FBI0007480,[2] or (c) were contained in the FBI's case file on Dr. Chen."  ECF No. 60-6 (FBI Ex. 3) at 3.

- Topic 4: "The Sentinel system's ability to store, search for, retrieve, and record activity between January 1, 2012 to June 30, 2017 relating to information, documents, or tangible items that (a) were disclosed or referenced in the Fox News reports, (b) were contained in

---

[2] This is the Pappa PowerPoint.  The deposition topics refer to the Pappa PowerPoint by Bates number; because this document was produced by both the FBI and DHS, it is reflected as FBI0007480 or DHS_00000298.

DHS_00000298 or FBI0007480, or (c) were contained in the FBI's case file on Dr. Chen." *Id* at 5.

- Topic 5: "The ability to use the Chen File # to search for and retrieve the documents or tangible items that (a) were disclosed or referenced in the Fox News reports, (b) were contained in DHS_00000298 or FBI0007480, or (c) were contained in the FBI's case file on Dr. Chen, from (1) the Sentinel system, (2) the storage system(s) used in lieu of the Sentinel system prior to its implementation, (3) the FBI storage facility where the evidence collected during the Searches was stored, (4) the secured squad area at the Washington Field Office, (5) the room(s) at the FBI's Washington Field Office used to store the boxes of paper files and CDs referenced in the FBI's responses to Interrogatories No. 6 and No. 16, (6) any other physical locations used to store these documents or tangible items following initial receipt and other than an official FBI evidence storage facility, or (7) any other FBI systems, platforms, or software used to store electronic versions or electronic copies of documents or tangible items that are not encompassed by the categories above." *Id.* at 6.

- Topic 12: "The FBI's policies, procedures, and/or practices with respect to the collection, labeling, storage, and documentation of the types of documents seized from the University of Management and Technology and 2122 21st Road North, Arlington, Virginia, during the December 5, 2012 execution of the criminal search warrants filed in Case No. 1:12-sw-01002 (E.D. Va.)." *Id.* at 8.

**Topics About FBI Storage, Access to, and Distribution of Dr. Chen's Records**

- Topic 2: "The location, storage, use, and accessibility from January 1, 2012 through June 30, 2017 of documents or tangible items that (a) were disclosed or referenced in the Fox News reports, (b) were contained in DHS_00000298 or FBI0007480, or (c) were contained in the FBI's case file on Dr. Chen." *Id.* at 4.

- Topic 3: "Stephen J. Rhoads' possession of and access to documents or tangible items that (a) were disclosed or referenced in the Fox News reports, (b) were contained in DHS_00000298 or FBI0007480, or (c) were contained in the FBI's case file on Dr. Chen." *Id.* at 5.

- Topic 18: "Any request pursuant to any legal authority other than 5 U.S.C. § 552a(b)(7), made by DOD or DHS to the FBI, or by the FBI to DOD or DHS, for information, documents, or tangible items that (a) were disclosed or referenced in the Fox News reports or (b) were contained in the FBI's case file on Dr. Chen; the basis or reason(s) for any such request; and any actions by the agency receiving the request in response to such request." *Id.* at 12.

The FBI does not dispute the relevance of these topics generally. It instead asks the

Court to block Dr. Chen from obtaining the FBI's testimony on the topics except with respect to

10 specific documents that were displayed onscreen by Fox News. If granted, the FBI's motion

would prohibit Dr. Chen from obtaining the FBI's testimony about documents underlying the

Fox News reports that were not specifically displayed onscreen, about the Pappa PowerPoint that

was apparently leaked to Fox News, and about its own case file on Dr. Chen. The FBI's motion

would also exclude testimony on Mr. Rhoads' access to the case file, even though the FBI's

disclosure of information to Mr. Rhoads may have itself constituted Privacy Act violations. *See*

ECF No. 46 at 9 (recognizing the possibility that "the first alleged transfer of information (from

the FBI to Rhoads) constituted a violation of the Privacy Act"). The FBI has not shown "good

cause" to limit relevant discovery so severely. Fed. R. Civ. P. 26(c).

## LEGAL STANDARD

Federal Rule of Civil Procedure 30(b)(6) requires the FBI to designate a witness to

"testify about information known or reasonably available to the organization" about Dr. Chen's

proposed topics. That duty requires designated witnesses to become "thoroughly educated about

the noticed deposition topics with respect to any and all facts known to" the organization. *In re*

*Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003). This process appropriately "may

require extensive preparation to educate a witness about matters spanning … a lengthy time

period." *Buie*, 327 F.R.D. at 8.

An organization may move for a protective order if it believes that testifying on a Rule

30(b)(6) topic would be unduly burdensome. The party moving for a protective order bears the

burden to show "good cause" for blocking discovery. Fed. R. Civ. P. 26(c). The party "must

make a specific, detailed showing of the burden such a search would require." *Alexander*, 194

F.R.D. at 315. Courts "will not even consider claims of burdensomeness without an affidavit

specifying exactly why this is so." *Williams v. Johanns*, 235 F.R.D. 116, 123-24 (D.D.C. 2006)

(citing *Caldwell v. Ctr. for Corr. Health & Pol'y Studies*, 228 F.R.D. 40, 44 (D.D.C. 2005)).

"Courts rarely find that relevant requests would constitute an undue burden." *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 2019 WL 5864595, at *3 (D.D.C. Nov. 8, 2019).

## ARGUMENT

### I.      Dr. Chen's Rule 30(b)(6) Topics Are Relevant And Proportional To The Needs Of The Case

In assessing a discovery request, courts must weigh its burden against its benefits, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). These factors confirm that even a significant burden on a resource-rich agency like the FBI that has exclusive access to the information would be justified given the benefits of the discovery to adjudicating these claims.

### A.      Testimony As To The FBI's Case File And PowerPoint Is Highly Relevant

The FBI does not dispute that the deposition topics at issue are relevant to the extent they seek testimony about records displayed onscreen by Fox News. The agency argues, however, that no other FBI records about Dr. Chen are relevant because they were "not alleged to have been disclosed to Fox News." Mot. at 8. This argument fails for three reasons: First, it is factually wrong—Dr. Chen has repeatedly pointed the FBI to evidence suggesting that Fox News received FBI information and documents beyond those displayed onscreen. Second, the FBI's position misunderstands the scope of its potential liability, which, as this Court has recognized, may extend beyond the disclosures to Fox News to also include disclosures to Mr. Rhoads. Third, the FBI fails to recognize that its systems, policies, practices, and handling of documents about Dr. Chen other than those known to be wrongfully disclosed can provide valuable evidence as to the identity of the leaker, the willfulness of the leaks, and whether and to what

extent the materials leaked either to Mr. Rhoads or to Fox News came from an FBI system of records.

### 1. Fox News Accessed FBI Records Beyond Those Displayed Onscreen

As Dr. Chen has reiterated throughout this lawsuit, the FBI documents displayed onscreen by Fox News are not the only FBI records relevant to this lawsuit.[3] Fox News evidently had access to—and published information contained in—FBI records other than the onscreen photographs, immigration forms, and interview memorandum. Indeed, its February 24, 2017 article specifically referenced additional "[e]mails and other documents reviewed by Fox News" that it relied upon to publish that report.[4] That Fox News report also disclosed a wide variety of other confidential information from the FBI case file that went beyond the records displayed onscreen. For instance, the report included the following information contained in FBI records:

- The identities of the law enforcement agencies working with the FBI;

- That the investigation began in "at least 2012 – and perhaps as early as 2009";

[3] Throughout discovery, Defendants have often, but not always, sought to limit their responses to a small set of records actually displayed onscreen by Fox News. Dr. Chen did agree to narrow several of her written discovery requests in this manner, but she did so only in January 2021, when—nine months after Dr. Chen had served her requests for production—the FBI had completed only one small production of policies and one small production of internal documents. As Dr. Chen wrote at the time: "The agencies' continued objections are based on an unduly narrow conception of the relevant, discoverable information in this case. However, the agencies have moved at a glacial pace….While we are loathe to reward the agencies' failure to timely comply with our discovery requests, given the slow pace of the agencies' productions to date, Dr. Chen is willing to accept the agencies' proposed narrowed constructions on the few remaining issues identified in our correspondence." ECF No. 60-15 (FBI Ex. 12). The Court should draw no conclusions about the relevance or burden of the requested 30(b)(6) deposition topics from the parties' negotiations during discovery.

[4] *See* Catherine Herridge et al., *Fox News Investigation: DoD-funded School at Center of Federal Probes Over Suspected Chinese Military Ties*, Fox News (Feb. 24, 2017), https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties

- That the investigation of Dr. Chen was a counter-intelligence case;

- The year that Dr. Chen first entered the United States;

- The type of visa under which Dr. Chen first visited the United States;

- The identity of a child who accompanied Dr. Chen when she entered the country;

- The source of funding for Dr. Chen's research at George Washington University;

- Dr. Chen's responses to questions on immigration records reviewed by Fox News;

- The timing of Dr. Chen's immigration application;

- The name of an Assistant U.S. Attorney assigned to investigate Dr. Chen; and

- Details of the disagreement between the FBI and prosecutors about whether to prosecute Dr. Chen.

This non-public information was contained in FBI records, likely in multiple locations throughout the case file. *See, e.g.*, Exhibit 6, 1:20-mc-00107 (D.D.C. Oct. 22, 2021), ECF No. 41-7 (Pappa PowerPoint, displaying documents involving Dr. Chen's immigration visa and I-485 immigration form, allegations of Chinese government funding, involvement of ICE and NCIS). Although the Fox News article did not specify the source of its information, its reporting of this confidential information about the investigation of Dr. Chen strongly indicates that Fox News received information from other FBI records—even if it chose not to display those records onscreen.

Those disclosures of Privacy Act-protected information without consent are violations of the Privacy Act, even if Fox News did not obtain or display documents containing the information. "[T]he Privacy Act goes beyond the mere dissemination of the physical records to prohibit 'nonconsensual disclosure of any information that has been retrieved from a protected record.'" *Cloonan v. Holder*, 768 F. Supp. 2d 154, 163 (D.D.C. 2011) (citing *Bartel v. FAA*, 725 F.2d 1403, 1408 (D.C. Cir. 1984)); *see also Speaker v. HHS Ctrs. For Disease Control &*

*Prevention*, 623 F.3d 1371, 1382 n.11 (11th Cir. 2010) ("Numerous courts have held that the Privacy Act protects against improper oral disclosures."); *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 342 (D.C. Cir. 2003) (holding that evidence of an oral disclosure of confidential information was sufficient to allow Privacy Act claim to survive summary judgment).

Because other information in FBI records appears to have been unlawfully leaked to Fox News, Dr. Chen must be able to explore the FBI's systems, policies, and practices as to its case file, beyond the 10 documents identified by the FBI, as well as with respect to the Pappa PowerPoint.  Dr. Chen must also be able to understand who had access to the case file and the Pappa PowerPoint.  Such testimony is relevant to assessing the identity of the leaker and potential accomplices, as well as whether the documents were stored in system of records, an element of a Privacy Act claim.  5 U.S.C. 552a(b).

### 2.   *Disclosures To Stephen Rhoads Could Constitute Separate Privacy Act Violations And Inform Other Issues*

The disclosures to Fox News are not the only disclosures that could form the basis for Privacy Act liability.  Rather, as this Court has recognized, Dr. Chen may be able to prove that "the first alleged transfer of information (from the FBI to Rhoads) constituted a violation of the Privacy Act."  *See* ECF No. 46 at 9.  As Dr. Chen has discussed in depth elsewhere, the evidence strongly suggests that Mr. Rhoads had access to and leaked information to Fox News.  *E.g.*, ECF No. 36; *cf.* Opinion and Order at 7, 1:20-mc-107 (D.D.C. Nov. 21, 2021), ECF No. 45 ("[T]he newly produced records support a good-faith basis to believe Rhoads himself may have played a role, perhaps an important one, in the alleged leak.").  Moreover, Mr. Rhoads himself proclaimed that he had access to documents and photographs about Dr. Chen, including information from the search of Dr. Chen's home that did not appear in the Fox News reports.  For example, in an April 2017 email to a congressional committee staffer, Mr. Rhoads wrote:

> I have worked with the FBI, MI, NCIS, DOJ AUSA's and many other agencies on this investigation. Nobody on the planet knows more about this case than myself. I would love the opportunity to testify before the committee and provide **documents, emails, recordings a[n]d pictures that nobody else has.**

*See* ECF No. 42-4. Understanding which records those could be—testimony targeted directly by Topic 3—is key to Dr. Chen's case. Moreover, understanding the FBI's document retention, collection, and storage practices as to these types of documents—testimony sought in Topics 1, 2, 4, 5, and 12—is relevant to systems of records issues; and accessibility of the case file generally will shed light on which FBI personnel may have provided Mr. Rhoads with the records, if he did not obtain them directly from an FBI system. Indeed, testimony on this topic is fundamental to ascertaining the nature and extent of whatever violations of the Privacy Act occurred by the FBI's allowing, or failing to prevent, Mr. Rhoads from accessing protected records and information concerning Dr. Chen. The FBI's proposed narrowing of the deposition topics would exclude this important information from the agency's testimony.

### 3. Information About The Records Related To Dr. Chen Sheds Light On Important Issues, Even If Disclosure Of Those Records To Fox News Or Mr. Rhoads Is Unknown

The FBI's treatment of Dr. Chen's case file—including documents that are not today known to have been disclosed to Fox News—is likely to shed light on important issues. Contrary to the FBI's suggestion, Dr. Chen does not propose inquiring about an unreasonable multitude of documents or information wholly unrelated to her or her university. Rather, Dr. Chen has proposed narrow deposition topics about specific categories of records most likely to shed light on the nature of the leak: the FBI's investigative case file, specifically delineated by the agency to store its evidence and work product relating to Dr. Chen; one PowerPoint; and documents disclosed or referenced in the Fox reports. The FBI's suggestion that Dr. Chen's topic be limited to the specific records displayed onscreen would

10

unduly limit Dr. Chen's ability to probe highly relevant information about FBI's treatment of those records.

For example, if it is confirmed that Special Agent Pappa disclosed to Mr. Rhoads confidential information from the case file (other than the information currently known to have been disclosed to Fox News), that disclosure would provide evidence that Special Agent Pappa also disclosed to Mr. Rhoads the information that appeared on Fox News, and that he willfully did so.  Testimony about access to the case file (addressed in Topics 4 and 5) will also reveal the full list of FBI personnel with access, which is relevant to who may have aided or known about any disclosures.  If the FBI wantonly violated its own policies with respect to keeping confidential or retaining documents in the case file, those violations would evidence the willfulness of the alleged Privacy Act violations.  *Cf. Alexander v. FBI*, 188 F.R.D. 111, 120 (D.D.C. 1998) (holding Privacy Act plaintiffs are entitled to pursue whether an adverse inference may be drawn from non-compliance with statutes or rules beyond the Privacy Act, including recordkeeping laws and regulations).  Similarly, if the FBI broke its own rules with respect to the collection of documents in the search of Dr. Chen's home, those violations too would evidence the willfulness of the alleged Privacy Act violations.  (And if specific FBI personnel engaged in such violations, those violations would also make it more likely that they individually violated the Privacy Act.)

The FBI's handling of the case file is also relevant to resolution of the "system of records" inquiry.  Under the Privacy Act, "the term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  Given this definition, which focuses on the "group" of

records, it makes little sense—as the FBI suggests—to parse out individual documents within the group for piecemeal consideration.  It is instead necessary to understand how the group as a whole is stored, searched, and accessed in order to establish that any individual record that has been disclosed "is contained in a system of records."  *Id.* § 552a(b).

Topic 18—which seeks testimony on requests for information about Dr. Chen from other defendants pursuant to legal authorities other than 5 U.S.C. § 552a(b)(7)[5]—further demonstrates the importance of looking to the entire case file.  Testimony on this issue, even with respect to information beyond what is known to have been disclosed to Fox News, could identify possible avenues of disclosure.  In particular, clarifying the other defendants and their personnel that requested information about Dr. Chen will help establish the universe of people who had the ability or motive to unlawfully disclose information about her.  Such testimony will also speak to the FBI's and other defendants' likelihood of disclosing information about Dr. Chen outside of established legal channels.

In sum, the FBI's handling of the entire contents of its case file pertaining to Dr. Chen is highly relevant to Dr. Chen's Privacy Act claim.

## B.    Additional Factors Favor Testimony Regarding The Chen Case File

In assessing the proportionality of Rule 30(b)(6) topics, courts also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

---

[5] This provision provides an exception to the Privacy Act's prohibition on unauthorized disclosure upon "written request" by another agency "for a civil or criminal law enforcement activity if the activity is authorized by law."  5 U.S.C. § 552a(b)(7).  Dr. Chen already requested during discovery any written requests for information about Dr. Chen pursuant to § 552a(b)(7), and no defendant located responsive documents.  Therefore, it is important for Dr. Chen to determine whether requests were made pursuant to other legal authorities in order to assess the legality of disclosures to outside agencies.

access to relevant information, [and] the parties' resources." Fed. R. Civ. P. 26(b)(1). These factors weigh in favor of FBI testimony on Dr. Chen's proposed topics.

The general importance of the issues at stake weighs against further limiting Dr. Chen's proposed topics. Dr. Chen asserts a substantial claim under the Privacy Act, based on disclosures that operated as an extra-judicial attack on her reputation and livelihood after prosecutors declined to file charges against her. This action does not allege a technical violation, but exactly the type of flagrant government misconduct that the Privacy Act is intended to address. *See Bartel*, 725 F.2d at 1411 n.12 (the Act combats the "threat to privacy" that arises when the "natural tendency of Government to acquire and keep and share information about citizens … is subjected to the unrestrained motives of countless political administrators") (quoting S. Rep. No. 1183, at 6916 (1974)). Discovery is favored in cases, like this one, that call into question "the Government's compliance with its" own "obligations of the highest responsibility." *Cherokee Nation v. U.S. Dep't of Interior*, 531 F. Supp. 3d 87, 100 (D.D.C. 2021) (concluding that this factor favored rejecting an undue burden claim).

As to the amount in controversy, Dr. Chen seeks not only injunctive and declaratory relief, but also actual damages. While the damages phase of the litigation has been bifurcated, Dr. Chen's complaint alleges substantial harm to her livelihood from the leaks. *See* Compl. ¶¶ 42, 55. Initial disclosures to Defendants in this case estimated over $15 million in lost business value and lost profits, and an additional $1 million in expenditures—such as professional and consulting fees, and reputation management services—to remediate the harm caused by the unauthorized disclosures. "'[T]he amount in controversy' favors compelling disclosure" where plaintiffs seek "substantial sums in compensatory damages for [] reputational harm." *BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018). This supports Dr.

Chen's modest request for testimony, the cost of which is not excessive "given the very substantial amount of damages that [the plaintiff] seeks to recover." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 8 (D.D.C. 2017) (concluding this factor favored discovery costing $140,000, given plaintiff sought $150 million).

Also weighing heavily against issuance of the requested protective order is the fact that the parties' access to relevant information is grossly asymmetrical. The FBI has access to the relevant information about the storage of and access to the documents and materials kept as part of its case file. Dr. Chen cannot obtain this information elsewhere. As another court in this district recently acknowledged in a similar case seeking to uncover illegal activity within a federal agency, the fact that "there is a large information disadvantage between the parties" weighs in favor of permitting the party seeking information to conduct searching discovery. *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 199 (D.D.C. 2019).

Lastly, the FBI has adequate resources to prepare for Dr. Chen's proposed topics. They concern the FBI's own policies and practices regarding its own case file about Dr. Chen. This information is reasonably available to the agency and well within the scope of material a designated witness can prepare to testify about. *See Fairholme Funds*, 2019 WL 5864595, at *4 ("[T]he Court will not entertain the preposterous notion that an agency as large as Treasury lacks the manpower to complete this request."). Moreover, Dr. Chen's request for information concerning the illegal disclosure of her private information is a foreseeable product of Defendants' own wrongdoing. These factors accordingly weigh in favor of requiring the FBI to testify as to Dr. Chen's topics.

## II.   Dr. Chen's 30(b)(6) Topics Are Not Unduly Burdensome

The FBI's undue burden argument fails for three independent reasons. First, the FBI has failed to satisfy its preliminary duty to describe the burden in concrete terms with specific

estimates of the hours and costs required.  Second, what little description the FBI has provided greatly overstates the extent of any burden—the challenged topics would not require a substantial content or privilege review of the entire Chen case file.  Third, analogous cases upholding similar 30(b)(6) deposition topics confirm that the burden of Dr. Chen's proposed topics is proportional to the needs of the case given the relevance described above.

A.    **The FBI Has Not Described Its Burden With The Required Specificity**

To show good cause for a protective order, a party resisting discovery must supply significant detail substantiating its undue burden claim.  Courts cannot assess a claim of undue burden "without an affidavit specifying exactly why this is so." *Williams v. Johanns*, 235 F.R.D. 116, 123-24 (D.D.C. 2006).  In assessing such affidavits, courts in this district have consistently maintained that "[a]ssertions of an undue burden without 'specific estimates of staff hours needed to comply' should be 'categorically rejected.'" *Fairholme Funds*, 2019 WL 5864595, at *2-3 (quoting *Ass'n of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993)); *D.L. v. Dist. of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008) (same).  "Without more, this Court cannot conclude that [the defendant] will be unduly burdened" in relation to the benefits of discovery.  *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 60 (D.D.C. 1984).  Thus, "explanations that are cursory or vague are insufficient" to substantiate an undue burden claim.  *Fairholme Funds*, 2019 WL 5864595, at *3.

The FBI's Unclassified Declaration of Kurtis Ronnow ("Ronnow Decl.") falls far short of the required showing.  The single, perfunctory paragraph describing the expected burden provides no estimate of "staff hours needed to comply." *See Fairholme Funds*, 2019 WL 5864595, at *2-3.  Nor does it provide specific information about the "excess of 250 serials" (which the declaration defines as "documents") requiring review.  Ronnow Decl. ¶¶ 7, 10.  For example, the Declaration rests its burden claim in part on the FBI's need to engage in inter-

agency consultation "where information contained in the case file originated from another government agency"—but provides no estimate of how time consuming such a review would be nor how many serials involve non-FBI information.  Moreover, the FBI asserts that it would "likely" need to "conduct a classification review of most, if not all, of the serials that have not already been produced," *id.* ¶ 10, without providing any indication as to how many serials have not been produced or whether such a classification review could be done on a categorical basis. *Cf. id.* ¶ 8 (describing "sub-files" within the case file that segregate particular types of information).  In the end, all that the Declaration is able to offer is a conclusory assertion that the burden would be "significant."  *Id.* ¶ 10.  The Declaration thus offers little more than the generalized language repeated in the FBI's motion.

The FBI's generic assertions mirror other cursory burden claims that courts in this district have consistently rejected.  Indeed, *Fairholme Funds* rejected a nearly identical explanation offered by the Treasury Department:  "Treasury's arguments are not specific enough to warrant a finding of an undue burden....  Treasury makes only vague assertions, such as, '[S]everal of the requests implicate documents that are likely to be subject to various privilege assertions, which will require both Treasury and Justice Department attorneys to spend significant hours conducting a document-by-document review for responsiveness and privilege and creating a privilege log.'"  *Fairholme Funds*, 2019 WL 5864595, at *3.  And in *Alexander v. FBI*, the court held that a far more detailed declaration was insufficient, holding that it still failed to meet the strict specificity requirements needed to limit discovery:

> [T]he EOP provided the declaration of Michelle Peterson, Associate Counsel to the President in the Office of the White House Counsel.  In this declaration, Ms. Peterson states that ... the EOP would have to search through 52 boxes of telephone logs....  [A]ll of these boxes 'would have to be retrieved and at least cursorily reviewed to ascertain whether they might contain any messages for the time period in which [the individuals] worked in the White House'....  [T]he EOP would then

16

> have to conduct a page-by-page review of the messages in that box to determine if any of the messages were for the requested individuals.
>
> Ms. Peterson and the EOP, however, fail to establish, by way of estimated required staff hours, estimated cost, or some other specific showing, just how this search would be overly burdensome. It may be that the EOP's cursory search of these boxes demonstrates that there are in fact only a few boxes from the relevant time period that would, therefore, need a more detailed search. Thus, the court finds that the EOP has not sufficiently established that the plaintiffs' request is overly burdensome, and the EOP must produce the requested telephone logs.

*Alexander v. FBI*, 194 F.R.D. 305, 315 (D.D.C. 2000) (internal citations omitted); *see also, e.g.,*

*U.S. ex rel. Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11, 21 (D.D.C. 2006) (rejecting undue

burden argument when "M & T made no effort to provide evidence regarding the time or

expense of such an endeavor"). Like the defendants in *Fairholme Funds* and *Alexander*, the FBI

here offers only generic claims of burden that do not show "good cause" to limit discovery. The

Court should accordingly reject the FBI's motion for a protective order.

The FBI cannot attempt to mend this fatal flaw in its reply brief. "As the D.C. Circuit has

consistently held, the Court should not address arguments raised for the first time in a party's

reply." *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013) (quoting *Jones v.

Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008)). The Court's consideration of an argument

advanced only in a reply brief "is not only unfair …, but also entails the risk of an improvident or

ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharm.*, 800 F.2d

1208, 1211 (D.C. Cir. 1986). The FBI is the party that moved for relief; it bears the burden to

prove good cause for limiting discovery. It failed to come forward with anything beyond vague

and cursory assertions of "significant" burden.

Nor should the FBI be permitted to rely on any additional detail in the Classified

Declaration of Mr. Ronnow. There is no reason that the showing required of the FBI, including

hour or cost estimates, should be classified. Indeed, the FBI should be able to adequately specify

its anticipated burden without describing the substance of classified information.  To the extent further details are hidden from Dr. Chen within the FBI's Classified Declaration, it would be inappropriate to consider such information to which Dr. Chen cannot respond.  Such *ex parte* submissions are highly disfavored because they "conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them."  *Chekkouri v. Obama*, 158 F. Supp. 3d 4, 5-6 (D.D.C. 2016) (citation omitted).

### B.   The FBI Exaggerates The Burden Of The Proposed Deposition Topics

The FBI claims that the challenged topics would require significant document review, but fails to specify which topics require such review and why.  Contrary to the FBI's bald assertion, the majority of the deposition topics at issue would not require *any* document-by-document privilege or classification review.  And several of the topics seem to require minimal additional preparation to address the FBI's entire case file about Dr. Chen as compared to the 10 documents that the FBI has agreed to testify about, several of which are contained in the case file.

Topics 1, 4, 5, and 12, for example, are limited to testimony describing the FBI's *systems, policies, and practices* for storing and accessing documents disclosed to Fox News; included in the FBI's case file; or comprising the Pappa PowerPoint.  *See, e.g.*, ECF No. 60-6 (FBI Ex. 3) (Topic 1: "recordkeeping and document retention practices" with respect to each type of document; Topic 4: "The Sentinel system's ability to store, search for, retrieve, and record activity" with respect to each type of document; Topic 5: "The ability to use the Chen File # to search for and retrieve the documents"; Topic 12: "The FBI's policies, procedures, and/or practices with respect to the collection, labeling, storage, and documentation…" of each type of document).  There is no obvious reason—and the FBI does not offer one—as to why testimony about the FBI's systems, policies, or practices would require an in-depth analysis and privilege

18

review of the content of individual documents.  Moreover, it is unclear why testimony as to the

case file would require substantially more preparation than testimony as to the documents the

FBI has already agreed are within the scope of these topics.  Several of the 10 agreed-upon

documents were contained in the case file about Dr. Chen, so the FBI will already be testifying

about its systems, policies, and practices with respect to at least part of the case file.  The FBI has

offered no reason to believe that its systems, policies, and practices are different as to the rest of

the case file, nor that it would be burdensome to testify about those systems, policies, and

practices as to each type of document within the case file.

Similarly, Topic 18 asks for the FBI to testify about certain requests for documents about

Dr. Chen between the FBI, DOD, or DHS.  There is no reason why this topic would require the

FBI to review every document in the case file about Dr. Chen.  Rather, the FBI would need to

identify whether any such requests exist and, from there, understand what documents were

encompassed by the request.  If DOD requested the FBI's entire case file, the FBI's designee

could testify to that fact; the topic does not require the FBI to describe every document within

the case file.  *See Alexander*, 194 F.R.D. at 315 ("It may be that the EOP's cursory search of

these boxes demonstrates that there are in fact only a few boxes from the relevant time period

that would, therefore, need a more detailed search.  Thus, the court finds that the EOP has not

sufficiently established that the plaintiffs' request is overly burdensome.").

Next, it is also unclear why Topic 3 would require significant manual review.  The FBI

should be able to determine Mr. Rhoads' access to documents (the issue covered by Topic 3) by

speaking to relevant personnel and analyzing access logs generated by the systems addressed by

Topics 1, 4, and 5.  If Mr. Rhoads had access to the Pappa PowerPoint and the entire Chen case

file, the FBI can so testify without detailing the contents of each and every document within the

file.  If Mr. Rhoads had access to a subset of documents within the case file, that would at a minimum narrow the FBI's own conclusory assertion that it must conduct a comprehensive privilege review.  *See Alexander*, 194 F.R.D. at 315; *cf. Danik v. DOJ*, 463 F. Supp. 3d 1, 9-10 (D.D.C. 2020) (rejecting FBI's burden estimate in FOIA case because "[t]he FBI assumes … that the remaining terms would generate a similar number of hits and require similar hours to review. But it has no factual basis to assume that").

As to the final topic, while Topic 2 may require review of the contents of some documents in the case file, it is unclear why it would require the intensive review suggested by the FBI.  The part of Topic 2 that the FBI seeks to exclude concerns "the location, storage, use, and accessibility" of the FBI's case file about Dr. Chen (aside from the ten agreed-upon documents).  The FBI could provide this information without a review of the contents of each document in the case file.  For example, where the case file was stored can presumably be answered in a fairly categorical matter, and without review of individual documents within the file.  Similarly, the FBI may be able to determine the accessibility of the documents with reference to particular FBI personnel or particular sub-files within the case file, and through examining access logs.  *See* Ronnow Decl. ¶ 8 (noting "sub-files" are "categories of records" that "can have different access restrictions from the main case file").  However, even if this topic required a document-by-document review, Dr. Chen respectfully asserts that burden is justified, as described below.

### C.      The Burden Is Reasonable Under This Court's Precedent

Even assuming that the FBI had to undertake a document-by-document review of the case file, the Ronnow Declaration suggests that this is not a significant number of documents. The declaration indicates that the case file contains "in excess of 250 serials, exclusive of any attachments," and defines a "serial" as a document.  Ronnow Decl. ¶¶ 7, 10.  Given the relevance

of Dr. Chen's proposed topics to a wide range of issues, and the FBI's burden to show "good cause" for limiting discovery, such a modest review would fall well within the FBI's expected burden in preparing for its 30(b)(6) deposition—a burden that is "not essentially different from that of answering interrogatories under Rule 33, and is in any case lighter than that of an examining party ignorant of who in the [organization] has knowledge.'" 8A Charles Alan Wright et al., Federal Practice and Procedure § 2103 (3d ed. 2021) (quoting Committee Note to 1970 amendment to Rule 30(b)(6)).

Indeed, two analogous cases assessing protective orders in the 30(b)(6) context illustrate that the burden imposed by Dr. Chen's proposed topics resembles what has been required of government agencies in the past.

First, similar to this case, *Alexander v. FBI* was a Privacy Act case in which plaintiffs alleged that the FBI illegally shared files—there, with the Executive Office of the President ("EOP"). The plaintiffs sought a Rule 30(b)(6) deposition of EOP. Unsurprisingly, the challenged topics in *Alexander* closely tracked Dr. Chen's—the plaintiffs there also sought systems and practices information about the storage and access to various documents within the EOP. *See, e.g.*, *Alexander*, 188 F.R.D. at 118-20. Request 1, for instance, sought testimony regarding "the system of files maintained to store, protect, and preserve documents" in the possession of EOP, while Request 3 sought testimony regarding "the system of recording devices, whether audio or video, used to record sounds or pictures in any of the office, common, residential, and/or other areas of the White House and the entirety of the [EOP]."

After clarifying that these topics must be limited to matters inside the EOP during the relevant time period, the court denied EOP's motion for a protective order. *Id.* The court held that the "plaintiffs' deposition request is reasonable when balanced against any hardship or

burden that may be suffered by the EOP." *Id.* at 119.  The court upheld these systems and practices topics (farther reaching than Dr. Chen's) despite EOP's detailed declaration specifying they would require "every secretary in the White House to testify about his or her filing systems, would require a deponent to address how the telephone system works, and would require additional deponents to testify about the mechanics of all computer printers." *Id.* at 118-19.

*Buie v. District of Columbia*, 327 F.R.D. 1 (D.D.C. 2018), on which the FBI itself relies, similarly supports Dr. Chen.  The plaintiff sued the District of Columbia claiming a sexual assault by one of its police officers, Mr. Best.  The plaintiff noticed four topics for a 30(b)(6) deposition, and D.C. moved for a protective order to narrow each topic on undue burden grounds.  The court denied the government's motion with respect to three deposition topics that required the government to conduct extensive database searches and manual review of voluminous records.  *See id.* at 7-13.  One topic, for example, sought testimony regarding Mr. Best's "hiring, promotion, demotion, transfer, training, supervision, termination, or resignation." *Id.* at 7-8.  D.C. argued this topic was unduly burdensome to the extent it required review of files throughout Best's 28-year tenure at the department.  *Id.*  The court disagreed.  *Id.* at 8.  Another topic sought testimony regarding "[t]he disciplinary files, and all other documents having to do with the training, discipline, or supervision, termination, or resignation of Darryl L. Best, individually, and those of other sworn MPD members involved in an instance or instances of alleged sexual misconduct/harassment." *Id.* at 8-9.  After limiting this request to relevant information concerning instances of sexual misconduct, *see id.* at 10-11, the court rejected D.C.'s claim of undue burden:

> Locating and producing disciplinary records from 2001 through 2005 for Mr. Best's training classmates will impose a moderate burden upon the District.… Retrieving responsive disciplinary records from 1987 through 2000 that concern Mr. Best's classmates would require only slightly more effort.… [T]he MPD could … simply

> search[] the 1987 through 2000 DRD spreadsheet for Mr. Best's classmates' names,
> retrieving the corresponding paper files from the FRC, and reviewing those files to
> locate any disciplinary records concerning sexual misconduct or harassment.

*Id.* at 11.  The court underscored that these topics "will require manual review, but '[t]he mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden.'"  *Id.* at 12 (quoting *Fagan v. Dist. of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991)).

The FBI's motion ignores these rulings in *Buie* and instead cites to a cherry-picked portion of *Buie* that limited the plaintiff's most far-reaching topic, which the defendant in that case demonstrated would have required D.C.'s police department to "expend hundreds of hours reviewing … thousands of paper files," totaling several months of full-time work by a staff member.  *Id.* at 14.  Here, the FBI here has not made an even remotely similar showing as to the specific burdens of Dr. Chen's requested testimony.  Moreover, the *Buie* court limited that topic in part because similar information had already been produced in response to other discovery requests and any additional benefit to the plaintiff would not have been significant.  The deposition topics that the FBI is contesting here more closely resemble the topics that were upheld in *Buie*.

The few other cases that the FBI cites in passing are not to the contrary.  The FBI relies upon *U.S. ex rel. Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11 (D.D.C. 2006), noting that the court declined to order 30(b)(6) testimony about 63 different loans.  However, the designee in *M&T* actually "was knowledgeable about the sixty-three loans"—she just was unable to testify as to "each loan's Federal Housing Administration case number and M&T loan number."  *Id.* at 24-25.  Similarly, Dr. Chen seeks the FBI's knowledge about certain systems, practices, and policies, and well as the location, use, storage, and accessibility of its case file—not minutiae like a loan number.  The FBI also miscites *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004).  *Banks* did not sustain or even address a claim of undue burden.  Rather, the

30(b)(6) topics in *Banks* were limited on the separate ground—not advanced by the FBI here—that they "d[id] not describe with 'reasonable particularity the matters on which examination is requested.'" *Id.* at 18.  The wording of the topics was "vastly overbroad," potentially encompassing matters that "cannot possibly be relevant to this lawsuit." *Id.* at 19.

The cases that the FBI cites do not support its undue burden claim.  Rather, the most analogous cases assessing undue burden challenges illustrate that Dr. Chen's seven deposition topics are equally or less burdensome than others that this court has required the government to prepare for in the past.  Given their relevance to Dr. Chen's Privacy Act claim, the FBI's claims of burden should be rejected.

## CONCLUSION

For the foregoing reasons, this Court should deny the FBI's motion for a protective order.


Dated:  December 17, 2021

*/s/ Matt Jones*

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Jessica Lutkenhaus (D.C. Bar No. 1046749)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
jessica.lutkenhaus@wilmerhale.com

*Counsel for Plaintiff*