**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YANPING CHEN,

      Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

      Defendants.

Civil Action No. 1:18-cv-3074-CRC

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF PLAINTIFF YANPING CHEN'S SECOND MOTION TO COMPEL**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................................3

I.  Dr. Chen Seeks Documents And Information Important To All Elements
    Of Her Privacy Act Claim...................................................................................................3

    A.  The Privilege Objections To Deposition Questions Should Be
        Overruled .................................................................................................................4

    B.  The Court Should Direct The FBI To Produce Unredacted
        Versions Of 54 Documents ....................................................................................8

    C.  Dr. Chen's Privilege Challenges Are Not "Academic" ........................................12

    D.  Dr. Chen Has Been Deprived of the Ability to Meaningfully
        Address The FBI's Purported Interests .................................................................13

CONCLUSION.................................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Exec. Office of the President*, 97 F.3d 575 (D.C. Cir. 1996) ..............................13, 14

*BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347 (D.D.C. 2018) .........................................................14

*Chekkouri v. Obama*, 158 F. Supp. 3d 4 (D.D.C. 2016)................................................................13

*Doe v. U.S. Postal Serv.*, 317 F.3d 339 (D.C. Cir. 2003) ................................................................4

*Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996)..................................................6

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988)..........................................................................9

*Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999)..................1, 3

*Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996)..............................................................................11

*United States v. Nixon*, 418 U.S. 683 (1974)...................................................................................3

**OTHER AUTHORITIES**

DOJ, *Information About the Department of Justice's China Initiative and a Compilation of China-Related Prosecutions Since 2018*, https://www.justice.gov/nsd/information-about-department-justice-s-china-initiative-and-compilation-china-related (last updated Nov. 19, 2021) .....................................................................................................................................14

Office of Inspector General, DOJ, *Audit of the Federal Bureau of Investigation's Execution of Its Woods Procedures for the Applications Filed with the Foreign Intelligence Surveillance Court Relating to U.S. Persons* (Sept. 2021), https://oig.justice.gov/sites/default/files/reports/21-129.pdf ....................................................14

Office of Inspector General, DOJ, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 2019), https://www.justice.gov/storage/120919-examination.pdf;......................................................14

**PRELIMINARY STATEMENT**

Throughout the course of discovery, Defendant Federal Bureau of Investigation has made sweeping privilege assertions that have prevented Dr. Chen from discovering key facts to support her claim. When challenged, the FBI has conceded improper redactions in specific instances, but refuses to revisit its privilege assertions more generally—even as to a limited set of important documents. Dr. Chen recognizes that the law enforcement privilege serves significant public interests. But that privilege is a qualified one and should be "applie[d] with an eye towards disclosure." *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999).

To that end, Dr. Chen has focused on a narrow subset of deposition questions and documents likely to have highly relevant information.[1] First, Dr. Chen disputes the FBI's invocation of the privilege to block responses to deposition questions targeting the FBI's sharing of information with Mr. Rhoads, the FBI's recordkeeping practices, and a pattern of media disclosures by the team that investigated Dr. Chen. Second, Dr. Chen has identified 46 documents that appear to be significant to Dr. Chen's case but contain heavy redactions for law enforcement privilege. Third, Dr. Chen challenges redactions in eight documents containing communications among and between law enforcement and Mr. Rhoads.

Dr. Chen recognizes that certain of the FBI's redactions may be appropriate; in those cases, the redacted information may be truly irrelevant or implicate significant law enforcement interests. But the FBI's track record of improperly asserting the privilege over highly relevant information that presents no apparent law enforcement equities makes it impossible to take the

---

[1] While the government repeatedly states that Dr. Chen filed her motion to compel "on the last day of discovery," *see e.g.*, Opp. 1, 4, Dr. Chen filed the motion on the schedule set by this Court in response to the parties' joint proposal. Minute Order (Nov. 16, 2021).

1

FBI's assertions at face value. And the FBI's refusal to do anything more than vaguely profess that confidential witnesses or investigative methods might be compromised prevents Dr. Chen from meaningfully engaging with its assertions.

The Court made clear when it decided Dr. Chen's first motion to compel that Dr. Chen may be able to prove her Privacy Act claim without the FBI confirming any source relationship with Mr. Rhoads if she can prove the transfer of Privacy Act-protected information from the FBI to Mr. Rhoads.[2] In articulating that theory of liability, the Court presumed that "the fact that the FBI disclosed (or did not disclose) records to Rhoads is not privileged," and that the "circumstances relevant to determining whether any such disclosure was willful and intentional are not privileged, either." ECF No. 46 at 9, 11.

The government has read the Court's statement so narrowly as to render it a nullity. It suggests that it has not withheld evidence over the direct question of whether a disclosure from FBI to Mr. Rhoads occurred or over the existence of communications or meetings between Mr. Rhoads and FBI personnel. That suggestion is incorrect, as many of the challenged deposition questions go to exactly these issues. Further, as the Court recognized, there are crucial facts related to the circumstances surrounding disclosure (beyond the simple fact of the disclosure itself) that are likely significant to Dr. Chen's claim. Those facts go to the other three elements of a Privacy Act claim, beyond the fact of disclosure—including, as the Court recognized,

---

[2] The Court denied Dr. Chen's motion without prejudice, recognizing that other theories of liability might ultimately require discovery into Mr. Rhoads's self-professed work as an informant. While Dr. Chen anticipates that it may become necessary to revisit the Court's prior ruling following the deposition of Mr. Rhoads, this motion does not ask the Court to yet revisit that ruling.

2

whether the disclosure "was willful and intentional." The government's profession that it is not withholding "key facts" is unavailing.

While the government repeatedly implies that Dr. Chen's motion only addresses issues involving Mr. Rhoads, *e.g.*, Opp. 1, 2, 9, that is incorrect. To prove a Privacy Act violation, Dr. Chen is entitled to discover information that reflects on all elements of her claim, including the FBI's recordkeeping and storage of information, whether the FBI willfully or intentionally sought to harm Dr. Chen, as well as documents and testimony exhibiting a pattern of leaks. The government's attempt to limit the issues in this motion to the act of the disclosure ignores other important reasons to allow Dr. Chen access to now-withheld information.

The law enforcement privilege must be applied narrowly because its "exceptions to the demand for every man's evidence … are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974) (quoted at *Tuite*, 181 F.R.D. at 177). The government has failed to justify its thwarting of the search for truth, pointing only to generic interests in preserving investigative methods and sources. The Court should not rely on the government's secret *ex parte* filings, which allow no room for Dr. Chen or her counsel to rebut spurious arguments or correct falsehoods. Dr. Chen's interest in the information outweighs the government's interest in non-disclosure.

The Court should grant this motion to compel and order the FBI to provide Dr. Chen with the discovery to which she is entitled.

**ARGUMENT**

**I.      Dr. Chen Seeks Documents And Information Important to All Elements of Her Privacy Act Claim**

The government claims that it "has not asserted the law enforcement privilege over the key facts relevant to Chen's FBI-to-Rhoads theory of the case." Opp. 10. But the way the

3

government has limited its definition of those "key facts" is divorced from any standard of relevance. In the government's view, the "key facts" would include two narrow types of information: (1) direct evidence of a disclosure from the FBI to Mr. Rhoads or (2) direct evidence of a meeting or communication between Mr. Rhoads and FBI personnel.[3] The government's promise to produce what it unilaterally deems "key facts" unreasonably circumscribes discovery. First, Dr. Chen is entitled to discover information going to all four elements of her Privacy Act claim, not just facts related to the second element (the disclosure itself). *See Doe v. U.S. Dep't of* Treasury, 706 F. Supp. 2d 1, 6 (D.D.C. 2009) (describing elements). Second, even as to the disclosure element, Dr. Chen is entitled to probe for facts beyond smoking-gun-proof of disclosure, *see* Opp. 2 ("[t]he government has not asserted the law enforcement privilege over whether any such disclosure occurred"), such as whether there was a pattern of such disclosures, opportunity for disclosure, or motive for disclosure. Finally, the government's argument wrongly assumes—contrary to the D.C. Circuit's instruction—that Dr. Chen needs to prove her case through direct, rather than circumstantial, evidence. *See Doe v. U.S. Postal Serv.*, 317 F.3d 339, 343 (D.C. Cir. 2003) (reiterating that courts "generally draw no distinction between the probative value of direct and circumstantial evidence" in context of a Privacy Act claim); *see also id.* ("[B]ecause plaintiffs can rarely produce direct evidence that the government has disclosed confidential information obtained from their private records, requiring such evidence would eviscerate the protections of the Privacy Act.").

### A.     The Privilege Objections To Deposition Questions Should Be Overruled

Dr. Chen seeks an order compelling the FBI to allow witnesses to answer certain questions over which it has asserted the law enforcement privilege. In response, the government

---

[3] And, as discussed *infra* at 8, the government *has* asserted privilege over direct communications between Mr. Rhoads and the FBI.

suggests that it has not asserted privilege over key facts and that the responses Dr. Chen challenges are "directed at questions about hypotheticals and peripheral details." Opp. 10.

The matters the government has deemed "peripheral" in fact go to the heart of Dr. Chen's case. Tellingly, the government offers no response to Dr. Chen's argument regarding the relevance of questions probing the leak of information about multiple investigations to the media.[4] Instead, the government offers the conclusory statement that "other challenged questions have no apparent relevance to Chen's theory," adding a string cite to many of the challenged questions, including those probing the leak of information to the media from other FBI investigations. Opp. 10-11 (citing multiple deposition questions including Jones Decl. ¶ 5(a) (SSA-15 Dep. 133:11–17) ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇")).[5] But as Dr. Chen laid out in her motion, any evidence that the FBI team that investigated Dr. Chen leaked investigative materials about other investigations to Fox News would be relevant to the manner and method through which Fox News obtained the leaked information about Dr. Chen. Mot. 11-13.

Other facts the government dismisses as "peripheral" without explanation are similarly important. For example, the government suggests that several challenged questions from the deposition of SSA-8 regarding what it defines as "FBI investigation type" have no relevance to Dr. Chen's Privacy Act claims. Opp. 10-11 (citing SSA-8 Dep. 254:8–16, 254:18–23, 254:25–255:6, 255:8–13, 258:7–14). That innocuous-sounding categorization is misleading. In the publicly-available Fox News article from February 2017, Fox News reported that the

---

[4] While the government argues that *documents* connected to other investigations were properly withheld, *see* Opp. 14-16 (Gao case) & 16-17 (other investigations), it proffers no real argument disputing the relevance of deposition questions probing those disclosures.

[5] Citations to the "Jones Decl." refer to the Declaration of Matthew T. Jones, ECF No. 59-3.

5

investigation of Dr. Chen was a "200d," "a counter-intelligence case." *See* ECF No. 1-2 at 2. SSA-8 confirmed that, ███████████████████████ that ███████ ███████████████████ in the FBI. Jones Decl., Ex. 1 (SSA-8 Dep. 257:2-4). When asked whether the investigation of Dr. Chen ███████████ however, the government instructed the witness not to answer. *Id*. (SSA-8 Dep. 254:25-255:6). Rather than seeking "peripheral" information, Dr. Chen's question goes directly to the first element of her Privacy Act claim, whether the leaked materials came from a "system of records." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460 (D.C. Cir. 1996) (elaborating legal standard for system of records). An affirmative answer from SSA-8 to the challenged question would directly establish that Fox News published information about Dr. Chen from an FBI system of records. While the government is correct—in one sense—that some of the challenged questions do not go directly to one element of one theory of liability (the direct disclosure to Mr. Rhoads), many of the questions go to the core of the other elements of Dr. Chen's claim and are probative of the facts and circumstances surrounding the disclosure.

The government points to its Appendix A, which purports to set out "the types of questions relevant to Chen's theory" (as the government has defined it) that government witnesses have answered and the "tangential and irrelevant questions" (again, as the government has defined it) to which Dr. Chen seeks to compel responses.[6] Opp. 11. The government suggests that the fact that it allowed its witnesses to answer some questions counsels in favor of allowing it to refuse to answer other questions. In many places, however, the inconsistencies

---

[6] Appendix A contains only a subset of deposition questions that Dr. Chen challenges, omitting other questions that, apparently, are not amenable to categorization convenient for the government's argument. *See, e.g.*, Jones Decl., Ex. 5 at 94:20-25 ("Q: ███████████████████ ███████████████████████████████████████████████████████████████████████?").

6

between the questions the FBI allowed witnesses to answer and the questions to which it objected underscore the illogic underlying their assertions.  *Compare* Appendix A at 1a, SSA-8 Dep. 90:21-25 (""), *with* Appendix A at 14a, Gillis Dep. 44:25-45:5 ("").  Further, contrary to the government's suggestion that the challenged questions are "tangential and irrelevant," the fact that Dr. Chen is judiciously choosing to challenge the invocation of law enforcement privilege in response to a limited number of questions underscores the importance of the questions she did ask.  That the government would define the "key facts" of Dr. Chen's *own case* differently is unsurprising and not dispositive.

       Finally, even under the government's circumscribed view of relevance, it is withholding key facts.  For example, the government suggests it has not asserted privilege over "meetings or communications that occurred between Rhoads and FBI personnel."  Opp. 10.  But some of the challenged deposition questions go directly to that issue.  For example, Dr. Chen seeks to compel answers to questions asking whether "," SSA-8 Dep. 105:8-10, and where "" would "," SSA-8 Dep. 93:16-21.  Those questions go directly to the existence of meetings between Mr. Rhoads and FBI personnel.  It is difficult to take at face value the government's suggestion that it has not asserted privilege over "the existence of any meetings … between Rhoads and FBI personnel" if it refuses to answer questions related to the records of those meetings.

### B. The Court Should Direct The FBI To Produce Unredacted Versions Of 54 Documents

Dr. Chen has also identified 46 redacted documents and 8 documents containing text messages and instant messages whose importance to Dr. Chen's case outweighs the government's interest in nondisclosure.

As a preliminary matter, the government fails to even address the relevance of the challenged text and instant messages. In fact, its only mention of those messages is to point out that some of the documents contain additional, non-law enforcement redactions. Opp. 18. While the government suggests throughout its opposition that it has not "asserted the privilege over the existence of any meetings or communications that occurred between Rhoads and FBI personnel," *id.* at 10, that is simply not true with respect to the text and instant messages.[7] *See, e.g.*, Jones Decl., Exs. 55, 56, 58, 59 (messages between Mr. Rhoads and FBI employees including SSA-7 and Special Agent Pappa redacted using the "G" redaction code, which indicates redaction for the law enforcement privilege). As Dr. Chen explained in her opening brief, the timing and context of the redacted messages suggest that they are highly relevant to Dr. Chen's claim. Mot. 22-23. For example, some of the redacted texts between Mr. Rhoads and an FBI employee, SSA-7, reflect communications ▮▮▮▮▮ the Fox News reporter who published the reports about Dr. Chen released the story Special Agent Pappa's investigation of Xiaoming Gao. *See* Jones Decl., Ex. 56. As described in more detail in support of Dr. Chen's reply in support of her motion to expand the scope of Mr. Rhoads' phone records, discovery indicates that Mr. Rhoads

---

[7] To the extent the government is suggesting that it is not withholding evidence of the *existence* of communications with Mr. Rhoads, but merely the substance, that is unavailing. As noted *supra* at 7, many of the challenged deposition questions go directly to the existence of such meetings because they seek information about records of such meetings. With respect to the redacted text messages and instant messages, the substance of those messages—communications between the government and an alleged leaker—are crucial to Dr. Chen's claim and any interest in nondisclosure is outweighed by that importance.

and Special Agent Pappa coordinated in advance of that April 2015 story.  *See* 20-mc-00107-CRC (D.D.C. Oct. 22, 2021), ECF No. 41 ("Phone Logs Reply").  Dr. Chen has carefully reviewed the redactions and challenged only documents that appear to be especially important to her case based on the timing and other contextual clues.  *See In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  The government's failure to even address those messages underscores their importance.

With respect to the other 46 documents that Dr. Chen challenges, the government advances four principal arguments.  Each should be rejected.  *First*, as with the deposition questions, the government's assessment of the "key facts" to Dr. Chen's claim is unduly narrow.  For all the reasons above, *supra* at 4-7, the government's suggestion that it "has not asserted the law enforcement privilege over whether [a FBI-to-Rhoads] disclosure occurred"—one element of one theory of Dr. Chen's claim—does little to justify its withholdings.

*Second*, the government faults Dr. Chen for failing to "attempt to explain" what the needed privileged information would show in the 20 most heavily-redacted documents.[8]  Dr. Chen has provided all of the information that she reasonably could given the heavy redactions and the lack of any explanation to justify them.  For example, the timing and recipients of certain emails suggest that they contain information that is significant to Dr. Chen's claims.  Mot. 21 (citing Jones Decl., Ex. 11, 36).  One such email was sent when Special Agent Pappa was

---

[8] The government also suggests that it was forthcoming about providing additional information when asked and that Dr. Chen never requested additional information about the documents at issue here.  Opp. 12 n.8.  That misstates the parties' months-long exchanges.  In fact, Dr. Chen identified each of the 20 heavily-redacted documents for the government on September 20, 2021 and October 26, 2021.  Jones Decl., Exs. 67, 69.  Dr. Chen asked the government to re-review those documents based on the context, which suggested they contained information that is highly-relevant to her claim.  The government refused to do so.  Jones Decl., Exs. 68, 70.

discussing preparing a presentation for DOD with DHS agent Michael Tarantino—a presentation that appears to have been leaked to Fox News. *Id.*

*Third*, the government's suggestion that "Chen's need for information allegedly concerning Gao is minimal" is belied by the record. Opp. 14. As explained in great detail in her Phone Logs Reply, that media disclosure is plainly relevant to Dr. Chen's claim. Mr. Rhoads made that clear in an email to his commanding officer sending a link to the Gao article: "Phase 1 has gone public. COL Chen's story hits next week. I don't think you were briefed in depth on the Ms. Goa [sic] situation in the article below. The two are related." Jones Decl., Ex. 72. Mr. Rhoads's own words confirm the relationship between the media disclosures.[9] Further, the government's argument that the information displayed in the Fox News report about Gao "did not involve any Privacy Act violation," Opp. 15, is a distraction. Dr. Chen does not seek to prove a Privacy Act claim on behalf of Ms. Gao. Rather, the discovery produced to date demonstrates that Special Agent Pappa and Mr. Rhoads orchestrated and celebrated the publicity about the Gao case, viewing it as one step in a multi-part publicity campaign. Whether or not disclosure of Ms. Gao's information amounted to a violation of the Privacy Act, information

---

[9] For that reason, the government's argument that Dr. Chen did not request documents about Ms. Gao is of no moment. Dr. Chen is not asking the FBI to produce documents that relate only to Ms. Gao—rather, as part of its production of documents about Dr. Chen, the government produced documents that appear to relate *both* to Dr. Chen and Ms. Gao. Dr. Chen challenges the government's redaction of information about the Gao case within those documents, which concededly relate to Dr. Chen.

about their pursuit of that publicity is plainly relevant to whether they would orchestrate a disclosure to the same reporter about Dr. Chen.[10]

For the same reason, the Court should not accept without scrutiny the government's suggestion that "[t]he privileged information concerning numerous other FBI investigations has no conceivable relevance to Chen's claim."  Opp. 16.  Dr. Chen recognizes that the FBI may have important interests in narrowly-tailored redactions that would reveal sensitive investigative techniques or sources, and that some investigations described in the documents may be truly irrelevant.  *Tuite v. Henry*, 98 F.3d 1411, 1413 (D.C. Cir. 1996).  But the wholesale redaction of entire documents and refusal to provide any information related to media leaks in other cases does not align with the qualified nature of the privilege.  Dr. Chen does not seek information about the specifics of sources or investigative techniques involved in other investigations.  Instead, Dr. Chen seeks a narrow set of information related to the disclosure of documents to the media that would establish a pattern or be probative of the manner and method through which Fox News obtained leaked information.  *See* Mot. 11-12.

*Finally*, the government suggests that it should be applauded for its "salutary" step of lifting improper redactions in the past.  But that grossly underestimates the scope and nature of the redaction issues in this case.  Dr. Chen has expended tremendous time and resources to painstakingly evaluate the FBI's privilege claims.  Since July 2021, Dr. Chen has been

---

[10] The government contends that Dr. Chen's interest in information related to Ms. Gao would be fully satisfied by a stipulation about "whether the FBI learned that the first Fox News broadcast about Chen was originally going to also report on Gao."  Opp. 15.  Dr. Chen disagrees.  While that is one relevant fact that Dr. Chen seeks to obtain, seeing the information unredacted in the documents is much more valuable to Dr. Chen so that she can understand the broader context (for example, whether Special Agent Pappa hid from his FBI colleagues the role that Mr. Rhoads had played in the prior disclosure to Fox News about Ms. Gao).  The government bears the burden of justifying its invocation of the privilege as to any information about Ms. Gao that appears in the context of media reporting about Ms. Gao or Dr. Chen, and it fails to do so.

documenting and raising these inconsistencies to the government and asking for limited re-review of documents that she has identified as likely having highly-relevant information. *See* Jones Decl., Ex. 60. The government's response to those requests has been insufficient. For example, for each of the potentially "key" documents that Dr. Chen identified in her July 9, 2021 correspondence, the FBI conceded that inconsistencies were "mistakes" but continued to assert that Dr. Chen has not shown any problem that warranted a second look at other documents. Jones Decl., Ex. 66; *see also id.* Ex. 68.[11] The importance of the previously-redacted information for the few documents the government has re-reviewed, along with the frequency of the inconsistencies and the government's aggressive secrecy more broadly, makes it probable that other information within the challenged documents was both improperly redacted and highly relevant to Dr. Chen's claim. *See* Opp. 18-19.

      **C.**     **Dr. Chen's Privilege Challenges Are Not "Academic"**

The government also suggests that two categories of documents Dr. Chen identified are "purely academic" because (1) the context of some challenged deposition questions indicates that SSA-2 did not know the answer to the challenged questions, and (2) the redacted documents are protected by other applicable privileges. Opp. 18. With respect to the deposition questions, Dr. Chen simply disagrees that the answers to subsequent questions provide a clear indication about how the deponent would answer questions to which FBI counsel objected. The phrasing of deposition questions matter, and there is no guarantee that a witness will give a specific answer to a differently-phrased question.

---

[11] The government also states that, "where the FBI lifted certain redactions on re-review, Chen does not contend that the additional information disclosed has any relevance to the sole Privacy Act claim in this case." Opp. 13. But Dr. Chen has given specific examples of the importance of previously-redacted information. *See* Mot. 17 (citing Jones Decl., Ex. 49).

With respect to the redactions covered by multiple privileges, first, as the limited re-reviews the FBI agreed to undertake have demonstrated, it is not at all clear that the government would continue to stand by its additional privilege claims if forced to re-review those claims. Setting aside that possibility, many of the documents covered by multiple privileges contain large blocks of text covered by multiple codes. Because of the lack of specificity in the government's redactions, it is unclear whether parts of each block are covered by different privileges, such that some information could be fully unredacted if the law enforcement privilege were withdrawn. The potential existence of multiple privileges cannot justify the overuse of one of those privileges.

### D. Dr. Chen Has Been Deprived of the Ability to Meaningfully Address The FBI's Purported Interests

Finally, Dr. Chen cannot reasonably respond to the FBI's privilege claims because the FBI has hidden their entire substance in *ex parte* filings. *Ex parte* submissions are highly disfavored in this circuit because they undermine the adversarial process. *See, e.g.*, *Chekkouri v. Obama*, 158 F. Supp. 3d 4, 5-6 (D.D.C. 2016) ("Ex parte submissions 'generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them.") (citation omitted). Although *in camera* review of potentially privileged materials is "generally encouraged," the use of *in camera* affidavits is discouraged because of their "negative impact on the effective functioning of the adversarial system." *Armstrong v. Exec. Office of the President*,

97 F.3d 575, 580-81 (D.C. Cir. 1996).[12]  To that end, where a court relies on an *in camera* affidavit, even in national security cases, "it must both make its reasons for doing so clear and make as much as possible of the *in camera* submission available to the opposing party."  *Id.*

Instead of providing information that would allow Dr. Chen a fair shot to challenge the government's arguments, the FBI publicly gestures only to "confidential sources or witnesses and investigative methods."  Opp. 1.  The unclassified declaration submitted by the FBI refers generically to "case subjects," "several sensitive and/or classified FBI investigative methods," and "several Confidential Human Sources (CHSs) and witnesses."  ECF No. 67-1.  The declaration makes no effort to describe which interests are applicable to which deposition questions or documents, even at a categorical level.  Nor does it explain which of the FBI's subjects of interest or investigative techniques are already known publicly due the government's own disclosures.[13]  It is inconceivable that the FBI could provide *no* additional information that would allow a meaningful response to its assertions of privilege.

---

[12] The perils of relying on *ex parte* submissions are not theoretical.  In a series of reports, the Office of Inspector General of the Department of Justice identified serious, recurring errors in *ex parte* FBI submissions to the Foreign Intelligence Surveillance Court.  *See* Office of Inspector General, DOJ, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, (Dec. 2019), https://www.justice.gov/storage/120919-examination.pdf; Office of Inspector General, DOJ, *Audit of the Federal Bureau of Investigation's Execution of Its Woods Procedures for the Applications Filed with the Foreign Intelligence Surveillance Court Relating to U.S. Persons* (Sept. 2021), https://oig.justice.gov/sites/default/files/reports/21-129.pdf.

[13] The FBI has publicly described many of its own investigative methods and techniques in documents such as the Domestic Investigations and Operations Guide and Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources.  The Department of Justice has itself released a great deal of information about its investigative targets, techniques, and enforcement strategies regarding China.  *See, e.g.*, DOJ, *Information About the Department of Justice's China Initiative and a Compilation of China-Related Prosecutions Since 2018*, https://www.justice.gov/nsd/information-about-department-justice-s-china-initiative-and-compilation-china-related (last updated Nov. 19, 2021).  The FBI should not be able to conceal for purposes of this litigation information that is has made public elsewhere.  *See BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 364 (D.D.C. 2018) (rejecting government's assertion of law

In its opposition, the government goes so far as to redact part of the legal standard to its brief.  Opp. 6-7.  It is impossible for Dr. Chen to brief her motion without even knowing the law under which the government is proposing the motion be judged.  Counsel for Dr. Chen can speculate that the redacted section might refer to a statute prohibiting disclosure of a particular law enforcement or intelligence method, and that the government would argue that the legal standard alone would reveal that the method is somehow connected to this case.  That argument fails because revealing, for example, that somewhere in these documents is a reference to Foreign Intelligence Surveillance Act coverage would reveal nothing about whether or how FISA was used in the investigation of Dr. Chen or any other investigation referenced in the documents.  But knowing the legal standard would be of tremendous benefit to the adversarial process, allowing Dr. Chen to provide the Court with authority and argument to inform its decision-making.

Similarly, the government submits its response to Dr. Chen's argument that the Protective Order provides ample protection in this case entirely *ex parte*, giving Dr. Chen no opportunity to respond.  Again, counsel for Dr. Chen can only speculate as to what factual assertions or arguments the government has put forward, so has no ability to rebut incorrect claims or offer accommodations that would address the government's concerns.

To the extent that the Court determines review of the government's secret *ex parte* filings are necessary to resolve this motion, Dr. Chen respectfully requests that as much as possible of the submissions be made available to her counsel so that she can have a fair opportunity to respond.

---

enforcement privilege where "an unprecedented amount of information about the [Steele] Dossier's origin and its use in an ongoing investigation [was] already in the public domain").

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Chen's motion to compel.[14]

Dated:  January 5, 2022

                                                                    /s/ Matt Jones

                                                                    Matt Jones (D.C. Bar No. 502943)
                                                                    Patrick Carome (D.C. Bar No. 385676)
                                                                    Jessica Lutkenhaus (D.C. Bar No. 1046749)
                                                                    Wilmer Cutler Pickering Hale and Dorr LLP
                                                                    1875 Pennsylvania Avenue, NW
                                                                    Washington, DC 20006
                                                                    Tel.: (202) 663-6000
                                                                    Fax: (202) 663-6363
                                                                    matt.jones@wilmerhale.com
                                                                    patrick.carome@wilmerhale.com
                                                                    jessica.lutkenhaus@wilmerhale.com

                                                                    *Counsel for Plaintiff*

---

[14] The government suggests that if Dr. Chen prevails on her challenge to the deposition questions, that the parties have agreed that any further questions would be in writing.  That is not so.  Dr. Chen understands the parties' discovery agreement to be limited to the release of information previously withheld from documents, not to deposition questions.  Thus, Dr. Chen agrees that, to the extent the Court orders any documents to be unredacted in response to this motion, follow up questions about those documents would be in writing.