IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
YANPING CHEN,
CA No: 1:18-cv-03074-CRC
Plaintiff,
Washington, D.C.
Wednesday, March 11, 2020
vs. 11:05 a.m.

FEDERAL BUREAU OF INVESTIGATION,
et al.,

Defendant.
- - - - - - - - - - - - - - - - x

---

TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff: **MATTHEW T. JONES, ESQ.**
**WILMER HALE**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6018
matt.jones@wilmerhale.com

For the Defendant: **GARRETT JOSEPH COYLE, ESQ.**
**U.S. DEPARTMENT OF JUSTICE**
Civil Division,
Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616-8016
garrett.coyle@usdoj.gov

Court Reporter: Lisa A. Moreira, RDR, CRR
Official Court Reporter
U.S. Courthouse, Room 6718
333 Constitution Avenue, NW
Washington, DC 20001
(202) 354-3187

P R O C E E D I N G S

THE COURTROOM DEPUTY: Good morning, everyone. We're here for the initial scheduling conference in 18-3074, *Yanping Chen vs. The Federal Bureau of Investigation, et. al*.

If all counsel will approach the lectern and identify yourselves for the record.

MR. JONES: Good morning, Your Honor; Matt Jones on behalf of Dr. Yanping Chen, the plaintiff.

THE COURT: Good morning.

MR. JONES: Dr. Chen is present here in the courtroom this morning.

THE COURT: Good morning.

Good morning, everyone.

Dr. Chen, you are a party, so if you would like to sit at counsel's table, you are more than welcome. It's up to you.

THE PLAINTIFF: Thank you.

MR. JONES: I'm joined today also by my colleagues Pat Carome and Justin Baxenberg.

THE COURT: Good morning, everyone.

MR. CAROME: Good morning, Your Honor.

MR. COYLE: Good morning, Your Honor; Garrett Coyle from the justice department for the government. With me at counsel table is Carol Federighi, also from the

justice department for the government.

THE COURT: Good morning, Mr. Coyle.

Ms. Federighi.

Why don't both counsel approach the lectern. I like to do these things pretty informally.

I like to have our initial scheduling conferences in person just to get an idea of what the issues are. I have obviously -- I'm more familiar with this case than I might be with some having dealt with the motion to dismiss. I've read your meet and confer statement. Six months of discovery strikes me as a reasonable amount of time. I thought we should talk about the approach to the depositions.

This is the first Privacy Act case that I have handled that has gone to litigation at least, and I just wondered, Mr. Jones, what you anticipate your approach will be to discovery in the case.

MR. JONES: Yes, Your Honor. With respect to depositions, it will be our goal to answer this fundamental question of who leaked the documents to Fox News as straightforwardly and efficiently as possible.

THE COURT: Okay.

MR. JONES: We expect that in the best case that information would be readily available. We will go to the individuals who we think are most likely suspects in the

first instance. But if past is prologue, given previous Privacy Act cases, there has been extensive discovery and depositions necessary in order to obtain that information.

THE COURT: So who oversaw the investigation within the FBI?

MR. JONES: It is our understanding that the investigation was conducted by the Washington Field Office of the FBI with the Eastern District of Virginia U.S. Attorney's Office as the prosecuting authority involved in the investigation.

THE COURT: All right. So you know who the affiants were for the warrant, and you know who signed the warrant?

MR. JONES: Correct, correct. And so the first thing -- as comes through in our complaint, we're very transparent about the fact that we believe that the Justice Department broadly, the FBI in particular, is the most likely source of the leak, and we will target our discovery there and our depositions there.

Of course, the easiest way to get to an answer here would be to simply issue third-party discovery to Fox News and ask them, the recipients of the leak, how they obtained the information. But the circuit has made clear, because of the First Amendment implications of doing so, that there is an exhaustion principle here, and we need to

go and look at other reasonable alternatives.

Because there are four defendants and a number of different types of records at issue, we will also need to be conducting depositions regarding the systems of records that are used by each of those agencies as well, which will require some additional discovery.

THE COURT: Okay. What does that question turn on, in your view?

MR. JONES: Which question?

THE COURT: Whether the materials that you allege were unlawfully disclosed, whether they were housed in a system of records?

MR. JONES: One of the elements that we are -- that we need to establish here, in order to make out a privacy claim, is that the personal information about Dr. Chen that was leaked to Fox News was derived from a system of records.

We've had initial discussions with the government about whether we can do anything to narrow the issues around that discovery by reaching agreement that certain documents are contained in the system of records; and if we're able to do so, that will narrow that piece of the discovery that we would need to conduct.

THE COURT: Because if they were kept in a box someplace, that's probably not a system of records. But if

they were codified and searchable by your client's name, then that might well be a system of records. Right?

MR. JONES: That's right, Your Honor.

THE COURT: Okay. And why is that a knowable fact one way or the other? Why do we need -- and maybe this is a question for the government, but why do we need to take discovery on that?

MR. JONES: The government has, in its answer, refused to confirm or deny whether the search warrant documents, as an example, were contained by a certain file number. It seems like it should be a very knowable, straightforward set of facts, but, again, in previous cases the government has broadly asserted law enforcement privileges and other privileges. It's unclear here whether the government will even acknowledge that there was an investigation conducted into Dr. Chen, which will require some work in order to establish the necessary facts.

THE COURT: Mr. Coyle, why don't you address that question, the system of records. And how much of this will you make transparent to the plaintiffs, or am I going to have to litigate privileges and whatnot?

MR. COYLE: Your Honor, for the system of records issue in particular, at the Rule 26(f) conference plaintiffs asked us whether we would be willing to stipulate to whether certain documents were kept in systems of records. We're

still determining whether we can reach agreement on that issue.

I think we might be able to reach some agreement. Of course, that wouldn't be a concession that the documents that ultimately made their way to Fox News came from those systems of records, and that might require more than just a stipulation.

More generally, I can confirm the existence of the investigation.

Beyond that, the details are sensitive about the investigation. They may be subject to certain privileges. There's a review process ongoing to determine what can and can't be disclosed, and it would be premature at this point for me to speak more about the investigation before that review process is complete.

THE COURT: Well, the scope of the investigation is not necessarily at issue. It's simply whether these materials were improperly disclosed or not, correct? And I suppose it's who was involved in the investigation because that might affect your discovery. Is that fair?

MR. JONES: Yes. That's correct, Your Honor. In past cases we've seen situations where the government, for instance, refused to identify all of the people who had access to the records because of concerns that that would reveal --

THE COURT: Right.

MR. JONES: -- information about the investigation.

THE COURT: But you don't need to know who the other targets were or what sources and methods were used to pursue the investigation. You just want to know who may have had access to those materials.

MR. JONES: That's correct, Your Honor.

THE COURT: Okay.

So it seems to me that the precise number of depositions you'll need is completely unknowable at this point. You might get it on the first try. It might take you ten tries. You might not ever get it at all. Right?

MR. JONES: That's correct, Your Honor. And I think that that goes to one of the points in the scheduling order; that you may have seen that we have proposed 90 days from now coming back before you because we think, after the initial disclosures and the first round of discovery, we'll have a far better sense of that issue.

We do anticipate, though, given the exhaustion principle, unless the government is willing to -- we won't obviously use all 25 depositions if we are able to get an answer very early on about the fundamental facts here, but we wanted to build in that breathing room given the way that this has played out in prior cases.

THE COURT: Okay. Mr. Coyle, anything to add?

MR. COYLE: Judge, we put forward our position in the Rule 26(f) report. I'm not going to repeat it. The only point I want to make here is we don't think you have to decide this issue once and for all today. If you set a ten deposition limit, for example, and either party -- either side hits that limit, thinks they need more depositions, you know, obviously they can come back and explain why, and Your Honor can revisit it at that time.

THE COURT: So, Mr. Coyle, I'll give you ten, but I'm not -- who do you need to depose?

MR. COYLE: At this point we envision deposing Dr. Chen and maybe some employees of the university as well.

THE COURT: To see whether they had access to any of this material?

MR. COYLE: Potentially to determine whether they had access -- we have written discovery requests out already to figure out who else might have had access -- but also in terms of the damages that Dr. Chen is asserting in this case. She is asserting, as I understand it, primarily damages derived from the loss of tuition revenue to the university that she owns, and so we're going to need to do depositions of employees of the university to determine exactly the nature and validity of those damages.

THE COURT: Okay. So I read the *Lee* and the

*Hatfill* decisions that were cited in the status report, and there is obviously some precedent to these sorts of claims. Whether you can bear it out or not is another question.

But in light of those past cases and what the government may already know about the case, any purchase in settlement discussions? Have any discussions been had, or no?

MR. JONES: Not yet, Your Honor. Both sides have expressed an openness to engage in such discussions. During our initial conference we described the basic interests that Dr. Chen is seeking to vindicate in bringing this case, but I think we both came to the conclusion that some period of discovery is going to be necessary before having productive discussions.

THE COURT: Okay.

All right. We will issue a scheduling order. I generally do not schedule dispositive motions at this point. We'll have you back in for a post-discovery status conference and see how discovery went and where to go from there.

I'll give you the standard ten depositions a side, but I appreciate the difficulty that you may have, and so if you come back to me and let me know who you've deposed and who you -- or at least the categories of folks that you would need to depose going forward, I would certainly

entertain a motion for more depositions. But why don't we just limit it to the standard ten for now.

And if you would like a status conference some place in the middle of discovery, just let us know, and I'll make myself available for that as well. All right?

No discovery motions without leave of Court. If a dispute arises, there will be a telephone number in the scheduling order. Give us a call, and I will make myself available within 48 hours to try to resolve it. All right?

Anything else?

MR. COYLE: No, Judge.

MR. JONES: No. Thank you, Your Honor.

THE COURT: Okay. Good luck to you.

(Whereupon the hearing was concluded at 11:18 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 2nd day of May, 2022.

/s/Lisa A. Moreira, RDR, CRR
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001