**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANPING CHEN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil Action No. 1:18-cv-3074-CRC |

**PLAINTIFF YANPING CHEN'S MOTION FOR**
**LIMITED DEPOSITION OF STEPHEN RHOADS**

Plaintiff Yanping Chen hereby moves for leave to issue a nonparty subpoena to conduct a two-hour remote deposition of Stephen J. Rhoads, for the limited purpose of obtaining testimony related to the recent disappearance of the phone he used to text message with Fox News reporters as well as his search of that phone for messages responsive to his subpoena under Federal Rule of Civil Procedure 45. This request is supported by good cause under Federal Rule of Civil Procedure 16(b)(4), as set forth in the accompanying memorandum of law. Support for the motion is set forth in a concurrently-filed declaration and attached exhibits. A proposed order is also submitted herewith.

Pursuant to Local Civil Rule 7(m), counsel for Dr. Chen represents that he has conferred with counsel for Defendants with respect to this motion, who reserves the right to oppose this motion. Counsel for Dr. Chen also informed counsel for nonparty Stephen Rhoads that this

motion would be filed. If the Court grants leave for Dr. Chen to issue the requested deposition subpoena, counsel for Mr. Rhoads anticipates moving to quash the subpoena.

Dated: June 3, 2022

*/s/ Matt Jones*

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Jessica Lutkenhaus (D.C. Bar No. 1046749)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
jessica.lutkenhaus@wilmerhale.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YANPING CHEN,

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Defendants.

Civil Action No. 1:18-cv-3074-CRC

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF YANPING CHEN'S**
**MOTION FOR LIMITED DEPOSITION OF STEPHEN RHOADS**

## TABLE OF CONTENTS


INTRODUCTION ........................................................ 1
BACKGROUND ........................................................ 1
ARGUMENT ........................................................ 5
I. Dr. Chen Diligently Seeks Discovery into the Unforeseeable Loss of the Phone .......... 6
II. Mr. Rhoads's Additional Testimony Is Highly Relevant ........................................ 8
III. Re-Deposing Mr. Rhoads Will Not Disrupt This Case ........................................ 9
IV. Reopening Discovery Will Not Prejudice Defendants or Mr. Rhoads ........................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2910 Georgia Ave. LLC v. District of Columbia*,
312 F.R.D. 205 (D.D.C. 2015)........................................5, 6, 7, 9

*Childers v. Slater*,
197 F.R.D. 185 (D.D.C. 2000)........................................9, 10

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
34 F. Supp. 2d 47 (D.D.C. 1998 ........................................5

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
281 F.R.D. 12 (D.D.C. 2011)........................................5, 6, 7

*Rimbert v. Eli Lilly and Co.*,
647 F.3d 1247 (10th Cir. 2011)........................................10

*Trask v. Olin Corp.*,
298 F.R.D. 244 (W.D. Pa. 2014)........................................7, 8

*Watt v. All Clear Business Solutions, LLC*,
840 F. Supp. 2d 324 (D.D.C. 2012) ........................................5, 9

**Statutes, Rules, Regulations**

Fed. R. Civ. P. 16(b)(4)........................................5

Fed. R. Civ. P. 26(b)(1)........................................8

Fed. R. Civ. P. 37(e)........................................9

Fed. R. Civ. P. 45 ........................................*passim*

## INTRODUCTION

Plaintiff, Dr. Yanping Chen, recently discovered the existence of a large set of unproduced text messages between FBI informant Stephen Rhoads and Fox News reporter Catherine Herridge. These text messages are recorded on Mr. Rhoads's phone logs, but he did not produce their contents in response to a Rule 45 subpoena. Mr. Rhoads claimed he had produced all responsive messages available on that phone. After months of attempted negotiation with Mr. Rhoads about forensically imaging his phone to attempt to locate the unproduced messages, and only after Dr. Chen indicated she would move the Court to compel an image of the phone, counsel to Mr. Rhoads revealed that "the phone is now lost." Declaration of Matthew T. Jones ("Jones Decl."), Ex. 1 at 3.

Dr. Chen now moves to reopen discovery for the limited purpose of conducting a two-hour deposition of Mr. Rhoads about the late-breaking revelation that he "lost" the phone from which Dr. Chen sought to obtain critical discovery. The potential spoliation of this key evidence is highly relevant to the likelihood that Mr. Rhoads willfully leaked Privacy Act-protected information to Ms. Herridge. Given this troubling development, Dr. Chen must determine and test the veracity of Mr. Rhoads's explanation for losing the phone, as well as what he had previously done to search it for responsive communications.

## BACKGROUND

This is a Privacy Act case against several federal agencies for the unlawful leak to Fox News of private materials from an FBI investigation of Dr. Chen. ECF No. 1. Mr. Rhoads is a nonparty who appeared as an on-the-record source in Fox News's reports, claiming to have aided the FBI investigation. Because Mr. Rhoads is a likely source of the leaks, Dr. Chen served him a Rule 45 subpoena on April 7, 2020. The subpoena sought "any communication to or from … Catherine Herridge," including "records showing the dates, times, numbers, and addresses used

for any … text … to or from" Ms. Herridge. Jones Decl., Ex. 2. On May 21 and June 18, 2020, Mr. Rhoads produced PDF screenshots of responsive text messages between him and Ms. Herridge. He then indicated his text message response was complete.

Mr. Rhoads agreed, however, to preserve his phone at Dr. Chen's expense in response to her concern that it may need to be imaged. Specifically, after being told on May 6, 2020, that Mr. Rhoads had taken screenshots of responsive text messages but would soon dispose of the phone, Dr. Chen's counsel offered to pay for him to preserve the phone for fear that "there may be other information … that is responsive and will be irretrievably lost if Mr. Rhoads disposes of the phone." Jones Decl., Ex. 3 at 2. Mr. Rhoads's counsel responded that "[w]e will take you up on your offer to reimburse Chief Rhoads for … not returning the phone." *Id.* at 1. Dr. Chen reimbursed Mr. Rhoads's counsel as requested. Jones Decl. at ¶ 8.

About a year later, on June 2, 2021, Dr. Chen received Mr. Rhoads's phone logs from T-Mobile, covering calls and messages between September 2014 and June 2017. Those logs proved a "Rosetta stone" in understanding Mr. Rhoads's contacts, revealing notable communications with Ms. Herridge, Special Agent Timothy Pappa, and others. After the formal close of discovery in November 2021 and while preparing for the deposition of Mr. Rhoads scheduled for March 2022,[1] Dr. Chen discovered that these logs reflected numerous text messages between Mr. Rhoads and Ms. Herridge that Mr. Rhoads did not produce in response to his Rule 45 subpoena. Accordingly, after internal review, Dr. Chen sent a letter to Mr. Rhoads's attorneys on March 2, 2022, informing them of the extensive discrepancies and stressing the importance of recovering the missing text messages. *See* Jones Decl., Ex. 4.

[1] This deposition took place after the close of discovery with the Court's authorization, to accommodate the schedules of Mr. Rhoads and government counsel. *See* ECF Nos. 55, 71, 76.

For example, the letter demonstrated that, on February 14, 2017—10 days before Fox News's first article about Dr. Chen—the phone logs show seven text messages between Mr. Rhoads and Ms. Herridge that are inexplicably missing from Mr. Rhoads's corresponding screen capture. *See id.* at A1. And on February 25, 2017, the day after publication, Mr. Rhoads's screen capture accurately matches three messages reflected on the logs, but two others are missing. *Id.* at A2. Additional examples are illustrated in further detail at Appendix A to this letter. *See id.* at A1-A7. Beyond those examples, the logs reflect another 186 missing messages exchanged between November 2014 and November 2016—a period entirely excluded from Mr. Rhoads's produced text messages—as well as eight messages exchanged in 2017 with another number belonging to Ms. Herridge. *Id.* at 3. Dr. Chen accordingly asked Mr. Rhoads to search again for the missing text messages. *Id.* at 1. And, to the extent he had deleted them, Dr. Chen offered to pay a third party to forensically image his phone to recover them. *Id.*

Dr. Chen sent three follow-up emails on this issue in March 2022, with no substantive response. *See* Jones Decl., Ex. 1 at 9-10. On March 17, 2022, Dr. Chen received additional T-Mobile phone logs, covering Mr. Rhoads's communications between December 2012 to July 2014 and July 2017 to December 2018, which similarly revealed text messages with Ms. Herridge not produced by Mr. Rhoads. Dr. Chen's counsel raised the discrepancies between Mr. Rhoads's phone logs and his production during his deposition on March 23, 2022, asking Mr. Rhoads if he was "aware of any text messages with Catherine Herridge that you did not produce to us as part of this litigation?" Jones Decl., Ex. 5 at 149:24-25, 150:2-3. Mr. Rhoads said he was not, and that his search was conducted by "third party people." *Id.* at 150:4-5. But when directly asked if he personally deleted text messages with Ms. Herridge at any point, he replied, "I may have, sir." *Id.* at 150:12. Dr. Chen's counsel also asked, "[s]o if text messages appear on

your phone records, … but you weren't able to find them in your phone, where are they?" *Id.* at 150:6-8. Mr. Rhoads responded, "I don't know, sir. I'm not an IT guy." *Id.* at 150:9. Mr. Rhoads never indicated that he no longer possessed the phone in question, nor that the "third party people" had not in fact imaged his phone.

Following the deposition, Dr. Chen again reached out to Mr. Rhoads's attorneys for clarification, noting that Mr. Rhoads testified that his attorneys had hired a third-party vendor to assist in responding to the subpoena. Jones Decl., Ex. 1 at 9. After two further follow-up emails, Mr. Rhoads's attorneys finally replied on April 22 and 27, stating that Mr. Rhoads fully complied with the subpoena and that no image had been taken of the phone. *Id.* at 6-8. Dr. Chen responded to confirm whether Mr. Rhoads would be willing to permit Dr. Chen to now image the phone at her expense. *Id.* at 5-6. Mr. Rhoads ultimately rejected that offer on May 18, 2022. *Id.* at 5. This left Dr. Chen no other option but to seek court intervention.

The next day, on May 19, Dr. Chen's counsel informed Mr. Rhoads's counsel that they would be calling the Court the following day to seek leave to move to compel forensic imaging of the phone. *Id.* at 4. Suddenly, Mr. Rhoads's counsel revealed for the first time that the phone was lost, and had been for quite some time:

> It's been unclear from your emails which phone or phones you seek to have imaged. You should know that Chief Rhoads' wife's illness obviously caused substantial disruption to their household, and, in the aftermath of Sgt. Maj. Rhoads' death, family members cleaned out the Rhoads' home. It is believed that a family member may have disposed of the malfunctioning phone Chief Rhoads used at the time he was subpoenaed. Chief Rhoads has been unable to locate the phone despite his best efforts, and it is believed that the phone is now lost. I don't know whether this affects how you plan to proceed.

*Id.* at 3. On May 24, Mr. Rhoads's counsel further revealed that Mr. Rhoads and his attorneys were likely aware that the phone was lost for some time while they were stonewalling Dr. Chen's requests to pay to image it. Apparently, "Rhoads began searching for the malfunctioning phone

sometime after [Dr. Chen's] March 2nd letter" identifying the missing text messages, "and made substantial efforts to locate the phone for an extended period of time thereafter." *Id.* at 1. But Mr. Rhoads's counsel chose not "to inform [Dr. Chen] that he was no longer able to locate" the phone until May 19, because Dr. Chen was about to "press the matter with the Court." *Id.* Mr. Rhoads has since refused to consent to a short deposition about his loss of the phone.

**ARGUMENT**

"A [scheduling order] may be modified only for good cause," Fed. R. Civ. P. 16(b)(4), which turns on the following six factors:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence.

*2910 Georgia Ave. LLC v. D.C.*, 312 F.R.D. 205, 208 (D.D.C. 2015) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12, 14 (D.D.C. 2011)). Good cause "can be shown, '[i]n general, if … the deadlines cannot reasonably be met despite the party's diligence.'" *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (quoting 6A Wright & Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2010)). This includes situations where a discovery "modification is necessitated by acts of the opposing party" occurring after the close of discovery. 6A Wright & Miller §1522.2 (collecting cases). Further, "[l]eave to conduct a second deposition should ordinarily be granted." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 47, 54-55 (D.D.C. 1998) (discussing motion for second deposition under Fed. R. Civ. P. 30(a)(2)). Here, the "good cause" factors weigh in favor of allowing a limited deposition of Mr. Rhoads to fully determine the circumstances explaining the loss of the

phone he used to correspond with Ms. Herridge, including the circumstances under which his text messages with Ms. Herridge became unavailable.

## I. Dr. Chen Diligently Seeks Discovery into the Unforeseeable Loss of the Phone

As to factors four and five (the movant's diligence in obtaining the desired discovery, and the foreseeability of needing it), there is good cause to reopen discovery where, as here, a plaintiff diligently moves to investigate unforeseeable facts that materialized after the close of discovery. In *2910 Georgia Ave. LLC*, for instance, this Court held good cause existed to conduct four new depositions after the close of discovery. 312 F.R.D. at 211-212. The Court explained that plaintiff's "diligen[ce] in obtaining discovery" could not be assailed because the plaintiff "filed its motion within days of learning the facts at issue," which arose after discovery closed. *Id.* at 211. "[A]dditional discovery on the issue" was thus not "foreseeable during the discovery period." *Id.* In sum, "[b]ecause th[e] information came to light after [] discovery had closed, the parties did not have an opportunity to fully develop the record[,]" and so the Court permitted additional "limited" depositions. *Id.* Similarly, in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, this Court permitted the deposition of a new witness who penned a relevant, handwritten note produced on the last day of discovery. 281 F.R.D. at 14-15. There, the defendant claimed that the plaintiffs were not diligent, and that the issue was foreseeable, because "plaintiffs had the typed minutes of the … meeting" where the note was written "since discovery began and used them in deposing other witnesses." *Id.* at 15. The existence of the note, defendants argued, could have been uncovered earlier. *Id.* The Court rejected this, stating that "none of the witnesses who were deposed spoke of handwritten notes and plaintiffs … did not recall or know that any one was … to take notes, let alone that such notes existed." *Id.*

Here, like the diligent plaintiff in *2910 Georgia Ave. LLC*, Dr. Chen informed the Court of her intent to re-depose Mr. Rhoads on May 26, 2022, after the close of discovery but just one

week after his counsel revealed the phone had been lost. Dr. Chen was shocked by the news, given both Mr. Rhoads's prior agreement to preserve the phone at Dr. Chen's expense and the months long back-and-forth regarding the potential imaging of Mr. Rhoads's phone. As in *2910 Georgia Ave. LLC*, then, "the need for additional discovery" about the disposition of the phone was not "foreseeable" until just recently. 312 F.R.D. at 211. And as in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, where no witness mentioned the late-breaking evidence, 281 F.R.D. at 15, Dr. Chen cannot be deemed undiligent by failing to predict the unthinkable during Mr. Rhoads's deposition and ask directly whether he had failed to preserve the phone contrary to his prior agreement. Dr. Chen does not know whether Mr. Rhoads was aware at that point that the phone had gone missing.

In any event, any delay in bringing this motion after Mr. Rhoads's deposition is not attributable to Dr. Chen. Dr. Chen sent a letter asking to image the phone on March 2, 2022. At any point thereafter, Mr. Rhoads and his counsel could have informed Dr. Chen that the phone could not be imaged because it had gone missing. But they concealed that fact—even after a month of subsequent correspondence about the merits of Dr. Chen's imaging request. Mr. Rhoads's counsel only revealed that bombshell when Dr. Chen scheduled a call to inform the Court that she would move to compel the phone to be imaged.[2] Hence, any "delay was not simply the result of carelessness or error—rather, it was caused in large part by the representations made by [defendant]'s counsel." *See Trask v. Olin Corp.*, 298 F.R.D. 244, 268-

[2] Mr. Rhoads's purported excuse, that it was unclear what phone Dr. Chen had been talking about all these months, cannot be taken seriously. *See* Jones Decl., Ex. 1 at 3. Dr. Chen's March 2 letter identified the phone as the one Mr. Rhoads used in 2020 to respond to his subpoena. The entire subject of this months-long dispute was discrepancies between Mr. Rhoads's phone logs and the screenshots he produced from that phone—the phone he agreed to preserve.

269 (W.D. Pa. 2014) (good cause existed where "diligent discovery was hampered by both misleading statements from [defendant]'s counsel and [other] practical difficulties").

**II. Mr. Rhoads's Additional Testimony Is Highly Relevant**

Turning to factor six (the relevance of the discovery), obtaining Mr. Rhoads's sworn testimony explaining the loss of his phone containing unproduced evidence he agreed to preserve is highly relevant to the likelihood that Mr. Rhoads willfully leaked documents to Ms. Herridge. Nonparties like Mr. Rhoads may be deposed on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 45(a).

First and foremost, it is imperative that Dr. Chen be able to examine the veracity of Mr. Rhoads's explanation of how the phone went missing. It is notable that news of the phone's disappearance came just as Dr. Chen was about to move to compel it to be imaged to try to recover a trove of unproduced messages that Mr. Rhoads either deleted or failed to produce. Indeed, given the discovery of these unproduced messages and sudden loss of the phone, there is now cause to further examine the motivation underlying Mr. Rhoads's initial attempt to dispose of it in May 2020—just before submitting his subpoena responses. At that time, Dr. Chen paid for Mr. Rhoads not to return the phone in case his subpoena responses needed supplementing. Inquiring into Mr. Rhoads's understanding of that agreement and his efforts to preserve the phone will bear upon the credibility of any explanation he gives now for losing it.

Understanding the loss of the phone is highly relevant because the missing messages Dr. Chen sought to recover from it were likely to be important to Dr. Chen's Privacy Act claim. As this Court has recognized, "[t]he known evidence—including Rhoads's contacts with Fox News…—shows … Rhoads may have disclosed the documents himself or otherwise played a role in the leak." *Chen v. FBI*, 20-mc-107, ECF No. 26 at 6 (Dec. 24, 2020). Indeed, the text

messages he has produced show he was in direct contact with Ms. Herridge about the relevant publications. The contents of the unproduced text messages that he either deleted or withheld would have thus been extremely relevant. As explained, there were messages missing in the midst of conversations with Ms. Herridge shortly before and after the Fox News reports. *See* Jones Decl., Ex. 4. Not to mention, there are another 186 missing messages between 2014 and 2016. *Id.* These deleted messages may have reflected the transfer or source of protected information about Dr. Chen that was leaked to Fox News. Any testimony tending to show that Mr. Rhoads negligently or intentionally lost his phone, or had motive to do so, would generally affect the likelihood that he was a source of the leak, that it was willful, and that he knew it was against the law. Moreover, Mr. Rhoads's testimony would also enable Dr. Chen to ensure all reasonable efforts to find the phone have been made, and, if not, to know what additional search efforts to request. Lastly, examining these topics may also inform whether there are grounds to seek any sanction regarding the unproduced messages. *See, e.g.*, Fed. R. Civ. P. 37(e); Fed. R. Civ. P. 45(g). There is thus no doubt that reopening discovery to obtain Mr. Rhoads's testimony explaining the loss of the phone and his process for producing responsive text messages "will lead to relevant evidence." *2910 Georgia Ave. LLC*, 312 F.R.D. at 208.

## III. Re-Deposing Mr. Rhoads Will Not Disrupt This Case

As to factor one (whether trial is imminent), this Court has held that, even where other factors weigh against reopening discovery, there is "good cause" for additional discovery if the case would not be disrupted because "no trial date has been set." *See Watt*, 840 F. Supp. 2d at 326-327. In *Watt*, although the plaintiff "concede[d] that he did not diligently 'obtain[] discovery'" and that "[t]he need for [it] should have been apparent from the outset"—which is not the case here—the "factors nonetheless weigh[ed] in … favor" of discovery given that "no trial date has been set." *Id.*; *see also Childers v. Slater*, 197 F.R.D. 185, 189 & n.8 (D.D.C.

2000) ("[A]llowing additional time for discovery would not cause further delays with respect to trial."). This factor strongly supports Dr. Chen. Not only is trial not imminent, media discovery is ongoing, during which time Mr. Rhoads can be deposed without delaying the case. *See* ECF No. 78 (granting sixty-day media discovery period).

**IV. Reopening Discovery Will Not Prejudice Defendants or Mr. Rhoads**

The third factor (prejudice to the non-movants) similarly supports Dr. Chen's deposition request. Courts have considered whether the defendant would "be prejudiced … in the sense of being unable to mount a defense against the new … testimony." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011). That concern is not present here. Defendants and Mr. Rhoads will be able to later challenge any arguments Dr. Chen develops from Mr. Rhoads's new testimony. Moreover, even before the deposition occurs, Mr. Rhoads and Defendants will be able to move to quash the deposition subpoena. The non-movants will thus have ample opportunity to contest both the availability of this discovery, and any arguments arising from it.[3] The burden on Mr. Rhoads will also be minimal: the two-hour deposition will be narrowly targeted to the new revelations, and would take place virtually.

**CONCLUSION**

For the above reasons, this Court should grant Dr. Chen's motion.

Dated: June 3, 2022

*/s/ Matt Jones*

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Jessica Lutkenhaus (D.C. Bar No. 1046749)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000

[3] The second "good cause" factor (whether this motion is opposed) remains unclear at this time.

Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
jessica.lutkenhaus@wilmerhale.com

*Counsel for Plaintiff*