# Exhibit 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

Yanping Chen
*Plaintiff*
v.
Federal Bureau of Investigation, et al.
*Defendant*

Civil Action No. 1:18-cv-03074-CRC

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Steven Rhoads

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE EXHIBIT A

| Place: Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Ave., N.W.<br>Washington, DC 20006 | Date and Time:<br>05/07/2020 7:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/07/2020

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

/s/ Matt Jones
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Yanping Cheng, who issues or requests this subpoena, are:

Matt Jones; 1875 Pennsylvania Ave., N.W., Washington, D.C. 20006; matthew.jones@wilmerhale.com; (202) 663-6018

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:18-cv-03074-CRC

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________________

on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ____________________

______________________________________________________________________

______________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________________

______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ________________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________ ______________________________

*Server's signature*

______________________________

*Printed name and title*

______________________________

*Server's address*

Additional information regarding attempted service, etc.:

Print Save As... Add Attachment Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A: SUBPOENA TO STEPHEN RHOADS

## DEFINITIONS

The following definitions incorporate by reference the definitions contained in Local Rule 26.3; shall apply to and are expressly incorporated into the descriptions of documents subject to this Subpoena, regardless of whether upper- or lower-case letters are used; and otherwise shall apply as follows:

1. "Action" means the action referenced in the caption of the Subpoena to which this "Exhibit A" is attached.

2. "Complaint" means the Complaint filed in this Action on December 21, 2018, and any amended complaints filed in the Action thereafter. The Complaint is attached as Exhibit B to this Subpoena.

3. "FBI" means the Federal Bureau of Investigation and its departments, branches, subdivisions, agents, employees, and other representatives.

4. "FBI personnel" means any person presently or previously employed by, controlled by, or acting on behalf of the FBI.

5. "DOJ" means the Department of Justice and its departments, branches, subdivisions, agents, employees, and other representatives.

6. "DOJ personnel" means any person presently or previously employed by, controlled by, or acting on behalf of DOJ.

7. "DOD" means the Department of Defense and its departments, branches, subdivisions, agents, employees, and other representatives.

8. "DOD personnel" means any person presently or previously employed by, controlled by, or acting on behalf of DOD.

9. "DHS" means the Department of Homeland Security and its departments, branches, subdivisions, agents, employees, and other representatives.

10. "DHS personnel" means any person presently or previously employed by, controlled by, or acting on behalf of DHS.

11. "Defendants" means the FBI, DOJ, DOD, and DHS, individually and together.

12. "You" and "your" mean Stephen Rhoads.

13. "Plaintiff" or "Dr. Chen" mean Dr. Yanping Chen, a U.S. citizen born [redacted] in Beijing, China and residing at 2122 21st Road North, Arlington, Virginia.

14. "The University" means the University of Management and Technology, located at 1901 North Fort Myer Drive, South Building, Suite 700, Arlington, Virginia.

15. "Tuition Assistance Program" means the U.S. Department of Defense Tuition Assistance Program.

16. "The Search" or "the Searches" mean the December 5, 2012 searches of Dr. Chen's residence at 2122 21st Road North, Arlington, Virginia and the University at 1901 North Fort Myer Drive, South Building, Suite 700, Arlington, Virginia.

17. "The Investigation" means the government investigation pursuant to which the Searches were executed, as well as any associated or related investigations or actions.

18. "Communications" means the transmittal of information by or through any means, including but not limited to speech, writings, language (machine, foreign, or otherwise), graphics, computer or digital media of any kind (including, but not limited to electronic mail, SMS, text messaging, videos, and voicemail), magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, sound, radio, video, telecommunications, telephone, teletype, facsimile,

telegram, microfilm, microfiche, photographic film of all types, digital and other tapes, or through any other means of transmission, whether direct, indirect, or through an intermediary.

19. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data. A draft or non-identical copy is a separate document within the meaning of this term.

20. "Person" means a natural person, firm, company, partnership, corporation, association, government, department, agency, organization, trust, estate, or any other entity, regardless of whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government controlled.

21. "Concern," "concerning," "relate to" or "relating to" have their commonly understood meanings, to include comprising, reflecting, evidencing, constituting, pertaining to, dealing with, referring to, respecting, consisting of, embodying, establishing, connected with, commenting on, describing, analyzing, and/or showing.

22. "Involves," "involving," and "involvement" means any form of participation, direct or indirect, individual or collective, personal or institutional, including but not limited to controlling, directing, supervising, managing, leading, reviewing, approving, operating, influencing, organizing, analyzing, evaluating, performing, scheduling, supporting, assisting, aiding, investigating, auditing, attending, advising, consulting, communicating, discussing, drafting, revising, preparing, reading, updating, briefing, reporting, monitoring, receiving Communications regarding, and taking any other form of official or unofficial action regarding.

23. The connectives "and" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents that

might otherwise be construed outside of its scope. "Including" shall also be construed to mean "without any limitation." The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to the requests for production of documents below and your responses thereto:

1. The relevant time period for these Requests is from January 1, 2010 until the present.

2. References to any non-natural person (e.g., corporation, partnership, etc.) shall be deemed to include any of that entity's affiliates, agents, assigns, departments, divisions, parents, predecessors, subsidiaries, and successors, and its and their respective current and former employees.

3. Should you find the meaning of any term to be unclear, then you should assume a reasonable meaning, state what that assumed meaning is, and respond on the basis of that assumed meaning.

4. In answering each request for production of documents, you are requested to furnish all documents, however held or obtained, that are in your possession, custody or control.

5. If, after a good faith search, you conclude there are no documents responsive to a particular request, so state.

6. All documents shall be produced as they are kept in the usual course of business, or organized and labeled to correspond with each request, in accordance with Rule 34 of the Federal Rules of Civil Procedure.

7. For any responsive documents or information that have been withheld under claim of privilege or work product protection, identify the document and state the basis for the privilege or protection, and provide the following information for each document that you have withheld:

a. The date on which the document was prepared or the communication occurred, or an estimate thereof if no date appears on the document;

b. The identity of each author, writer, sender, creator, or initiator of the document, and each such person's title and his or her employer or firm;

c. The identities of all recipients, addressee(s), or parties for whom such document was intended or to whom the document was sent;

d. A description of the type of document and general subject matter of the document;

e. A description of the basis for withholding of the document(s) or information sufficient to permit Defendants to assess the applicability of the privilege claimed; and

f. Produce any non-privileged portion of such document, with the portion claimed to be privileged redacted.

8. If you are withholding or intend to withhold any document (or any part of a document) on the basis of an objection, state so in your response. If you note an objection but indicate that responsive documents are nonetheless being produced, we will construe your statement as a representation that you are producing all documents responsive to the request notwithstanding the objection, save for any privileged documents that are identified on a privilege log. *See* Fed. R. Civ. P. 34(b)(2)(C).

9. Consecutively number each page of all documents or information produced in response to these Requests. This page numbering must be separate from and must not alter any original numbering on the responsive documents or information.

10. Each responsive document or information shall be produced in its entirety, and no portion of any document or information shall be edited, cut, masked, redacted, or otherwise altered, unless for applicable privilege logged according to the procedures set forth above.

11. All attachments to documents or information responsive to these Requests shall be produced with, and attached to, the responsive documents or information.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

Produce all documents related to, concerning, or reflecting any communication concerning, any of the following persons or subjects: Dr. Chen, the University, the Searches, the Investigation, or any matter involving or concerning the Searches and/or the Investigation.

**REQUEST NO. 2:**

Produce all documents related to, concerning, or reflecting any communication to or from, any of the following persons: Catherine Herridge, Pamela Brown, Cyd Upson, and/or any other person employed by or otherwise affiliated with Fox News. Please note, for the sake of clarity, that this request includes any and all records of interactions with any such persons, such as records showing the dates, times, numbers, and addresses used for any telephone, text, emails, or other communications to or from any such person.

**REQUEST NO. 3:**

Produce documents sufficient to show each of the following: (a) each and every telephone number you used for business or personal communications at any time during the period from January 1, 2016 to December 31, 2017; (b) each and every email address you used for business or personal communications at any time during the period from January 1, 2016 to December 31, 2017; and (c) each and every user name, account name, or handle for Twitter,

Facebook, or any other social media platform or Internet communications platform that you used for business or personal reasons to communicate with any other person at any time during the period from January 1, 2016 to December 31, 2017.

**REQUEST NO. 4:**

Produce documents sufficient to show the following information for each and every computer, mobile telephone, electronic storage device, or any other electronic device that you, at any time during the period from January 1, 2016 to December 31, 2017, used to communicate with any other person or entity, to store any information, or to back-up any information: (a) the type and nature of the device; (b) its brand and manufacturer; (c) its date of manufacturer; (d) the serial number and any other identification number or code for the device; (e) the date and manner by which you or any other person acquired the device; (f) the date, recipient and manner in which the device was disposed of or ceased to be in your possession, (g) if the device is no longer in your possession; any telephone number or other identifier associated with the device; (h) the identity of the owner(s) and possessor(s) of the device during the period from January 1, 2016 to December 31, 2017; (i) the location of the device currently and at any other time during the period January 1, 2016 to December 31, 2017: (j) the dates on which data from the device has ever been backed up or transferred to another device,

**REQUEST NO. 5:**

Produce all documents related to, concerning, or reflecting any communication or interaction concerning Dr. Chen, the University, the Searches, and/or any matter involving or concerning the Investigation between or among, on the one hand, you or any other person, and, on the other hand, Senator Chuck Grassley, Representative Jason Chaffetz, any other elected official, and/or any of their staff or personnel. Please note, for the sake of clarity, that this request

includes any and all records of interactions with any such persons, such as records showing the dates, times, numbers, and addresses used for any telephone, text, emails, or other communications to or from any such person.

**REQUEST NO. 6:**

Produce all documents related to, concerning, or reflecting any communication concerning Dr. Chen, the University, the Searches, and/or any matter involving or concerning the Investigation between or among, on the one hand, you or any other person, and, on the other hand, any personnel or unit of the FBI, DOJ, DOD, DHS, and/or any other governmental entity. Please note, for the sake of clarity, that this request includes any and all records of interactions with any such persons, such as records showing the dates, times, numbers, and addresses used for any telephone, text, emails, or other communications to or from any such person, personnel, or entity.

**REQUEST NO. 7:**

Produce all documents related to, concerning, or reflecting the storage of any documents, records, or other materials related to Dr. Chen, the University, the Searches, and/or any matter involving or concerning the Investigation, including, but not limited to, logs of material seized during the Searches, who had access to these materials, the dates on which these materials were accessed, and the chain of custody of the materials while they were in DOJ's or any other person's possession.

**REQUEST NO. 8:**

Produce all documents related to, concerning, or referencing any of the Fox News reports relating to Dr. Chen, the University, the Searches, and/or any matter involving or concerning the

Investigation, including but not limited to the print reports attached to the Complaint as Exhibits B, D, and E and any of the corresponding broadcasts.

**REQUEST NO. 9:**

Produce all documents related to, concerning, or referencing any investigation, inquiry, review, analysis, or other action concerning or exploring how or why Catherine Herridge, Pamela Brown, Cyd Upson, and/or any other Fox News employee obtained or received possession or awareness of any records, documents, or information pertaining to Dr. Chen, the University, the Searches, and/or any matter involving or concerning the Investigation.

**REQUEST NO. 10:**

Produce all documents and other items in your possession that were collected or generated in the course of the Searches or the Investigation.

**REQUEST NO. 11:**

Produce all documents in your possession, including but not limited to handbooks, manuals, instructions, or other policy documents, provided to you by the Defendants regarding compliance with the Privacy Act.

**REQUEST NO. 12:**

Produce all documents in your possession, including but not limited to handbooks, manuals, instructions, or other policy documents, provided to you by the Defendants regarding communications with the media.

**REQUEST NO. 13:**

Produce all documents in your possession, including but not limited to handbooks, manuals, instructions, or other policy documents, provided to you by the Defendants regarding communications with Members of Congress and/or congressional staff.

**REQUEST NO. 14:**

Produce all documents provided by Defendants in your possession that purport to interpret or construe what constitutes a "system of records," including but not limited to any documents analyzing, discussing, or otherwise relating to whether materials obtained through a search are contained within a system of records.

# EXHIBIT B

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 1 of 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YANPING CHEN
2122 21st Road North
Arlington, Virginia 22201

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Ave. NW
Washington, DC, 20535

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC, 20530

U.S. DEPARTMENT OF DEFENSE
The Pentagon
Washington, DC 20301

U.S. DEPARTMENT OF HOMELAND SECURITY
245 Murray Lane, SW
Washington, DC 20528,

Defendants.

Civil Action No. 1:18-cv-3074

**COMPLAINT**

1. Plaintiff Yanping Chen brings this action against Defendants the Federal Bureau of Investigation, the United States Department of Justice, the United States Department of Defense, and the United States Department of Homeland Security (collectively, the "Government" or "Defendants"), for monetary, injunctive, and declaratory relief to rectify injuries she has suffered as a result of the Government's illegal and unwarranted

public disclosure of her personal information in violation of the Privacy Act, 5 U.S.C. § 552a.

2. Enacted in the wake of the Watergate scandal, the Privacy Act balances the federal government's occasional need to collect sensitive information about U.S. citizens with those citizens' constitutional rights, including the right to privacy. The Privacy Act does this in relevant part by prohibiting government agencies from publicly disclosing private information about individuals without their consent. One or more of Defendants here violated these prohibitions by leaking to Fox News a wealth of private information and documents, including family photographs seized from Dr. Chen's home as part of an investigation that resulted in no charges. These leaks were unlawful and resulted in serious and ongoing harm to Dr. Chen, her family, and her business.

3. Defendants have disregarded the protections afforded by the Privacy Act—and by the Constitution—by using the federal government's investigatory powers to gather extensive information about Dr. Chen and then selectively releasing information to smear her reputation and damage her livelihood.

## PARTIES

4. Plaintiff Yanping Chen is a citizen of the United States and a resident of the Commonwealth of Virginia.

5. Defendant Federal Bureau of Investigation ("FBI") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

6. Defendant United States Department of Justice ("DOJ") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 3 of 14

7. Defendant United States Department of Defense ("DOD") is an executive agency of the United States America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1). The Naval Criminal Investigative Service ("NCIS") is a civilian law enforcement agency within DOD.

8. Defendant United States Department of Homeland Security ("DHS") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552a(g)(1)(D) because Dr. Chen alleges she has been adversely affected by the Government's violations of the Privacy Act and of her rights under the U.S. Constitution.

10. The District of Columbia is a proper venue for this action pursuant to 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391.

## STATEMENT OF FACTS

11. Dr. Chen was born in China. She came to the United States in 1987 to study as a visiting scholar at George Washington University, following on her work as a cardiologist and medical researcher with the Chinese astronaut program. Dr. Chen earned a Master's Degree and a Ph.D. in Public Policy from George Washington University.

12. While at George Washington University, Dr. Chen met her now-husband, Dr. J. Davidson Frame, a U.S. citizen. Dr. Chen chose to make the United States her home, becoming a lawful permanent resident in 1993 and a U.S. citizen in 2001.

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 4 of 14

13. In 1998, Dr. Chen founded the University of Management and Technology, an educational institution that provides post-secondary and graduate education to working adults. The university is headquartered in Arlington, Virginia. More than 12,000 students have received degrees from the university over its 20-year history.

14. Dr. Chen wholly owns the University of Management and Technology and derives a substantial part of her income from its operations.

15. In 2010, Dr. Chen—like many Chinese-American scientists around that time—became the focus of an FBI investigation. The investigation appeared to focus on statements Dr. Chen made on immigration forms concerning her work in the 1980s as a scientist for the Chinese astronaut program.

16. Thereafter, over a six-year period, the FBI probed deeply into Dr. Chen's personal and professional life. Agents of the U.S. Government conducted interviews of her family and colleagues, obtained her immigration records, monitored her travel, seized her computer from her as she was transiting through an airport, employed an undercover informant to covertly gather information about her, and secretly monitored and recorded her conversations.

17. During the course of the investigation, in 2012, FBI Special Agent Timothy S. Pappa applied to the U.S. District Court for the Eastern District of Virginia for warrants to search Dr. Chen's home and the main office of the University of Management and Technology, both located in Arlington, Virginia.

18. On December 5, 2012, the FBI executed search warrants for Dr. Chen's home and the main office of the University of Management and Technology. NCIS and DHS personnel were present during the FBI's searches.

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 5 of 14

19. Even though the court had ordered that the warrant applications and warrants be kept secret and under seal, news media reported on the searches as they occurred.

20. During the searches, the FBI collected 51 boxes of materials from Dr. Chen's home and 24 items from her office. Those materials included tax records and business documents, family photographs, family and personal communications, business communications, personal memorabilia, computers and digital storage devices (including an iPad and two iPods), video tapes, and cell phones. The personal photographs seized from Dr. Chen's home included photographs that showed her at home with her husband; posing with her then-minor daughter, also a U.S. citizen; and paying respects at her father's gravesite.

21. The FBI labeled and stored the materials seized from Dr. Chen's home using labels that listed a specific file number, i.e., 200D-WF-240088; the date of seizure; a designated item number; a description of the item; and the location of the search (which, in the case of the searches of Dr. Chen's home, included her personal residential address). Those materials accordingly became part of "a group of any records … from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned" to records related to Dr. Chen. 5 U.S.C. § 552a(a)(5) (definition of "system of records"). Attached hereto as Exhibit A is a copy of a photograph that fairly and accurately depicts one of the labels that the FBI used to identify seized materials.

22. After six years of investigation, in March 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Dr. Chen's attorney that no charges would be filed against her.

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 6 of 14

23. On information and belief, starting at some time before late February 2017, one or more agents of the FBI (or, possibly, other Defendants) unlawfully disclosed to one or more persons associated with Fox News various records and information pertaining to Dr. Chen and her private affairs that the FBI had collected or generated in the course of its investigation of her and that the FBI thereafter had stored in one or more of its systems of records (hereinafter the "Leaked Records"). On information and belief, some of the Leaked Records had also been stored in one or more systems of records of other Defendants.

24. As a direct and foreseeable result of the unlawful disclosure of the Leaked Records to Fox News, Fox News in turn published, broadcast, and otherwise disseminated much of the contents of the Leaked Records to its nationwide audiences, resulting in personal, professional, and financial harm to Dr. Chen.

25. On February 24, 2017, Fox News aired the first of three negative reports about Dr. Chen that drew heavily from contents of the Leaked Records. In an "exclusive" report during its primetime broadcast, which draws millions of viewers, Fox News used some of the Leaked Records as purported support for the report's allegation that, many years earlier, Dr. Chen had lied on her immigration forms about whether she had previously worked for the Chinese military. The print version of the February 24 report is attached hereto as Exhibit B.

26. Among other things, the February 24, 2017 Fox News report revealed information derived from, and images of, an FBI FD-302 Form, bearing file number "200D-WF-240088," that purported to memorialize an FBI interview of Dr. Chen's daughter. Attached hereto as Exhibit C is an image of this form from the February 24, 2017 Fox

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 7 of 14

News Report. This Fox News Report also displayed images of personal photographs seized from Dr. Chen's home during the FBI search. On information and belief, before they were disclosed to Fox News, that FBI form and those photographs had been stored in one or more FBI system(s) of records.

27. The February 24, 2017 Fox News report also revealed data taken from, and images of, Dr. Chen's immigration and naturalization forms; Dr. Chen's certificate of U.S. Citizenship, which includes her birthdate, INS Registration Number, height, and marital status; and Dr. Chen's immigration application. On information and belief, before they were disclosed to Fox News, these documents were stored in one or more systems of records maintained by the FBI and/or in one or more systems of records maintained by the U.S. Citizenship and Immigration Services, a component of Defendant DHS.

28. The February 24, 2017 Fox News report stated that representatives of Fox News had reviewed other documents showing that the FBI searched Dr. Chen's home and the University of Management and Technology's main office as part of a counter-intelligence case. On information and belief, those documents were also among the Leaked Records and, before having been disclosed to Fox News, were stored in one or more systems of records maintained by the FBI and/or in one or more systems of records maintained by the other Defendants.

29. The February 24, 2017 Fox News report also selectively discussed details of FBI interviews of Dr. Chen and her daughter as well as information purportedly drawn from Dr. Chen's immigration paperwork. On information and belief, these aspects of the report were also drawn from or based upon some of the Leaked Records.

30. Fox News published and broadcast additional "exclusive" reports about Dr. Chen on April 28, 2017 and June 28, 2017. These reports, like the initial report, subsequently received additional coverage from other media sources. The print version of the April 28 report is attached hereto as Exhibit D and the print version of the June 28 report is attached hereto as Exhibit E.

31. The April 28, 2017 Fox News report publicly displayed the contents of additional personal photographs that the agents of one or more of the Defendants seized from Dr. Chen's home, including photographs depicting Dr. Chen's daughter and the gravesite of her father. The June 28, 2017 Fox News report publicly displayed similar material.

32. Fox News continues to host the reports based on the Leaked Records and images of some of the Leaked Records themselves on its website.

33. Before the government's execution of the search warrant at Dr. Chen's home, the only known copies of the photographs published by Fox News were kept in Dr. Chen's home.

34. On May 8, 2017, James Gillis, an Assistant U.S. Attorney involved in the investigation of Dr. Chen and an agent of Defendant DOJ, conceded during a hearing before Magistrate Judge Anderson of the United States District Court for the Eastern District of Virginia that the photographs featured in the Fox News reports "came from the search take."

35. On June 25, 2018, Dr. Chen, through her counsel, asked the Office of Inspector General for Defendant DOJ to investigate the illegal disclosure of the Leaked Records. The DOJ Office of Inspector General advised counsel for Dr. Chen that it would not conduct any such investigation.

36. On November 15, 2018, the Office of Inspector General for Defendant DOJ told counsel for Dr. Chen, as part of its purported rationale for declining to conduct the requested

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 9 of 14

investigation, that Defendants DOD and DHS (or components thereof) had also had access to the records in Dr. Chen's FBI file, and therefore could have been sources of any leak that resulted in the Fox News reports. This representation by a representative of Defendant DOJ is a part of the basis for naming DOD and DHS as additional defendants.

37. The widespread publication, broadcast, and dissemination of the Fox News reports that were initially aired on February 24, 2017, April 28, 2017, and June 28, 2017 (hereinafter the "Leak-Based Fox News Reports"), which were based on the unlawfully Leaked Records—which, in turn, had been obtained during the course of a U.S. government investigation of Dr. Chen that resulted in no charges whatsoever—upended Dr. Chen's personal and professional life.

38. The unwanted storm of negative media attention focused on Dr. Chen that resulted from Defendants' disclosure of the Leaked Records, and from the subsequent dissemination of the Leak-Based Fox News Reports, was so severe that it caused persons unknown to Dr. Chen to send hateful mail and other communications to, and direct death threats at, Dr. Chen and other staff at the University of Management and Technology.

39. Dr. Chen suffered financial harm as a result of the illegal disclosure of the Leaked Records by one or more of the Defendants.

40. The University of Management and Technology's enrollments and revenues sharply decreased in the wake of the Leak-Based Fox News Reports. This decrease has had a severe and negative effect on Dr. Chen's income and the value of her personal investment in the University of Management and Technology, which she wholly owns.

41. The illegal disclosures of the Leaked Records to Fox News also led to inquiries from Members of Congress and the DOD about Dr. Chen and the University of Management and Technology.

42. On January 23, 2018, and apparently as a direct consequence of the Leak-Based Fox News Reports, DOD suspended (and on March 28, 2018 ultimately terminated) the University of Management and Technology's long-standing participation in the DOD Tuition Assistance program. The Tuition Assistance program pays a significant portion of tuition expenses for military students and is a critical source of funding for servicemembers seeking to further their education. The termination of the university's participation in the Tuition Assistance program directly caused further decreases in enrollments and revenues to the University of Management and Technology, directly resulting in further substantial injury, including substantial personal financial losses, to Dr. Chen.

43. According to the Leak-Based Fox News Reports, the FBI and U.S. Attorney's Office refused to provide any comment on the record to Fox News regarding the matters discussed and disclosed in those reports. The reports did, however, cite anonymous sources who reportedly had described conflict between the FBI and the U.S. Attorney's Office over whether to bring charges against Dr. Chen. The same Fox News reports also cited (but did not name) a Special Agent in the FBI's Washington Field Office who, according to the reports, was upset that the University of Management and Technology was continuing to participate in the DOD's Tuition Assistance program. Attached hereto as Exhibit F is an image of an email from the unnamed Special Agent to an FBI informant displayed in the February 24, 2017 report.

44. Soon after Dr. Chen was informed that no charges would be brought against her, and in violation of federal law, one or more agents of the Defendants, who possessed or had access to confidential FBI records pertaining to the investigation, caused the Leaked Records to be disclosed to one or more employees or agents of Fox News.

## COUNT ONE: VIOLATION OF THE PRIVACY ACT

45. Plaintiff hereby restates and incorporates by reference paragraphs 1-44 of this Complaint as if fully set forth herein.

46. The Privacy Act requires that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," subject to certain exceptions. 5 U.S.C. § 552a(b).

47. While there are limited exceptions to this prohibition on disclosure, *see* 5 U.S.C. § 552a(b)(1) through (12), none of those exceptions authorized or allowed the disclosure to Fox News of the records and information concerning Dr. Chen that are the subject of this suit.

48. At no time did Dr. Chen authorize any of the Defendants or their agents to disclose any information pertaining to her to anyone outside the federal government, including anyone associated with Fox News.

49. The United States is liable for actual damages, costs of the action, and attorneys' fees if the court determines that an agency willfully or intentionally disclosed records pertaining to an individual without their permission. 5 U.S.C. § 552a(g)(4).

Case 1:18-cv-03074-CRC Document 1 Filed 12/21/18 Page 12 of 14

50. The Leaked Records broadcast in the Fox News reports included "records" within the meaning of the Privacy Act. These records could not have been obtained by Fox News except from the Defendants, either directly or indirectly.

51. At least some and likely all of the Leaked Records, before being unlawfully disclosed as described above, were contained in a system of records within, and under the control of, the FBI, the DHS, and/or other Defendants.

52. As a matter of policy and practice, the records and information that the FBI collects or creates during the course of an investigation are incorporated into and thereafter maintained in the FBI's Central Records System, which the FBI has designated a "system of records" for Privacy Act purposes. *See* 63 Fed. Reg. 8659, 8671; *see also* 66 Fed. Reg. 17200; 66 Fed. Reg. 29994. Such records also may be accessed through the SENTINEL system, which allows for electronic case management. On information and belief, this policy and practice was followed with respect to at least some, if not all, of the Leaked Records.

53. Some of the Leaked Records (including but not necessarily limited to immigration forms and other records pertaining to Dr. Chen) were contained in, or derived from records contained in, a system of records maintained by DHS. Some or all of these DHS records were maintained in the Citizenship and Immigration Data Repository, which DHS has designated a "system of records" for Privacy Act purposes. *See* 75 Fed. Reg. 54642, 54644.

54. The disclosure or disclosures of the Leaked Records by one or more employees or agents of the Defendants was a willful and intentional violation of the Privacy Act.

55. As a direct and foreseeable result of the illegal leak or leaks of Dr. Chen's private information to Fox News, three Fox News reports were published and broadcast, leading to the destruction of Dr. Chen's livelihood and the termination of the University of Management and Technology's participation in DOD's Tuition Assistance program.

56. Although the government has never charged Dr. Chen in court with any misconduct, her reputation has suffered substantial harm and she has been financially damaged as a result of Defendants' unlawful conduct. The illegal leak of personal information has diminished Dr. Chen's income, limited her professional opportunities, and decreased the value of the university that she wholly owns and into which she has invested the last two decades.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Enjoin Defendants from further unauthorized and illegal disclosures of Dr. Chen's private information;

b. Award Dr. Chen actual damages, the exact amount of which is to be determined at trial;

c. Award Dr. Chen reasonable costs and attorney's fees as provided by the Privacy Act;

d. Refer any Government officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

e. Direct the Defendants to state publicly that the documents underlying the Fox News reports were illegally and selectively leaked with the intent to harm Dr. Chen; and

f. Grant such further and other relief as this Court deems just and proper.

Dated: December 21, 2018

Respectfully submitted,

**/s/ Patrick Carome**

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Justin Baxenberg (D.C. Bar No. 1034258)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
justin.baxenberg@wilmerhale.com

*Counsel for Plaintiff*