## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| YANPING CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:18-cv-03074-CRC** |
| | ) | |
| v. | ) | **Hon. Christopher R. Cooper** |
| | ) | **United States District Judge** |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| U.S. DEPARTMENT OF DEFENSE, U.S. | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | **Oral Argument Requested** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF NON-PARTY FOX NEWS NETWORK, LLC'S
MOTION TO QUASH**

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Patrick F. Philbin (453620)
pphilbin@egcfirm.com

1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

*Counsel for Fox News Network, LLC*

July 29, 2022

PUBLIC VERSION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND ............................................................................................................3

     A.     The Government's Investigation into Plaintiff and UMT and Fox's Reporting.............................................................................................................3

     B.     Plaintiff's Privacy Act Suit ................................................................................5

     C.     Plaintiff's Subpoenas to FNN .............................................................................6

ARGUMENT ..................................................................................................................7

I.     The Subpoenas Should Be Quashed Because They Invade the First Amendment Journalist's Privilege.............................................................................................7

     A.     The Subpoenas to FNN Unquestionably Seek Information Protected by the Journalist's Privilege.........................................................................................9

     B.     Plaintiff Cannot Show That the Information Sought in Her Subpoenas Is "Central" to Her Case Because the Subpoenas Are Vastly Overbroad. ...............10

     C.     Exhausting Reasonable Alternatives Requires That Plaintiff Seek Discovery from Ms. Herridge Before Seeking Discovery from FNN. .................12

II.     The Subpoenas Should Be Quashed because they Invade FNN's Newsgathering Privilege under Federal Common Law. ................................................................13

III.     The Subpoenas to FNN Should Be Quashed because they Are Duplicative, Cumulative, and a More Convenient Source of the Information Exists. ..........................14

CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Carey v. Hume,*
492 F.2d 631 (D.C. Cir. 1974) ........................................................................................8

\* *Covertino v. Department of Justice,*
No. 07-CV-13842, 2008 WL 4104347 (E.D. Mich. Aug. 28, 2008) ...............................14, 15

\* *Hatfill v. Gonzales,*
505 F. Supp. 2d 33 (D.D.C. 2007) ...............................................................................2, 13

*In re Slack,*
768 F. Supp. 2d 189 (D.D.C. 2011) ...............................................................................9

*Lee v. Dep't of Just.,*
401 F. Supp. 2d 123 (D.D.C. 2005) ...............................................................................8, 14

*Lee v. Dep't of Just.,*
413 F.3d 53 (D.C. Cir. 2005) .......................................................................................10

*Maughan v. NL Indus.,*
524 F. Supp. 93 (D.D.C. 1981) .......................................................................................9

*Tavoulareas v. Piro,*
93 F.R.D. 35 (D.D.C. 1981) ...........................................................................................9

*Yanping Chen v. FBI,*
No. 20-MC-107-CRC, 2020 WL 7668880 (D.D.C. Dec. 24, 2020) .................................12

\* *Zerilli v. Smith,*
656 F.2d 705 (D.C. Cir. 1981) ............................................................................ *passim*

## RULES

Fed. R. Civ. P. 26 ...................................................................................3, 12, 14, 15, 16

## OTHER AUTHORITIES

Catherine Herridge, Pamela K. Browne & Cyd Upson, *Congress investigating
taxpayer-backed school over alleged ties to Chinese military after Fox News
report*, FOXNews.com (updated May 1, 2017) .........................................................5

Catherine Herridge, Pamela K. Browne & Cyd Upson, *FBI 'reopening' probe of DoD-
funded school with suspected Chinese military ties, rep says*, FOXNews.com (June
28, 2017) ...................................................................................................................5

Catherine Herridge, Pamela K. Browne & Cyd Upson, *Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties*, FOXNews.com (Feb. 24, 2017) ................................................................4

*FBI raids in Rosslyn area,* WTOP News (Dec. 5, 2012, 11:20 AM) .............................................4

*FBI Raids Two Locations in Arlington,* NBC4 Wash. (Dec. 5, 2012, 10:26 PM) .........................4

Gail Huff, *FBI raids Rosslyn University of Management and Technology offices,* WJLA (Dec. 5, 2012, 11:31 AM) ...........................................................................4

## INTRODUCTION

Plaintiff's non-party subpoenas to Fox News Network, LLC ("FNN")—like her subpoenas to Catherine Herridge, formerly the Chief Intelligence Correspondent at FNN—strike at the heart of the First Amendment journalist's privilege. At their core, they seek to uncover confidential source(s) used for reporting on a counterintelligence probe into Plaintiff and the University of Management and Technology ("UMT"). Under governing law, the journalist's privilege protecting such sources must prevail "in all but the most exceptional cases." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). Plaintiff cannot remotely carry her burden to show that this is such an exceptional case that merits overriding the privilege.

As explained in detail in the Memorandum in Support of Catherine V. Herridge's Motion to Quash, Dkt. 92-3 ("Herridge Mem." or "Herridge Memorandum"), Plaintiff cannot make the showing required under *Zerilli*.

First, Plaintiff has not "exhausted every reasonable alternative source of information" for finding the identity of any government source(s) for the articles and broadcasts at issue (the "Fox Reporting"). *Zerilli*, 656 F.2d at 713. Plaintiff has identified multiple individuals who had access to a particular document that Plaintiff believes was released in violation of the Privacy Act, but Plaintiff has failed to follow up with discovery to rule out all of those individuals as the source.

Second, *Zerilli* calls for the court to "look to the facts of [the] case, weighing the public interest in protecting a reporter's sources and the private interest in compelling disclosure." *Id.* at 712. But the balance of interests weighs overwhelmingly *against* Plaintiff. Plaintiff's private interest in seeking Privacy Act damages carries no broader societal interest. And her claims for damages are riddled with defects that make her claims weigh little in the balance. On the other side of the scales, the public interest in First Amendment protections that promote the functioning of a free press is at its height in a case like this involving reporting on issues of national security.

To avoid burdening the Court with duplicative briefing, FNN incorporates by reference the arguments on all of these points from the Herridge Memorandum. *See* Herridge Mem. Parts I–II.

But the Court need not even reach those issues to quash the subpoenas to FNN, because the FNN subpoenas also suffer from independent defects.

First, the subpoenas are vastly overbroad. The only information even potentially in FNN's possession that could qualify as "central" to Plaintiff's Privacy Act case as required under *Zerilli* would be information bearing on the identity of any source(s) in the government who allegedly released information covered by the Privacy Act. But Plaintiff's subpoenas sweep far more broadly than that. As written, they seek virtually *every* document in the entire investigative reporting file that FNN employees compiled, whether the document relates to a possible government source or not. And they seek testimony about FNN's entire pre-publication fact-checking and editorial process on the stories, whether related to information allegedly covered by the Privacy Act or not. Their overbreadth alone requires that the subpoenas be quashed or radically restricted by a protective order.

Second, where the target of a subpoena is a media company such as FNN, exhausting other reasonable avenues of discovery under *Zerilli* requires first seeking discovery from the individual reporter responsible for the story. *See Hatfill v. Gonzales*, 505 F. Supp. 2d 33, 49 (D.D.C. 2007). Before seeking discovery from FNN, Plaintiff must exhaust discovery efforts with respect to Ms. Herridge, who was the lead reporter on the Fox Reporting and the individual most likely to know the identity of any source(s). Indeed, that is especially the case here, given that no person at FNN has the information that Plaintiff seeks. The two other Fox employees named in the byline in the Fox Reporting (Pamela Browne and Cyd Upson) have already provided declarations explaining that Ms. Herridge never told them who her source(s) were. *See* Decl. of Pamela Browne ¶¶ 9–10

("Browne Decl.") (Ex. A); Decl. of Cyd Upson ¶¶ 9–10 ("Upson Decl.") (Ex. B).  And Ms. Herridge has affirmed that she never told *anyone* at FNN that information.  *See* Decl. of Catherine V. Herridge ¶ 6 ("Herridge Decl.") (Ex. C).  For all the reasons explained in the Herridge Memorandum, Plaintiff's subpoenas should be quashed in their entirety.  But if the Court allows any discovery, it should require Plaintiff to exhaust efforts with Ms. Herridge before entertaining discovery from FNN.  And it should certainly restrict Plaintiff to targeted and limited discovery from Ms. Herridge concerning potential government source(s) before allowing Plaintiff to rummage through FNN documents in the hope of finding clues that may bear on the identity of a source.

Third, the FNN subpoenas also should be quashed under Rule 26(b)(2)(C), which requires courts to limit discovery that is "cumulative or duplicative, or [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Ms. Herridge is obviously a more convenient and less burdensome source for the identity of any government source(s) for the Fox Reporting.  There should be no discovery from media sources at all in this case, but if the Court allows discovery, requiring FNN dig through and produce years of emails and documents is obviously less convenient, more burdensome, and more expensive than simply deposing the person who most likely has the information Plaintiff is after.

## BACKGROUND

### A.     The Government's Investigation into Plaintiff and UMT and Fox's Reporting

Plaintiff, Yanping Chen, is the founder and sole owner of UMT.  Compl. ¶¶ 13–14, ECF No. 1.  On December 5, 2012, the FBI executed search warrants at UMT's offices and at Plaintiff's

3

home.  Compl. ¶ 18.  The raids were carried out publicly and were widely reported in local media at the time.[1]

In March 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Plaintiff that she would not be prosecuted.  Compl. ¶ 22.  As investigative reporting by FNN later revealed, the years-long investigation involved counterintelligence concerns, and not everyone was satisfied that the outcome had protected national security.

On February 24, 2017, FNN ran the first in a series of articles detailing the investigation into UMT and Plaintiff.[2]  Ms. Herridge, who at the time was FNN's Chief Intelligence Correspondent, was the lead reporter.  *See* Herridge Decl. ¶ 5.[3]  Pamela Browne and Cyd Upson also appeared on the bylines.  As detailed over the course of three articles published on February

---

[1] *See FBI Raids Two Locations in Arlington,* NBC4 Wash. (Dec. 5, 2012, 10:26 PM), https://www.nbcwashington.com/news/local/fbi-raids-two-locations-in-arlington/1937628/;  Gail Huff, *FBI raids Rosslyn University of Management and Technology offices,* WJLA (Dec. 5, 2012, 11:31 AM), https://web.archive.org/web/20121209051420/http://www.wjla.com:80/articles/2012/ 12/fbi-raids-rossyln-university-of-management-and-technology-offices-arlnow-reports-82782.html;  *FBI raids in Rosslyn area,* WTOP News (Dec. 5, 2012, 11:20 AM), https://wtop.com/news/2012/12/developing-fbi-raids-in-rosslyn-area/.

[2] Catherine Herridge, Pamela K. Browne & Cyd Upson, *Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties*, FOXNews.com (Feb. 24, 2017),  https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties (Ex. D).

[3] Ms. Herridge is now a senior investigative correspondent at CBS News.

24, 2017; April 28, 2017;[4] and June 28, 2017,[5] and in two related news segments[6] (collectively, the "Fox Reporting"), federal officials were concerned that Plaintiff had ties to the Chinese military and that UMT was potentially being used to help the Chinese government collect information on U.S. servicemembers enrolled at UMT.

More information concerning the Fox Reporting, the information it relied upon, and the ultimate decision of the Department of Defense ("DoD") to terminate UMT's participation in its tuition assistance program can be found in the Herridge Memorandum, pp. 1–12. FNN adopts and incorporates by reference the Background discussion in the Herridge Memorandum.

### B.    Plaintiff's Privacy Act Suit

In late 2018, Plaintiff sued multiple agencies alleging a Privacy Act violation and seeking damages that she believes tie back to materials used in the Fox Reporting. Plaintiff alleges that the photographs, excerpted immigration forms, and information from two FBI interviews that appeared in the Fox Reporting were released in violation of the Privacy Act. *See* Compl. ¶¶ 23, 25–29, 31. Plaintiff expressly claims damages based, in large part, on DoD's 2018 decision to terminate UMT from its tuition assistance program. *Id.* ¶ 42.

---

[4] Catherine Herridge, Pamela K. Browne & Cyd Upson, *Congress investigating taxpayer-backed school over alleged ties to Chinese military after Fox News report*, FOXNews.com (updated May 1, 2017), https://www.foxnews.com/politics/congress-investigating-taxpayer-backed-school-over-alleged-ties-to-chinese-military-after-fox-news-report (Ex. E).

[5] Catherine Herridge, Pamela K. Browne & Cyd Upson, *FBI 'reopening' probe of DoD-funded school with suspected Chinese military ties, rep says*, FOXNews.com (June 28, 2017), https://www.foxnews.com/politics/fbi-reopening-probe-of-dod-funded-school-with-suspected-chinese-military-ties-rep-says (Ex. F).

[6] Fox News, Taxpayer-funded school suspected of Chinese military ties, https://www.youtube.com/watch?v=jh2Xk42PVA8; Fox News, Congress investigating schools' alleged ties to China, https://video.foxnews.com/v/5417408120001; FOXNews.com, Congress investigating school's alleged ties to China, https://video.foxnews.com/v/5417408120001.

### C.    Plaintiff's Subpoenas to FNN

On May 19, 2022, Plaintiff served FNN with subpoenas seeking documents and a deposition of a corporate representative. Part of the purpose of the subpoenas is to uncover the identity of any source(s) who provided the photos and documents forming the basis for Plaintiff's Privacy Act suit. The document subpoena seeks, for instance, documents "sufficient to identify the individual(s) that transmitted or provided the Private Documents and Information to [FNN]." Subpoena to Produce Documents Issued to Fox News Network, LLC Schedule A at 7 (Ex. G) ("FNN Document Subpoena"). The subpoena for deposition testimony demands that FNN produce a representative to testify to matters such as the "disclosure and/or receipt by [FNN employees] of any Private Documents and Information, including the timing, format, and means of transmission." Subpoena to Testify at a Deposition Issued to Fox News Network, LLC Schedule A at 5 (Ex. H) ("FNN Deposition Subpoena").

But the subpoenas also seek vastly more than just information that might bear on the identity of any source(s) who may have released information from government files. The subpoenas define "Private Documents and Information" as "*any and all* documents and information concerning Dr. Chen and/or the University that were provided to or obtained by personnel of Fox News *from a third party* and that were presented in, referred to, or *considered* in relation to the [Fox Reporting]." FNN Document Subpoena Schedule A at 3 (emphases added). Thus, by seeking production of "all Private Documents and Information," Plaintiff is actually seeking *every* document and piece of information *from anyone* relating to Plaintiff and/or UMT whether the document has any relation to a possible release of Privacy Act information from government files or not. The terms of the subpoena would include, for example, notes from an interview with a neighbor or a student at UMT, even if the material was never actually used in the

Fox Reporting (as long as it was "considered").  The subpoena thus literally seeks production of the *entire* investigative reporting file that FNN personnel assembled while working on the story.

## ARGUMENT

### I.   THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE THE FIRST AMENDMENT JOURNALIST'S PRIVILEGE.

The subpoenas should be quashed because they plainly seek information protected by the journalist's privilege under the First Amendment and Plaintiff cannot bear her burden of overcoming that privilege.  The First Amendment provides journalists a qualified privilege from compelled disclosure of their newsgathering activities, including especially the identity of confidential sources.  *See, e.g., Zerilli v. Smith*, 656 F.2d 705, 710–12 (D.C. Cir. 1981).  As the D.C. Circuit has explained, "The First Amendment guarantees a free press primarily because of the important role it can play as a 'vital source of public information.'"  *Id.* at 710 (quoting *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936)).  But "journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant." *Id.* at 711.  As a result, "[c]ompelling a reporter to disclose the identity of a source may significantly interfere with [the press'] news gathering ability."  *Id.* at 711.  Without confidential sources, the press could not uncover information vital for informing the public—especially about the inner workings of government—and the citizens would be deprived of information essential for them to make "informed political, social, and economic choices." *Id.*  To protect the ability of a robust free press to play its role in informing the electorate, the journalist's privilege generally protects against compelled disclosure of sources.

To determine whether a particular plaintiff can overcome the privilege, the D.C. Circuit has instructed that courts must "look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Zerilli*, 656

F.2d at 712.[7]  In particular, *Zerilli* identified two "guidelines" that are of "central importance" in the balance.  First, to justify disclosure, a plaintiff must show that the information sought goes to "the heart of the matter," *id.* at 713, in other words, that it is "central" to her case.  *Lee v. Dep't of Just.*, 401 F. Supp. 2d 123, 132 (D.D.C. 2005).  Second, the litigant must have "exhausted every reasonable alternative source of information."  *Zerilli*, 656 F.2d at 713.  Plaintiff bears the burden of showing that these guidelines have been satisfied and that the balance tips in her favor.  And that is a heavy burden.  The D.C. Circuit warned that "when striking the balance," courts must "be mindful of the preferred position of the First Amendment" and expressly cautioned that "[i]f the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished."  *Id.* at 712.

As discussed in more detail in the Herridge Memorandum, Plaintiff cannot carry her burden under *Zerilli* to justify discovery from media sources here.  Plaintiff has not "exhausted every reasonable alternative source of information" because Plaintiff has not followed up with all of the individuals who had access to the document (a PowerPoint) that Plaintiff believes was released from government files.  And the balance of interests under *Zerilli* weighs overwhelmingly in favor of upholding First Amendment protections for journalists' sources.  Herridge Mem. Part I.  FNN hereby adopts and incorporates by reference those sections of the Herridge Memorandum.

Plaintiff's subpoenas to FNN also suffer from additional defects.  Plaintiff cannot show that the information she seeks is "central" to her case because the subpoenas to FNN are vastly overbroad.  And Plaintiff cannot show that she has exhausted reasonable alternatives to discovery from FNN where she has not pursued discovery from Ms. Herridge to completion.

---

[7] *See also Carey v. Hume*, 492 F.2d 631, 636 (D.C. Cir. 1974) ("[T]he court will look to the facts on a case-by-case basis in the course of weighing the need for the testimony in question against the claims of the newsman that the public's right to know is impaired.").

A.      **The Subpoenas to FNN Unquestionably Seek Information Protected by the Journalist's Privilege.**

The subpoenas to FNN plainly seek information protected by the journalist's privilege. The privilege broadly protects journalists from "compelled disclosure of information, which they have obtained as part of their news gathering role." *In re Slack,* 768 F. Supp. 2d 189, 193 (D.D.C. 2011). It covers both confidential and nonconfidential information. *Id.* 193–94 (noting that courts "rigorously" protect confidential information). Where a confidential source is involved, the privilege applies not only to discovery that directly seeks the source's identity, but also to discovery that would be likely to identify the source. *Tavoulareas v. Piro*, 93 F.R.D. 35, 40 (D.D.C. 1981). The reporter's privilege also applies to "resource materials prepared by a reporter in anticipation of writing a news article," such as drafts or notes. *Maughan v. NL Indus.*, 524 F. Supp. 93, 95 (D.D.C. 1981) (quoting *United States v. Cuthbertson*, 630 F.2d, 139, 147 (3d Cir. 1980)).

Here, both subpoenas to FNN indisputably seek information protected by the reporter's privilege. The document subpoena seeks *all* documents FNN received from *any* source(s) relating to Plaintiff—whether or not related to any alleged release of information covered by the Privacy Act. FNN Document Subpoena Schedule A at 7. It also seeks documents reflecting the transmission of information from any source(s) to FNN, documents sufficient to identify any source(s), and all communications that the three journalists on the Fox Reporting had with two individuals. *See id.* Similarly, the topics listed in the FNN Deposition Subpoena seek protected information that FNN obtained as part of its newsgathering role, *see In re Slack,* 768 F. Supp. 2d at 193, or created in the course of writing the Articles, *see Maughan*, 524 F. Supp. at 95. Specifically, the subpoena seeks a witness to address the transmission to FNN of *every* document related to Plaintiff or UMT that FNN received, as well as retention of those documents.  .  FNN

9

Document Subpoena Schedule A at 7. And it seeks a witness to discuss the details of "[a]ny fact-checking and/or pre-publication review conducted"—in other words, the entire editorial process—with respect to every document FNN received concerning Plaintiff. FNN Deposition Subpoena Schedule A at 5. The subpoenas thus not only seek to uncover confidential government sources potentially relevant to Plaintiff's Privacy Act claim, they also sweep so broadly as to encompass FNN's entire newsgathering and editorial process on the Fox Reporting. *All* of that information is covered by the privilege.

> **B.   Plaintiff Cannot Show That the Information Sought in Her Subpoenas Is "Central" to Her Case Because the Subpoenas Are Vastly Overbroad.**

Plaintiff cannot remotely show that the information she seeks is "central" to her case under *Zerilli,* because her subpoenas are stunningly overbroad. The only information that is even arguably "central" to Plaintiff's case and potentially in FNN's possession is information bearing on the identity of any government source(s) who may have released information allegedly in violation of the Privacy Act. *See, e.g., Lee v. Dep't of Just.*, 413 F.3d 53, 60 (D.C. Cir. 2005). But Plaintiff's subpoenas seek much more than that. Both the FNN Document Subpoena and the FNN Deposition Subpoena center on requests related to "Private Documents and Information" in FNN's possession. The definition of that term, however, has nothing to do with information protected by the Privacy Act or even information that once resided in government files. To the contrary, the subpoenas define "Private Documents and Information" as "*any and all* documents and information concerning Dr. Chen and/or the University that were provided to or obtained by personnel of Fox News *from a third party* and that were presented in, referred to, or *considered* in relation to the [Fox Reporting]." *E.g.*, FNN Deposition Subpoena Schedule A at 3 (emphases added). By seeking production of "all Private Documents and Information," Plaintiff is actually seeking *every* document and piece of information *from anyone* relating to Plaintiff and/or UMT

whether the document has any relation to a possible release of Privacy Act information from government files or not.  The terms of the subpoena would include, for example, notes from an interview with a neighbor or a student at UMT, even if the material never made it into the published reporting at all (as long as it was "considered").  The subpoena thus literally seeks production of the *entire* investigative reporting file that FNN personnel assembled while working on the story. It is difficult to imagine a more comprehensive—or more unjustified—invasion of the journalists' privilege.  The breathtaking scope of the information sought by this subpoena has nothing to do with information necessary for Plaintiff's Privacy Act case and gives the impression instead of a concerted effort to identify *everyone* who may have talked about Plaintiff with FNN.

The FNN Deposition Subpoena is equally defective.  It seeks a corporate representative to testify, for example, about the "disclosure to and/or receipt by" FNN personnel of "*any* Private Documents and Information."  FNN Deposition Subpoena Schedule A at 5.  That would require FNN to provide a 30(b)(6) witness to testify about *every* conversation that any of the three journalists working on the Fox Reporting had with *anyone* in connection with the story—whether it related to a possible government source or not.  Worse, Plaintiff wants to delve even deeper into privileged material by demanding that a witness explain the entire "fact-checking and/or pre-publication review conducted with respect to the Private Documents and Information."  *Id.*  Once again, that sweeping demand to know everything about FNN's privileged editorial process has nothing to do with the single, targeted piece of information that might arguably be "central" to Plaintiff's case under *Zerilli*—namely, the identity of any government source(s) who released information from government files.

Plaintiff cannot remotely justify these requests under *Zerilli*.[8]  They have nothing to do with the only information potentially "central" to Plaintiff's case.  Put simply, nothing in *Zerilli* permits Plaintiff to have carte blanche to rummage through *every* document from *every source* preserved in the entire investigative reporting file that was compiled at FNN in producing the Fox Reporting.  For that reason alone, Plaintiff's subpoenas should be quashed or at a minimum radically restricted under a protective order.  The Court has already rightly recognized that "enforcing an overbroad subpoena in this case might produce an unwelcome chilling effect on First Amendment activity," *Yanping Chen v. FBI*, No. 20-MC-107-CRC, 2020 WL 7668880, at *4 (D.D.C. Dec. 24, 2020), and that caution applies doubly to the overbroad subpoenas at issue here.

### C.    Exhausting Reasonable Alternatives Requires That Plaintiff Seek Discovery from Ms. Herridge Before Seeking Discovery from FNN.

In addition to the defects explained in the Herridge Memorandum, *see* Herridge Mem. Part I, Plaintiff's subpoenas to FNN also suffer from an additional failure to exhaust alternative avenues of discovery.  Where the target of a subpoena seeking to uncover a government source is a media company, exhaustion also requires that the litigant first depose the individual reporter responsible

---

[8] Indeed, they cannot even be justified under the ordinary standard of Rule 26.  This Court has already ruled that another of Plaintiff's subpoenas—one seeking call and text logs for Stephen Rhoads—imposed a disproportionate burden on Mr. Rhoads' privacy because it indiscriminately sought records without regard for their relevance to the case. *Yanping Chen v. FBI*, No. 20-MC-107-CRC, 2020 WL 7668880, at *4 (D.D.C. Dec. 24, 2020) (noting that "[t]hese private communications are irrelevant to Chen's lawsuit").  The overbreadth of Plaintiff's subpoena here is even worse.  Plaintiff again seeks a broad swath of documents irrespective of their relevance to her Privacy Act claims, but here she does so while trampling on a constitutionally recognized privilege.  The sources for information used in the Fox Reporting *other than* the few pieces of information that Plaintiff claims were covered by the Privacy Act are utterly irrelevant to Plaintiff's claims.  Discovery concerning those sources necessarily falls outside the scope of allowable discovery under Rule 26(b), both because it is not relevant and because the burden of the discovery is disproportionate to its likely benefit.  Fed. R. Civ. P. 26(b)(1).

for the story before seeking discovery from the media company itself. *Hatfill v. Gonzales*, 505 F. Supp. 2d 33, 49 (D.D.C. 2007).  Indeed, the litigant must pursue discovery from the individual reporter through a motion to compel before resorting to the media company.  *See id.*  In *Hatfill*, a Privacy Act plaintiff subpoenaed several reporters in an attempt to identify the government employee who had allegedly released the information at issue.  *Id.* at 35–36.  After deposing the reporters—all of whom invoked the reporter's privilege and refused to name their sources—the plaintiff sought a court order compelling the reporters to identify their sources, and served additional subpoenas on the reporters' employers in an attempt to identify the sources.  *Id.*  The court, after granting the motion to compel, quashed the subpoenas served to the media companies. *Id.* at 49.  The court found that the plaintiff had not exhausted every reasonable alternative source of information as it related to the media companies, because he had not yet deposed the reporters under a motion to compel.  *Id.*  Because there was no question that the reporters knew the identity of the sources, the court held that they should be deposed, under a motion to compel, first.  *Id.* at 49–51.

As the court in *Hatfill* recognized, exhaustion requires that Plaintiff pursue discovery from Ms. Herridge—who doubtless knows her source(s)—before resorting to FNN.  FNN agrees with Ms. Herridge that Plaintiff's subpoenas should be quashed in their entirety and Plaintiff should not be allowed to pursue discovery from media sources, including Ms. Herridge, *at all*. But if the Court allows any discovery from media sources, Plaintiff should be required to pursue discovery from Ms. Herridge to completion before resorting to discovery from FNN.

## II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE FNN'S NEWSGATHERING PRIVILEGE UNDER FEDERAL COMMON LAW.

As detailed in the Herridge Memorandum, if the Court concludes that the journalist's privilege under the First Amendment does not prevail in this case—and especially if the Court

13

holds that *Zerilli* and *Lee* preclude balancing the competing interests at stake—the Court should recognize a federal common law privilege that provides better protection and allows the Court to consider that balancing. *See* Herridge Mem. Part II. To avoid burdening the Court with duplicative briefing, FNN hereby adopts and incorporates by reference the section of the Herridge Memorandum arguing for a federal common law privilege.

**III.   THE SUBPOENAS TO FNN SHOULD BE QUASHED BECAUSE THEY ARE DUPLICATIVE, CUMULATIVE, AND A MORE CONVENIENT SOURCE OF THE INFORMATION EXISTS.**

The Court need not reach issues implicating constitutional doctrines under the journalist's privilege—or recognize a federal common law privilege—to quash the subpoenas to FNN because the subpoenas are also facially defective for a more mundane reason. They seek documents and a deposition of a corporate representative from FNN in order to get at information about confidential source(s) for the Fox Reporting when there is only one person who actually knows that information—Ms. Herridge. Under Rule 26(b)(2)(C), courts must limit discovery that is "cumulative or duplicative, or [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Here, if the Court permits discovery from media sources at all—which it should not—the subpoenas to FNN should be quashed because they seek information that can be obtained more conveniently and economically from Ms. Herridge, without placing an additional and undue burden on FNN.

As other courts have held, where a plaintiff is seeking the confidential sources used in a particular story, the interest in orderly and efficient discovery requires that—after exhausting non-media sources—the litigant should start discovery of media sources with the reporter who wrote the story. For example, in *Covertino v. Department of Justice*, the court quashed a subpoena to a media company under Rule 26 because the litigant had not yet obtained discovery from the reporter who actually wrote the story at issue. No. 07-CV-13842, 2008 WL 4104347, at *9 (E.D. Mich.

14

Aug. 28, 2008).  As the court explained, "When a party notices a newspaper for disclosure of confidential informants mentioned in one of its articles, its logical representative is the reporter who wrote the piece."  *Id.* at *9.  As a result, the court found that compelling the media company to provide a 30(b)(6) witness would be cumulative and duplicative, in violation of Rule 26(b)(2)(C), and further violated that same rule because there was a more convenient source (the reporter) who could provide the requested information.  *See id.* at *9–10.

The same rationale applies here.  The only information potentially in FNN's possession that is even arguably "central" to Plaintiff's Privacy Act case (and thus could potentially be the subject of legitimate discovery under *Zerilli*) is the identity of any government source(s) who provided information allegedly in violation of the Privacy Act.  But Ms. Herridge is obviously a more convenient, certain, and less burdensome source for obtaining that information.  She would certainly know who her source(s) were.  And it is clear that no one at FNN knows that information.  The two other Fox employees who worked on the Fox Reporting (Pamela Browne and Cyd Upson) have already provided declarations explaining that Ms. Herridge never told them who her source(s) were.  *See* Browne Decl. ¶¶ 9–10; Upson Decl. ¶¶ 9–10.  And Ms. Herridge has affirmed that she never told *anyone* at FNN that information.  *See* Herridge Decl. ¶ 6.

Because no individual at FNN actually knows the information Plaintiff seeks, any discovery efforts at FNN would have to focus on *indirect* means of finding clues to the identity of any government source(s).  And even if the gross overbreadth of Plaintiffs' subpoenas were resolved by restricting the subpoenas to focus on information actually related to finding the identity of such source(s), *see supra* Part I.B, that discovery would necessarily be a cumbersome and burdensome process.  A narrowed subpoena for documents would still require FNN to sift through five years' worth of emails and documents generated by at least three employees to identify any

15

that might touch tangentially on the identity of the source(s) at issue, potentially through clues in the meta data on some documents. *See* FNN Document Subpoena Schedule A at 7 (Requests 2 and 3). And under the FNN Deposition Subpoena, FNN would be required to prepare and provide a 30(b)(6) witness who could speak to FNN's document retention policies, presumably including the extent to which meta data is or is not fully preserved in the ordinary document retention process. *See* FNN Deposition Subpoena Schedule A at 5 (Topics 2 and 3). Requiring FNN to go to these lengths to piece together forensic clues is plainly unduly burdensome where there is a more convenient and more direct source (Ms. Herridge) who could provide the only truly relevant information Plaintiff seeks. If the Court allows any discovery from media sources—which it should not—FNN should not have to undertake the burden of scouring its files for tangential clues about a supposed source's identity when Ms. Herridge is a more direct, convenient, and certain source of that information. As a result, both subpoenas must be quashed under Rule 26(b)(2)(C).

## **CONCLUSION**

For the foregoing reasons, the motion to quash the subpoenas should be granted.

DATED:  July 29, 2022

Respectfully submitted,

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Patrick F. Philbin (DC Bar No. 435620)
    1155 F St. NW
    Suite 750
    Washington, DC 20004
    Tel.: (202) 249-6633
    Fax: (202) 249-6899
    pphilbin@egcfirm.com


By:     /s/ Patrick F. Philbin
        Patrick F. Philbin
*Counsel for Fox News Network, LLC*

17