**PUBLIC VERSION**

# EXHIBIT A

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

YANPING CHEN,

          Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

          Defendants.

Case No.: 1:18-cv-3074-CRC

### DECLARATION OF PAMELA K. BROWNE

I, PAMELA K. BROWNE, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     In 2017, I was Senior Executive Producer, Director of Long-Form Series and Specials at Fox News Channel ("FNC"). I separated from FNC in late 2018.

2.     In 2017, in my role as a Senior Executive Producer, Director of Long-Form Series and Specials, I assisted in the production of three articles, and related broadcast reports, (collectively, "Reporting"), concerning a then-ongoing, multi-agency investigation into The University of Management and Technology ("UMT") and Yanping Chen. The three print articles were published on February 24, 2017, April 28, 2017, and June 28, 2017.

3.     Catherine Herridge was the lead reporter on the Reporting.

4.     On June 14, 2022, I was served with subpoenas to produce documents and to testify at a deposition relating to a civil action titled *Chen v. Federal Bureau of Investigation* ("Subpoenas"). I understand that in that action, Ms. Chen alleges violations of the Privacy Act based on the alleged release of information concerning her from FBI investigative files.

5.      The Subpoenas seek the production of, and information relating to, "Private Documents and Information," which the Subpoenas broadly define as:

> [A]ny and all documents and information concerning Dr. Chen and/or the University that were provided to or obtained by you from a third party and that were presented in, referred to, or considered in relation to the reports attached to the Complaint as Exhibits B, D, and E and/or the corresponding television or online broadcasts, including, without limitation:
>
> a. Any photographs purporting to depict Dr. Chen;
>
> b. Any FBI FD-302 Form relating to or referring to Dr. Chen;
>
> c. Any immigration or naturalization document relating to Dr. Chen;
>
> d. Any internal government email communication involving personnel of Defendants and relating to Dr. Chen, the University, and/or the Investigation;
>
> e. Any PowerPoint presentation, compilation, and/or report concerning Dr. Chen, the University, and/or the Investigation.

6.      Because the definition in the subpoena broadly includes *any* information received from *any* third party concerning Dr. Chen, it sweeps in a broad range of publicly available materials (and materials lawfully obtainable through official government channels) that may have been considered in connection with the Reporting and that in no way implicate the alleged violations of the Privacy Act in Dr. Chen's suit against the FBI and other government agencies.

7.      I will limit my statements in this declaration solely to a narrower set of Disputed Private Documents and Information, which I define as roughly corresponding to the "Leaked Records" referred to in Paragraph 23 of Plaintiff's complaint, but without adopting Plaintiff's legal

conclusion that the records were unlawfully disclosed.   In other words, Disputed Private Documents and Information are records and information pertaining to Dr. Chen and her private affairs that Dr. Chen alleges the FBI had collected or generated in the course of its investigation of her, that Dr. Chen alleges were maintained by the FBI or another government agency, and that Dr. Chen alleges were not publicly available, and includes specifically:

    a. Photographs purporting to depict Dr. Chen that Dr. Chen alleges came from the FBI's investigative file (see Complaint ¶¶ 20, 26, 31);

    b. Any FBI FD-302 Form relating to or referring to Dr. Chen;

    c. Any immigration or naturalization document relating to Dr. Chen;

    d. Any internal government email communication involving personnel of Defendants and relating to Dr. Chen, the University, and/or the Investigation;

    e. Any PowerPoint presentation, compilation, and/or report concerning Dr. Chen, the University, and/or the Investigation.

8.    The Reporting relied on information from one or more confidential sources who provided Ms. Herridge with information concerning the ongoing investigations into UMT and Ms. Chen.  To the extent that I am aware of any Disputed Private Documents and Information used or considered in connection with the Reporting, the Disputed Private Documents and Information originated with Ms. Herridge's confidential source(s).

9.    Ms. Herridge did not provide me with any information as to the identity, employer, or number of confidential sources she used in connection with the Reporting.

10.    I do not know the identity of the confidential source or sources who contributed to the Reporting or who may have provided Disputed Private Documents and Information, if any.  I

never communicated with the confidential source or sources. To the best of my knowledge, I do not know any information that could be used to help identify the confidential source or sources.

11.     To the best of my recollection, without access to my Fox working materials, I first saw the Disputed Private Documents or Information used in the Reporting at some point between late 2016 and early 2017. I do not know when the Disputed Private Documents or Information were first provided to Ms. Herridge.

12.     I recall seeing the Disputed Private Documents and Information that were displayed in the Reporting and also an immigration document referred to in the Reporting. I also remember seeing a document that was a long compilation that I believe would fall in the category of Disputed Private Documents and Information, but I cannot now recall details about the contents of that document. I have not had access to Fox files since I separated from the company in 2018.

13.     To the best of my recollection, my only conversations with Mr. Stephen Rhoads involved logistics of setting up a taped interview for the Reporting, following up to clarify several statements he made in the interview, and checking on his health and that of his family. Nothing in my few conversations with him indicated the source of the Disputed Private Documents and Information.

14.     Any communications that I had concerning the Reporting took place on my Fox email account, Fox desk phone, or on my Fox-issued cell phone. I did not use my personal phone or email address for any communications concerning the Reporting. I have not had access to my Fox-issued electronics since I left the company in 2018.

15.     To the best of my recollection, the Disputed Private Documents and Information were shown to me in electronic format, but I do not know how they were provided to Ms. Herridge.

16.     I have conducted a good-faith search of my personal records, including my personal computer, both my personal email accounts, and personal cell phone, and have not found any documents that: (1) reflect Disputed Private Documents and Information; (2) comprise, reflect, or relate to the transmission or provision of Disputed Private Documents and Information; (3) relate to or could be used to identify the confidential source or sources that contributed to the Reporting; or (4) reflect communications with Stephen Rhoads or Timothy Pappa.

I declare under penalty of perjury that the foregoing is true and correct.


Date: June 30, 2022

_Pamela K. Browne_
Pamela K. Browne