**PUBLIC VERSION**

# EXHIBIT C

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| YANPING CHEN,<br><br>                    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>                    Defendants. | Case No.: 1:18-cv-3074-CRC |

## DECLARATION OF CATHERINE V. HERRIDGE

I, CATHERINE V. HERRIDGE, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Senior Investigative Correspondent at CBS News. I have held the position of Senior Investigative Correspondent since I joined CBS News in 2019.

2. I was the Chief Intelligence Correspondent at Fox News Channel from 2011 until I joined CBS News in 2019. Prior to that, from 1990-1996 I was a London-based radio reporter and TV correspondent for ABC News. In 1996, I joined Fox as a London-based correspondent covering the United Kingdom, Europe, and the Middle East. From 1998-2000, I was a New York City-based investigative correspondent for the Fox Broadcast network newsmagazine "Fox Files." After 9/11, I was named Homeland Security Correspondent covering the Homeland Security, FBI, and Justice Departments, and my reporting focused on anti-terrorism, surveillance, and espionage issues. In all, I have been reporting on national security and intelligence matters for 32 years.

3. Over the course of my career, I have covered matters involving all 18 elements of the U.S. Intelligence Community, including but not limited to, the FBI, the CIA, the Defense Intelligence Agency (DIA), the National Security Agency (NSA), the National Geospatial-Intelligence Agency (NGA), as well as the Director of National Intelligence (DNI). My investigative reporting in this area relies on confidential sources or information.

4. Over the course of my 32 years as a national security and intelligence reporter, I have carefully developed a reputation for protecting the confidentiality of my sources. I have never revealed a confidential source.

5. In 2017, in my role as a Chief Intelligence Correspondent at Fox, I was the lead reporter on three articles, and related broadcast reports, (collectively, "Reporting"), concerning a then-ongoing, multi-agency investigation into The University of Management and Technology ("UMT") and Yanping Chen. The three print articles were published on February 24, 2017, April 28, 2017, and June 28, 2017.

6. I never disclosed my confidential source(s) on those stories to any other person at Fox.

7. Over the course of my career, I have pursued reporting that results in concrete changes. For example, I worked on an investigative report that uncovered the true extent of the injuries U.S. servicemembers suffered from an Iranian ballistic missile attack on a U.S. base in Iraq in January 2020. The U.S. government had downplayed the injuries, even to the point of denying servicemembers the Purple Hearts they rightly deserved. As a result of the reporting, 50 soldiers received Purple Hearts. *See* https://www.cbsnews.com/news/purple-heart-iran-missile-attack-50-soldiers/. I recently received the Kevin Carmody Award for Outstanding Investigative Reporting for an investigation that exposed serious health hazards from toxic waste at a U.S.

military base in Uzbekistan where thousands of U.S. servicemembers have been stationed. *See* https://www.sej.org/winners-sej-20th-annual-awards-reporting-environment. That reporting drove legislation and culminated in President Trump signing an Executive Order in January 2021 requiring a comprehensive health study for those who had been stationed at the base. *See* https://www.cbsnews.com/news/uzbekistan-k2-karshi-khanabad-base-us-troops-radiation/; https://www.cbsnews.com/news/trump-executive-order-veterans-k2-karshi-khanabad/. None of this reporting would have been possible without confidential sources.

8. Based on my 32 years of experience reporting on national security and intelligence matters, I believe confidential sources, and the information they provide, are essential for informing the public on matters relating to national security, including information relating to the military, espionage, government surveillance, and homeland security.

9. Based on my experience, I believe that, without a reliable assurance of confidentiality, no source with access to important national security information with significant value to the public would be willing to bring that information to members of the press.

10. Compelling the disclosure of journalists' confidential sources in the national security and intelligence arena will have an enormous chilling effect on the flow of crucial national security information to the public—information that is central for ensuring that there is an informed electorate, which is a bedrock principle of our democracy. Fear of exposure will make sources less likely to serve as whistleblowers or otherwise act as confidential sources for such matters. Given the secrecy that naturally prevails in the national security and intelligence space, the absence of sources would make it impossible for the press to shine a light on the actions of the government and would blunt accountability. As a result, the role journalists play in informing the public would be diminished, and efforts to produce journalism that provides meaningful oversight

of sensitive national security as well as intelligence matters and ensures the accountability of government officials to the people would be crippled.

11.     If I were compelled to disclose a confidential source or sources in this litigation, I believe it would have a ripple effect, discouraging potential sources from confiding in other national security journalists. As a result, it would reduce the ability of my fellow reporters to inform the public and ensure accountability of the government to the voters. In addition, if I were compelled to disclose a confidential source or sources, my own professional reputation as a reporter who protects the confidentiality of sources—a reputation I have built over the course of 32 years—would be irretrievably damaged. Sources would be unlikely to confide in me, and I would no longer be able to produce the kind of journalism that has driven positive change benefitting the public and military servicemembers.

I declare under penalty of perjury that the foregoing is true and correct.

Date: July 27, 2022

_____
Catherine V. Herridge