**PUBLIC VERSION**

# EXHIBIT G

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

| | |
|---|---|
| YANPING CHEN | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:18-CV-3074 |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                   Fox News Network, LLC
              c/o CT Corporation System 1015 15th St NW, Suite 1000, Washington, DC 20005
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
        See Schedule A

| Place: See Schedule A | Date and Time: |
|---|---|
| | 06/09/2022 4:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  5|18|2022

          *CLERK OF COURT*
                                                          OR   _____
    _____                          _____
    *Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
Yanping Chen _____ , who issues or requests this subpoena, are:
Andrew C. Phillips, Clare Locke LLP ████████████████████

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## SCHEDULE A: SUBPOENA TO FOX NEWS NETWORK, LLC

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff Yanping Chen commands that non-party Fox News Network, LLC produce the following documents, electronically-stored information, or tangible things. Ms. Chen requests that Fox News Network, LLC produce the following materials electronically via file-sharing to Andrew C. Phillips, Clare Locke LLP, andy@clarelocke.com. If producing documents electronically is not possible, Ms. Chen's counsel will arrange to gather the documents from Fox News Network, LLC's office located at 1211 Avenue of the Americas, New York, NY 10036.

## DEFINITIONS

The following definitions shall apply to and are expressly incorporated into the descriptions of documents subject to this Subpoena, regardless of whether upper- or lower-case letters are used; and otherwise shall apply as follows:

1.      "Action" means the action referenced in the caption of the Subpoena to which this Schedule A is attached.

2.      "Complaint" means the Complaint filed in this Action on December 21, 2018, and any amended complaints filed in the Action thereafter. The Complaint is attached as Schedule B to this Subpoena.

3.      "FBI" means the Federal Bureau of Investigation and its departments, branches, subdivisions, agents, employees, and other representatives.

4.      "DOJ" means the Department of Justice and its departments, branches, subdivisions, agents, employees, and other representatives.

5.      "DOD" means the Department of Defense and its departments, branches, subdivisions, agents, employees, and other representatives.

- 1 -

6.      "DHS" means the Department of Homeland Security and its departments, branches, subdivisions, agents, employees, and other representatives.

7.      "Defendants" means the FBI, DOJ, DOD, and DHS, individually and together.

8.      "Personnel of Defendants" means any person presently or previously employed by, controlled by, or acting on behalf of Defendants, including but not limited to Dean McDonald, Elizabeth Farr, James Gillis, Joseph Trombo, Michael Tarantino, Peter Lennon, Stephen Rhoads, and Timothy Pappa.

9.      "Fox News" means Fox News Network, LLC and includes any affiliates, parents, subsidiaries, predecessors, successors, departments, divisions, assigns, and agents.

10.     "Personnel of Fox News" means any person presently or previously employed by, controlled by, or acting on behalf of Fox News, including but not limited to Pamela K. Browne, Catherine Herridge, and Cyd Upson.

11.     "You" and "your" mean Fox News Network, LLC and includes any affiliates, parents, subsidiaries, predecessors, successors, departments, divisions, assigns, and agents.

12.     "Plaintiff" or "Dr. Chen" mean Dr. Yanping Chen, a U.S. citizen born ███████ ██████ in Beijing, China and residing at ████████████████████████

13.     "The University" means the University of Management and Technology, located at 1901 North Fort Myer Drive, South Building, Suite 700, Arlington, Virginia.

14.     "The Search" or "the Searches" mean the December 5, 2012 searches of Dr. Chen's residence at 2122 21st Road North, Arlington, Virginia and the University at 1901 North Fort Myer Drive, South Building, Suite 700, Arlington, Virginia.

15.     "The Investigation" means the government investigation pursuant to which the Searches were executed, as well as any associated or related investigations or actions.

16.     "Communications" means the transmittal of information by or through any means, including but not limited to speech, writings, language (machine, foreign, or otherwise), graphics, computer or digital media of any kind (including, but not limited to electronic mail, SMS, text messaging, videos, and voicemail), magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, sound, radio, video, telecommunications, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types, digital and other tapes, or through any other means of transmission, whether direct, indirect, or through an intermediary.

17.     "Document" refers to writings and electronically stored information—including, without limitation, electronic communications, correspondence, drawings, graphs, charts, photographs, sound recordings, images, and other data and data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

18.     "Private Documents and Information" means any and all documents and information concerning Dr. Chen and/or the University that were provided to or obtained by personnel of Fox News from a third party and that were presented in, referred to, or considered in relation to the reports attached to the Complaint as Exhibits B, D, and E and/or the corresponding television or online broadcasts, including, without limitation:

      a.  Any photograph purporting to depict Dr. Chen;

      b.  Any FBI FD-302 Form relating to or referring to Dr. Chen;

      c.  Any immigration or naturalization document relating to Dr. Chen;

      d.  Any internal government email communication involving Personnel of Defendants and relating to Dr. Chen, the University, and/or the Investigation;

e. Any PowerPoint presentation, compilation, and/or report concerning Dr. Chen, the University, and/or the Investigation.

19.     "Person" means a natural person, firm, company, partnership, corporation, association, government, department, agency, organization, trust, estate, or any other entity, regardless of whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government controlled.

20.     "Concerning," "in relation to" or "relating to" have their commonly understood meanings, to include comprising, reflecting, evidencing, constituting, pertaining to, dealing with, referring to, respecting, consisting of, embodying, establishing, connected with, commenting on, describing, analyzing, and/or showing.

21.     "Involving" means any form of participation, direct or indirect, individual or collective, personal or institutional, including but not limited to controlling, directing, controlling, directing, supervising, managing, leading, reviewing, approving, operating, influencing, organizing, analyzing, evaluating, performing, scheduling, supporting, assisting, aiding, investigating, auditing, attending, advising, consulting, communicating, discussing, drafting, revising, preparing, reading, updating, briefing, reporting, monitoring, receiving Communications regarding, and taking any other form of official or unofficial action regarding.

22.     The connectives "and" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents that might otherwise be construed outside of its scope. "Including" shall also be construed to mean "without any limitation." The use of the singular form of any word includes the plural and vice versa.

- 4 -

# **INSTRUCTIONS**

Unless otherwise indicated, the following instructions apply to the requests for production of documents below and your responses thereto:

1. The relevant time period for these Requests is from December 1, 2012 until July 31, 2017.

2. References to any non-natural person (e.g., corporation, partnership, etc.) shall be deemed to include any of that entity's affiliates, agents, assigns, departments, divisions, parents, predecessors, subsidiaries, and successors, and its and their respective current and former employees.

3. Should you find the meaning of any term to be unclear, then you should assume a reasonable meaning, state what that assumed meaning is, and respond on the basis of that assumed meaning.

4. In answering each request for production of documents, you are requested to furnish all documents, however held or obtained, that are in your possession, custody or control.

5. If, after a good faith search, you conclude there are no documents responsive to a particular request, so state.

6. All documents shall be produced as they are kept in the usual course of business, or organized and labeled to correspond with each request, in accordance with Rule 45(e) of the Federal Rules of Civil Procedure. Documents shall be produced in accordance with the specifications at Schedule C to this Subpoena.

7. For any responsive documents or information that have been withheld under claim of privilege or work product protection, identify the document and state the basis for the privilege or protection, and provide the following information for each document that you have withheld:

- 5 -

a. The date on which the document was prepared or the communication occurred, or an estimate thereof if no date appears on the document;

b. The identity of each author, writer, sender, creator, or initiator of the document, and each such person's title and his or her employer or firm;

c. The identities of all recipients, addressee(s), or parties for whom such document was intended or to whom the document was sent;

d. A description of the type of document and general subject matter of the document;

e. A description of the basis for withholding of the document(s) or information sufficient to permit Defendants to assess the applicability of the privilege claimed; and

f. Produce any non-privileged portion of such document, with the portion claimed to be privileged redacted.

8.      If you are withholding or intend to withhold any document (or any part of a document) on the basis of an objection, state so in your response. If you note an objection but indicate that responsive documents are nonetheless being produced, we will construe your statement as a representation that you are producing all documents responsive to the request notwithstanding the objection, save for any privileged documents that are identified on a privilege log. *See* Fed. R. Civ. P. 45(d)(2)(B).

9.      Consecutively number each page of all documents or information produced in response to these Requests. This page numbering must be separate from and must not alter any original numbering on the responsive documents or information.

10.      Each responsive document or information shall be produced in its entirety, and no portion of any document or information shall be edited, cut, masked, redacted, or otherwise altered, unless for applicable privilege logged according to the procedures set forth above.

11.      All attachments to documents or information responsive to these Requests shall be produced with, and attached to, the responsive documents or information.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

Produce all Private Documents and Information in the possession of Fox News, in the form in which they were received by personnel of Fox News.

**REQUEST NO. 2:**

Produce all Documents and Communications comprising, reflecting, or relating to transmission or provision of the Private Documents and Information to personnel of Fox News.

**REQUEST NO. 3:**

Produce Documents or Communications sufficient to identify the individual(s) that transmitted or provided the Private Documents and Information to personnel of Fox News.

**REQUEST NO. 4:**

Produce all Communications between or among, on the one hand, Catherine Herridge, Pamela Browne, and/or Cyd Upson, and, on the other hand, Stephen Rhoads and/or Timothy Pappa.

# Schedule B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YANPING CHEN
2122 21st Road North
Arlington, Virginia 22201

       Plaintiff,

   v.

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Ave. NW
Washington, DC, 20535

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC, 20530

U.S. DEPARTMENT OF DEFENSE
The Pentagon
Washington, DC 20301

U.S. DEPARTMENT OF HOMELAND
SECURITY
245 Murray Lane, SW
Washington, DC 20528,

       Defendants.

Civil Action No. 1:18-cv- 3074

# COMPLAINT

1.    Plaintiff Yanping Chen brings this action against Defendants the Federal Bureau of Investigation, the United States Department of Justice, the United States Department of Defense, and the United States Department of Homeland Security (collectively, the "Government" or "Defendants"), for monetary, injunctive, and declaratory relief to rectify injuries she has suffered as a result of the Government's illegal and unwarranted

public disclosure of her personal information in violation of the Privacy Act, 5 U.S.C. § 552a.

2.  Enacted in the wake of the Watergate scandal, the Privacy Act balances the federal government's occasional need to collect sensitive information about U.S. citizens with those citizens' constitutional rights, including the right to privacy. The Privacy Act does this in relevant part by prohibiting government agencies from publicly disclosing private information about individuals without their consent. One or more of Defendants here violated these prohibitions by leaking to Fox News a wealth of private information and documents, including family photographs seized from Dr. Chen's home as part of an investigation that resulted in no charges. These leaks were unlawful and resulted in serious and ongoing harm to Dr. Chen, her family, and her business.

3.  Defendants have disregarded the protections afforded by the Privacy Act—and by the Constitution—by using the federal government's investigatory powers to gather extensive information about Dr. Chen and then selectively releasing information to smear her reputation and damage her livelihood.

## PARTIES

4.  Plaintiff Yanping Chen is a citizen of the United States and a resident of the Commonwealth of Virginia.

5.  Defendant Federal Bureau of Investigation ("FBI") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

6.  Defendant United States Department of Justice ("DOJ") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

7.     Defendant United States Department of Defense ("DOD") is an executive agency of the United States America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1). The Naval Criminal Investigative Service ("NCIS") is a civilian law enforcement agency within DOD.

8.     Defendant United States Department of Homeland Security ("DHS") is an executive agency of the United States of America and an "agency" within the meaning of 5 U.S.C. § 552a(a)(1).

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552a(g)(1)(D) because Dr. Chen alleges she has been adversely affected by the Government's violations of the Privacy Act and of her rights under the U.S. Constitution.

10.    The District of Columbia is a proper venue for this action pursuant to 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391.

## STATEMENT OF FACTS

11.    Dr. Chen was born in China. She came to the United States in 1987 to study as a visiting scholar at George Washington University, following on her work as a cardiologist and medical researcher with the Chinese astronaut program. Dr. Chen earned a Master's Degree and a Ph.D. in Public Policy from George Washington University.

12.    While at George Washington University, Dr. Chen met her now-husband, Dr. J. Davidson Frame, a U.S. citizen. Dr. Chen chose to make the United States her home, becoming a lawful permanent resident in 1993 and a U.S. citizen in 2001.

13. In 1998, Dr. Chen founded the University of Management and Technology, an educational institution that provides post-secondary and graduate education to working adults. The university is headquartered in Arlington, Virginia. More than 12,000 students have received degrees from the university over its 20-year history.

14. Dr. Chen wholly owns the University of Management and Technology and derives a substantial part of her income from its operations.

15. In 2010, Dr. Chen—like many Chinese-American scientists around that time—became the focus of an FBI investigation. The investigation appeared to focus on statements Dr. Chen made on immigration forms concerning her work in the 1980s as a scientist for the Chinese astronaut program.

16. Thereafter, over a six-year period, the FBI probed deeply into Dr. Chen's personal and professional life. Agents of the U.S. Government conducted interviews of her family and colleagues, obtained her immigration records, monitored her travel, seized her computer from her as she was transiting through an airport, employed an undercover informant to covertly gather information about her, and secretly monitored and recorded her conversations.

17. During the course of the investigation, in 2012, FBI Special Agent Timothy S. Pappa applied to the U.S. District Court for the Eastern District of Virginia for warrants to search Dr. Chen's home and the main office of the University of Management and Technology, both located in Arlington, Virginia.

18. On December 5, 2012, the FBI executed search warrants for Dr. Chen's home and the main office of the University of Management and Technology. NCIS and DHS personnel were present during the FBI's searches.

19.   Even though the court had ordered that the warrant applications and warrants be kept secret and under seal, news media reported on the searches as they occurred.

20.   During the searches, the FBI collected 51 boxes of materials from Dr. Chen's home and 24 items from her office.  Those materials included tax records and business documents, family photographs, family and personal communications, business communications, personal memorabilia, computers and digital storage devices (including an iPad and two iPods), video tapes, and cell phones. The personal photographs seized from Dr. Chen's home included photographs that showed her at home with her husband; posing with her then-minor daughter, also a U.S. citizen; and paying respects at her father's gravesite.

21.   The FBI labeled and stored the materials seized from Dr. Chen's home using labels that listed a specific file number, i.e., 200D-WF-240088; the date of seizure; a designated item number; a description of the item; and the location of the search (which, in the case of the searches of Dr. Chen's home, included her personal residential address).  Those materials accordingly became part of "a group of any records ... from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned" to records related to Dr. Chen.  5 U.S.C. § 552a(a)(5) (definition of "system of records").  Attached hereto as Exhibit A is a copy of a photograph that fairly and accurately depicts one of the labels that the FBI used to identify seized materials.

22.   After six years of investigation, in March 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Dr. Chen's attorney that no charges would be filed against her.

23.     On information and belief, starting at some time before late February 2017, one or more

        agents of the FBI (or, possibly, other Defendants) unlawfully disclosed to one or more

        persons associated with Fox News various records and information pertaining to Dr.

        Chen and her private affairs that the FBI had collected or generated in the course of its

        investigation of her and that the FBI thereafter had stored in one or more of its systems of

        records (hereinafter the "Leaked Records").   On information and belief, some of the

        Leaked Records had also been stored in one or more systems of records of other

        Defendants.

24.     As a direct and foreseeable result of the unlawful disclosure of the Leaked Records to

        Fox News, Fox News in turn published, broadcast, and otherwise disseminated much of

        the contents of the Leaked Records to its nationwide audiences, resulting in personal,

        professional, and financial harm to Dr. Chen.

25.     On February 24, 2017, Fox News aired the first of three negative reports about Dr. Chen

        that drew heavily from contents of the Leaked Records.  In an "exclusive" report during

        its primetime broadcast, which draws millions of viewers, Fox News used some of the

        Leaked Records as purported support for the report's allegation that, many years earlier,

        Dr. Chen had lied on her immigration forms about whether she had previously worked

        for the Chinese military.  The print version of the February 24 report is attached hereto as

        Exhibit B.

26.     Among other things, the February 24, 2017 Fox News report revealed information

        derived from, and images of, an FBI FD-302 Form, bearing file number "200D-WF-

        240088," that purported to memorialize an FBI interview of Dr. Chen's daughter.

        Attached hereto as Exhibit C is an image of this form from the February 24, 2017 Fox

News Report. This Fox News Report also displayed images of personal photographs seized from Dr. Chen's home during the FBI search. On information and belief, before they were disclosed to Fox News, that FBI form and those photographs had been stored in one or more FBI system(s) of records.

27. The February 24, 2017 Fox News report also revealed data taken from, and images of, Dr. Chen's immigration and naturalization forms; Dr. Chen's certificate of U.S. Citizenship, which includes her birthdate, INS Registration Number, height, and marital status; and Dr. Chen's immigration application. On information and belief, before they were disclosed to Fox News, these documents were stored in one or more systems of records maintained by the FBI and/or in one or more systems of records maintained by the U.S. Citizenship and Immigration Services, a component of Defendant DHS.

28. The February 24, 2017 Fox News report stated that representatives of Fox News had reviewed other documents showing that the FBI searched Dr. Chen's home and the University of Management and Technology's main office as part of a counter-intelligence case. On information and belief, those documents were also among the Leaked Records and, before having been disclosed to Fox News, were stored in one or more systems of records maintained by the FBI and/or in one or more systems of records maintained by the other Defendants.

29. The February 24, 2017 Fox News report also selectively discussed details of FBI interviews of Dr. Chen and her daughter as well as information purportedly drawn from Dr. Chen's immigration paperwork. On information and belief, these aspects of the report were also drawn from or based upon some of the Leaked Records.

30.    Fox News published and broadcast additional "exclusive" reports about Dr. Chen on
       April 28, 2017 and June 28, 2017.   These reports, like the initial report, subsequently
       received additional coverage from other media sources.   The print version of the April 28
       report is attached hereto as Exhibit D and the print version of the June 28 report is
       attached hereto as Exhibit E.

31.    The April 28, 2017 Fox News report publicly displayed the contents of additional
       personal photographs that the agents of one or more of the Defendants seized from Dr.
       Chen's home, including photographs depicting Dr. Chen's daughter and the gravesite of
       her father. The June 28, 2017 Fox News report publicly displayed similar material.

32.    Fox News continues to host the reports based on the Leaked Records and images of some
       of the Leaked Records themselves on its website.

33.    Before the government's execution of the search warrant at Dr. Chen's home, the only
       known copies of the photographs published by Fox News were kept in Dr. Chen's home.

34.    On May 8, 2017, James Gillis, an Assistant U.S. Attorney involved in the investigation of
       Dr. Chen and an agent of Defendant DOJ, conceded during a hearing before Magistrate
       Judge Anderson of the United States District Court for the Eastern District of Virginia
       that the photographs featured in the Fox News reports "came from the search take."

35.    On June 25, 2018, Dr. Chen, through her counsel, asked the Office of Inspector General
       for Defendant DOJ to investigate the illegal disclosure of the Leaked Records.  The DOJ
       Office of Inspector General advised counsel for Dr. Chen that it would not conduct any
       such investigation.

36.    On November 15, 2018, the Office of Inspector General for Defendant DOJ told counsel
       for Dr. Chen, as part of its purported rationale for declining to conduct the requested

investigation, that Defendants DOD and DHS (or components thereof) had also had access to the records in Dr. Chen's FBI file, and therefore could have been sources of any leak that resulted in the Fox News reports. This representation by a representative of Defendant DOJ is a part of the basis for naming DOD and DHS as additional defendants.

37. The widespread publication, broadcast, and dissemination of the Fox News reports that were initially aired on February 24, 2017, April 28, 2017, and June 28, 2017 (hereinafter the "Leak-Based Fox News Reports"), which were based on the unlawfully Leaked Records—which, in turn, had been obtained during the course of a U.S. government investigation of Dr. Chen that resulted in no charges whatsoever—upended Dr. Chen's personal and professional life.

38. The unwanted storm of negative media attention focused on Dr. Chen that resulted from Defendants' disclosure of the Leaked Records, and from the subsequent dissemination of the Leak-Based Fox News Reports, was so severe that it caused persons unknown to Dr. Chen to send hateful mail and other communications to, and direct death threats at, Dr. Chen and other staff at the University of Management and Technology.

39. Dr. Chen suffered financial harm as a result of the illegal disclosure of the Leaked Records by one or more of the Defendants.

40. The University of Management and Technology's enrollments and revenues sharply decreased in the wake of the Leak-Based Fox News Reports. This decrease has had a severe and negative effect on Dr. Chen's income and the value of her personal investment in the University of Management and Technology, which she wholly owns.

41. The illegal disclosures of the Leaked Records to Fox News also led to inquiries from Members of Congress and the DOD about Dr. Chen and the University of Management and Technology.

42. On January 23, 2018, and apparently as a direct consequence of the Leak-Based Fox News Reports, DOD suspended (and on March 28, 2018 ultimately terminated) the University of Management and Technology's long-standing participation in the DOD Tuition Assistance program. The Tuition Assistance program pays a significant portion of tuition expenses for military students and is a critical source of funding for servicemembers seeking to further their education. The termination of the university's participation in the Tuition Assistance program directly caused further decreases in enrollments and revenues to the University of Management and Technology, directly resulting in further substantial injury, including substantial personal financial losses, to Dr. Chen.

43. According to the Leak-Based Fox News Reports, the FBI and U.S. Attorney's Office refused to provide any comment on the record to Fox News regarding the matters discussed and disclosed in those reports. The reports did, however, cite anonymous sources who reportedly had described conflict between the FBI and the U.S. Attorney's Office over whether to bring charges against Dr. Chen. The same Fox News reports also cited (but did not name) a Special Agent in the FBI's Washington Field Office who, according to the reports, was upset that the University of Management and Technology was continuing to participate in the DOD's Tuition Assistance program. Attached hereto as Exhibit F is an image of an email from the unnamed Special Agent to an FBI informant displayed in the February 24, 2017 report.

44.    Soon after Dr. Chen was informed that no charges would be brought against her, and in violation of federal law, one or more agents of the Defendants, who possessed or had access to confidential FBI records pertaining to the investigation, caused the Leaked Records to be disclosed to one or more employees or agents of Fox News.

## COUNT ONE: VIOLATION OF THE PRIVACY ACT

45.    Plaintiff hereby restates and incorporates by reference paragraphs 1-44 of this Complaint as if fully set forth herein.

46.    The Privacy Act requires that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," subject to certain exceptions. 5 U.S.C. § 552a(b).

47.    While there are limited exceptions to this prohibition on disclosure, *see* 5 U.S.C. § 552a(b)(1) through (12), none of those exceptions authorized or allowed the disclosure to Fox News of the records and information concerning Dr. Chen that are the subject of this suit.

48.    At no time did Dr. Chen authorize any of the Defendants or their agents to disclose any information pertaining to her to anyone outside the federal government, including anyone associated with Fox News.

49.    The United States is liable for actual damages, costs of the action, and attorneys' fees if the court determines that an agency willfully or intentionally disclosed records pertaining to an individual without their permission. 5 U.S.C. § 552a(g)(4).

50.     The Leaked Records broadcast in the Fox News reports included "records" within the meaning of the Privacy Act. These records could not have been obtained by Fox News except from the Defendants, either directly or indirectly.

51.     At least some and likely all of the Leaked Records, before being unlawfully disclosed as described above, were contained in a system of records within, and under the control of, the FBI, the DHS, and/or other Defendants.

52.     As a matter of policy and practice, the records and information that the FBI collects or creates during the course of an investigation are incorporated into and thereafter maintained in the FBI's Central Records System, which the FBI has designated a "system of records" for Privacy Act purposes. *See* 63 Fed. Reg. 8659, 8671; *see also* 66 Fed. Reg. 17200; 66 Fed. Reg. 29994. Such records also may be accessed through the SENTINEL system, which allows for electronic case management. On information and belief, this policy and practice was followed with respect to at least some, if not all, of the Leaked Records.

53.     Some of the Leaked Records (including but not necessarily limited to immigration forms and other records pertaining to Dr. Chen) were contained in, or derived from records contained in, a system of records maintained by DHS. Some or all of these DHS records were maintained in the Citizenship and Immigration Data Repository, which DHS has designated a "system of records" for Privacy Act purposes. *See* 75 Fed. Reg. 54642, 54644.

54.     The disclosure or disclosures of the Leaked Records by one or more employees or agents of the Defendants was a willful and intentional violation of the Privacy Act.

55.     As a direct and foreseeable result of the illegal leak or leaks of Dr. Chen's private information to Fox News, three Fox News reports were published and broadcast, leading to the destruction of Dr. Chen's livelihood and the termination of the University of Management and Technology's participation in DOD's Tuition Assistance program.

56.     Although the government has never charged Dr. Chen in court with any misconduct, her reputation has suffered substantial harm and she has been financially damaged as a result of Defendants' unlawful conduct. The illegal leak of personal information has diminished Dr. Chen's income, limited her professional opportunities, and decreased the value of the university that she wholly owns and into which she has invested the last two decades.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a.      Enjoin Defendants from further unauthorized and illegal disclosures of Dr. Chen's private information;

b.      Award Dr. Chen actual damages, the exact amount of which is to be determined at trial;

c.      Award Dr. Chen reasonable costs and attorney's fees as provided by the Privacy Act;

d.      Refer any Government officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

e.      Direct the Defendants to state publicly that the documents underlying the Fox News reports were illegally and selectively leaked with the intent to harm Dr. Chen; and

f.      Grant such further and other relief as this Court deems just and proper.

Dated: December 21, 2018

Respectfully submitted,

**/s/ Patrick Carome**

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Justin Baxenberg (D.C. Bar No. 1034258)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
justin.baxenberg@wilmerhale.com

*Counsel for Plaintiff*

# Exhibit A



# Exhibit B

12/13/2018
Case 1:18-cv-02074-CRC Document 97-8 Filed 08/08/22 Page 28 of 51
Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties



Print    Close

## Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties

By Catherine Herridge, Pamela Browne, Cyd Upson, ,

Published February 24, 2017

Fox News



Undated photo: UMT academic dean J. Davidson Frame, right, salutes his wife, left, UMT president Yanping Chen Frame.

**EXCLUSIVE:** Based just four miles from the Pentagon in northern Virginia is an innocuous-sounding online school for "management and technology" – which a Fox News investigation reveals has been at the center of multiple federal probes about its leadership's alleged ties to the Chinese military and whether thousands of records from U.S. service members were compromised.

The University of Management and Technology in Rosslyn, Va., which opened in 1998, touts a campus in Beijing and "partnerships" with universities around the world. The U.S. taxpayer-funded school claims to have had 5,000 graduates in the last five years and to be "especially proud of our students stationed in US military bases around the globe."

However, there is another side to the school's leadership that drew the attention of the FBI, the Justice Department, the Pentagon, Immigration and Customs Enforcement, and the Naval Criminal Investigative Service (NCIS) since at least 2012 -- and perhaps as early as 2009.

In December 2012, the FBI made two very public raids of UMT and the northern Virginia home of university president Yanping Chen Frame and its academic dean, her husband J. Davidson Frame. Documents reviewed by Fox News show it was a counter-intelligence case, known as a "200d," one of the most highly sensitive categories for a federal probe.

Photos, exclusively obtained by Fox News, appear to show Chen as a young officer in the People's Liberation Army, the military wing of China's communist party. Another photo shows Frame saluting his wife, Chen, who is holding a uniform. Three independent experts said it was a Chinese military colonel's uniform.



This undated photo appears to show Yanping Chen Frame before she came to a U.S. graduate school.

Yet since those FBI raids, UMT has continued to collect more than $6 million from Defense Department tuition assistance programs as well as the Department of Veterans Affairs through the post-9/11 GI bill.

"It's a bad deal for the soldiers, and it's a bad deal for the taxpayer," Stephen Rhoads, a military veteran turned whistleblower who says he worked with the FBI on the case, told Fox News in an exclusive interview. "Nobody's getting what they paid for."

Rhoads said he worked at UMT recruiting vets when the FBI approached him in 2012 regarding the federal investigation. Emails and other documents reviewed by Fox News corroborate key elements of Rhoads' story.

"One of the first sentences she [Chen] ever threw out -- after she found out I was an Army officer, was, 'Well ... I was a colonel in the army,'" Rhoads explained. "During our first face-to-face encounter, absolutely ... she did not deny it."

Rhoads said he thought Chen meant the U.S. Army, and asked whether she trained in Texas. "She laughed and said, 'Oh, no, I was in the Chinese army, you know.'"

Chen, 64, came to the United States in 1987 from Beijing on a non-immigrant visa with her daughter Lele Wang. The Chinese government funded Chen's research at George Washington University where she received a Ph.D. in Public Policy in 1999, the year after UMT was created.

While Rhoads says Chen was upfront about her Chinese military experience, he claimed she hid those ties on immigration applications. Fox News reviewed Chen's immigration records where she consistently denied ties to the Chinese or any foreign military. When asked, "Have you ever been a member of, or in any way affiliated with, the communist party or any other totalitarian regime?" Chen checked "no." She would later become a naturalized U.S. citizen.

While there are no U.S. laws preventing a naturalized citizen from running a school like UMT, the Fox News investigation found that Chen's ties to the Chinese military appear to run deep.

Three outside experts consulted by Fox News confirmed the authenticity of the Chinese uniforms in the photos of Chen and Frame.

"If somebody was wearing that uniform, I would say that there's a very great likelihood that they were in the People's Liberation Army," Dennis Blasko, a leading Chinese military expert said, referring to the photo of what appears to be Chen in uniform.

Asked about the photo of Frame saluting his wife, Blasko observed, "This is a P.L.A. officer's uniform — active duty — from between 1987 and 2007 ... And from the epaulettes, we can see this -- three stars and two red stripes would be a full colonel."

Blasko emphasized that P.L.A. insignia can only be purchased with the permission of the Chinese military, and "you would have to have a certificate from your unit to buy [it.]"

Blasko, a West Point graduate who worked as a military attache in China, wrote "The Chinese Army Today: Tradition and Transformation for the 21st Century," one of the definitive books about the Chinese military.

In her George Washington University dissertation, Chen thanks her father, a P.L.A. general, who directed arms and technology development. "My father, General Chen Bin, gave me the inspiration to pursue this area of study," Chen wrote. "As former Chairman of COSTIND (1982-87), he was an important player in supporting and directing the (Chinese) space program."

In her 2012 FBI interview, Chen denied she ever was a colonel in the P.L.A., emphasizing she had worked as a doctor in the Chinese space program. Chen said it was a "civilian agency." The interview summary suggests federal agents challenged Chen's characterization. Outside experts told Fox News the Chinese civilian and military space programs are intertwined.

While Chen's immigration application is more than a decade old, and past the five-year statute of limitations, there may be a "continuation" of fraud, according to Ray Fournier who worked with the State Department's office of diplomatic security for more than 20 years. Fournier, an expert on visa and passport fraud, worked for the Joint Terrorism Task Force in San Diego, where his investigative work led to an arrest warrant for the American-born cleric Anwar Awlaki, who was later killed by the CIA.

Fournier said, "If she has marked 'no' on the petition, but if in fact, the answer is yes … then we have a false statement. And where that comes into play, most assuredly, is in the arena of passport fraud. It is this application." With each renewal of Chen's U.S. passport, Fournier said, investigators should determine whether the falsehood was repeated. "These are issues of inadmissibility," he said.

While going through the immigration process, Chen was also launching what would become a multi-million-dollar online academy. But that academy's work would eventually attract the attention of federal investigators, who questioned whether students' records were remotely accessed from China.

Before the 2012 raid, Chen's daughter Lele Wang who also works at UMT, told the FBI that "'Contractors' in the UMT Beijing Office have [administrator] privileges" to access the student database.

Rhoads said UMT recruited service members who provided their military history when they enrolled. "It got uploaded into an O-drive, they called it … their personal military bio, you know, where they were trained, how they were trained, how long, that could be remotely accessed."

Rhoads said Chen had a particular interest in Ohio's Wright-Patterson Air Force Base, which is a research and technology hub.

And there was more. "She wanted me to go out to these remote reserve and National Guard centers, you know … in small-town America and start gettin' U.S. soldiers from those centers. Get their information, basically. Who's out there in the woods? How many units we got?"

Rhoads recalled to Fox News that he was instructed by the FBI to tell Chen that he was going to testify before a Virginia grand jury. "They wanted to, I guess see how … she would react."

At the time, Rhoads said Chen had no idea he was working with the bureau.

He said, "Well, at this point, she didn't know I was working for them at all. And she's like, 'Oh, you don't tell them anything. We don't know each other. You don't … know what you don't know,' was her buzz phrase. 'You don't -- you don't know I was a colonel in the P.L.A. They'll never have proof to say that'."

Emails obtained by Fox News show Rhoads and at least one FBI agent alerted the Defense Department, but another Memorandum of Understanding (MOU) was signed in 2014 through 2019 allowing UMT to collect millions in federal taxpayer aid.

An FBI agent in one email exchange wrote, "I let my management and the AUSAs [assistant U.S. attorneys] know about her renewal with DoD. Incredible."

Asked about the renewal, as well as whether DoD personnel were warned and additional steps were taken to vet UMT, the DoD chief for Voluntary Education Assistance, Dawn Bilodeau, referred questions to Pentagon spokesperson Laura Ochoa. In an email, Ochoa said, "In light of reports regarding University of Management and Technology (UMT), the Department is reviewing the DoD MOU signed between the institution and the DoD for compliance."

No one has been charged with any crime in connection with the investigation. Sources told Fox News that Assistant U.S. Attorney for the Eastern District of Virginia James P. Gilllis got the case, but there was a disagreement with the FBI over how to proceed, based on the case law and the extent to which sources and methods would be revealed.

Neither the FBI nor a spokesman for Gillis would comment to Fox News but separately, a spokesman for NCIS said they cannot comment on an "ongoing investigation." A FOIA request filed by Fox News Senior Executive Producer Pamela Browne confirmed an NCIS investigative file for UMT.

Fox News made repeated requests by phone and via email for interviews with Yanping Chen and J. Davidson Frame. After Chen's daughter said they were too busy to prepare and traveling out of town, Fox News went to their offices in Rosslyn, Va.

A school representative, who would not identify himself, confirmed Chen and Frame were in the office that day, but after learning Fox News was at the front desk, the couple refused to come out. Fox News' questions covered how UMT was run, Chen's suspected military ties, whether service members' records are secure, and how millions in taxpayer dollars are spent.

Fox News also sent a series of questions to the Chinese embassy in Washington, D.C., but there was no immediate response.

According to UMT, nearly 20,000 students have studied there, while 10,710 have earned degrees.

Catherine Herridge is an award-winning Chief Intelligence correspondent for FOX News Channel (FNC) based in Washington, D.C. She covers intelligence, the Justice Department and the Department of Homeland Security. Herridge joined FNC in 1996 as a London-based correspondent.

🖨 Print   ⊗ Close

**URL**
https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather
Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. All market data delayed 20 minutes. New Privacy - New Terms of Use(What's New) - FAQ

# Exhibit C

FD-302a (Rev. 05-08-10)

WANG Lele , On 05/08/2012 , Page 3

SONIS is a UNT student database system. UNT students can
access a portal online where they can view their course grades as
well as their personal information, such as work and home
addresses. Overseas UNT students, such as mainland Chinese
students who attend UNT courses in classrooms rather than online,
do not have access to SONIS, however, their student records are
also put into the SONIS database. Those records are managed by the
UNT Beijing office. "Contractors" in the UNT Beijing office have
administer privileges to the SONIS system in order to enter records
for the mainland Chinese students.

WANG only knows that CHEN worked "space-related stuff"
before she came to the United States.

FOX
NEWS
channel

FEDS PROBE CHINA LINKS
FBI: STUDENT DATABASE COULD BE ACCESSED FROM CHINA
SPECIAL REPORT EXCLUSIVE

# Exhibit D

12/13/2018
Case 1:18-cv-03074-CRC Document 97-8 Filed 08/08/22 Page 35 of 51
Congress investigating taxpayer-backed school over alleged ties to Chinese military after Fox News report



🖨 Print   🅧 Close

# Congress investigating taxpayer-backed school over alleged ties to Chinese military after Fox News report

By Catherine Herridge, Pamela Browne, Cyd Upson, ,

Published May 01, 2017

Fox News

**EXCLUSIVE:** Four congressional committees are demanding answers from the FBI and departments of Justice and Defense about a taxpayer-funded school that markets to the military, after a Fox News investigation exposed alleged ties between the university's leadership and the Chinese military.

The ongoing Fox News investigation has focused on the Virginia-based University of Management and Technology, its president Yanping Chen Frame and the school's academic dean, J. Davidson Frame, Chen's husband. UMT was raided by the FBI in 2012 as part of a counterintelligence investigation, but multiple sources told Fox News the case ran into roadblocks once it reached the U.S. attorney's office.

"There's not only a lot of smoke coming out of this one, there's some fires out there that need to be extinguished and some people that really have to answer the questions," House Oversight Committee Chairman Jason Chaffetz, R-Utah, said.

In a letter to Defense Secretary James Mattis on April 12, Chaffetz said military service members and their personnel records remain at risk. He questioned why the Defense Department continues to fund the school with taxpayer dollars through the GI Bill and the tuition assistance program.

"There was no obligation to give this money. They didn't have to give this money. Somebody made a proactive decision to authorize this, to move forward, and then why not cut it off?" Chaffetz said.

Since the 2012 FBI raid, UMT received more than $6 million. Some $250,000 has been received by the school since Fox News aired its first report in February.

"It's a bad deal for the soldiers ... it's a bad deal for the taxpayer," said former UMT employee Stephen Rhoads, a U.S.-veteran-turned-whistleblower who says he worked as an FBI informant on the case. "It absolutely disgusts me and needs to stop."

After the Fox News investigation, the Defense Department put the school under review but continues to fund it. When he worked there, Rhoads said the school got more than 250,000-$300,000 per month in taxpayer dollars.



Undated photo of Yanping Chen and family wearing PLA uniforms. (Exclusively obtained by Fox News)

Photos obtained by Fox News apparently show Chen wearing the uniform of a young officer in the Chinese military of the People's Liberation Army, known as the PLA, along with her family. In another undated photo, Chen appears to salute the grave of her father, Chen Bin, who was a senior general in the PLA in charge of technology and arms acquisition.

"Her father joined the Communist Party in the 1930s. He supposedly participated in the Long March and that ... gives her credentials not unlike being an officer in the continental army," said Peter Mattis, a fellow with the Jamestown Foundation and leading expert on China. "The Long March," between 1934-1935, has long been referred to as a bloody pillar of the Chinese Communist Revolution which ultimately led to the creation of the People's Republic of China.



Undated photos of Yanping Chen's father, Gen. Chen Bin. (Exclusively obtained by Fox News)

Mattis said a school like UMT would be attractive to the Chinese military.

"You get what you'd call a curated database. You're not just getting a database of a lot of Americans. You're getting a database of people who are interesting to you, people who work in the U.S. military, who have access to a sensitive technology," Mattis said. "This is valuable to China for two reasons. The first is, militaries everywhere want to know what a potential adversary might look like -- what are their capabilities, how will they act? The second is this might also serve as a vehicle for recruiting individuals."

Mattis added, "If intelligence is a numbers game and maybe one out of 100 or one out of 500 people are willing to commit treason, then the faster you can go through those numbers, the better off you are. They're looking for former officials, classmates, spouses, friends and they have no problem recruiting someone with only secondhand access to information."

Fox News has confirmed that the Naval Criminal Investigative Services (NCIS) is also investigating the UMT. Separately, multiple sources told Fox News that the U.S. attorney for the Eastern District of Virginia, James P. Gillis, declined to prosecute in 2014, but that may be about to change.

The FBI, the U.S. attorney for the Eastern District of Virginia and the Defense Department declined to comment, citing the ongoing probe.



Undated photo of Yanping Chen and her husband J. Davidson Frame, who run the University of Management and Technology in Virginia. (Exclusively obtained by Fox News)

Chaffetz stressed his dismay with the reaction of the Department of Justice. "Just turning the other cheek on something that appears at least on the surface to be so blatant -- that begs the question, what are the 100,000-plus people at [the Department of Justice] doing?"

Fox News has an open invitation for an interview with Yanping Chen and J. Davidson Frame. They told Fox News in February they were too busy.

Catherine Herridge is an award-winning Chief Intelligence correspondent for FOX News Channel (FNC) based in Washington, D.C. She covers intelligence, the Justice Department and the Department of Homeland Security. Herridge joined FNC in 1996 as a London-based correspondent.

🖨 Print    ⊗ Close

**URL**

https://www.foxnews.com/politics/congress-investigating-taxpayer-backed-school-over-alleged-ties-to-chinese-military-after-fox-news-report

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather

Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. All market data delayed 20 minutes. New Privacy - New Terms of Use(What's New) - FAQ

Case 1:18-cv-03074-CRC Document 17-5 Filed 12/21/18 Page 1 of 51

# Exhibit E

12/13/2018
Case 1:18-cv-02074-CRC Document 97-8 Filed 08/08/22 Page 39 of 51
FBI 'reopening' probe of DoD-funded school with suspected Chinese military ties, rep says



 Print 🔘 Close

# FBI 'reopening' probe of DoD-funded school with suspected Chinese military ties, rep says

By Catherine Herridge, Pamela Browne, Cyd Upson, ,

Published June 28, 2017

Fox News

The FBI is "reopening" its probe of a taxpayer-funded online school for military servicemembers after a six-month Fox News investigation exposed its alleged Chinese military ties, according to a senior Republican lawmaker.

"They've told us they're looking more seriously at it, that they're quote, unquote, reopening that investigation, and I hope to get some answers," retiring Rep. Jason Chaffetz, R-Utah, told Fox News.

Reached by phone, an attorney claiming to represent the university told Fox News he's unaware of any current criminal justice probe implicating his client. Separately, the Naval Criminal Investigative Service (NCIS) confirmed in a statement to Fox News that the investigation into the University of Management and Technology (UMT) "is still an active multi-agency investigation so there's nothing we can say at this point."

In 2012, the FBI raided the Rosslyn, Va.-based UMT and the home of its president, Yanping Chen Frame, a Chinese-born naturalized U.S. citizen, and her husband J. Davidson Frame, the school's academic dean.

**CONGRESS PROBING TAXPAYER-BACKED SCHOOL OVER ALLEGED CHINESE MILITARY TIES**

Documents reviewed by Fox News, as well as recently unsealed court records, show the FBI focused on whether UMT's military personnel records could be remotely accessed from China, potentially compromising military histories of U.S. servicemembers, as well as Chen's alleged false statements on immigration documents that eventually allowed her to gain U.S. citizenship.

Chaffetz stressed that Senate Judiciary Committee Chairman Chuck Grassley, R-Iowa, is going to "take the reins" on the case from the congressional side. "I know he'll be tenacious in trying to get to the truth, but we want to know about [Yanping Chen] specifically, about what has this school been doing -- remember it's taxpayers' funds that are going … to perpetuate this, and yet there are a lot of question marks on whether or not that data, that information, is going directly to the Chinese government."

With heavy marketing to members of the U.S. military, government records show the school has collected upwards of $250,000 per month from U.S. taxpayers via the Department of Defense (DoD) through the GI Bill and tuition-assistance programs.

Fox News' investigation found the school's president has long-standing ties to the Chinese military or PLA (People's Liberation Army). While attending George Washington University, where her education was funded by the Chinese government, Chen wrote about her family's PLA connections, thanking her father, Chen Ben, who was a senior general in the Chinese military in charge of technology and arms acquisition. She received a Ph.D. in Public Policy from the school in 1999.

**DOD-FUNDED SCHOOL AT CENTER OF FEDERAL PROBES**

Photos obtained exclusively by Fox News, and reviewed by a leading national security expert on Chinese military uniforms, appear to show Yanping Chen as a young PLA officer and wearing a PLA uniform alongside family members.

"Her father joined the Communist Party in the 1930s. He supposedly participated in the Long March and that gives her credentials not unlike being an officer in the continental army," said Peter Mattis, a fellow with the Jamestown Foundation and a leading expert on China. The Long March, from 1934-1935, has long been referred to as a bloody pillar of the Chinese Communist Revolution which ultimately led to the creation of the People's Republic of China.

Mattis said a school like UMT could be valuable to China for two reasons: "The first is, militaries everywhere want to know what a potential adversary might look like -- what are their capabilities; how will they act? The second is, this might also serve as a vehicle for recruiting individuals."

The high-profile 2012 FBI raid did not result in any charges against UMT or Yanping Chen. After the initial report on the school aired in February, Fox News was told there was a logjam between the FBI and U.S. Attorney's Office for the Eastern District of Virginia over how to proceed and whether evidence could potentially compromise intelligence collection methods. Since the raid five years ago, UMT has received in excess of $6 million in government funding.

Four congressional committees are now demanding answers as to why the school still receives taxpayer dollars.

"The rub here is that it's all being funded by taxpayers' money, and so here we are, the American taxpayers, feeding this beast that may potentially be giving information directly to the Chinese government, and that better not be the case," Chaffetz said.

Regarding the UMT investigation, Chaffetz added, "There has been a lot of smoke coming here, and you got whistleblowers who are close to the situation saying something's wrong here, something's not right. … So I hope the Department of Justice, specifically the FBI, is taking it much more seriously than they have in the past."

Stephen Rhoads -- a whistleblower, former UMT employee and veteran who came forward to Fox News – called it "very encouraging" that the House Oversight and Senate Judiciary committees are getting involved and "law enforcement is no longer turning a blind eye to Yanping Chen and UMT."

"I want to thank Fox News for following up on a story that deeply impacts our servicemembers, tax dollars, and national security," he said. "As a servicemember, it is important that allocated funds are not misappropriated."

Yet money keeps flowing to UMT. The Defense Department admitted via email that they put the school under review but continue to fund it. "The Department's Memorandum of Understanding with UMT has not changed. Funding under the MOU flows directly from the Services to institutions," a spokesperson said via email.

Grassley sent a three-page letter on June 14 to Homeland Security Secretary John Kelly citing Fox News' reporting. With a deadline of June 28, Grassley sought information on any Yanping Chen immigration records that may have been "falsified...to conceal her affiliation with the Chinese military."

In the first phone call returned to Fox News, attorney John C. Kiyonaga said he represents Yanping Chen and the University of Management and Technology. Kiyonaga said his client has been charged "with absolutely nothing" and characterized the U.S. government's handling of the case as "full of bluster and innuendo."

The FBI had no comment. Legal experts said it would be unusual for the bureau to notify an individual or entity in the event a case is re-opened.

Catherine Herridge is an award-winning Chief Intelligence correspondent for FOX News Channel (FNC) based in Washington, D.C. She covers intelligence, the Justice Department and the Department of Homeland Security. Herridge joined FNC in 1996 as a London-based correspondent.

Print (꿈) Close

**URL**
https://www.foxnews.com/politics/fbi-reopening-probe-of-dod-funded-school-with-suspected-chinese-military-ties-rep-says

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather
Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. All market data delayed 20 minutes. New Privacy - New Terms of Use(What's New) - FAQ

# Exhibit F



From: [redacted] [mailto:[redacted]@ic.fbi.gov]
Sent: Tuesday, September 02, 2014 6:20 AM
To: Rhoads, Stephen J CIV (US) [redacted]@mail.mil>
Subject: Re: Changes to DoD MOU regarding Tuition Assistance (TA) Coverage
(UNCLASSIFIED)

I let my management and the AUSAs know about her renewal with DoD. Incredible.
[redacted], Special Agent, Federal Bureau of Investigation, Washington DC
Field Office

FOX NEWS channel

**FEDS PROBE CHINA LINKS**
**FBI: STUDENT DATABASE COULD BE ACCESSED FROM CHINA**
SPECIAL REPORT EXCLUSIVE

## SCHEDULE C: PRODUCTION DATA DELIVERY STANDARDS

### General Instructions:

1. For paper documents, reasonable efforts should be made to maintain the unitization.
2. All electronic submissions must be encrypted using industry standard encryption software for secure transmission. The password and decryption instructions should be provided under separate cover.
3. All productions should be produced free of computer viruses.
4. Production data should be provided with four subfolders under each Production Volume Name: DATA, IMAGES, NATIVES, TEXTS. The number of files in each sub-folders should not exceed 1000 files.



    a. **DATA** folder: should contain Concordance delimited .DAT and .OPT load files.
    b. **IMAGES** folder: should contain CCITT Group IV, 300 DPI single page TIFF or Color JPG images.
    c. **NATIVES**: should contain native files provided (such as Excels, PowerPoint, Audio/Video etc.)
    d. **TEXTS**: should contain searchable text files for each entry provided.

5. All images should show Track Changes, Comments, Field Codes, Hidden Text, Speaker Notes, and other file content to the extent applicable.
6. Date and Time must be in two separate fields. Date should be provided in the format: MM/DD/YYYY. Time should in provided in the format: HH:MM:SS AM/PM

### Data Load File Format:

1. The .DAT file should be delimited with standard Concordance delimiters:
   ASCII 020 [¶] for the comma character;
   ASCII 254 [þ] for the quote character; and
   ASCII 174 [®] for new line.

   Here is an example of how it should look:

   *þBEGBATESþ¶þENDBATESþ¶þBEGATTACHþ¶þENDATTACHþ¶þCUSTODIANSþ*

2. The .DAT file should contain Bates references, Metadata fields, and links to searchable Text files and Natives, where applicable.
3. Bates numbering should be a unique number to each page and be numerically sequential within a given entry. Format should be: PREFIX and the numeric digits without spaces (e.g., PREFIX00000001). No special characters shall be used (e.g., @, #, $, %, ^, &, *, etc.), however, underscores or hyphens may be used.
4. The first line of the .DAT file must be a header row identifying the field names.
5. Preserve the parent/child relationship by producing attachments or child entries as separate entries, numbering them consecutively to the parent entry, and including a reference in the .DAT file to all attachments or child entries.
6. The metadata included in the .DAT file should be extracted from original native files. Multi values should be separated by semi-colon.
7. A complete list of metadata fields is listed under Addendum A to this document.

**Image Load File Format:**

1. OPT – Image cross-reference file links the images to the corresponding records provided in DAT. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,EntryBreak,FolderBreak,BoxBreak,PageCount*

Here is an example of how it should look:

*SAMPLE00000001,VOL001,\VOL001\IMAGES\0001\SAMPLE00000001.TIF,Y,,,3*

*SAMPLE00000002,VOL001,\VOL001\IMAGES\0001\SAMPLE00000002.TIF,,,,*

*SAMPLE00000003,VOL001,\VOL001\IMAGES\0001\SAMPLE00000003.TIF,,,,*

*SAMPLE00000004,VOL001,\VOL001\IMAGES\0001\SAMPLE00000004.TIF,Y,,,1*

*SAMPLE00000005,VOL001,\VOL001\IMAGES\0001\SAMPLE00000005.TIF,Y,,,1*

*SAMPLE00000006,VOL001,\VOL001\IMAGES\0001\SAMPLE00000006.TIF,Y,,,2*

*SAMPLE00000007,VOL001,\VOL001\IMAGES\0001\SAMPLE00000007.TIF,,,,*

**Images Format:**

1. File Images should be produced in CCITT Group IV, 300 DPI, single-page, black and White, single-page Tagged Image File Format ("TIFF") or color JPEG images (if color is necessary to interpret the contents or render them intelligible).
2. Each TIFF image shall have a corresponding record (row) in Image Load File (.OPT) and named after the bates number.

**Natives Format:**

1. Spreadsheet file types (such as Excel or CSV files) and multimedia audio or video files should be provided in NATIVE format, named after the beginning Bates number.
2. Presentation file types (such as PowerPoint) should be provided in native and image format, named after the beginning Bates number. TIFF images for PowerPoint type of files should be provided in slide image format along with speaker notes when applicable.
3. Natives may not be provided for redacted entries, unless it is natively redacted.
4. Natives may not be provided for parent files of redacted or privilege withheld attachments.

**Texts Format:**

1. Text files (.TXT) shall be provided for each entry produced on an entry based level, containing the extracted text of the entry and named after the beginning Bates number.
2. If extracted text is not available, text files should contain the Optical Character Recognition ("OCR") text of the entry.
3. OCR texts may also be provided for redacted entries.
4. Texts containing foreign language should be delivered in Unicode.

**Productions of Non-Traditional ESI Data:**

Notwithstanding the foregoing, the parties may negotiate a separate production format for any files that are not reasonably producible or readable as standard image files, such as: proprietary applications (e.g., proprietary timekeeping, accounting, financial etc.), ESI from non-Windows based system (e.g., MAC, Unix etc.), mobile data, social media data, cloud-based data or structured database (e.g., Oracle, SQL, QuickBooks, Access etc.) type of files.

Given the variety of potential formats for audio data (e.g. GoTo Meeting, WebEx, audio/video conference call data, recorded line, audio/video data from devices etc.), the parties may confer and negotiate about the processing and format of the production of such data.

**Metadata:**

The following metadata should be extracted from original native files and provided in the .DAT file, to the extent they exist:

| FIELD NAME | DESCRIPTION | EXAMPLE | HARD COPY | ESI |
|---|---|---|---|---|
| BEGBATES | Starting Bates number. | *SAMPLE00000001* | Include | Include |
| ENDBATES | Ending Bates number. | *SAMPLE00000003* | Include | Include |

| FIELD NAME | DESCRIPTION | EXAMPLE | HARD COPY | ESI |
|---|---|---|---|---|
| BEGATTACH | First Bates number for family. | *SAMPLE00000001* | Include | Include |
| ENDATTACH | Ending Bates number for family. | *SAMPLE00000007* | Include | Include |
| ATTACHCOUNT | Number of attachments. | *3* | | Include |
| TIMEZONE | Time Zone used for processing of native files. | *GMT* | | Include |
| CUSTODIAN(S) | Name of Custodian from whom data was collected.  If global deduplication was used, then primary and dupe custodian should be included. | *Custodian-A; Custodian-B* | Include | Include |
| FILENAME | Name of original native file. | *SampleDocument.xlsx* | | Include |
| FILEEXT | Extension of original native file. | *xlsx* | | Include |
| FILESIZE | Size of original native file (KB). | *6,090* | | Include |
| TITLE | Title of original native. | *Sample Title* | | Include |
| ORIGFILEPATH | Path of original file from either the container level or the parent folder it was processed. If global deduplication was used, then primary and dupe paths should be included. | *S:\Shred\JDOE\SampleDocument.xlsx* | | Include |
| EMAILFOLDER | Original folder location of email. | *SamplePST\Inbox\sampleEmail* | | Include |

| FIELD NAME | DESCRIPTION | EXAMPLE | HARD COPY | ESI |
|---|---|---|---|---|
| PAGECOUNT | Number of pages provided. | *10* | Include | Include |
| DOCTYPE | File type or application of the native file. | *Example: Excel, Outlook, Word etc.* | | Include |
| MD5HASH | Unique Hash of the native file. | *F8513974280E2A7FE8660FE132EF0BED* | | Include |
| CREATEDATE | Date original file was created. | *2/23/2019* | | Include |
| CREATETIME | Time original file was created. | *11:25:00 AM* | | Include |
| MODDATE | Last modified date of the original file. | *4/23/2019* | | Include |
| MODTIME | Last modified time of the original file. | *10:25:00 PM* | | Include |
| ACCESSDATE | Last access date of the original file. | *4/23/2019* | | Include |
| ACCESSTIME | Last access time of the original file. | *10:25:00 PM* | | Include |
| AUTHOR | Author of the original file. | *John Doe* | | Include |
| LASTSAVEDBY | Name of the last-saved-by person of a file. | *Jane Doe* | | Include |
| FROM | Email sender | *janedoe@sample2domain.com* | | Include |
| TO | Email recipient(s) | *jdoe@sampledomain.com* | | Include |
| CC | Email carbon copy of recipient(s) | *Johns_mith@test.com; JaneSmith@test2.com* | | Include |
| BCC | Email blind carbon copy of recipient(s) | *John.Cain@test3.com* | | Include |
| EMAILSUBJECT | Email subject or calendar title. | *RE: Reports* | | Include |
| SENTDATE | Email sent date | *1/20/2018* | | Include |
| SENTTIME | Email sent time | *11:12:14 PM* | | Include |

| FIELD NAME | DESCRIPTION | EXAMPLE | HARD COPY | ESI |
|---|---|---|---|---|
| RECEIVEDDATE | Email received date | *1/20/2018* | | Include |
| RECEIVETIME | Email received time | *11:12:14 PM* | | Include |
| MESSAGEID | Unique Message ID. | <000805c2c71b$75977050$cb8306d> | | Include |
| CAL_DATE_BEGIN | Date a calendar appointment or meeting begins. | 10/12/2010 | | Include |
| CAL_DATE_END | Date a calendar appointment or meeting ends. | 10/12/2010 | | Include |
| CAL_TIME_BEGIN | Time a calendar appointment or meeting begins. | 7:05 AM | | Include |
| CAL_TIME_END | Time a calendar appointment or meeting ends. | 7:05 AM | | Include |
| CAL_LOCATION | Location from a calendar appointment or meeting. | *Bill's House/Teams Meeting* | | Include |
| CAL_ORGANIZER | Organizer or sender of a calendar appointment or meeting. | *jdoe@sampledomain.com* | | Include |
| CAL_ATTENDEES | Attendees (required or optional) of a calendar appointment or meeting. | *Johns_mith@test.com; JaneSmith@test2.com* | | Include |
| CONFIDENTIALITY | Confidentiality applied to an entry. | *CONFIDENTIAL* | Include | Include |
| REDACT | Indicates if an entry is redacted. | *Yes* | Include | Include |

| FIELD NAME | DESCRIPTION | EXAMPLE | HARD COPY | ESI |
|---|---|---|---|---|
| WITHHELD | Indicates if an entry is withheld. | *Yes* | Include | Include |
| NATIVELINK | Link to native file provided. | *NATIVES\NATIVES001\ SAMPLE00000001.DOC* | | Include |
| TEXTLINK | Link to text file provided. | *TEXTS\TEXT001\ SAMPLE00000001.txt* | Include | Include |

Case 1:18-cv-03074-CRC   Document 97-8   Filed 08/08/22   Page 50 of 51

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:18-CV-3074

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*

                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc.: