PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANPING CHEN,<br><br>      **Plaintiff,**<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>U.S. DEPARTMENT OF JUSTICE, U.S.<br>DEPARTMENT OF DEFENSE, and U.S.<br>DEPARTMENT OF HOMELAND SECURITY,<br><br>      **Defendants.** | Civil Action No. 1:18-cv-03074-CRC |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## NON-PARTY FOX NEWS NETWORK, LLC'S MOTION TO QUASH

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION .................................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ................................................................................ 2

      A.     Plaintiff Dr. Yanping Chen is Investigated by the FBI and Ultimately Cleared
             of Any Charges. ...................................................................................................... 2

      B.     The Fox News Reports Concerning Dr. Chen. ......................................................... 3

      C.     Dr. Chen's Exhaustive Efforts to Uncover the Source of the Leak of Her
             Protected Records to Fox. ....................................................................................... 7

      D.     The Subpoenas to Fox and the Individual Reporters. ............................................ 12

ARGUMENT ............................................................................................................................ 7

I.       The Subpoena to Fox is Not Overbroad. ............................................................... 13

II.      The Subpoenas to Herridge and Fox Are Not Duplicative Because Each Has Unique
          Information Central to Dr. Chen's Claims. ........................................................... 16

III.     There is No Federal Common Law Reporter's Privilege. ...................................... 19

CONCLUSION ........................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hatfill v. Gonzales*, 505 F. Supp. 2d 33, 49 (D.D.C. 2007)..............................................17

*Lee v. DOJ*, 413 F.3d 53 (D.C. Cir. 2005)...................................................................13

*Lee v. DOJ*, 287 F. Supp. 2d 15 (D.D.C. 2003), *aff'd* 413 F.3d 53 (D.C. Cir. 2005) ..................13

*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981).......................................................13, 17

**Statutes**

5 U.S.C. § 552a...............................................................................................13

**Rules**

Federal Rule of Civil Procedure 26(b)(2)(C) ...............................................................17

## INTRODUCTION

This Privacy Act suit concerns an unlawful disclosure of protected records and information, collected during an FBI investigation of Plaintiff Yanping Chen, to reporters working for Fox News Network, LLC ("Fox").  Having exhausted reasonable efforts to discover from Defendants and non-media third parties the identity of the unknown federal agent(s) who leaked those records to Fox, Dr. Chen recently served document and deposition subpoenas on Fox and former Fox employee Catherine Herridge, who was the lead reporter that authored the Fox reports about Dr. Chen.

Non-Party Fox's July 29, 2022 Memorandum in Support of [It's] Motion to Quash Plaintiff Yanping Chen's document and deposition subpoenas ("Fox Memorandum" or "Fox Mem.") largely incorporates the arguments set forth in Herridge's Motion to Quash and Memorandum in Support, filed the same day as Fox's Memorandum.  (Fox. Mem. at 2.)  Specifically, Fox incorporates and relies upon Herridge's arguments that: (1) Dr. Chen did not exhaust every reasonable alternative source of information before seeking discovery from Fox and Herridge; (2) this Court should adopt a broad balancing analysis for applying the First Amendment reporter's privilege and find that Herridge and Fox's interests in newsgathering outweigh Dr. Chen's interest in legal redress for the violation of her rights; and (3) this Court should create a common law reporter's privilege that shields Herridge and Fox from discovery.  (Fox Mem. at 2, 8, 12, 13.)  Accordingly, Dr. Chen refers the Court to, and incorporates herein, her arguments on those points in her Memorandum in Opposition to Non-Party Catherine Herridge's Motion to Quash ("Herridge Opposition" or "Herridge Opp'n"), filed contemporaneously herewith.

Fox raises only two unique arguments, both of which are based on the underlying argument that the subpoenas to Fox should be quashed because they seek information Dr. Chen can and should obtain directly from the lead individual reporter, Catherine Herridge.  First, Fox argues that

until Dr. Chen obtains discovery from Herridge, she has not exhausted all reasonably available alternative avenues to obtain the information she seeks from Fox.  And second, Fox argues that because Herridge likely possesses the same information Dr. Chen seeks from Fox, her subpoenas to Fox are cumulative and duplicative.

Both of these arguments fail for the same reason.  While it is true Herridge was the lead Fox reporter for the stories about Dr. Chen and therefore is the person most likely to know the identity of the federal agent(s) who leaked Dr. Chen's private records, Herridge almost certainly does not have all the information necessary and crucial to Dr. Chen's claim—for the simple reason that Herridge's employment with Fox ended in October of 2019.  While the identity of the leaker(s) is certainly crucial to Dr. Chen's Privacy Act claim, similarly important is obtaining documents that will reflect precisely what Privacy Act-protected material was transmitted to Herridge, when, and in what format.  Because Herridge was acting within the scope of her employment as a Fox reporter during the relevant time period, it is highly likely that those records reside with Fox, not Herridge.  The leaked documents used to illustrate the Fox broadcasts and online reports were likely also possessed by Fox personnel beyond Herridge.  Therefore, Dr. Chen is equally entitled to take discovery of Fox in order to obtain documents and communications that are central to her case but cannot be obtained from Herridge.

## **RELEVANT FACTUAL BACKGROUND**

### A.    **Plaintiff Dr. Yanping Chen is Investigated by the FBI and Ultimately Cleared of Any Charges.**

Dr. Yanping Chen is a highly accomplished American scientist, entrepreneur, and educator who has lived in the U.S. for 35 years. She came to the U.S. as a visiting scholar at George Washington University, where she built on her work in space policy to earn a master's degree and Ph.D. in Public Policy.  (Compl. ¶ 11 (ECF No. 1).)  Dr. Chen became a lawful permanent resident

of the United States in 1993, and she renounced her Chinese citizenship and gained U.S. citizenship in 2001.  (*Id*.)

In 1998, Dr. Chen founded the University of Management and Technology ("UMT"), an accredited university that provides post-secondary and graduate education to working adults.  (*Id*. ¶ 13.)  Given UMT's location in Arlington, Virginia and the diverse coursework offered, many of its students worked for the U.S. Government.

In 2009, Dr. Chen became the target of an FBI investigation focused on statements she made on immigration forms concerning her work in the 1980s as a scientist for the Chinese astronaut program.  (*Id*. ¶ 15.)  Over a seven-year period, the FBI probed deeply into Dr. Chen's personal and professional life.  (*Id*. ¶ 16.)  Agents of the U.S. government interviewed her family members and colleagues, obtained her immigration records, monitored her travel, and employed an undercover informant to gather information about her.  (*Id*.)  As part of that investigation, on December 5, 2012, the FBI executed search warrants for Dr. Chen's home and the main office of UMT, both located in Arlington, Virginia.  (*Id*. ¶ 18.)  Dr. Chen awoke in her nightgown early that Wednesday morning to dozens of heavily armed law enforcement agents, who held her at gunpoint in her living room as they ransacked her residence.  (Chen Dep. 99:10–102:14 (Ex. 1).)  Despite the collection of dozens of boxes of personal material during the searches and the years of investigation, in March of 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Dr. Chen that no charges would be filed against her, and thus Dr. Chen was never charged with, let alone convicted of, any crime.  (Compl. ¶ 22.)

**B.    The Fox News Reports Concerning Dr. Chen.**

On February 24, 2017, Fox aired to its millions of viewers what it called an "exclusive investigative report," about Dr. Chen during its prime-time newscast "Special Report" with host

Bret Baier. (*Id.* ¶ 25.)[1]  Baier introduced the report with the alarming claim that "military intelligence might be headed to China," but that the federal probe had occurred during "the Obama administration, where it ran into roadblocks."  The broadcast featured snippets of Dr. Chen's immigration forms, misleading excerpts from an FBI interview of her daughter, and private photos seized from her home by the FBI.  It also included an on-air interview in Fox's offices with Stephen Rhoads, who discussed his 3-year stint as an FBI informant and the FBI's instructions to him about a grand jury appearance.  In one clip, Herridge and Rhoads perused Dr. Chen's leaked immigration records together.  Other clips feature Herridge showing the leaked documents to purported experts on China and immigration.

Fox subsequently published a print version of that February 24, 2017 "exclusive investigative report" on its website, foxnews.com.[2]  These stories were followed by two additional primetime broadcasts on "Special Report" and print stories on Fox's website published on April 28, 2017,[3] and on June 28, 2017.[4]  The subsequent reports featured a reaction to Herridge's initial story from then-Rep. Jason Chaffetz, who said that he was pressing DOD to stop funding Dr.

---

[1] Fox News, *Taxpayer-funded school suspected of Chinese military ties*, (Feb. 24, 2017), https://www.youtube.com/watch?v=jh2Xk42PVA8.

[2] C.Herridge, P. Browne, & C. Upson, *Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties*, FoxNews.com (Feb. 24, 2017), *available at* https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties (the broadcast report that aired on February 24, 2017 is available on YouTube at https://www.youtube.com/watch?v=jh2Xk42PVA8&t=125s).

[3] C.Herridge, P. Browne, & C. Upson, *Congress investigating taxpayer-backed school over alleged ties to Chinese military after Fox News report*, FoxNews.com (May 1, 2017), https://www.foxnews.com/politics/congress-investigating-taxpayer-backed-school-over-alleged-ties-to-chinese-military-after-fox-news-report (the broadcast report that aired on April 28, 2017 is embedded and playable at this URL on which the print story was posted).

[4] C.Herridge, P. Browne, & C. Upson, *FBI 'reopening' probe of DoD-funded school with suspected Chinese military ties, rep says*, FoxNews.com (June 28, 2017), https://www.foxnews.com/politics/fbi-reopening-probe-of-dod-funded-school-with-suspected-chinese-military-ties-rep-says (the broadcast report that aired on June 28, 2017 is embedded and playable at this URL on which the print story was posted).

Chen's university and that the FBI was reopening its investigation of her.  On the date of the last report featuring then-Rep. Chaffetz, he announced that he would be leaving Congress within days to take a job with Fox News.

The Fox News reports, primarily authored and reported on by Herridge, (Mem. at 5), pieced together portions of leaked materials and information about Dr. Chen and coupled them with misleading insinuations about Dr. Chen's background in order to accuse her of spying for China. For example, Fox's prime-time broadcasts displayed the following protected records and information onscreen:

- A personal photograph of depicting Dr. Chen and her husband, with Dr. Chen holding a uniform;
- A personal photograph from the 1980s, depicting Dr. Chen in a uniform;
- A personal photograph of Dr. Chen at her father's gravesite;
- A personal photograph of Dr. Chen with her family members in China;
- A personal photograph from the 1980s depicting Dr. Chen and a friend wearing uniforms;
- Portions of Dr. Chen's immigration and naturalization forms;
- A portion of an FBI FD-302 Form memorializing an FBI interview of Dr. Chen's daughter that contains protected information about Dr. Chen and UMT; and
- Dr. Chen's certificate of U.S. citizenship.

(Compl. ¶¶ 26-34.)  Notably, to produce the three prime-time broadcasts of the Fox News reports, Fox had to use its videography production systems to create graphics by cropping, processing and otherwise manipulating the leaked records.  The Fox News reports also disclosed a wide variety of other confidential information from the FBI case file that went beyond the records displayed within the reports.  For example, the Fox reports included the following information contained in FBI records:

- The identities of the law enforcement agencies working with the FBI;
- That the investigation began in "at least 2012 – and perhaps as early as 2009";

- That the investigation of Dr. Chen was a counter-intelligence case;
- The year that Dr. Chen first entered the United States;
- The type of visa under which Dr. Chen first visited the United States;
- The identity of a child who accompanied Dr. Chen when she first entered the country;
- The name of an Assistant U.S. Attorney assigned to investigate Dr. Chen; and
- Details of the disagreement between the FBI and prosecutors about whether to prosecute Dr. Chen.

This non-public information was contained in FBI records. Fox's reporting also referred to unknown "[d]ocuments reviewed by Fox News," and "emails and other documents reviewed by Fox News" as the basis for other pieces of its story.

The Fox reports also rely heavily on an on-the-record source, Rhoads, who claimed to have been recruited by the FBI in 2012 as a covert informant against Dr. Chen. Through her discovery efforts, Dr. Chen learned that Rhoads communicated with Herridge about Dr. Chen throughout the entire period that he served as an informant. Between December 2012 to September 2018, Herridge and Rhoads exchanged hundreds of phone calls, text messages, and emails, including emails to Herridge's Fox account and texts and calls to the phone number she provided to the defendant agencies when seeking official comment on the reports. (RHOADS000286-001059 (Ex. 2); RHOADS001060-1786 (Ex. 3); RHOADS (GOVT) 000049-000055 (Ex. 5).) During his deposition in this litigation, Rhoads testified that he visited Herridge at her Fox office on several occasions and during one meeting at Fox in 2015, Herridge showed Rhoads hard copies of documents and pictures she had obtained relating to the investigation into Dr. Chen. (Rhoads Dep. 92:6-98 (Ex. 5).) Rhoads testified further that some of the materials she showed him appeared in the Fox reports, but others did not. (*Id.*)

Herridge also put Rhoads in contact with Pamela Browne and Cyd Upson—the two other Fox journalists who worked on the Fox reports and share a byline on the published stories with

Herridge.  (*Id*. at 169:9-170:9; 180:22-181:7.)  During his deposition, Rhoads recalled that, aside from Herridge, he primarily communicated with Browne at Fox, and that he was sure Browne asked him additional questions about the investigation into Dr. Chen.  (*Id*. at 169:9-170:9.)

Discovery has also revealed that Browne and Herridge used their Fox emails accounts to reach out to a number of individuals who worked at the Defendant agencies, seeking comment on the investigation into Dr. Chen.  (*See, e.g*., Carpenter_00000001- Carpenter_00000006 (Ex. 6); DOD_00001607 (Ex. 7); FBI0003157–3330 (Ex. 8).)  The first Fox broadcast, which aired on February 24, 2017, even included excerpts of emails between Browne and a federal agency from her Fox account, and those emails copied Herridge and Upson at their Fox accounts.

### C.    Dr. Chen's Exhaustive Efforts to Uncover the Source of the Leak of Her Protected Records to Fox.

Discovery in this case to date has revealed the likely source of the private and personal information of Dr. Chen that was referenced, quoted, and visually depicted in the Fox News broadcasts: a PowerPoint presentation authored by FBI Special Agent Timothy Pappa, versions of which were produced in discovery by Defendants FBI and DHS, but not DOD or DOJ.  Pappa, who led the investigation of Dr. Chen, testified that ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████.  (Pappa Dep. 18:13-18, 20:6-21:3, 28:2-8, 31:22-32:11, 58:8-59:11, 65:8-66:21, 83:19-88:25, 92:19-94:6 (Ex. 9).)  Pappa testified that ████████████████████████████

████████████████████████████████████████████.  (*Id*. at 31:22-32:11.)  In numerous instances, the highlighting, notation, and cropping of the records displayed in the Fox reports matches exactly the versions and images of those same documents in the PowerPoint

created by Pappa, and the Fox reports also quote from an FBI interview memorandum of an interview with Dr. Chen that is also reflected in Pappa's PowerPoint.[5]  These commonalities make clear—and Herridge and Fox do not dispute—that Fox obtained at least some of the investigative materials in the Fox reports in the form of Pappa's PowerPoint.

Since the denial of Defendants' motion to dismiss in January of 2020, Dr. Chen has been engaged in exhaustive discovery of Defendants and third parties, most of which has been focused on issues relating to liability, seeking to identify the source(s) of the leaked documents and information—and, in particular, who provided a copy of Pappa's PowerPoint presentation to Herridge and Fox.

To date, Dr. Chen has served Defendants with 67 requests for Production, requested 67 interrogatory responses, issued 57 Requests for Admission, taken 18 depositions of current and former Government employees (including four FBI 30(b)(6) depositions on fourteen topics), and obtained 22 declarations from Government personnel involved in and/or aware of the investigation into Dr. Chen.  This includes discovery of the lead FBI and DHS case agents for the investigations: Pappa, SSA-8, ███████████ and ████████████, and their primary supervisors SSA-14 and ███████████.

With respect to Pappa's PowerPoint, Dr. Chen served requests for production on each agency seeking "all documents or other items that were collected or generated in the course of" the investigation into Dr. Chen.  In response, the FBI and DHS produced the PowerPoint.  None of DOD, DOJ, or the 13 individual third-party subpoena recipients produced any such presentation.

---

[5] *See* Letter from A. Phillips to P. Philbin re "Yanping Chen v. FBI, No. 1:18-cv-03074-CRC (D.D.C.)" (June 23, 2022) (containing a chart visually depicting the commonalities between the images and statements in the Fox broadcasts and the same materials in Pappa's PowerPoint presentation) (Ex. 10).

In addition to requests for production, Dr. Chen served interrogatories on each of the Defendant agencies requesting the identity of "each and every person" who "received from the FBI or otherwise had possession, custody, or control" of the PowerPoint, "or any version or subpart thereof, including" the name of the individual, the dates and times when the PowerPoint came into their possession, custody or control, and the format of the document.  The Defendants identified only three people who had ever possessed the PowerPoint or any subpart of it: Pappa, ███████, and his supervisor, ███████.  (DOD Response to Interrogatory No. 15 (Ex. 11); DOJ Response to Interrogatory No. 14 (Ex. 12); FBI Response to Interrogatory No. 16 (Ex. 13); DHS Response to Interrogatory No. 14 (Ex. 14); DHS_00000184–85 (Ex. 15).)  Dr. Chen deposed all three individuals, who each denied leaking the documents or knowing who had done so.  (Pappa Dep. 296:14-21 (Ex. 9); ███████ Dep. 98:1-99:10 (Ex. 16); ███████ Dep. 102:17-19, 106:11-20 (Ex. 17).)  Dr. Chen also served all three with Rule 45 subpoenas in their personal capacities. None produced the PowerPoint or any document suggesting they had transmitted it to Herridge and Fox.

Notably, Pappa vehemently denied having leaked any documents or information to Herridge.  Pappa testified under oath that—despite the fact that Herridge wrote at least four stories about FBI investigations he led—Herridge never attempted to contact him for information or comment.  (*See*, *e.g*., Pappa Dep. 152: 24-25; 153: 2, 10-25 (Ex. 9).)  According to Pappa, his only contact with Herridge was when they were briefly introduced at ███████, but they never discussed the story she had recently written about one of his investigations or the reporting she was then doing on the investigation into Dr. Chen.  (*Id*. at 120: 3-25; 121: 2-7; 123: 2-7; 126: 4-14.)

Through intensive discovery—including deposition testimony—Dr. Chen identified eight

other individuals ███████████████████████████████████████████ : ████████ ,

Stephen Rhoads, ████████████ , ████████████ , James Gillis, SI-1, SSA-7, SSA-14.[6]  Dr. Chen

then: (1) deposed ████ , Gillis, and Rhoads; (2) served Rule 45 subpoenas on ████ , Rhoads,

████ , and Gillis in their personal capacities; and (3) obtained declarations from ████ , SI-1, SSA-

7, and SSA-14.   Although this discovery produced powerful circumstantial evidence of Rhoads'

role in the leaks, none of this discovery provided direct evidence that any of these individuals

leaked the PowerPoint to Herridge.[7]

Even without reason to believe they ever possessed Pappa's PowerPoint presentation, Dr.

Chen sought deposition testimony or declarations from 25 other people who had some information

about the investigation to obtain sworn statements about whether they had leaked the presentation

to Herridge or knew who had.  Those individuals include FBI personnel ████████████████

████████████████████████████████ ; FBI personnel who ██████████████████████████

████████████████████████████ ; ████████████ , ██████████████ , and others from

DOD who Rhoads and ████████████████████████████████████

████ ; and ██████████████ and others at the Department of Veterans Affairs who ████████████

---

[6] Plaintiff agreed with the government to protect the identity of these FBI agents, and they were
each assigned a pseudonym.   SI indicates a Special Agent in charge and SSA indicates a
Supervisory Special Agent.
[7] ████████ , Gillis, Rhoads, ████ , SI-1, SSA-7, SSA-14 each denied in a deposition or declaration
leaking the documents or knowing who did so.  Gillis Dep. 163:11–164:12 (Ex. 18); (████████ Dep.
79:14–81 (Ex. 19); Rhoads Dep. 110:5–15 (Ex. 5); Decl. of ████████ (Ex. 20); Decl. of SSA-14 (Ex.
21); Decl. of SSA-7 (Ex. 22); Decl. of S1-1 (Ex. 23).)  ████████ had no documents responsive to
the Rule 45 subpoena directed to him, and ████████████████████████████████████████████
████████████████████████████████████████████ *See* ████████████ Dep. 71:15-20
(██████████████████████████████████████████████████████████████████████████████████████
████████████ Dep. 104:24-106:5 (Ex. 16) (██████████████████████████████████████████████ ).

█████████████████.  Each one denied that they had leaked to Herridge, and each one denied knowing who had.

In a further effort to identify other FBI employees who may have leaked to Herridge and Fox, Dr. Chen demanded that the FBI search for text messages and phone calls between 18 key personnel and the Fox News reporters who worked on the Fox reports, including Herridge—at three different work and home phone numbers.  (Emails Between M. Jones, G. Coyle, C. Federighi, & J. Lutkenhaus (Oct. 29–Nov. 23, 2021) (Ex. 24).)  The FBI's efforts did not reveal the leaker.  Dr. Chen has also served third-party subpoenas on 13 current or former Government employees in their personal capacity and served a subpoena on Rhoads' personal cell phone service provider, T-Mobile.  Additionally, Dr. Chen has aggressively, yet unsuccessfully, litigated motions to compel information that may narrow down or reveal the identity of the source(s) that the Government has withheld pursuant to the law enforcement privilege.  (*See* Pl.'s Mot. to Compel (ECF No. 36); Pl's Opp'n to P.O. Mot. (ECF No. 66).)  Despite these efforts, Dr. Chen has been unable to obtain direct evidence of the identity of the individual that leaked her private information to Herridge and Fox.

Dr. Chen also sought extensive discovery related to Stephen Rhoads, who communicated with Herridge hundreds of times during the investigation of Dr. Chen and served as an on-the-record source for the reports.  In deposition testimony, Rhoads acknowledged that Pappa had provided him with highly confidential investigative information about Dr. Chen.  Rhoads also admitted that he had orally disclosed highly confidential information about the investigation of Dr. Chen to Herridge (starting with a 2012 tip that the FBI would be raiding Dr. Chen's home).  (*See*, *e.g.*, Rhoads Dep. 91:20; 186:6–13; 188:3 (Ex. 5).)  But Rhoads vehemently denied having leaked documents to Herridge, claiming that he was surprised when Herridge showed him the documents,

and that when he had previously claimed in an email to Congress, "I have documents, etc. that no one else has," he actually did not have any documents.  (*See, e.g.*, Rhoads Dep. 38:9–20; 58:7–11; 88:6–9; 92:6–25; 93–95; 98:4–12; 168:6–9; 192:14–23 (Ex. 5).)

**D.     The Subpoenas to Fox and the Individual Reporters.**

In May and June of this year, Dr. Chen served deposition and document subpoenas on Fox, as well as Herridge, Browne, and Upson—the three current and/or former Fox journalists that share a byline on the published stories about Dr. Chen.  The document subpoenas requested a limited universe of materials aimed at identifying the source and scope of the unlawful disclosure.  Thus, the subpoenas requested records relating to Dr. Chen's "Private Documents and Information"— defined to include any "photograph purporting to depict Dr. Chen," "FBI FD-302 Form relating to or referring to Dr. Chen," "immigration or naturalization document relating to Dr. Chen," "internal government email involving Personnel of Defendants and relating to Dr. Chen, the University, and/or the [FBI] Investigation," and any "PowerPoint presentation, compilation, and/or report concerning Dr. Chen, the University, and or the [FBI] Investigation"—and documents reflecting the transmittal of that information to Fox/Herridge/Upson/Browne, as well as the identity of the individual who transmitted it.[8]  The Rule 30(b)(6) deposition subpoena to Fox requested testimony on similar topics, such as the disclosure to and/or receipt by Fox of any of Dr. Chen's "Private Documents and Information"—defined the same as in the document subpoena—as well as Fox's retention policies for those documents and communications among Herridge, Browne, and Upson.[9]

All of the subpoena recipients retained as counsel Patrick Philbin of the law firm Ellis George Cipollone O'Brien Annaguey, LLP.  Subsequently, following discussions of counsel,

---

[8] Subpoena to Produce Documents to C. Herridge (Ex. 25); Subpoena to Produce Documents to C. Upson (Ex. 26); Subpoena to Produce Documents to P. Browne (Ex. 27); Subpoena to Produce Documents to Fox News Network, LLC (Ex. 28).
[9] FRCP 30(b)(6) Deposition Subpoena to Fox News Network, LLC (Ex. 29).

Upson and Browne provided sworn declarations stating that Herridge was the lead reporter for the reporting on Dr. Chen, and that Herridge never shared with Upson or Browne the identity of the source that provided Herridge with materials from the government's investigation of Dr. Chen.[10] Based on those sworn representations, Dr. Chen agreed to withdraw her subpoenas to Upson and Browne, and to pursue only the subpoenas to Fox and Herridge.

## ARGUMENT

### I.      The Subpoena to Fox is Not Overbroad.

In this Privacy Act suit, in order to obtain discovery from a non-party media entity like Fox, Dr. Chen is required to show that (1) the information sought is "central" to her claims; and (2) that she has exhausted other reasonable avenues of obtaining the information. *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981); *Lee v. DOJ*, 413 F.3d 53 (D.C. Cir. 2005). As set forth in Dr. Chen's Opposition to Herridge's Motion to Quash, because the *sine qua non* of a Privacy Act claim is the improper disclosure of government records pertaining to an individual, 5 U.S.C. § 552a, Dr. Chen is required to show that one or more of the Defendant agencies was the source of the leaked documents and information at issue. Without the identity of the leaker(s), her ability to show the willfulness and intent elements of the Privacy Act claim "will be compromised." *See Lee v. DOJ*, 287 F. Supp. 2d 15, 20 (D.D.C. 2003), *aff'd* 413 F.3d 53 (D.C. Cir. 2005). Thus, there can be no dispute that the source(s) who leaked Dr. Chen's protected records to Herridge and Fox are "of central importance ... go[ing] 'to the heart of the matter' ... and [are] crucial to" Dr. Chen's case. *Id.* (quoting *Zerilli*, 656 F.2d at 713); *see also Lee*, 413 F.3d at 57 (finding the identity of the actual source of disclosed information "is clearly central" to proving a violation of the Privacy Act and therefore goes to the "heart of the matter").

---

[10] Decl. of Cyd Upson (June 30, 2022) (Ex. 30); Decl. of P. Browne (June 30, 2022) (Ex. 31).

Like Herridge, Fox does not dispute that information concerning the disclosure of Dr. Chen's records is central to her case. (*See* Fox Mem. at 10-12.) Instead, like Herridge, Fox argues that the document and deposition subpoenas directed to it are overbroad because they supposedly seek additional information, unrelated to the unlawful disclosure, that is not central to Dr. Chen's claims. (*Id.*) But Fox's arguments are based on an unreasonable interpretation of the relevant subpoena requests and topics.

The document subpoena issued to Fox seeks only four categories of material: (1) All "Private Documents and Information" in Fox's possession, in the form in which they were received by personnel of Fox; (2) all documents and communications "comprising, reflecting, or relating to transmission or provision of the Private Documents and Information" to personnel of Fox; (3) documents or communications "sufficient to identify the individual(s) that transmitted or provided the Private Documents and Information" to personnel of Fox; and (4) communications between or among the Fox reporters involved in the relevant stories and non-confidential source Stephen Rhoads and/or lead FBI Special Agent Timothy Pappa. (Document Subpoena to Fox (Ex. 28).) Similarly, the Rule 30(b)(6) deposition subpoena to Fox seeks corporate representative testimony on (1) the "disclosure to and/or receipt by" any personnel of Fox of any "Private Documents and Information," including "the timing, format, and means of transmission;" (2) Fox's "possession or retention" of documents and communications from Herridge and the other two Fox reporters involved in the stories about Dr. Chen; (3) Fox's "possession or retention" of any "Private Documents and Information;" and (4) Fox's pre-publication fact-checking and review of the "Private Documents and Information." (Rule 30(b)(6) Subpoena to Fox (Ex. 29).)

Fundamentally, Fox takes issue with both subpoenas' definition of the term "Private Documents and Information." (Fox Mem. at 10-11.) Fox argues that this definition is overly broad

14

and supposedly incorporates all information concerning Dr. Chen that Fox received from any source, and therefore Dr. Chen's requests for documents and testimony about Fox's receipt and retention of documents and communications involving Dr. Chen's "Private Documents and Information" necessarily seek "carte blanche to rummage through *every* document from *every source* preserved in the entire investigative reporting file that was compiled at [Fox] in producing the Fox [r]eporting." (Fox Mem. at 12.) But this is not what Dr. Chen seeks at all. Fox fails to acknowledge that the definition of "Private Documents and Information" covers documents that Fox obtained from a third party that were presented in, referred to, or considered in relation to the Fox reports, specifically to include the following:

- Any photograph purporting to depict Dr. Chen;
- Any FBI-302 Form relating to or referring to Dr. Chen;
- Any internal government email communication involving Personnel of Defendants and relating to Dr. Chen, the University, or the Investigation; and
- Any PowerPoint presentation, compilation, and/or report concerning Dr. Chen, the University, and/or the Investigation.

(Fox Document Subpoena at Schedule A, Definition ¶ 18 (Ex. 28); Fox Dep. Subpoena at Schedule A, Definition ¶ 18.) (Ex. 29).) Along with the instruction in both subpoenas that all definitions therein are to be interpreted in accordance with a "reasonable meaning," and the fact that Dr. Chen attached her Complaint to the subpoena, each of the above requests plainly seeks documents and communications regarding the transmission to Fox of the government investigative materials that are at issue in this lawsuit.

Notably, as referenced above, Dr. Chen served materially identical subpoenas on Fox journalists Cyd Upson and Pamela Browne, who were listed as co-authors of the Fox stories regarding Dr. Chen. Both of those individuals (as well as Herridge) retained Mr. Philbin—who is Fox's counsel as well—to represent them in connection with the subpoenas. Following

cooperative discussions between Mr. Philbin and counsel for Dr. Chen, Dr. Chen agreed to withdraw the subpoenas to Browne and Upson in exchange for sworn declarations stating that neither possessed the materials sought or were aware of the identity of the source(s) who leaked them to Herridge.[11]   And in those declarations, both Upson and Browne stated that while the definition of "Private Documents and Information" in the subpoena could be interpreted broadly, they reasonably interpreted the requests to refer to "records and information pertaining to [Dr. Chen] and her private affairs that Dr. Chen alleges the FBI had collected or generated in the course of its investigation of her, that Dr. Chen alleges were maintained by the FBI or another government agency, and that Dr. Chen alleges were not publicly available"—*i.e.*, the specific materials listed in the subpoenas' definition of "Private Documents and Information."[12]

Thus, there can be no dispute that Fox is capable of reasonably interpreting the subpoenas, and that Fox and its counsel understand what testimony, documents, and communications Dr. Chen is seeking.  As Fox suggests, (*see* Fox Mem. at 12), Dr. Chen is happy to have a discussion with the Court regarding clarifying the subpoena to reflect that reasonable understanding, and Dr. Chen would have so stipulated if Fox had raised the issue with her counsel.  At bottom, Dr. Chen only seeks, and has only ever sought, the communications and documents that indisputably are "central to" her Privacy Act claims, and nothing else.

## II.   The Subpoenas to Herridge and Fox Are Not Duplicative Because Each Has Unique Information Central to Dr. Chen's Claims.

Next, Fox makes two variations of essentially the same argument; namely, that the subpoenas to Fox should be quashed because all of the information Dr. Chen seeks from Fox can and should be obtained from Herridge instead.  First, Fox argues that Dr. Chen cannot satisfy the

---

[11] Decl. of Cyd Upson (June 30, 2022) (Ex. 30); Decl. of P. Browne (June 30, 2022) (Ex. 31).
[12] *Id*. ¶ 7.

second (and final) factor of the two-part test because she has not exhausted "every reasonable alternative source of information," *Zerilli*, 656 F.2d at 713, because Dr. Chen is required to take discovery of the individual reporter—here, Herridge—before she can seek documents and testimony from her media company employer. (Fox Mem. 12-13.). And second, Fox argues that because Herridge presumably knows the identity of the individual(s) who leaked to her Dr. Chen's protected information, the subpoenas to Fox are duplicative and cumulative of the subpoenas to Herridge in violation of Federal Rule of Civil Procedure 26(b)(2)(C), and thus unduly burdensome. (Mem. at 14-16.) These arguments should be rejected because they ignore the fact that Herridge is a ***former*** employee of Fox, and therefore Fox is highly likely to have crucial, discoverable information that Herridge does not have in her possession.[13]

Fox relies on *Hatfill v. Gonzales*, 505 F. Supp. 2d 33, 49 (D.D.C. 2007) for the proposition that a Privacy Act litigant "must pursue discovery from the individual reporter through a motion to compel before resorting to the media company." (Fox Mem. at 13.) But in *Hatfill* the reporters involved in the publication of the protected information were ***current*** employees of the media entities to which the plaintiff issued subpoenas, and the court specifically pointed to this fact in determining that it would be premature to seek discovery of the entities before deposing the reporters. *Hatfill*, 505 F. Supp. 2d at 49. Here, as noted above, Herridge left Fox in October 2019—approximately two years after publication of the Fox reports about Dr. Chen—and has been an employee of CBS News since then.

Thus, unlike the reporters in *Hatfill*, Herridge has no present relationship with Fox—and, presumably, no ability to access or force Fox to produce her contemporaneous communications,

---

[13] Brian Stelter, *Fox News departure: Catherine Herridge joins CBS News, saying 'facts matter'*, CNN.com (Oct. 31, 2019), https://www.cnn.com/2019/10/31/media/catherine-herridge-fox-news-cbs.

notes, and documents that would have been stored on Fox's servers during the time of her employment.  Thus, while Herridge can likely provide the ***identity*** of her source(s) for the reporting on Dr. Chen, she may not be able to provide her communications with her source(s) or actual copies of Dr. Chen's protected records in the form that they were transmitted to her.  These materials are properly sought from Fox, the entity with possession, custody, and control of them.

For the same reason, the subpoenas to Fox and Herridge are not duplicative or cumulative. Because Herridge and Fox have no employment relationship, Herridge's records are not Fox's, and Fox's records are not Herridge's.  Dr. Chen seeks crucial records from Fox's files—and testimony regarding their retention by Fox—that Herridge simply cannot provide.  Thus, it is simply not accurate to suggest, as Fox does, that the subpoenas to Fox "seek information that can be obtained more conveniently and economically from Ms. Herridge…" (Fox Mem. at 14.)  Even assuming that Herridge ultimately discloses the identity of the individual(s) who disclosed Dr Chen's protected records to Herridge, Dr. Chen will still need to obtain the communications reflecting those disclosures, ***and*** the actual underlying documents in the form and format in which they were provided to Herridge.  Fox nowhere suggests that Dr. Chen will be able to obtain these materials directly from Herridge, nor does it ever deny that Fox is presently in possession of the leaked documents or other records reflecting when, how, and what documents were unlawfully disclosed to Herridge.

Nevertheless, because Herridge has now represented that she told ***nobody*** at Fox the identity of her source(s) for this story Dr. Chen does not oppose a reasonable sequencing of document discovery whereby she is required to first discover from Herridge what, if any, relevant documentation Herridge is able to provide.  However, if Herridge does not have complete access to her paper and electronic files from her time at Fox, and therefore cannot provide her source

communications, the underlying records the source provided, or other documents reflecting when, how, and what documents she obtained, then Dr. Chen must be permitted to seek those materials from their likely custodian, Fox.  While there is a high likelihood that Herridge no longer has access to her paper and electronic files from Fox and this sequencing will only create needless delay, Dr. Chen will not take issue with this approach if the Court deems it advisable to address Fox's arguments.

**III.   There is No Federal Common Law Reporter's Privilege.**

Finally, Fox argues that this Court should create a new federal "common law" reporter's privilege that permits the Court to determine the availability of discovery by subjectively balancing Fox's interests against Dr. Chen's interests.  (Mem. at 13-14.)  Fox's argument on this point is limited to incorporating the arguments made by Herridge in her Memorandum in Support of [Her] Motion to Quash.  Accordingly, Dr. Chen similarly incorporates herein her arguments made in her Opposition to Herridge's Motion to Quash, which demonstrate that courts in this Circuit have squarely rejected the notion that there is any such common law privilege applicable in Privacy Act cases.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Fox's Motion to Quash.

Dated:  August 24, 2022                          Respectfully submitted,

                                                  */s/ Andrew C. Phillips*
                                                 Andrew C. Phillips (DC Bar No. 998353)
                                                 Shannon B. Timmann (DC Bar No. 1614929)
                                                 CLARE LOCKE LLP
                                                 10 Prince Street
                                                 Alexandria, VA 22314
                                                 Tel: (202) 628-7400
                                                 andy@clarelocke.com
                                                 shannon@clarelocke.com

                                                 *Counsel for Plaintiff Yanping Chen*