CONFIDENTIAL – FILED UNDER SEAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YANPING CHEN,               )

                     )

         Plaintiff,       )     **Case No. 1:18-cv-03074-CRC**

                     )

       v.                )     **Hon. Christopher R. Cooper**

                     )     **United States District Judge**

FEDERAL BUREAU OF INVESTIGATION,   )

U.S. DEPARTMENT OF JUSTICE,         )

U.S. DEPARTMENT OF DEFENSE, U.S.     )

DEPARTMENT OF HOMELAND SECURITY,   )     **Oral Argument Requested**

                     )

         Defendants.      )

                     )

## REPLY MEMORANDUM IN SUPPORT OF NON-PARTY CATHERINE V. HERRIDGE'S MOTION TO QUASH

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Patrick F Philbin (453620)
pphilbin@egcfirm.com
Kyle West (24093346)
kwest@egcfirm.com

1155 F Street, N.W., Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

*Counsel for Catherine V. Herridge*

September 12, 2022

CONFIDENTIAL – FILED UNDER SEAL

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE THE
FIRST AMENDMENT JOURNALIST'S PRIVILEGE. ...................................................3

    A.    Plaintiff Concedes That Her Subpoenas Are Overbroad. ........................................3

    B.    Plaintiff Has Not Exhausted Alternative Avenues of Discovery. ............................4

    C.    The Public Interest in First Amendment Protections Outweighs Plaintiff's
Personal Interest in Seeking Damages in Her Flawed Privacy Act Lawsuit. ..........8

        1.    *Zerilli* Calls for a Balancing of Interests. ....................................................8

        2.    The Balance of Interests Overwhelmingly Favors the Public
Interest in First Amendment Protections that Promote a Robust
Free Press. ...................................................................................................12

            a.    Plaintiff's Personal Interest in Damages Weighs Little in
the Balance, Especially Given the Weaknesses in her
Claims. ...........................................................................................12

                (i)    Plaintiff Cannot Obtain Privacy Act Damages for
DoD's Decision to Terminate Tuition Assistance. ...........13

                (ii)    All the Key Elements of the Story Appeared in the
Fox Reporting Through Sources *Other Than* the
Few Pieces of Information Allegedly Implicating
the Privacy Act. .................................................................16

                (iii)    Virtually All the Information Underpinning
Plaintiff's Claims Was in an FBI Affidavit That
Was Legally a Matter of Public Record Since 2013.........17

                (iv)    This Case Is Not Like *Hatfill* or *Lee*. ..............................22

            b.    The Public Interest in First Amendment Protections for a
Free Press Overwhelms Plaintiff's Interest in Damages................23

II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE THE
NEWSGATHERING PRIVILEGE UNDER FEDERAL COMMON LAW....................24

CONCLUSION....................................................................................................................25

CONFIDENTIAL – FILED UNDER SEAL

# TABLE OF AUTHORITIES[1]

Page(s)

## CASES

*Ash v. United States*,
  608 F.2d 178 (5th Cir. 1979) ...................................................................................................20

*Banks v. Butler*,
  No. 5:08cv336-KS-MTP, 2010 WL 4537902 (S.D. Miss. Sept. 23, 2010) ............................20

*Barry v. Dep't of Justice*,
  63 F. Supp. 2d 25 (D.D.C. 1999) .......................................................................................19, 21

*Bartel v. FAA*,
  725 F.2d 1403 (D.C. Cir. 1984) ..............................................................................................22

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) .................................................................................................................25

*Chang v. Dep't of the Navy*,
  314 F. Supp. 2d 35 (D.D.C. 2004) ...........................................................................................22

*Cloonan v. Holder*,
  768 F. Supp. 2d 154 (D.D.C. 2011) ........................................................................................17

*Clyburn v. News World Commc'ns, Inc.*,
  No. CIV. A. 86-1149, 1988 WL 489658 (D.D.C. Apr. 14, 1988) .........................................5, 6

*Cox Broad. Corp. v. Cohn*,
  420 U.S. 469 (1975) .................................................................................................................21

*Danks v. Zinke*,
  No. 1:17-cv-114, 2018 WL 8646658 (D.N.D. Nov. 27, 2018) ................................................20

*deLeon v. Wilkie*,
  No. 19-1250, 2020 WL 210089 (D.D.C. Jan. 14, 2020) ..........................................................17

*Dep't of Justice v. Reporters' Committee for Freedom of the Press*,
  489 U.S. 749 (1989) .................................................................................................................21

*Doe v. Chao*,
  540 U.S. 614 (2005) .................................................................................................................13

---

[1] An asterisk indicates cases on which Ms. Herridge primarily relies.

CONFIDENTIAL – FILED UNDER SEAL

*Drennon-Gala v. Holder*,
No. 1:08-CV-321G-JEC, 2011 WL 1225784 (N.D. Ga. Mar. 30, 2011) ...............................20

*FDIC v. Dye*,
642 F.2d 833 (5th Cir. 1981) ..................................................................................................20

*Galen v. Cnty. of Los Angeles*,
477 F.3d 652 (9th Cir. 2007) ..................................................................................................14

*Goldberg v. Amgen, Inc.*,
123 F. Supp. 3d 9 (D.D.C. 2015) ..............................................................................................6

*Grunseth v. Marriott Corp.*,
868 F. Supp. 333 (D.D.C. 1994) ............................................................................................11

*Hand v. Gary*,
838 F.2d 1420 (5th Cir. 1988) ................................................................................................13

*Hatfill v. Gonzales*,
505 F. Supp. 2d 33 (D.D.C. 2007) ....................................................................11, 22, 23, 25

*Hollis v. U.S. Dep't of the Army*,
856 F.2d 1541 (D.C. Cir. 1988) ..............................................................................................21

*Hood v. City of Chicago*,
No. 1:19-mc-00123(APM), 2019 WL 5295169 (D.D.C. Oct. 18, 2019) .................................6

*Hotel Oakland Assocs. v. Doyle Real Est. Advisors, LLC*,
No. 21-CV-05389-SK, 2022 WL 1493267 (N.D. Cal. May 3, 2022) .....................................14

*In re U.S. OPM Data Sec. Breach Litig.*,
928 F.3d 42 (D.C. Cir. 2019) ..................................................................................................13

*Jaffee v. Redmond*,
518 U.S. 1 (1996) ....................................................................................................................24

*King v. Califano*,
471 F. Supp. 180 (D.D.C. 1979) ............................................................................................19

*Krieger v. DOJ*,
529 F. Supp. 2d 29 (D.D.C. 2008) ........................................................................................17

*Lee v. Dearment*,
966 F.2d 1442, 1992 WL 119855 (4th Cir. June 3, 1992) (unpublished table
decision) ................................................................................................................................20

*Lee v. Dep't of Justice*,
401 F. Supp. 2d 123 (D.D.C. 2005) ..................................................................................11, 12

iii

CONFIDENTIAL – FILED UNDER SEAL

*Lee v. Dep't of Justice,*
    413 F.3d 53 (D.C. Cir. 2005) ................................................................. *passim*

*Luckey v. Miller,*
    929 F.2d 618 (11th Cir. 1991) ..................................................................11

*Mitchell v. USDA,*
    No. 13-cv-500-bbc, 2014 WL 7240671 (W.D. Wis. Dec. 17, 2014).......................20

*Pac. Shores Props., LLC v. Newport Beach,*
    730 F.3d 1142 (9th Cir. 2013) ..................................................................13

*Paige v. DEA,*
    665 F.3d 1355 (D.C. Cir. 2012) ................................................................17

*Pilon v. Dep't of Justice,*
    73 F.3d 1111 (D.C. Cir. 1996) ..................................................................20

*Quinn v. Stone,*
    978 F.2d 126 (3rd Cir. 1992) ....................................................................21

*Reese v. Geneva Enters., Inc.,*
    No. CIV.A. 96-1575-LFO, 1997 WL 214864 (D.D.C. Apr. 18, 1997) ................14

*Riley v. City of Chester,*
    612 F.2d 708 (3d Cir. 1979)................................................................24, 25

*Russo v. United States,*
    576 F. Supp. 2d 662 (D.N.J. 2008) ...........................................................22

*Scarborough v. Harvey,*
    493 F. Supp. 2d 1 (D.D.C. 2007) ..............................................................21

*Tripp v. Dep't of Def.,*
    284 F. Supp. 2d 50 (D.D.C. 2003) ..............................................................5

*U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos.,*
    507 F. Supp. 2d 45 (D.D.C. 2007) ............................................................11

*\*Zerilli v. Smith,*
    656 F.2d 705 (D.C. Cir. 1981) ............................................................. *passim*

## OTHER AUTHORITIES

40 Fed. Reg. 28,948 (July 9, 1975)................................................................22

*Webster's Third New International Dictionary* (1966) .................................................9

**CONFIDENTIAL – FILED UNDER SEAL**

Natalie Gross, *DoD bans popular TA school from accepting the benefit*, Military
    Times (Apr. 6, 2018)..................................................................................................13

CONFIDENTIAL – FILED UNDER SEAL

## INTRODUCTION

Plaintiff's opposition confirms that there is no basis for the Court to take the extraordinary step of invading the First Amendment journalist's privilege in this case.

*First*, Plaintiff concedes that her subpoenas are overbroad and must be narrowed.  Her claim that there is a narrow reading of the subpoenas misstates the materials in the record.

*Second*, Plaintiff cannot show that she has "exhausted every reasonable alternative source of information." *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981).  Discovery revealed multiple leads about people who had access to the PowerPoint that Plaintiff believes was released.  But Plaintiff never followed those leads.  Plaintiff insists that interrogatory responses did not name those people as possessing the PowerPoint.  Pl.'s Mem. in Opp. to Mot. to Quash at 10 n.7, 21, 22, ECF No. 123 ("Opp.").  But that is not an answer.  If it were, Plaintiff could have asked a few interrogatories and ended discovery long ago.  Exhausting all reasonable alternatives requires following where the evidence leads.  When a deposition identifies someone who likely had access to the PowerPoint, Plaintiff has to follow up no matter what the interrogatory answers said.  Worse, Plaintiff admits that, of the 39 depositions or declarations that she repeatedly touts, 25—well over half—were pursued from people "without reason to believe" they had access to the PowerPoint.  Opp. 11.  But Plaintiff cannot pad her discovery statistics by pursuing random depositions "without reason" to think they will produce results and pretend that counts toward exhausting *reasonable* avenues of discovery.  Again, she must follow the evidence, and she has failed to do that.

*Third*, Plaintiff offers no coherent rationale for ignoring *Zerilli*'s instruction to balance "the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources."  656 F.2d at 712.  Plaintiff simply insists that recent cases have reduced *Zerilli* to a mechanical test based on (i) whether the information sought is central to the case (centrality), and (ii) whether plaintiff has exhausted alternative avenues of discovery (exhaustion).

Plaintiff has no response to the errors Ms. Herridge identified in those recent cases, and she does not even attempt to reconcile the test she proposes—under which a Privacy Act plaintiff *always* gets discovery of confidential sources eventually—with *Zerilli*'s clear instruction that the privilege must prevail "in the ordinary case" and can be overcome only in the "most exceptional cases" involving a "sufficiently compelling" interest.  656 F.2d at 712 & n.45.

*Zerilli* calls for balancing, and the obvious deficiencies in Plaintiff's case show that the balance of interests weighs overwhelmingly against Plaintiff and in favor of the First Amendment.

Plaintiff's theory that she can get Privacy Act damages for the Department of Defense ("DoD") decision to cut off tuition assistance for the University of Management and Technology ("UMT") is obviously wrong.  She does not dispute that DoD made devastating factual findings, including that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Nor can she dispute that she declined to challenge those findings in court.  Instead, Plaintiff claims that the Privacy Act provides an end run to get damages for DoD's decision without ever challenging it.  Plaintiff's basic complaint here is not that DoD was *wrong*.  Rather, her claim is that, but for the Fox Reporting and the congressional interest it aroused, DoD would have remained asleep at the switch and no one ever would have done anything about the ████████████████ █████████████████████ situation.  In Plaintiff's view, as long as DoD was prompted to examine Plaintiff and UMT by a chain of events that started with the Fox Reporting, Plaintiff can waive any appeal of the DoD decision and *still* get damages *for that decision* by saying it was linked to a Privacy Act violation.  Nothing in the Privacy Act—or basic principles of causation—allows that absurd result.  DoD's independent decision breaks any chain of causation tracing back to the Fox

CONFIDENTIAL – FILED UNDER SEAL

Reporting.  Moreover, the Privacy Act does not hamstring the government's ability to take remedial action by requiring taxpayers to pay damages for *correct* decisions whenever an agency happens to be prompted to investigate by a whistleblower's release of information to the press.

In reality, the only way Plaintiff could trace causation through DoD's decision would be turning this case into a mini-trial collaterally attacking the DoD decision.  But Plaintiff cites no authority that would allow this Court to entertain such a collateral attack.

Plaintiff's case is further undermined by the fact that virtually all the information in the Fox Reporting was included in the FBI Affidavit filed in the Eastern District of Virginia.  Plaintiff does not dispute that the affidavit became a public court record in 2013.  Instead, she claims that does not matter.  In her view, releasing information that is on a public court docket violates the Privacy Act.  That is simply not the law.  This Court should adhere to the many cases holding that there is no Privacy Act "disclosure" where information is already a matter of public record.

Given the infirmities in Plaintiff's case, the balance of interests overwhelmingly favors quashing the subpoenas.  At a minimum, the Court should postpone ruling on discovery from Ms. Herridge until the government can test Plaintiff's case on motions for partial summary judgment. It makes no sense to override First Amendment protections now—and to inflict all the collateral damage that comes from a forced disclosure of confidential sources—in aid of a case that may be largely or entirely defeated at summary judgment.

## ARGUMENT

I. **THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE THE FIRST AMENDMENT JOURNALIST'S PRIVILEGE.**

A. **Plaintiff Concedes That Her Subpoenas Are Overbroad.**

Plaintiff concedes that her document subpoena is overbroad as she hastily agrees to narrow it to seek only material received from government sources potentially in violation of the Privacy

3

CONFIDENTIAL – FILED UNDER SEAL

Act.  Opp. 18.  There is no "reasonable reading," Opp. 16, of the subpoena that is similarly narrow.  The subpoena defines the "Private Documents and Information" that it seeks as "*any and all* documents and information concerning Dr. Chen and/or the University that were provided to or obtained by you *from a third party* and that were presented in, referred to, or *considered* in relation to" the Fox Reporting.  Subpoena to Prod. Docs. Issued to Catherine Herridge, Schedule A at 3, ECF No. 94-13 ("Herridge Subpoena") (emphases added).  Those terms do not support a narrowing construction, nor does the list of examples in the subpoena.  The subpoena expressly states that the examples are provided "without limitation."  *Id.*

   Plaintiff also cannot pretend that the Browne and Upson Declarations acknowledged a narrow reading of the subpoena.  That misrepresents what the declarations say.  Plaintiff claims that Browne and Upson recognized that, while the definition of Private Documents and Information "could be interpreted broadly," they could also "reasonably interpre[t]" it narrowly.  Opp. 17.  That is not true.  Each declaration says that the definition "broadly includes *any* information received from *any* third party" and thus includes materials "that in no way implicate the alleged violations of the Privacy Act."  Upson Decl. ¶ 6, ECF No. 121-26; Browne Decl. ¶ 6, ECF 121-27 (emphasis in original).  As a result, each declarant refused to use Plaintiff's term and instead defined a *new* term: "I will limit my statements in this declaration solely to a *narrower* set of Disputed Private Documents and Information, which *I define* as roughly corresponding to the 'Leaked Records' referred to in Paragraph 23 of Plaintiff's complaint."  Upson Decl. ¶ 7; Browne Decl. ¶ 7 (emphases added).

   The subpoenas are patently overbroad as written and must be narrowed by a protective order before any discovery could possibly be considered.

   **B.     Plaintiff Has Not Exhausted Alternative Avenues of Discovery.**

   Plaintiff's Opposition also confirms that Plaintiff has failed to "exhaus[t] every reasonable

CONFIDENTIAL – FILED UNDER SEAL

alternative source of information." *Zerilli,* 656 F.2d at 713.  Her claims only highlight the defects in her efforts to find the source who allegedly released a PowerPoint with information about her.

*First*, in response to evidence identifying multiple individuals who likely had access to (or possession of) the PowerPoint, Plaintiff repeatedly claims, Opp. 10 n.7, 21, 22, she did not need to follow up because interrogatory responses did not name those individuals as persons possessing the PowerPoint.  But Plaintiff cannot limit her duty to exhaust alternatives that way.[2]  If that were correct, Plaintiff could have asked a few interrogatories and declared her duty satisfied months ago when the agencies identified only three people who supposedly had the PowerPoint.  *See* Opp. 10. Instead, Plaintiff must follow where the evidence leads.  In addition, the interrogatories Plaintiff touts focus solely on who had "possession, custody or control" of the PowerPoint.  *Id.*  But to exhaust reasonable alternatives, she must pursue (within reason) those who had *access* to the material.[3]  Her claim that her interrogatories asked about who actually "accessed" the PowerPoint (which can be known only if there are access logs) is beside the point.  Opp. 20.  Plaintiff cannot and does not claim that she sought to track down all those who had *access to* the PowerPoint, which was her primary duty.  *See Tripp*, 284 F. Supp. 2d at 61.

*Second*, Plaintiff claims pursuing the gaps Ms. Herridge identified is too burdensome— such as following up on ██████████████████████████████████ ██████ all of whom had access to ████████████ the PowerPoint.  ████████████████████

---

[2] *See Zerilli*, 656 F.2d at 715 (plaintiffs cannot "escape their obligation to exhaust alternatives" by accepting government conclusion that employees had not leaked); *see also Clyburn v. News World Commc'ns, Inc.*, No. CIV. A. 86-1149, 1988 WL 489658, at *6 (D.D.C. Apr. 14, 1988) (litigant cannot limit discovery by "accepting" sparse FBI interrogatory responses).

[3] *Zerilli*, 656 F.2d at 714–15 (criticizing failure to depose individuals with access to leaked files); *Tripp v. Dep't of Def.*, 284 F. Supp. 2d 50, 61 (D.D.C. 2003) (requiring discovery from persons who had "access to personnel files"); *Clyburn*, 1988 WL 489658, at *5 (requiring plaintiff to pursue discovery from those with "access to the investigation documents").

CONFIDENTIAL – FILED UNDER SEAL

██████████████████████████████████████████████████████████████████

████ Following up on ██████████████████ leads is well within the "very substantial"
burden Plaintiff must satisfy to "exhaus[t] *every* reasonable alternative source of information."
*Zerilli,* 656 F.2d at 713 (emphasis added).  This requires her, within reason, to do "everything [she]
can to glean information" elsewhere.  *Hood v. City of Chicago*, No. 1:19-mc-00123(APM), 2019
WL 5295169, at *5 (D.D.C. Oct. 18, 2019); *see also Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9,
18 (D.D.C. 2015) (litigant must "exhaust . . . *possible* sources" (emphasis added)).  Under that
standard, she should have followed up on those with access ███████████████████████.

*Third*, Plaintiff offers no sound reason for rejecting the other leads identified in the motion.
She has no reason for not pursuing ███████████████████ other than her erroneous
reliance on interrogatory responses—as if they relieve her of the need to follow up on testimony
that contradicts those responses. █████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████[4] She
claims that there is no need to question the attendees at the ██████ briefing because ███████
does not think the PowerPoint was shown.  Opp. 24 n.16.  But ███████ did not deny seeing parts
of the PowerPoint; █ just cannot recall how it was presented. ████████████████████
████████████████████████  As for emails referring to "summaries" ███████████,
Plaintiff says they might not contain information from the PowerPoint.  Opp. 21–22.  Perhaps, but
no one knows because Plaintiff never asked, despite knowing that the summaries ████████████

---

[4] Plaintiff also cannot rely on the fact that DHS did not produce any documents from ██████████,
because she provides no basis for thinking that ████ files were even searched. ████████████
█████████████████████████████████████████████████████████

CONFIDENTIAL – FILED UNDER SEAL

████████████████████████████████████████████████ She
cannot cite incomplete information to excuse her failure to pursue complete information.

Plaintiff also has no plausible excuse for failing to follow up on attendees at briefings where
████████████████████████ True, as Ms. Herridge noted, Herridge Mem. 19–
21, there is conflicting testimony about ██████ at one briefing, Opp. 23. But that raises a
question to be closed out; it does not justify failure to follow up. And it is clear that ██████
████████████████ at some briefings; indeed, ████████████████████████
██████ Herridge Mem. 20. Plaintiff cannot pretend, Opp. 24, that a basic request for
production asking for documents showing who had access ██████████ would have produced
all visitor and access logs for ████ briefings ████████████████████████
████████████████████ To get logs from specific days after learning they were
relevant, Plaintiff had to ask for them. And she certainly cannot point to the production of a few
unspecified calendar invitations, Opp. 24, and claim Ms. Herridge has the burden to show that
there was *not* a comprehensive effort to track down schedules and access logs. Plaintiff has the
burden here, and she cannot show that she made any efforts to request access logs or follow up on
who had access to ████████████████████████████████

Following up on these leads would not involve "conjur[ing]" "farfetched" scenarios about
larcenous janitors, as Plaintiff pretends. Opp. 24–25. It simply involves pursuing concrete leads
developed in discovery—which Plaintiff failed to do at every turn.

*Fourth*, Plaintiff admits that of the 39 depositions or declarations that she touts, 25—well
over half—were pursued from people "without reason to believe," Opp. 11, they had access to the
PowerPoint. Plaintiff cannot inflate her discovery statistics by pursuing pointless depositions and
declarations—"without reason" to think that they will lead to the alleged source—and then act as

if that counts towards exhausting *reasonable* alternatives.  She was required to follow the evidence.

By failing to follow up on multiple people with access to the PowerPoint, she failed to do that.

C.    **The Public Interest in First Amendment Protections Outweighs Plaintiff's Personal Interest in Seeking Damages in Her Flawed Privacy Act Lawsuit.**

Recognizing that the subpoenas will be quashed if the Court balances competing interests,

Plaintiff insists that *Zerilli* forbids balancing.  She then tries to wish away the myriad defects in

her Privacy Act claims, declaring indignantly that "it is not Herridge's place to contest the

subpoenas by challenging the merits" of Plaintiff's case.  Opp. 35.  But that is exactly what *Zerilli*

contemplates by directing courts to "weig[h] the public interest in protecting the reporter's sources

against the private interest in compelling disclosure" and to judge how "the equities weigh."  656

F.2d at 712, 714.  A court cannot "weigh" a plaintiff's interest without assessing the importance

and potential merit of her claims.  After all, a meritless claim cannot outweigh a constitutional

protection.  Instead of that balancing, Plaintiff would reduce *Zerilli* to a mechanical two-part test

based on centrality and exhaustion of alternative discovery.  That test cannot be reconciled with

*Zerilli*'s call for balancing.  And Plaintiff does not even attempt to explain how her test—which

will *always* override the journalist's privilege in Privacy Act cases—can be squared with *Zerilli*'s

express instruction that the privilege must prevail "in all but the most exceptional cases."  *Id.* at

712.  *Zerilli* calls for balancing with a thumb on the scales to protect the "preferred position of the

First Amendment."  *Id.*  The balance here overwhelmingly favors the journalist's privilege.

1.    ***Zerilli* Calls for a Balancing of Interests.**

*Zerilli* repeatedly instructed that, in considering efforts to override the journalist's

privilege, courts should "weig[h] the public interest in protecting the reporter's sources against the

private interest in compelling disclosure" and should "strik[e] the balance between the civil

litigant's interest in compelled disclosure and the public interest in protecting a newspaper's

confidential sources," *id.*; *see also id.* ("a balancing approach should be applied"); *id.* at 712 n.46 (defending "the case-by-case balancing approach we have adopted"). The court made clear that it set "guidelines" to aid courts in the ultimate task of determining how "the equities weigh." *Id.* at 713, 714. Despite those instructions, Plaintiff insists there must be no effort to weigh or value her case or consider the merits of her claims. But that is exactly what *Zerilli* requires by its terms. To "balance" means "to weigh (two things) in or as if in a balance: compare the relative weight, force, importance or value of." *Balance*, *Webster's Third New International Dictionary* (1966). Weighing a "litigant's interest in compelled disclosure" necessarily requires assessing the importance or value of the claim in aid of which the disclosure is sought. Otherwise, courts could be sacrificing First Amendment protections for claims so trivial or tenuous that they do not have sufficient weight to justify overriding constitutional concerns. *Zerilli* itself made that necessary part of the balance clear. When the *Zerilli* court turned to "[a]pplying th[e] guidelines" it had discussed, the first point the court noted was that "appellants' suit is not frivolous." 656 F.2d. at 714. Some assessment of the relative merit of the suit was the first item the court addressed.[5]

Plaintiff dismisses the clear instructions from *Zerilli* with the puzzling claim, Opp. 25, that *Zerilli* called for balancing only at a "superficial level." Appealing to a "level" other than the plain words in the opinion, Plaintiff argues that, while *Zerilli* repeatedly directed courts to "balance" competing interests, it did not really mean that. Instead, in Plaintiff's view, Opp. 27, *Zerilli*'s "guidelines" for balancing are really a two-part test or decision tree that poses two questions. First, is the information central to plaintiff's case? If yes, proceed to step two. Second, has the plaintiff exhausted other discovery? If yes, order disclosure. The problem with that approach is that it does

---

[5] No greater assessment of the merits was needed because the balance tipped decidedly against the plaintiff based on another factor—total failure to pursue alternative discovery. *See id.*

not involve anything like a balancing test.  It is simply a two-gated decision tree that dictates a result without weighing any competing interests whatsoever.  But this Court should assume that the court of appeals knows the difference between a balancing test and a decision tree.  If *Zerilli* had intended to scrap balancing and instead use a mechanical two-part test, it would have said so.

Plaintiff's test also cannot be reconciled with *Zerilli*'s core directive that the journalist's privilege must prevail "in all but the most exceptional cases."  656 F.2d at 712.  *Zerilli* directed unequivocally that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege" and that an "interest sufficiently compelling to override privilege will be rare."  *Id.* at 712 & n.45 (citing *Baker v. F&F Investment*, 470 F.2d 778, 783 (2d Cir. 1972)).  Those directives necessarily mean that courts must assign a value to a litigant's "interest," and in most civil cases should find that value insufficient to override the journalist's privilege.  Plaintiff's two-part test cannot be reconciled with that instruction.  Under Plaintiff's approach, as long as a litigant seeks information central to her case, she can *always* overcome the privilege eventually (after exhausting other discovery), without anyone ever considering whether her "interest" is particularly "compelling" or not.  In Privacy Act cases, in particular, (where the identity of a source is deemed central to the claim), the plaintiff will not only prevail in the ordinary case; she will prevail in *every* case.  Plaintiff's test thus guarantees outcomes that directly contradict the way *Zerilli* said balancing ought to work.  Plaintiff has no response; she simply ignores this point.

Contrary to Plaintiff's claims, *Lee v. Department of Justice*, 413 F.3d 53 (D.C. Cir. 2005), did not rewrite *Zerilli*.  While the *Lee* court did not explicitly balance competing interests, the silent failure to apply that analysis cannot override clear instructions from a prior decision.  Nor do district court decisions provide a persuasive basis for adopting Plaintiffs' two-part test.  As explained (Herridge Mem. 25), when the district court in *Lee* announced that *Zerilli* could be

reduced to a "two-part analysis" of centrality and exhaustion and that "[t]he law in this Circuit requires no more," *Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 132 & n.14 (D.D.C. 2005), it relied on giving precedential value to the denial of rehearing in *Lee, see id.* n.14 (noting that Judge Tatel's call for balancing of interests "failed to garner majority support"). That was error. "[A] summary denial of rehearing en banc is insufficient to confer any implication or inference regarding the court's opinion relative to the merits of a case" even as to an argument "raised in dissent." *Luckey v. Miller*, 929 F.2d 618, 622 (11th Cir. 1991); *see also* Herridge Mem. 25 & n.17 (collecting cases). And *Hatfill v. Gonzales* merely followed *Lee*. *See* 505 F. Supp. 2d 33, 40 (D.D.C. 2007). Once again, Plaintiff has no response on this point; she simply ignores it.

Plaintiff also ignores decisions applying exactly the balancing that *Zerilli* called for. For example, courts have explained that narrow interests of private litigants usually cannot overcome the privilege: "[I]n civil cases, the privilege typically prevails because any interest in overcoming the privilege is by definition a private rather than public interest." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos.*, 507 F. Supp. 2d 45, 51 (D.D.C. 2007) (citing *Zerilli*, 656 F.2d at 712). That assessment could not apply if Plaintiff's mechanical test were the rule, because her test bars the court from considering the weight of the interests at stake. Similarly, *Grunseth v. Marriott Corp.* held that a plaintiff falls short under *Zerilli* where he "has demonstrated no overwhelming or compelling societal interest in overcoming the presumption favoring First Amendment protections for a reporter's sources." 868 F. Supp. 333, 335–36 (D.D.C. 1994). There, the court explained that the plaintiff's claims did not involve matters implicating broader public interests, such as "election fraud, or governmental corruption, or any other issue that affects the fundamental validity of the electoral process." *Id.* at 336. While the plaintiff had a private interest in recovering for "public humiliation" and "public embarrassment," *id.*, the court

concluded that was simply not enough.  That demonstrates exactly the sort of balancing of interests called for in *Zerilli*.  And once again, Plaintiff has no response.

Lastly, Plaintiff argues, Opp. 29, that *Zerilli*'s directives on balancing should be ignored because they are simply too hard to implement.  Plaintiff points to the district court in *Lee*, which dismissed balancing as "inherently unworkable" and announced that "[w]hether a reporter must reveal his sources should not rest on the value assigned by a jurist to the reporter's story or the litigant's purpose." *Lee*, 401 F. Supp. 2d at 139, 140.[6]  But assigning a value to a litigant's interest is exactly what *Zerilli* called for.  It directed courts to "weigh" a litigant's "interest in compelling disclosure" to determine how the "equities weigh" and whether it qualifies as a "most exceptional cas[e]" that justifies overriding the privilege.  *Zerilli*, 656 F.2d at 712, 714.  That instruction necessarily indicates that some litigants' interests are more important than others and courts must recognize those differences to ensure that the privilege prevails "in the ordinary case." *Id.*  What courts cannot do under *Zerilli* is undermine First Amendment protections by abandoning balancing and accepting Plaintiff's rule that *all* Privacy Act plaintiffs *always* get access to reporters' sources after exhausting other discovery.  That test may be easier to administer, but it flatly violates *Zerilli*.

### 2. The Balance of Interests Overwhelmingly Favors the Public Interest in First Amendment Protections that Promote a Robust Free Press.

#### a. Plaintiff's Personal Interest in Damages Weighs Little in the Balance, Especially Given the Weaknesses in her Claims.

Plaintiff wants to forbid comparing the interests at stake to divert attention from the defects in her case.  But the infirmities in her Privacy Act claims are directly relevant to evaluating whether this case qualifies as a "most exceptional cas[e]" that presents an "interest sufficiently compelling

---

[6] As explained, *see* Herridge Mem. 44 & n.32, *Lee* mischaracterized the balance in suggesting that courts would weigh the "newsworthiness" of a particular story.  The relevant interest is the broader First Amendment interest in promoting a free press by protecting journalists' confidential sources.

to override privilege." *Zerilli*, 656 F.2d at 712 n.45 (citing *Baker*, 470 F.2d at 783). It clearly does

not. The balance of interests overwhelmingly favors upholding the privilege.

**(i)**     **Plaintiff Cannot Obtain Privacy Act Damages for DoD's Decision to Terminate Tuition Assistance.**

Plaintiff does not dispute that the vast bulk of her alleged damages arise from DoD's

decision to cut off tuition assistance for UMT. That makes sense given that 70% of UMT's

students apparently were affiliated with the U.S. military. *See* Aff. in Support of Two Appls. for

Search Warrants ¶ 8 (attached as Ex. J to Herridge Mem.) (EFC No. 94-11) ("FBI Aff."). Instead,

Plaintiff merely insists, Opp. 31, that DoD's decision was not the source of *all* her damages, so at

least *some* of her claim might survive.[7] That misses the point. If 90% of a litigant's purported

claim is not viable, then the "litigant's interest in compelled disclosure," *Zerilli*, 656 F.2d at 712,

necessarily weighs differently when balanced against First Amendment protections for journalists.

As explained, Herridge Mem. 27–28, Plaintiff cannot claim Privacy Act damages for

DoD's decision, because a decision "by an independent intermediary breaks the chain of

causation." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). Plaintiff's responses on that basic

point are diversions. She appeals to "the D.C. Circuit's Privacy Act standard for causation," Opp.

32, as if there were a special causation rule for the Privacy Act (and this Circuit). That is nonsense.

Standard principles of tort causation apply.[8] And under those principles, an action by an

---

[7] Plaintiff points, in particular, to costs for "reputation management," Opp. 31, but even that is not independent from the DoD decision. Any reputational remediation surely must have addressed, at least in part, the fallout from DoD publicly announcing that it had terminated UMT "on national security grounds." Natalie Gross, *DoD bans popular TA school from accepting the benefit*, Military Times (Apr. 6, 2018), https://tinyurl.com/d8xa2c2b.

[8] *See, e.g.*, *Pac. Shores Props., LLC v. Newport Beach*, 730 F.3d 1142, 1167 (9th Cir. 2013) (where Congress creates a damages action that "sounds basically in tort," "general tort principles of causation usually govern"); *cf. Doe v. Chao*, 540 U.S. 614, 621 (2005) (applying tort principles to Privacy Act claim). In fact, the case Plaintiff cites relies on tort claims for terrorist acts and antitrust cases to explain Privacy Act causation principles. *See In re U.S. OPM Data Sec. Breach*

independent government decisionmaker breaks a chain of causation.[9]  A proximate cause is one that "in its natural and continual sequence, *unbroken by any efficient intervening cause*, produces the injury."  *Reese v. Geneva Enters., Inc.*, No. CIV.A. 96-1575-LFO, 1997 WL 214864, at *8 (D.D.C. Apr. 18, 1997) (emphasis in original).  Even if it were true that the Fox Reporting and the congressional interest it aroused prompted DoD to reexamine Plaintiff and UMT (potentially making the Fox Reporting a "but for" cause leading to DoD's decision), that cannot establish *proximate* causation, because DoD's independent action after its review breaks the causal chain. Plaintiff wholly fails to address that point.

Plaintiff's focus on casting the Fox Reporting as a but-for cause also highlights that her claim would perversely turn the Privacy Act into a means for getting damages for *correct* agency decisions.  In Plaintiff's view, if a whistleblower gives information to the press, and the press arouses Congress's interest, and questions from Congress prompt the government to examine a situation and then make formal findings and take remedial action, the person subject to that action can get Privacy Act damages *even if the action was correct*—and even if she failed to challenge it.  Plaintiff's complaint is not that DoD got everything *wrong*—she waived any appeal of the decision.  Her claim is that, if it had not been for the Fox Reporting, DoD never would have done anything.  Plaintiff treats the Privacy Act as if it created a legally protected interest to be free from

---

*Litig.*, 928 F.3d 42, 67 (D.C. Cir. 2019) (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017), and *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 996 (D.C. Cir. 1977)).

[9] *See, e.g.*, *Hotel Oakland Assocs. v. Doyle Real Est. Advisors, LLC*, No. 21-CV-05389-SK, 2022 WL 1493267, at *10 (N.D. Cal. May 3, 2022) ("Where a governmental actor makes a determination, there is no proximate cause for a private party's conduct without a showing that the private party had some control or power over the governmental actor."); *see also Galen v. Cnty. of Los Angeles,* 477 F.3d 652, 663 (9th Cir. 2007) ("Pursuant to traditional tort law principles of causation, . . . a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation . . . .").

CONFIDENTIAL – FILED UNDER SEAL

adverse DoD action—even correct action—if DoD was roused from inaction by the effects of a whistleblower's release of information to the press.  But nothing in the Privacy Act (or settled principles of causation) permits that absurd result.  The Privacy Act is not designed to hinder remedial action by requiring the government to pay out damages for proper corrective decisions any time the government is prompted by a release of information to the press.

In reality, any attempt to trace causation through DoD's decision would involve an impermissible collateral attack on that decision, because it would require showing that the decision is tainted.  *See* Herridge Mem. 28.  It would require proving that the decision was not based on the findings ███████ cited by DoD, but instead on impermissible factors derived from the alleged Privacy Act violation.  Indeed, Plaintiff ultimately does not dispute that she would have to show that the decision was based ██████████ on "sensationalist smearing" via alleged Privacy Act violations.  Opp. 34.  But she provides no rationale to explain why such a collateral attack on a final agency decision that she failed to appeal would be legally permissible.  Her only response (in a footnote), Opp. 33 n.17, to cases forbidding such collateral attacks is that they involved a different subsection of the Privacy Act providing a cause of action for failure to correct records (section 552a(g)(1)(A)).  That is true, but irrelevant.  Plaintiff cites no case to suggest that claims (like hers) under section 552a(g)(1)(D) open the door to collaterally attacking separate decisions.  And the absence of cases discussing use of this section for such attacks does not mean that it opens up such a free-for-all.  It simply means that, until now, no litigant has had the audacity to use a section 551a(g)(1)(D) claim to attack a final agency action after waiving an appeal.  In addition, Plaintiff's own concession that she will have to establish in this Court that DoD's decision was not an "application of reasoned judgment," Opp. 34, is indistinguishable from an arbitrary and capricious claim that she was required to bring exclusively on APA review of that decision.

15

CONFIDENTIAL – FILED UNDER SEAL

At bottom, Plaintiff refuses to explain how she can trace causation through DoD's independent decision consistent with applicable law.  Instead, she insists that she will address that issue "when appropriate."  Opp. 33, 34.  But vague assurances that Plaintiff will come up with a way to salvage her case some other time are not enough when she is asking this Court to override First Amendment constitutional protections to move this case forward.

> **(ii)** **All the Key Elements of the Story Appeared in the Fox Reporting Through Sources *Other Than* the Few Pieces of Information Allegedly Implicating the Privacy Act.**

Another fatal defect further undermines Plaintiff's claims.  All the essential points in the story that Plaintiff says harmed her were set out through sources quite apart from the few specific pieces of information supposedly released in violation of the Privacy Act.  As a result, Plaintiff faces insurmountable hurdles in proving that any alleged damages were caused by Privacy Act violations—because the information was presented from other sources.

Plaintiff offers only a half-hearted response.  She insists, Opp. 40, that Fox's reliance on other sources for the bulk of the story will not *entirely* wipe out her claim.  As noted above, that misses the point.  Where this Court has to balance the importance of advancing Plaintiff's claim against the public interest in constitutional protections for the press, it is important to know how much (if any) of her purported claim will likely survive summary judgment.

Next, Plaintiff claims that the Privacy Act covers "oral disclosures."  Opp. 40.  But that cannot convert what Stephen Rhoads told FNN into Privacy Act disclosures.  Rhoads had first-hand knowledge about what Plaintiff said to him, including that she admitted being a colonel in the PLA, that she told him to lie about it to a grand jury, and that she sought to target recruiting at particular military bases.  Rhoads knew those facts from personal observation apart from any "record" created by the FBI, and Plaintiff cannot pretend that Rhoads' disclosure of his own

observations violated the Privacy Act.[10]   Plaintiff cites no authority that would convert an informant's retelling of his own observations into a Privacy Act violation.

Plaintiff also speculates, Opp. 40, that perhaps Fox found her PhD dissertation from government records (instead of her publicly posted CV) and that perhaps the dissertation itself is thus subject to her Privacy Act claim.   That is nonsense.  The dissertation is on the Internet and can be found by a Google search.  *See* https://www.proquest.com/docview/304500690/abstract. In any event, the dedication to her father in the PhD thesis is hardly the information that caused damages to Plaintiff.  Plaintiff's desperate effort to pretend that such information would be covered by the Privacy Act simply confirms that she has no real argument on this point.

At bottom, Plaintiff cannot—and does not—dispute that Exhibits X and Y to the opening memorandum show what the articles of February 24 and April 28 would look like with Privacy Act material removed.   And those exhibits readily show that all the information that Plaintiff believes was damaging to her was fully presented entirely apart from any Privacy Act sources.

> **(iii)  Virtually All the Information Underpinning Plaintiff's Claims Was in an FBI Affidavit That Was Legally a Matter of Public Record Since 2013.**

Plaintiff's claims are further undermined by the fact that virtually all the information underpinning her Privacy Act claim was in the FBI Affidavit that has been part of the public record

---

[10] *See, e.g.*, *deLeon v. Wilkie*, No. 19-1250, 2020 WL 210089, at *9 (D.D.C. Jan. 14, 2020) ("[T]he disclosure of information acquired from an independent source—including personal knowledge—does not violate the Act."); *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011) ("[A]n agency official who discloses information that he or she acquired from non-record sources—such as observation . . .—does not violate the Privacy Act in doing so, even if the information disclosed is also contained in agency records."); *Krieger v. DOJ*, 529 F. Supp. 2d 29, 47 (D.D.C. 2008) (disclosure of "[i]nformation derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records"); *see generally Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) ("To violate section 552a(b), then, a disclosure generally must result from an individual's having 'actually retrieved' the information from the system of records in which it is contained.").

since 2013.  *See* Herridge Mem. 31–34.  Plaintiff does not dispute that the Eastern District of Virginia has already held that the affidavit was "part of the public records of the court" since 2013. *Id.* at 31.  Nor does she dispute that she is foreclosed from challenging that ruling.  *See id.* at 31 & n.20.  Her arguments to minimize the impact of the FBI Affidavit on her case are meritless.

First, Plaintiff claims, Opp. 35–36, that there was *some* information in the Fox Reporting that was not in the Affidavit, so *something* of her case will survive.  Again, that misses the point. It matters for balancing interests if 90% of Plaintiff's claim will be wiped out.

And the few scraps of information that Plaintiff identifies only confirm that almost nothing would survive if she cannot seek damages for information that was already in the FBI Affidavit. Plaintiff points to the information that she was investigated by ICE and the Pentagon.  Opp. 35. But the Affidavit lists five false statements that she made *on immigration forms*.  FBI Aff. ¶¶ 17– 30.  That makes it a foregone conclusion that ICE was involved.  And the Affidavit itself states that NCIS agents were involved.  *Id.* ¶ 48.  NCIS also confirmed to Fox *on the record* that it was investigating Plaintiff.  *See* June 28 Article at 1 (ECF No. 94-6).  There can be no Privacy Act claim from that information.  Next, Plaintiff points to the detail that the probe was a "200d counterintelligence case."  Opp. 35.  But the first paragraph of the FBI Affidavit says that it was submitted by an agent in the "counterintelligence squad" whose role is "investigating crimes involving national security."  FBI Aff. ¶ 1.  The remaining bits of information that Plaintiff cites are equally unavailing.  She gives no reason to believe, for example, that she could secure Privacy Act damages for the revelation that she "came to the United States from Beijing on a non-immigrant visa with her then-minor daughter," that the probe might have started as early as 2009, or that she told the FBI in 2012 that her "role in the Chinese space program was a 'civilian agency.'"  Opp. 35–36.  Lastly, Plaintiff points to the report that there was a dispute between the

FBI and the U.S. Attorney's Office about charging Plaintiff.  Opp. 36.  But there is no reason to think that deliberative dispute was contained in a record in a system of records and retrievable by Plaintiff's name.  In any event, given all the other information in the FBI Affidavit, the revelation of that additional detail could not give rise to a damages claim.

Second, Plaintiff pretends that Ms. Herridge rests on the argument that the affidavit "theoretically could have been made available," while Plaintiff insists that what matters is that a clerk's error meant that it was not "publicly accessible."  Opp. 36–37.  That misunderstands the critical point: the Eastern District of Virginia has held that the document was legally part of the public records of the court.  That the clerk improperly blocked access to the document is irrelevant.  Access to public documents could be impaired for myriad reasons.  Records may be destroyed by fire or flood, buildings may be inaccessible due to weather, and records may be misfiled, mislaid, or mistakenly held back by a clerk who misunderstands the rules.  In fact, as Plaintiff notes, Opp. 36–37, ████████████████████████████████████████████████ Practical barriers to accessibility, however, cannot change the legal status of a filed document—and the information in it—as a public record.  That is critical, because once DOJ files a document and it becomes a public court record, it cannot be a "disclosure" to re-release the same information.

Third, Plaintiff challenges that fundamental point of law.  She ultimately hangs her Privacy Act claim on the theory that it does not matter if the FBI Affidavit was public for years, because releasing information from public court documents is still a Privacy Act violation.  Opp. 37.  That is not the law.  Many courts have held there is no disclosure for Privacy Act purposes where there is no "protectable privacy interest" in the information, such as where the information has already been made public.  *Barry v. Dep't of Justice*, 63 F. Supp. 2d 25, 28 (D.D.C. 1999); *accord King v. Califano*, 471 F. Supp. 180, 181 (D.D.C. 1979) (no disclosure where information was "publicly

known").  The Fifth Circuit agrees there can be no Privacy Act "disclosure" of information already made public.  *FDIC v. Dye*, 642 F.2d 833, 836 (5th Cir. 1981); *accord Ash v. United States*, 608 F.2d 178, 179 (5th Cir. 1979) (disclosing disciplinary proceedings that were already public cannot violate the Privacy Act).  And the Fourth Circuit has explained—specifically in the context of "court documents" and materials that were "part of the public record"—that "the [Privacy] Act does not prohibit disclosure of information which is already open to the public."  *Lee v. Dearment*, 966 F.2d 1442, 1992 WL 119855, at *2 (4th Cir. June 3, 1992) (unpublished table decision).

Indeed, so many courts have followed this approach—including courts in the Fifth, Seventh, Eighth, Eleventh, and D.C. Circuits—that one recently held that it is "well-established by case law" that "there can be no disclosure as required for a Privacy Act violation, when the information was already public information, subject to disclosure, or releasable."  *Danks v. Zinke*, No. 1:17-cv-114, 2018 WL 8646658, at *3 (D.N.D. Nov. 27, 2018); *see also Mitchell v. USDA*, No. 13-cv-500-bbc, 2014 WL 7240671, at *5 (W.D. Wis. Dec. 17, 2014) (no cause of action for disclosing information in a recorded title deed because the Privacy Act "does not provide a cause of action for the disclosure of information that has been made available previously . . . to the public generally"); *Drennon-Gala v. Holder*, No. 1:08-CV-321G-JEC, 2011 WL 1225784, at *7 (N.D. Ga. Mar. 30, 2011) (no "disclosure" where the information "was already a matter of public record before any alleged public disclosure occurred"); *Banks v. Butler*, No. 5:08cv336-KS-MTP, 2010 WL 4537902, at *6 (S.D. Miss. Sept. 23, 2010) (no violation for facts "contained in the public record" because "the disclosure of public information does not violate the Privacy Act").

Although the D.C. Circuit has left open whether releasing publicly available information can be a "disclosure," *see Pilon v. Dep't of Justice*, 73 F.3d 1111, 1123 n.10 (D.C. Cir. 1996), it has also cited *Dye* approvingly for the rule that, "when a release consists merely of information to

which the general public already has access . . . the Privacy Act is not violated." *Hollis v. U.S. Dep't of the Army*, 856 F.2d 1541, 1545 (D.C. Cir. 1988). Indeed, given the First Amendment right of access to public court records, reading the Privacy Act to prohibit (and punish) releasing information from such records would raise grave constitutional concerns. The First Amendment prohibits "impos[ing] sanctions on the publication of truthful information contained in official court records open to public inspection." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975).

Ignoring that precedent, Plaintiff asks the Court to adopt a sweeping rule based on cases cited in a footnote addressing a distinct factual context. *See Scarborough v. Harvey*, 493 F. Supp. 2d 1, 16 n.29 (D.D.C. 2007). *Scarborough* addressed the release of a criminal record, and in holding there could be a "disclosure" of such information, the court made clear that it was following the particular teaching relating to rap sheets in *Department of Justice v. Reporters' Committee for Freedom of the Press*, 489 U.S. 749, 764 (1989). There, the Supreme Court explained that there could be a privacy interest in a rap sheet because it compiled isolated records scattered in multiple courts. *See id.* at 764. As explained, Herridge Mem. 32 n.21, there is no comparable issue here involving a compilation of otherwise obscure public records. The FBI Affidavit itself is the record at issue. *Scarborough* also cited *Quinn v. Stone*, 978 F.2d 126, 134 (3rd Cir. 1992), for the proposition that information that is "readily accessible to . . . the public" may still be "disclosed" in violation of the Privacy Act. *See Scarborough*, 493 F. Supp. 2d at 16 n.29. But *Scarborough* applied that rationale only in the context of releasing a criminal record. And another court in this district long ago distinguished *Quinn* as limited to a context similar to the isolated criminal records in *Reporters' Committee*. *See Barry*, 63 F. Supp. 2d at 28. The *Scarborough* footnote cannot support Plaintiff's sweeping rule that releasing public records violates the Privacy Act.

CONFIDENTIAL – FILED UNDER SEAL

Finally, Plaintiff provides no response to the point that releasing information filed on a public court docket falls under at least one of the express disclosure provisions of the Privacy Act. Section 552a(b)(2) permits disclosures under FOIA.  *See* 5 U.S.C. § 552a(b)(2).  As explained, Herridge Mem. 33, the D.C. Circuit acknowledged in *dicta* that, pursuant to OMB Guidelines implementing the Act, there is no improper disclosure under the Act where information is released even without a FOIA request where the information is "in the public domain" and of a type "traditionally released by an agency to the public without an FOIA request."  *Bartel v. FAA*, 725 F.2d 1403, 1413 (D.C. Cir. 1984); *see also* OMB Privacy Act Implementation Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,954 (July 9, 1975); *Russo v. United States*, 576 F. Supp. 2d 662, 672 (D.N.J. 2008) (release of public domain information permissible under FOIA exception).  That principle from the OMB Guidelines interpreting section 552a(b)(2) applies to the FBI Affidavit.  Indeed, the OMB Guidelines specifically condone releasing "public record matter such as suits commenced" by an agency.  40 Fed. Reg. at 28,954; *cf. Chang v. Dep't of the Navy*, 314 F. Supp. 2d 35, 42–43 (D.D.C. 2004).  Once the FBI Affidavit was filed and the sealing order expired, the government was free to release the information in the Affidavit under section 552a(b)(2).

### (iv)    This Case Is Not Like *Hatfill* or *Lee*.

Plaintiff cannot dispute that her case also lacks the key characteristic of cases like *Hatfill* or *Lee* in which the privilege was overcome—namely, egregious errors involving leaks of false information that smeared the wrong person (Hatfill) or grossly exaggerated facts (Lee).  This case presents nothing like the conduct that raised a public interest in those Privacy Act claims.  Here, as Plaintiff acknowledges, Opp. 36–37, ███████████████████████

███████████████████████████████████████████████

███████████  Ms. Herridge secured information from other source(s) and reported on the facts—

CONFIDENTIAL – FILED UNDER SEAL

facts suggesting that DoD was providing taxpayer dollars through tuition assistance to fund a former colonel in the PLA who repeatedly lied about her past on immigration forms and instructed others to lie about it (including to a grand jury) and was now █████████████████████ ███████████████████████████████████████████ vulnerable to collection by a foreign power.  In sharp contrast to *Hatfill* and *Lee*, DoD later made specific findings of fact on the record ██████████████████████████████████████ In addition, DoD took action based on its findings.  It concluded that Plaintiff and UMT posed a national security threat and it cut off the flow of taxpayer dollars to Plaintiff through tuition assistance.  Plaintiff, in turn, chose not to dispute DoD's findings in court, and those findings remain unchallenged to this day.  This case is nothing like *Hatfill* or *Lee*.

           **b.**      **The Public Interest in First Amendment Protections for a Free Press Overwhelms Plaintiff's Interest in Damages.**

Plaintiff does not even address the First Amendment interests weighing on the other side of the balance.  She does not dispute that breaching the journalist's privilege necessarily impairs news gathering and undermines the ability of the press to provide information to the people.  She does not dispute that First Amendment interests are at their height in cases (like this) involving reporting on national security.  Nor does she dispute that forcing disclosure of sources here will send a signal that sources are *always* subject to disclosure once someone files a Privacy Act suit— and that signal would broadly discourage sources from coming forward.  *See* Herridge Mem. 36– 37; Decl. of Catherine V. Herridge ¶¶ 9–11, ECF No. 94-4.  Finally, Plaintiff does not dispute that forcing Ms. Herridge to reveal her source(s) would destroy her credibility with contacts across the intelligence community and thereby destroy her ability to continue playing a vital role in fulfilling the functions of a free press.  *See* Herridge Mem. 39; Herridge Decl.  ¶¶ 7–11.

CONFIDENTIAL – FILED UNDER SEAL

The balance of interests weighs overwhelmingly in favor of upholding First Amendment protections for the press.  At a minimum, the Court should postpone ruling on discovery from Ms. Herridge until the flaws in Plaintiff's case can be tested on motions for partial summary judgment to see how much of this case survives.  The Court initially thought that ruling on testimony from media sources could be postponed virtually until trial, *see* Feb. 9, 2022 Hr'g Tr. at 10:11–16, ECF No. 77, and that was correct.  That approach would allow the Court to have a clearer view of the competing interests at stake before evaluating whether it should treat this as a "most exceptional case" in which there is an "interest sufficiently compelling to override privilege."  *Zerilli*, 656 F.2d at 712 n.45 (citing *Baker*, 470 F.2d at 783).  There is certainly no need to rush into a constitutional ruling *now* in aid of a claim that is likely to be largely or entirely defeated at summary judgment.

## II.   THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY INVADE THE NEWSGATHERING PRIVILEGE UNDER FEDERAL COMMON LAW.

Plaintiff also fails to provide any sound argument against recognizing a reporter's privilege under federal common law.  She fails entirely to address the factors under *Jaffee v. Redmond*, 518 U.S. 1 (1996), and instead offers a series of protests each of which is readily dismissed.

*First*, Plaintiff claims no court has recognized such a privilege and that is reason enough to bar such a result here.  Opp. 41.  That is both factually incorrect, *see Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979) (recognizing federal common law reporter's privilege), and wrong as a matter of law.  If no court could ever be first, the common law could never develop, which would be contrary to the Supreme Court's express instruction in *Jaffee* that federal courts are to "'continue the evolutionary development of testimonial privileges.'"  *Jaffee*, 518 U.S. at 9 (quoting *Trammel v. United States*, 445 U.S. 40, 47 (1980)).

CONFIDENTIAL – FILED UNDER SEAL

*Second,* Plaintiff points to the rejection of a federal common law privilege in the grand jury context in *Branzburg v. Hayes*, 408 U.S. 665 (1972).  Opp. 42.  But the D.C. circuit has squarely held that, "in civil cases . . . that case is not controlling."  *Zerilli*, 656 F.2d at 711.

*Third*, Plaintiff vaguely claims that state rules on the reporter's privilege vary.  Opp. 43.  But Plaintiff does not identify a single variation that would make any difference in this case.  By contrast, the motion to quash explained that the vast majority of states would either provide an *absolute* privilege in this case or apply a balancing test and provided citations to every relevant state law.  *See* Herridge Mem. 42–43 & nn. 30–31.  On that point, Plaintiff provides no response whatsoever.

*Fourth*, Plaintiff repeats the mistaken claim that it would be difficult for courts to weigh the "newsworthiness" of particular stories.  Opp. 44.  As already explained, *see* Herridge Mem. 44, that misstates the balancing test.  The value to be weighed on the First Amendment side of the scale is not the value of a particular story, but the broader public interest in protecting confidential sources to promote a vigorous free press.  *See, e.g.*, *Riley*, 612 F.2d at 716 ("[W]e must balance on one hand the policies which give rise to the privilege . . . .").

*Fifth*, Plaintiff also repeats the mistaken claim from *Hatfill* that a common law reporter's privilege would effectively immunize violations of the Privacy Act "any time that leaks are made to reporters."  Opp. 45.  As explained, Herridge Mem. 43, that misrepresents the balancing test, which would allow discovery in some cases, depending on the weight of the interests at stake.  Plaintiff wrongly assumes that the only alternative to her erroneous rule under which a Privacy Act plaintiff always *wins* (eventually), is the equally erroneous rule that a Privacy Act plaintiff always *loses*.  That simply ignores how a case-by-case balancing test actually operates.

## CONCLUSION

For the foregoing reasons, the motion to quash the subpoenas should be granted.

CONFIDENTIAL – FILED UNDER SEAL

Respectfully submitted,

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP


By:    /s/ Patrick F Philbin
      Patrick F Philbin (453620)
      Kyle West (24093346)

1155 F Street, N.W., Suite 750
Washington, D.C. 20004
(202) 249-6900

*Attorneys for Catherine V. Herridge*


DATED:  September 12, 2022