**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANPING CHEN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>U.S. DEPARTMENT OF JUSTICE,<br>U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | **Case No. 1:18-cv-03074-CRC**<br><br>**Hon. Christopher R. Cooper**<br>**United States District Judge** |

# MEMORANDUM IN SUPPORT OF NON-PARTY CATHERINE V. HERRIDGE'S MOTION TO AMEND ORDER TO INCLUDE CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Patrick F. Philbin (D.C. Bar No. 453620)
Kyle T. West (D.C. Bar No. 24093346)
ELLIS GEORGE CIPOLLONE
O'BRIEN LLP
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@egcfirm.com

*Counsel for Catherine V. Herridge and Fox News Network LLC*

August 11, 2023

## TABLE OF CONTENTS


**Page**

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

ARGUMENT ........................................ 5

A. The Order Involves Controlling Questions of Law About the Scope of Balancing Under *Zerilli* and the Existence of a Federal Common Law Reporter's Privilege Because Reversal on Either Point Would End This Case. ........................................ 5

B. There Are Substantial Grounds for Difference of Opinion as Shown By Splintered Decisions of the D.C. Circuit. ........................................ 9

C. Immediate Appeal Will Materially Advance the Ultimate Termination of this Litigation Both Because It Would Avoid Duplicative Briefing on a Motion for Contempt and Because Reversal Would End This Litigation Now. ........................................ 12

D. This Is an Exceptional Case Warranting Exercise of the Court's Discretion To Certify an Interlocutory Appeal. ........................................ 14

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

**AF Holdings LLC v. Does 1–1,058*,
286 F.R.D. 39 (D.D.C. 2012)....6, 7, 13

*APCC Servs., Inc. v. AT & T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003)....6, 13

*EEOC v. Bd. of Governors of State Colls. & Univs.*,
No. 86 C 0295, 1989 WL 81987 (N.D. Ill. July 14, 1989)....11

*Est. of Parsons v. Palestinian Auth.*,
952 F. Supp. 2d 61 (D.D.C. 2013)....10

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
103 F.3d 1007 (D.C. Cir. 1997)....14

*Hatfill v. Mukasey*,
No. 08-5049, Per Curiam Order, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008)....11

*Howard v. Off. of Chief Admin. Officer of the U.S. House of Representatives*,
Supp. 2d 52, 55–56 (D.D.C. 2012)....11, 12

**In re Miller*,
438 F.3d 1141 (D.C. Cir. 2005)....2, 12

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
233 F. Supp. 2d 16 (D.D.C. 2002)....6

*Lee v. Dep't of Just.*,
413 F.3d 53 (D.C. Cir. 2005)....7

**Lee v. Dep't of Just.*,
428 F.3d 299 (D.C. Cir. 2005).... *passim*

*Luckey v. Miller*,
929 F.2d 618 (11th Cir. 1991)....10

**Molock v. Whole Foods Mkt. Grp.*,
317 F. Supp. 3d 1 (D.D.C. 2018)....2, 13

*Sherrod, Teed, Vanderhagen, and Ware v. VNA*,
No. 5:17-cv-10164-JEL-KGA, 2022 WL 997261 (E.D. Mich. Apr. 1, 2022)....6, 7, 13, 14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Simmons v. Galvin*,
No. CV 01-11040-MLW, 2008 WL 11456109 (D. Mass. Jan. 16, 2008) ..............................11

*United States v. Honeywell Int'l Inc.*,
No. 08-0961 (PLF), 2021 WL 2493382 (D.D.C. June 18, 2021) ....................................12, 14

*Zerilli v. Smith*,
656 F.2d 705 (D.C. Cir. 1981) ........................................................................... *passim*

**STATUTES**

28 U.S.C. § 1292(b) ........................................................................................... *passim*

**RULES**

Fed. R. App. P. 5(a)(3)..............................................................................................5

**OTHER AUTHORITIES**

16 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3930 (1996)..............................6

## INTRODUCTION

Non-party Catherine V. Herridge respectfully requests that the Court amend its Order of August 1, 2023 ("Order") denying in part her motion to quash a deposition subpoena and certify that Order for interlocutory review under 28 U.S.C. § 1292(b). The Court's ruling implicates vital First Amendment interests under the reporter's privilege because it requires Ms. Herridge to disclose her confidential source(s) for a series of stories involving important issues of national security. All three requirements of section 1292(b) are readily met, and the fact that the Court's Order overrides a First Amendment privilege to require disclosure of a journalist's confidential sources confirms that this is an exceptional case warranting interlocutory review.

First, the Order involves two "controlling question[s] of law." 28 U.S.C. § 1292(b). Specifically, the Order rejected the argument that in evaluating the First Amendment reporter's privilege under *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), a court must engage in a broad-ranging balancing of interests. *See* Order at 6–14. Instead, the Court held that *Zerilli* largely cabined analysis to consider (i) whether the information sought was "central" to the plaintiff's claim and (ii) whether plaintiff had exhausted alternative avenues of discovery. *Id.* at 14–21. In addition, the Court rejected any federal common law reporter's privilege. *See id.* at 25–27. Those questions of law are controlling because, if the court of appeals were to disagree, it would almost certainly result in quashing the subpoena to Ms. Herridge. And that would end this litigation, because the Court has already held that Plaintiff cannot make out elements of her Privacy Act claim without discovery from Ms. Herridge concerning her source(s).

Second, there is "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), on those two questions of law, as shown by conflicting opinions from judges of the D.C. Circuit. When the scope of balancing under *Zerilli* was presented to the D.C. Circuit on a petition for

rehearing en banc, the court split by an equally divided four-four vote with two judges filing dissenting opinions arguing for exactly the broad-ranging balancing that Ms. Herridge has argued for here. *See Lee v. Dep't of Just.,* 428 F.3d 299 (D.C. Cir. 2005) (per curiam). As Judge Rogers pointed out in another dissenting opinion, it was "evident" that "there are different views regarding the proper application of *Zerilli*" that the court of appeals ought to resolve. *Lee*, 428 F.3d at 300 (Rogers, J., dissenting from denial of reh'g en banc). The denial of rehearing en banc left the issue unresolved, and no decision of the D.C. Circuit has provided further clarification about *Zerilli* since then. And when the D.C. Circuit considered whether a federal common law reporter's privilege exists, the splintered panel produced no majority opinion. *See In re Miller*, 438 F.3d 1141 (D.C. Cir. 2005). One judge favored adopting the privilege, one rejected it, and one declined to decide. Such conflicting opinions from the court of appeals squarely establish a substantial ground for differences of opinion on each of the questions of law at issue here.

Third, an interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the D.C. Circuit disagrees with this Court, the subpoena will be quashed and the case will end, because Plaintiff will be unable to prove elements of her Privacy Act claim. Moreover, this prong of section 1292(b) is also satisfied if an appeal would "conserv[e] judicial resources, or sav[e] the parties from needless expense." *Molock v. Whole Foods Mkt. Grp.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018). That test is met, because, if she is deposed, Ms. Herridge will not simply disclose her source(s). That will require Plaintiff to file a motion for contempt sanctions, burden the Court with a duplicative round of briefing and, if a contempt order is entered, simply give rise to an immediate appeal. Instead of requiring that burdensome process, the Court should certify its Order for appeal now and allow the D.C. Circuit to resolve important open questions regarding the First Amendment and federal common law reporter's privileges.

## BACKGROUND

Plaintiff Yanping Chen brought this Privacy Act suit against multiple government agencies for allegedly leaking information about a national security investigation into her and the university she owns and operates, the University of Management Technology ("UMT"). Plaintiff believes someone in the government leaked information to Ms. Herridge, who was at the time the Chief Intelligence Correspondent for Fox News Network ("FNN"). Ms. Herridge was the lead reporter on three stories in 2017 (the "Fox Reporting") describing the investigation into Plaintiff and presenting evidence that Plaintiff had been a colonel in the Chinese military (the People's Liberation Army), that she sought to hide that fact (by lying on immigration forms and telling others to lie), and that UMT, which Plaintiff founded and ran, was gathering data on thousands of U.S. servicemembers and making it remotely accessible from China. Subsequently, the Department of Defense ("DOD") publicly announced that it had terminated UMT "on national security grounds" from a tuition assistance program that had provided a large portion of UMT's revenues.

Plaintiff then sued several agencies under the Privacy Act and eventually, in June 2022, served Ms. Herridge with subpoenas for documents and a deposition seeking to uncover Ms. Herridge's confidential source(s) for the Fox Reporting. Ms. Herridge moved to quash the subpoenas, arguing that they improperly invaded both the First Amendment reporter's privilege and a federal common law reporter's privilege. Mem. in Supp. of Non-Party Catherine V. Herridge's Mot. to Quash, ECF No. 94-4. In particular, Ms. Herridge argued that under the controlling D.C. Circuit decision on the First Amendment reporter's privilege, the Court must "weigh[] the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). Ms. Herridge

identified multiple factors the Court should consider in that broad-ranging balancing inquiry, including: (1) the fact that most of the Fox Reporting involved public information, limiting the potential damages Plaintiff might recover and limiting Plaintiff's interest in uncovering confidential sources, (2) the fact that DOD made an independent decision to terminate UMT's contract, thereby breaking the chain of causation between any Privacy Act violation and Plaintiff's alleged damages, again limiting her interest in uncovering confidential sources, and (3) the importance of confidential sources to national security reporting and the public's interest in protecting the ability of a vigorous free press to provide such reporting. Ms. Herridge argued that the same broad balancing approach should apply under the federal common law reporter's privilege.

On August 1, 2023, the Court entered an Order granting in part and denying in part the motion to quash. Mem. Op. and Order, ECF No. 140 ("Order"). Although the Court quashed the subpoena for documents and modified the deposition subpoena, it has required Ms. Herridge to respond to the deposition subpoena to answer questions identifying confidential source(s) for the Fox Reporting. In reaching that result, the Court rejected Ms. Herridge's arguments concerning the use of a broad balancing of interests under *Zerilli* to determine the application of the First Amendment reporter's privilege. *See id.* at 6–14. In particular, the Court determined that balancing under *Zerilli* should largely be controlled by just two factors: (1) whether the information sought is central to the plaintiff's case ("centrality") and (2) whether the plaintiff has exhausted reasonable alternative avenues of discovery ("exhaustion"). *Id.* at 10 (focusing on "the centrality of the requested discovery and the exhaustion of reasonable alternatives"); *see also id.* at 11 (reading *Zerilli* to "require a balancing test focused primarily . . . on centrality and

exhaustion"). The Court also rejected the existence of a federal common law reporter's privilege. *See id.* at 25–27.

Ms. Herridge does not intend to reveal any confidential source(s) if her deposition is scheduled and would refuse to answer questions about her source(s) if that becomes necessary to seek an immediate appeal.

**ARGUMENT**

All three requirements for certification under section 1292(b) are met and the Court's Order should be certified for interlocutory appeal. As explained below, the Order (1) involves controlling questions of law, (2) as to which a substantial ground for difference of opinion exists, and (3) an immediate appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see also* Fed. R. App. P. 5(a)(3) (authorizing parties to move to amend district court orders to include a section 1292(b) certification).[1]

**A. The Order Involves Controlling Questions of Law About the Scope of Balancing Under *Zerilli* and the Existence of a Federal Common Law Reporter's Privilege Because Reversal on Either Point Would End This Case.**

The Court's Order involves two controlling questions of law: (1) whether analysis of the First Amendment reporter's privilege under *Zerilli* requires a broad balancing of interests or can largely be restricted to considering the factors of centrality and exhaustion, and (2) whether the Court should recognize a federal common law reporter's privilege that calls for the same broad balancing. Those questions are controlling because, if the court of appeals disagrees with this Court and applies the full balancing Ms. Herridge has described, it would almost certainly result in reversal of this Court's Order and quashing of the deposition subpoena. That, in turn, would

[1] Fox News Network, LLC supports Ms. Herridge's motion.

leave Plaintiff without information the Court has described as essential for her Privacy Act claim, and thus would effectively end this litigation.

It is well settled that a "controlling question of law" under section 1292(b) "is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *AF Holdings LLC v. Does 1–1,058*, 286 F.R.D. 39, 62 (D.D.C. 2012) (quotation marks and citation omitted). "The resolution of an issue need not necessarily terminate an action in order to be 'controlling,' but instead may involve a procedural determination that may significantly impact the action." *APCC Servs., Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101, 105 (D.D.C. 2003); *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002) (a question of law can be controlling if it determines the outcome "or even the future course of the litigation"); *see also* 16 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3930 (1996) ("[A] question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants."). Orders on motions to quash, in particular, have been found to involve "controlling" issues of law when they "materially affect the outcome [of the case]." *AF Holdings*, 286 F.R.D. at 62–63; *accord Sherrod, Teed, Vanderhagen, and Ware v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 WL 997261, at *2 (E.D. Mich. Apr. 1, 2022) (ruling on motion to quash involved a controlling issue of law because it had a "material effect on the outcome of th[e] case").

Here, the questions about the scope of balancing required under *Zerilli* and the existence of a federal common law reporter's privilege are controlling because if the court of appeals disagreed with this Court and applied the balancing Ms. Herridge has called for, the motion to quash would likely be granted and this litigation would come to an end. The Court has narrowed the deposition subpoena to Ms. Herridge to focus solely on the identity of Ms. Herridge's source(s),

*see* Order at 28, and the Court has already found that such information is "central" to Plaintiff's Privacy Act claim. That is, without that information, Plaintiff's "ability to show the . . . elements of the Privacy Act claim, such as willfulness and intent, will be compromised." *Id.* at 15 (quoting *Lee v. Dep't of Just.*, 413 F.3d 53, 60 (D.C. Cir. 2005)). Given the Court's further finding that Plaintiff has exhausted all other reasonable alternative avenues for obtaining that information, *see* Order at 20–21, it is clear that a decision by the court of appeals reversing the Order and granting the motion to quash would effectively end this litigation by foreclosing Plaintiff's ability to secure evidence needed to establish elements of her claim. That is more than sufficient to show that reversal would "materially affect the course of litigation," *AF Holdings*, 286 F.R.D. at 62, and to qualify the contested questions of law as "controlling" under section 1292(b).

The analysis certifying an interlocutory appeal in a comparable situation in *AF Holdings* is instructive. *See id.* at 62–63. There, a group of third-party ISPs moved to quash subpoenas that sought to identify the owners of a number of anonymous accounts so that the owners could be joined as defendants. *Id.* at 56–59. Upon denying the motions to quash, the court certified its order for interlocutory review under section 1292(b), reasoning that, if the D.C. Circuit were to reverse, a number of the proposed defendants would be dismissed from the case, thereby "materially affect[ing] the outcome" of the case. *Id.* at 62–63. Similarly, in *Sherrod, Teed, Vanderhagen, and Ware*, several third-party witnesses attempted to quash trial subpoenas on Fifth Amendment grounds. 2022 WL 997261, at *2. After denying the motions to quash, the court found that its order involved controlling questions of law because "the nature and extent of live testimony from [the movants'] would affect the outcome of the case." *Id.*

The same analysis applies here and readily establishes that both the proper scope of balancing under *Zerilli* and the existence of a federal common law reporter's privilege are

controlling questions of law. If the court of appeals disagrees with this Court on the proper analysis and quashes the subpoena, this Privacy Act litigation will be over.

To the extent the Court has suggested that Ms. Herridge's arguments "likely would not change the outcome here in any event," Order at 22, Ms. Herridge respectfully submits that the Court did not actually engage in the full balancing of interests that Ms. Herridge has argued for under *Zerilli*. Indeed, far from conducting a "full-bore analysis of [Plaintiff's] likelihood of success on the merits of her Privacy Act claim"—or an analysis to determine how much of that claim was likely to survive (so that the surviving fraction of her claim could be balanced against the paramount First Amendment interests at stake)—the Court limited its discussion to the "observation that [Plaintiff's] 'suit is not frivolous.'" Order at 22 (quoting *Zerilli*, 656 F.2d at 714). A full balancing analysis under *Zerilli*, however, would have required examining precisely the issues the Court declined to address. For example, it would require assessing whether credible experts could identify any alleged damages that were *not* caused by DOD's independent decision to terminate Plaintiff's contract and to publicly announce that the termination was for "national security reasons." And it would require evaluating whether that surviving fraction of Plaintiff's Privacy Act claim (if any) would warrant overriding First Amendment protections for journalists. That balancing could not even be conducted without actually determining what portion (if any) of Plaintiff's Privacy Act claim could survive. Similarly, the Court did not give full consideration to the "abstract" importance of maintaining a free press in the field of national security reporting, because the Court concluded that "binding precedent of this Circuit does not permit" the Court to do so. Order at 24. Accordingly, if the court of appeals adopts the full scope of balancing that Ms. Herridge has argued for, it would almost certainly result in reversal of the Order requiring Ms. Herridge to disclose her confidential source(s).

### B. There Are Substantial Grounds for Difference of Opinion as Shown By Splintered Decisions of the D.C. Circuit.

There are also substantial grounds for difference of opinion on both (1) the necessity of engaging in a full-fledged balancing of interests under *Zerilli* for purposes of assessing the First Amendment reporter's privilege, and (2) the existence and applicability of a federal common law reporter's privilege. As explained below, splintered opinions from the D.C. Circuit squarely show substantial grounds for differing opinions on each question.

First, as for the scope of the balancing under *Zerilli*, the last time the D.C. Circuit directly considered that issue it resulted in a tied four-four vote denying rehearing en banc in the *Lee* case and no definitive resolution on the balancing question. *See Lee v. Dep't of Just.*, 428 F.3d 299, 300 & nn. 1&5 (D.C. Cir. 2005) (Judges Edwards, Rogers, Tatel, and Garland voted to grant rehearing, and Judges Brown and Griffith did not participate). As Ms. Herridge has explained, *Zerilli* itself called for broadly "weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Zerilli*, 656 F.2d at 712. The petition for rehearing en banc in *Lee* presented essentially the same question this Court addressed in its Order—namely, whether the call for balancing in *Zerilli* could largely be reduced to focusing on two factors: (i) whether the information sought was "central" to the plaintiff's case ("centrality"), and (ii) whether the plaintiff had exhausted alternative avenues of discovery ("exhaustion").

Judge Tatel and Judge Garland dissented from the denial of rehearing en banc on the ground that *Zerilli* required a broad balancing of interests, which the *Lee* panel had failed to conduct by focusing exclusively on centrality and exhaustion. *See Lee*, 428 F.3d at 301–03 (Tatel, J., joined by Garland, J., dissenting from denial of reh'g en banc). Judge Tatel argued that reducing *Zerilli* to an "arid two-factor test" focused on centrality and exhaustion would "allow[] the exigencies of even the most trivial litigation to trump core First Amendment values." *Id.* at 301.

And, he explained, such analysis would improperly prevent a court from giving appropriate weight to "the public's interest in protecting journalists' ability to report without reservation on sensitive issues of national security." *Id.* at 302. Judge Garland agreed and further argued that "[t]he only way to render the reporter's privilege effective in the face of Privacy Act claims is to include the requirement, adopted in *Zerilli* and detailed in Judge Tatel's dissent . . . that the court 'weigh[] the public interest in protecting the reporter's sources against the private interest in compelling disclosure.'" *Lee*, 428 F.3d at 303 (Garland, J., joined by Tatel, J., dissenting from denial of reh'g en banc) (quoting *Zerilli*, 656 F.2d at 712). That position secured four votes in favor of rehearing en banc, including Judge Rogers, who pointedly noted: "That there are different views regarding the proper application of *Zerilli* in Privacy Act cases is evident." *Lee*, 428 F.3d at 300 (Rogers, J., dissenting from denial of reh'g en banc).

The fact that Judge Tatel's and Judge Garland's opinions came in dissent from a denial of rehearing does not imply that the D.C. Circuit has resolved the issue and rejected their position. To the contrary, "a summary denial of rehearing en banc is insufficient to confer any implication or inference regarding the court's opinion relative to the merits of a case," even as to an argument "raised in dissent." *Luckey v. Miller*, 929 F.2d 618, 622 (11th Cir. 1991); *see also Est. of Parsons v. Palestinian Auth.*, 952 F. Supp. 2d 61, 69 n.6 (D.D.C. 2013) ("[S]ummary denial of a petition for rehearing has no binding effect on the arguments raised therein.").

Accordingly, what the outcome in *Lee* shows is a court of appeals equally divided on the question whether the court should take up the issue of the proper scope of balancing under *Zerilli*—and no binding resolution on the underlying question of how to conduct balancing under *Zerilli*. That deadlock and the opinions of two circuit judges arguing that *Zerilli* necessarily demands a

broad approach to balancing—especially in Privacy Act cases—are more than sufficient to establish that there are substantial grounds for difference of opinion on this question.[2]

In fact, it is well established that a "substantial ground for difference of opinion" for purposes of section 1292(b) can be established through concurrences, plurality opinions, or dissents from rehearing when a question has not been definitively resolved by the court of appeals. For example, in *Howard v. Off. of Chief Admin. Officer of the U.S. House of Representatives*, this Court, after a careful review of a fractured en banc decision by the D.C. Circuit, determined that there was no binding circuit precedent on point and found "substantial ground[s] for difference of opinion" based on a conflict between the plurality opinion and the principal concurrence. 840 F. Supp. 2d 52, 55–56 (D.D.C. 2012). Similarly, in *Simmons v. Galvin*, the court found substantial ground for a difference of opinion based on an out-of-circuit dissent from denial of rehearing en banc and an out-of-circuit concurrence. No. CV 01-11040-MLW, 2008 WL 11456109, at *2 (D. Mass. Jan. 16, 2008); *see also EEOC v. Bd. of Governors of State Colls. & Univs.*, No. 86 C 0295, 1989 WL 81987, at *2 (N.D. Ill. July 14, 1989) (finding substantial grounds for difference of opinion, despite binding circuit precedent, based on a concurrence finding that the precedent at issue was "anomalous").

The equally divided vote and dissents from denial of rehearing en banc in *Lee*—which signal a potentially ongoing disagreement among judges on the court of appeals about how to apply

[2] The D.C. Circuit has not had an opportunity to clarify the law since *Lee*. In the *Hatfill* case in 2008, the court of appeals stayed the district court's order forcing disclosure of a reporter's sources pending appeal, *see Hatfill v. Mukasey,* No. 08-5049, Per Curiam Order, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008) (attached as Ex. A), but the parties then settled the case. In dismissing the case as moot, however, the court of appeals went out of its way to announce that the case "raised close questions . . . under the First Amendment," which required weighing "appellant's interest in concealing her sources in order to protect the workings of the press." *Hatfill v. Mukasey*, No. 08-5049, Per Curiam Order, Doc. No. 1149629 at 1–2 (D.C. Cir. Nov. 17, 2008) (attached as Ex. B).

*Zerilli*—are fully sufficient to establish a substantial ground for difference of opinion that satisfies the second prong of section 1292(b). Indeed, even in the absence of such opinions, if "the arguments in favor of each parties' position . . . are not without merit, a court may conclude that the issue is truly one on which there is a substantial ground for dispute." *United States v. Honeywell Int'l Inc.*, No. 08-0961 (PLF), 2021 WL 2493382, at *3 (D.D.C. June 18, 2021) (quotation marks and citation omitted). Judge Tatel's and then-Judge Garland's opinions calling for broader balancing under *Zerilli* certainly cannot be dismissed as "without merit," and thus are squarely sufficient to show a substantial ground for difference of opinion.

Second, the existence of a federal common law reporter's privilege is also an open question in the D.C. Circuit. The last time the D.C. Circuit considered that issue, a splintered panel failed to issue a binding opinion on the question. Judge Sentelle rejected a federal common law privilege. *See In re Miller*, 438 F.3d 1141, 1154–59 (D.C. Cir. 2006) (Sentelle, J., concurring). Judge Tatel argued in favor of it. *See id.* at 1164–83 (Tatel, J., concurring in judgment). And Judge Henderson concluded only that, if such a privilege existed, it would have been overcome in that case. *id.* at 1159 (Henderson, J., concurring). Given the lack of a majority opinion on the point and the disagreement in the three different concurrences, there are certainly substantial grounds for difference of opinion on the viability of the federal common law reporter's privilege in the D.C. Circuit. *See, e.g.*, *Howard*, 840 F. Supp. 2d at 56 (finding substantial grounds for difference of opinion based on disagreement among concurrences).

### C. Immediate Appeal Will Materially Advance the Ultimate Termination of this Litigation Both Because It Would Avoid Duplicative Briefing on a Motion for Contempt and Because Reversal Would End This Litigation Now.

Immediate appeal of the Order also will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "To satisfy this element a movant need not show that a

reversal on appeal would actually end the litigation." *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018). Instead, it is enough if immediate appeal "would hasten or at least simplify the litigation in some material way," such as by "conserving judicial resources, or saving the parties from needless expense." *Id.*; *accord APCC Servs.*, 297 F. Supp. 2d at 109 (interlocutory appeal would advance the ultimate termination of the litigation where it "would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed"); *see also Sherrod, Teed, Vanderhagen, and Ware*, 2022 WL 997261, at *2 (interlocutory appeal will materially advance the litigation "if it will save substantial judicial resources and litigant expense") (quotation marks and citation omitted). Immediate appeal of the Order here would satisfy that standard in two ways.

First, if the court of appeals reverses the Court's ruling and grants Ms. Herridge's motion to quash the deposition subpoena, that ruling would actually end this litigation. Plaintiff would be unable to secure key evidence essential for establishing elements of her Privacy Act claim and this action will come to an end. As the Court has already found, Plaintiff cannot prove willfulness or intent—necessary elements of her claim—unless she can identify, via discovery from Ms. Herridge, the source of the claimed leak. *See* Order at 15, 18, 20–21. As a result, just as in *AF Holdings*, a reversal of the ruling on the motion to quash could deprive Plaintiff of information essential for establishing her claims and would cause the case to "essentially come to a close." *AF Holdings*, 286 F.R.D. at 63–64 (interlocutory appeal certified where reversal on motion to quash would leave plaintiff unable to identify defendants). That alone satisfies the requirement that an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Second, where a third party (like Ms. Herridge) indicates that he or she will not provide the information sought under a subpoena, immediate appeal materially advances the litigation by preserving "judicial resources and litigant expense" by avoiding the need for collateral contempt proceedings as the vehicle for effectuating an immediate appeal. *Sherrod, Teed, Vanderhagen, and Ware*, 2022 WL 997261, at *2. In such circumstances, "[t]here is no doubt that interjecting contempt proceedings into [an] ongoing civil trial for the sole purpose of permitting movants to appeal the Court's ruling would waste judicial resources and litigant expense." *Id.* (quotation marks and citation omitted). Circuit precedent is clear that subpoena recipients may appeal and challenge the enforceability of a subpoena after refusing to comply and being held in contempt. *See, e.g.*, *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1011 (D.C. Cir. 1997). Ms. Herridge does not intend to disclose any confidential source(s) in a deposition. Immediate appeal will save resources by obviating the need for Plaintiff to schedule a deposition, wait for Ms. Herridge to refuse to answer questions, and then move for an order of contempt. And it would also avoid the need for the parties (and the Court) to prepare and address a largely duplicative round of briefing on the motion for a contempt order. Because section 1292(b) certification is obviously more efficient in these circumstances, it readily satisfies the requirement of "materially advanc[ing] the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

### D. This Is an Exceptional Case Warranting Exercise of the Court's Discretion To Certify an Interlocutory Appeal.

Given the important First Amendment interests at stake, this case also presents a circumstance that warrants an exercise of the Court's discretion to allow an interlocutory appeal. *Cf. Honeywell*, 2021 WL 2493382, at *4 (court "must also conclude that certification is appropriate as a discretionary matter"). Forcing journalists to reveal confidential sources impinges on

significant First Amendment protections that are vital for ensuring a vigorous free press. And here, as explained above, the D.C. Circuit has signaled that there are significant unresolved questions about how those First Amendment values are to be weighed when a litigant seeks to uncover confidential sources. This case presents an important opportunity for the D.C. Circuit to address the conflicting views about *Zerilli* that were aired in the dissents from denial of rehearing en banc in *Lee* and to bring needed clarity to the law. Ms. Herridge should not be forced either to put herself in contempt of a court order or to disclose her sources before the court of appeals has had an opportunity to address the issues raised in this case. Accordingly, an immediate appeal is warranted.

## CONCLUSION

Because immediate appeal could effectively end this litigation, would eliminate unnecessary and repetitive briefing, and would allow the D.C. Circuit to resolve important open questions concerning the proper application of the First Amendment reporter's privilege and the existence of a federal common law reporter's privilege, the Court should certify the Order for immediate appeal under section 1292(b).

August 11, 2023

Respectfully submitted,

/s/ *Patrick F. Philbin*

Patrick F. Philbin (D.C. Bar No. 453620)
Kyle West (D.C. Bar No. 24093346)
ELLIS GEORGE CIPOLLONE
O'BRIEN LLP
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@egcfirm.com

# Exhibit A

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 08-5049** **September Term, 2007**

**03cv01793**

**Filed On: March 11, 2008** **[1104546]**

Steven J. Hatfill, M.D.,
Appellee

v.

Michael B. Mukasey, Attorney General, et al.,
Appellees

Toni Locy,
Appellant

**BEFORE**: Ginsburg, Rogers, and Kavanaugh, Circuit Judges

## ORDER

Upon consideration of the motion for stay pending appeal, and the opposition thereto, and the media organization's motion for leave to file a response to the motion for a stay pending appeal, it is

**ORDERED** that the motion for leave to file the response be granted. The Clerk is directed to file the lodged response. It is

**FURTHER ORDERED** that the motion for a stay pending appeal be granted. Appellant has satisfied the stringent standards required for a stay pending appeal. See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); D.C. Circuit Handbook of Practice and Internal Procedures 33-34 (2007).

**Per Curiam**

# Exhibit B

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 08-5049** **September Term 2008**

**03cv01793**

**Filed On:** November 17, 2008

Steven J. Hatfill, M.D.,

Appellee

v.

Michael B. Mukasey, Attorney General, et al.,

Appellees

Toni Locy,

Appellant

Michael Isikoff, et al.,

Appellees

**BEFORE:** Ginsburg, Rogers, and Kavanaugh, Circuit Judges

## ORDER

Upon consideration of the stipulation of dismissal entered by the district court on August 29, 2008, the appellee's motion for leave to file a motion to dismiss and the lodged motion to dismiss, the opposition thereto, and the reply, it is

**ORDERED** that the motion for leave to file be granted. The Clerk is directed to file the lodged documents. It is

**FURTHER ORDERED** that the motion to dismiss be granted. This appeal raised close questions under Fed. R. Evid. 501 and the First Amendment, including whether the appellant had a defense, which required analysis of the appellee's efforts to obtain the information from alternate sources and need for disclosure of the appellant's sources, as compared to the appellant's interest in concealing her sources in order to protect the workings of the press. Because the underlying case has been settled, however, there is no longer a "pending trial in which" the appellee's request for disclosure "can be used." *In re City of El Paso*, 887 F.2d 1103, 1106 (D.C. Cir. 1989). Moreover, in light of our order of March 11, 2008, staying the district court's contempt

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 08-5049** **September Term 2008**

order pending appeal, the appellant has suffered no sanction that would preserve her appeal for review. Therefore, the appeal is moot. It is

**FURTHER ORDERED** that the contempt order issued by the district court against the appellant be vacated pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–41 (1950).

The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk