**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**YANPING CHEN,**

**Plaintiff,**

**v.**

**FEDERAL BUREAU OF INVESTIGATION, *et al*.**

**Defendants.**

**Civil Action No. 1:18-cv-03074-CRC**

**PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPOSITION TO NON-PARTY CATHERINE HERRIDGE'S MOTION TO AMEND ORDER TO INCLUDE CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... iii

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 3

**ARGUMENT** .......... 6

**I. The Court Should Deny Herridge's Request to Certify its Order Pursuant to 28 U.S.C. § 1292(b)** .......... 6

**A. There Are No Exceptional Circumstances Supporting Certification Where an Obvious Appellate Remedy Remains Available to Herridge.** .......... 7

**B. There Is No Ground for Difference of Opinion as to the Controlling Law Where Binding Circuit Precedent is Clear.** .......... 10

**C. Herridge Cannot Demonstrate That the Order Involves a Controlling Question of Law.** .......... 14

**D. Herridge Cannot Demonstrate That Immediate Appeal Will Materially Advance the Litigation.** .......... 16

**II. The Court Should Deny Herridge's Request for a Stay Pending Appeal.** .......... 17

**A. The Order is Not Appealable Under the Collateral Order Doctrine.** .......... 17

**B. Application of the Factors Relevant to a Discretionary Stay Favors Plaintiff, Not Herridge.** .......... 20

**CONCLUSION** .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .......... 21

*Able v. United States*,
870 F. Supp. 468 (E.D.N.Y. 1994) .......... 11

*Akiachak Native Cmty. v. Jewell*,
995 F. Supp. 2d 7 (D.D.C. 2014) .......... 21

*Azima v. RAK Inv. Auth.*,
325 F. Supp. 3d 30 (D.D.C. 2018) .......... 6, 7

*Byrd v. Reno*,
180 F.3d 298 (D.C. Cir. 1999) .......... 20

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
574 F. Supp. 2d 369 (S.D.N.Y 2008) .......... 15

*Citizens for Resp. & Ethics in Wash. v. Am. Action Network*,
415 F. Supp. 3d 143 (D.D.C. 2019) .......... 7

*Ctr. for Int'l Env't Law v. Office of U.S. Trade Representative*,
240 F. Supp. 2d 21 (D.D.C. 2003) .......... 20

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
772 F.2d 972 (D.C. Cir. 1985) .......... 21

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
945 F. Supp. 2d 890 (S.D. Ohio 2013) .......... 15

*Drummond Co., Inc. v. Conrad & Scherer, LLP*,
885 F.3d 1324 (11th Cir. 2018) .......... 15

*First Am. Corp. v. Al-Nahyan*,
948 F. Supp. 1107 (D.D.C. 1996) .......... 10

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
103 F.3d 1007 (D.C. Cir. 1997) .......... 8

*Fowler v. First Chem. Corp.*,
No. 05-cv-16, 2006 WL 2423043 (S.D. Miss. Aug. 21, 2006) .......... 11

*Frontier-Kemper Constructors, Inc. v. American Rock Salt Co.*,
No. 01-cv-6217, 2003 WL 22384797 (W.D.N.Y. Sept. 4, 2003) .......... 11

*Hammons v. Univ. of Md. Med. Sys. Corp.*,
2021 WL 4951921 (D. Md. Oct. 25, 2021) ........ 9

*Hatfill v. Gonzalez*,
505 F. Supp. 2d 33 (D.D.C. 2007) ........ 12, 13

*Hatfill v. Mukasey*,
539 F. Supp. 2d 96 (D.D.C. 2008) ........ 22

*Hatfill v. Mukasey*,
No. 08-5049 (D.C. Cir. Nov. 17, 2008) ........ 9

*Howard v. Off. of Chief Admin. Officer of the U.S. House of Representatives*,
840 F. Supp. 2d 52 (D.D.C. 2012) ........ 13

*In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*,
490 F.3d 99 (2d Cir. 2007) ........ 19

*In re Flat Glass Antitrust Litig.*,
288 F.3d 83 (3d Cir. 2002) ........ 19

*In re Miller*,
438 F.3d 1141 (D.C. Cir. 2006) ........ 13, 14

*In re Motor Fuel Temperature Sales Practice Litig.*,
641 F.3d 470 (10th Cir. 2011) ........ 19

*In re Roche*,
448 U.S. 1312 (1980) ........ 22

*In re Ryan*,
538 F.2d 435 (D.C. Cir. 1976) ........ 8, 18, 20, 22

*In re Vitamins Antitrust Litig.*,
No. 99-cv-197, 2000 WL 673936 (D.D.C. Jan. 27. 2000) ........ 7, 10

*In re Worldcom, Inc.*,
2003 WL 21498904 (S.D.N.Y. June 30, 2003) ........ 15

*Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
233 F. Supp. 2d 16 (D.D.C. 2002) ........ 9, 10

*Kirkland & Ellis v. CMI Corp.*,
No. 95-cv-7457, 1996 WL 674072 (N.D. Ill. Nov. 19, 1996) ........ 11

*Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*,
359 F.3d 624 (D.C. Cir. 2004) ........ 17

*Lee v. Dep't of Justice*,
401 F. Supp. 2d 123, 139, 141-42 (D.D.C. 2005) .......... 13

*Lee v. Dep't of Justice*,
413 F.3d 53 (D.C. Cir. 2005) .......... 8, 11, 12, 13, 16, 21, 23

*Lee v. U.S. Dep't of Justice*,
No. 99-3380 (TPJ) (D.D.C. Nov. 13, 2003) .......... 9

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) .......... 20

*Luckey v. Miller*,
929 F.2d 618 (11th Cir. 1991) .......... 12

*Marceaux v. City-Parish Consol. Gov't*,
731 F.3d 488 (5th Cir. 2013) .......... 19

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) .......... 18

*Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*,
597 F. Supp. 2d 120 (D.D.C. 2009) .......... 11

*Ohio A. Philip Randolph Institute v. Larose*,
761 F. App'x 506, 511 (6th Cir. 2019) .......... 18

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
518 F. Supp. 2d 174 (D.D.C. 2007) .......... 20

*Shays v. FEC*,
340 F. Supp. 2d 39 (D.D.C. 2004) .......... 21

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987 .......... 17

*Tolson v. United States*,
732 F.2d 998 (D.C. Cir. 1984) .......... 10

*U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*,
487 U.S. 72 (1988) .......... 20

*U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.*,
848 F.3d 330 (4th Cir. 2017) .......... 15

*United States v. Anderson*,
464 F.2d 1390 (D.C. Cir. 1972) .......... 18, 20, 22

*Virtual Def. and Dev. Int'l, Inc. v. Republic of Moldova*,
133 F. Supp. 2d 9 (D.D.C. 2001) ........................................ 7

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) ........................................ 20

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................ 21

*Zerilli v. Smith*,
656 F.2d 705 (D.C. Cir. 1981) ........................................ 11, 12, 14, 16, 21

**Statutes**

28 U.S.C. § 1291 ........................................ 6, 20, 23

28 U.S.C. 1292(b) ........................................ 1, 2, 3, 6, 7, 9, 10, 12, 14, 15, 16, 17

**Other Authorities**

10 Wright & Miller, Fed. Practice & Proc. § 2658.2 (2d ed. 1983) ........................................ 10

Wright & Miller, 15B Fed. Prac. & Proc. Juris. § 3914.23 (2d ed. 2023) ........................................ 8

## INTRODUCTION

In seeking to appeal this Court's August 1, 2023 Memorandum and Order [Dkt. 140] ("Order") directing her to sit for a deposition and disclose the source that leaked Privacy Act protected information to her—before that deposition has taken place, and before she has defied the Court's Order—nonparty Catherine Herridge is putting the cart before the horse. The law is clear that a discovery order directing a nonparty to disclose testimony or documents is not immediately appealable, and that it is only appropriate to appeal the merits of such an order if the nonparty refuses to comply ***and*** is then held in civil contempt. Herridge does not dispute that if and when those eventualities occur, she will have an immediate right to appeal the merits of the Order at issue. This dispositive fact, along with other infirmities, is fatal to the arguments raised in Herridge's Memorandum in Support of [Her] Motion to Amend Order to Include Certification for Interlocutory Appeal Under 28 U.S.C. 1292(b) ("Mot. for Certification") (Aug. 11, 2023) [Dkt. 144-1] and Memorandum in Support of [Her] Motion for Stay Pending Appeal ("Mot. to Stay") (Aug. 11, 2023) [Dkt. 145-1].

With respect to the Motion for Certification pursuant to § 1292(b), Herridge fails to meet her burden to demonstrate that the necessary factors are met:

First, Herridge fails to meaningfully address a threshold requirement for certification, which is a finding that "exceptional" circumstances warrant certification under § 1292(b). Herridge cannot demonstrate that here, where she acknowledges that if she disobeys the Order and is found in civil contempt, she will then have a clear path to appeal the merits of the Order—without having had to disclose the information that she continues to contend is protected. That this has been the precise mechanism of appeal of other analogous discovery orders in Privacy Act cases in this Circuit confirms that there is nothing exceptional about the current posture of this case or in requiring Herridge to await a deposition and finding of contempt.

Second, Herridge cannot demonstrate another key requirement of § 1292(b), which is that there is an obvious ground for difference of opinion about whether the Order correctly applied the law. As this Court held in the Order itself, binding Circuit precedent mandates the approach a district court must take in evaluating a motion to quash a subpoena to a journalist in a Privacy Act case. While Herridge may disagree with existing precedent or the result it dictates, and while she may hope to ultimately change that precedent, that is not sufficient to demonstrate that the legal standard to be applied is unclear, of first impression, or the subject of an intracircuit split.

Third, § 1292(b) certification is also inappropriate here because an appeal of the Order would raise not just straightforward questions of law, but also mixed questions of law and fact. Although Herridge acknowledges it only in passing, the Court did not solely hold that the scope of the appropriate First Amendment privilege inquiry is more limited than Herridge insisted. Instead, the Court also held in the alternative that even if Herridge succeeded in overruling circuit precedent to require a broader balancing of Herridge's First Amendment interests against Plaintiff's Privacy Act interests, that would "likely not change the outcome here in any event." (Order at 22.) The court would reach the same result and hold that the First Amendment privilege remains overcome. Thus, an appeal of the Order would also involve asking the Circuit Court to second-guess this Court's application of a broader balancing test to the specific facts of this case, which is not appropriate for an appeal pursuant to § 1292(b), which must be limited to discrete issues of law.

Fourth, Herridge fails to demonstrate that certification would materially advance the progress of the litigation. While she assumes, without basis, that a reversal of the Order would quickly and necessarily spell the end of Plaintiff's Privacy Act case, it is far more likely that the opposite is true, and that reversal of the Order would result in prolonging discovery and the case's

ultimate resolution. Moreover, because the proper route to appeal is from a contempt order, the D.C. Circuit would likely reject certification here even if permitted by this Court, thus stalling progress even toward the appeal Herridge seeks.

Finally, with respect to the Motion to Stay, Herridge's request to stay the Order (effectively, her need to sit for a deposition) must also fail if the Court denies her request to amend the Order to include a § 1292(b) certification. Absent a certification, there will be no appeal of this Order for which to stay Herridge's deposition. Herridge cannot appeal the Order pursuant to the collateral order doctrine. Instead, she must, if she chooses, elect to stand in contempt and then appeal that future finding in order to obtain appellate review of the Order denying her motion to quash. Because a non-certified appeal is destined for summary dismissal, Herridge cannot demonstrate good cause for a stay, which will only unnecessarily delay her deposition while the parties wait for the Circuit Court to confirm that the Order is a non-appealable interlocutory decision. Given this, and for several other reasons, the relevant factors strongly weigh against a stay.

## BACKGROUND

This Privacy Act suit against multiple government agencies involves the suspected leak of protected information concerning Plaintiff Yanping Chen to Catherine Herridge, who was at the time a reporter for Fox News. (Order at 2-3.) After defeating Defendants' motion to dismiss, Plaintiff engaged in extensive discovery—including serving scores of document requests, interrogatories, and requests for admission, issuing over a dozen third-party subpoenas, taking eighteen depositions, and obtaining 22 declarations—aimed at uncovering the identity of the suspected government official that leaked her Privacy Act-protected records to Herridge. (Order at 3.) When those efforts failed to definitively identify the leaker(s), Plaintiff served Fox and Herridge with document and deposition subpoenas in May and June of 2022. (*Id.*)

Both Herridge and Fox then moved to quash. (Mem. in Support of Non-Party Catherine V. Herridge's Mot. to Quash (Aug. 8, 2022) [Dkt. 96-1]; Mem. in Support of Non-Party Fox News Corp.'s Mot. to Quash (Aug. 8, 2022) [Dkt. 97-1].) Both argued that Plaintiff had not overcome the journalists' qualified First Amendment privilege to withhold the identity of the leaker because (1) the subpoenas were overbroad and sought information not central to Plaintiff's Privacy Act claims; (2) Plaintiff had not sufficiently exhausted reasonable alternative means to discover the identity of the leaker; (3) the Court should engage in a wide-ranging balancing of Herridge's First Amendment interest in maintaining her source(s)' confidentiality against Plaintiff's personal interest in prosecuting her Privacy Act claims; and (4) alternatively, that the Court should find a federal common law reporter's privilege that allowed it to engage in the same expansive balancing. (Order at 4.) In response, Plaintiff argued that (1) the First Amendment privilege is overcome because she sought only information central to her claims and had exhausted reasonable alternative means to identify the leaker; (2) that under binding D.C. Circuit precedent, the Court's analysis must focus on the issues of centrality and exhaustion, and not an amorphous, subjective balancing of the litigants' interests; and (3) that there is no federal common law reporter's privilege that would allow an end-run around established precedent regarding the proper scope of the qualified privilege. (*See generally* Pl.'s Mem. in Opp'n to Non-Party Catherine V. Herridge's Mot. to Quash (Sept. 6, 2022) [Dkt. 123].)

On August 8, 2023, the Court issued its Order granting in part and denying in part Herridge's motion to quash and granting Fox's motion to quash. After careful review, the Court held that binding precedent instructed district courts to focus their analysis on whether the information sought is central to the plaintiff's claims, whether plaintiff has exhausted reasonable alternative avenues of discovery, and whether the journalist is a party to the underlying litigation.

(Order at 5-14.) The Court rejected Herridge and Fox's arguments that the Court should engage in a "free-form balancing of interests" as inconsistent with D.C. Circuit precedent. (*Id*. at 10-11.) Reviewing the discovery record against Fox and Herridge's arguments, the Court then concluded that, with respect to the deposition subpoena to Herridge, Plaintiff had demonstrated that the identity of the leaker was central to Plaintiff's claims, and that Plaintiff had exhausted reasonable alternative efforts to identify the leaker. (*Id*. at 14-21.)

The Court then held that although circuit precedent did not require "either a full-bore analysis of [Plaintiff's] likelihood of success on the merits … or an assessment of the public and private interests at play," the Court would nevertheless, "explain[] why Herridge and Fox's arguments along those lines likely would not change the outcome here in any event." (*Id.* at 22.) The Court then proceeded to evaluate and weigh the First Amendment interests Fox and Herridge asserted against their claims concerning supposed infirmities in Plaintiff's case, as well as their claim that Plaintiff's claims involved only her private and personal interests. (*Id*. at 22-24.) The Court concluded that Fox and Herridge's claims regarding supposed flaws in Plaintiff's claims or recoverable damages were misguided or premature, and that Plaintiff's claims did not advance a purely private interest because they also implicated Congress's intent, in enacting the Privacy Act, to deter unlawful leaking of private records by government officials. (*Id*.) Finally, the Court rejected Herridge and Fox's invitation to recognize a federal common law reporter's privilege that would allow district courts to engage in the same free-form balancing test not encompassed by the D.C. Circuit's prior decisions on the scope of a reporter's privilege in a Privacy Act case. (*Id*. at 25-27.)

Ultimately, the Court determined that Plaintiff was entitled to depose Herridge about the identity of her confidential source(s) for any Privacy Act-protected information, as well as any

non-privileged matters relevant to Plaintiff's claim. (*Id.* at 28.) The Court also granted Fox's motion to quash, without prejudice to Plaintiff renewing her subpoenas to Fox if Plaintiff does not obtain the information she seeks from Herridge. (*Id.*)

Herridge filed her Motion for Certification and Motion to Stay ten days later, on August 11, 2023. Herridge requests that the Court amend its Order to include a certification that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); (Mot. for Certification at 1-2.) Herridge further requests that the Court enter a stay of its Order pending appeal, whether that appeal is pursuant to a § 1292(b) certification or, alternatively, an interlocutory appeal under 28 U.S.C. § 1291. (Mot. to Stay at 5 n.1.)

## ARGUMENT

### I. The Court Should Deny Herridge's Request to Certify its Order Pursuant to 28 U.S.C. § 1292(b).

Herridge's certification motion should be denied because she does not come close to satisfying her burden to demonstrate that the Order meets all requirements for certification under § 1292(b). *See Azima v. RAK Inv. Auth.*, 325 F. Supp. 3d 30, 35 (D.D.C. 2018) ("When a request for certification for issues for interlocutory appeal under section 1292(b) is presented, the district court must confirm that the moving party has satisfied all of the elements of section 1292(b), and it must also conclude that certification is appropriate as a discretionary matter."). At the outset, she fails to demonstrate that this represents an exceptional case warranting certification, because she acknowledges that a path to appellate review of the Order remains available to her should she not comply with it. Herridge also fails to show the requisite substantial ground for difference of opinion as to the Court's decision, given that decision was consistent with binding D.C. Circuit

precedent and other district court decisions in this Circuit. Next, Herridge cannot demonstrate that her appeal would be limited to determination of a discrete and controlling legal issue, because she would necessarily be asking the appellate court to second-guess this Court's balancing of different factors and application of the law to the facts of this particular case. Finally, Herridge does not establish that her appeal would materially advance the underlying Privacy Act litigation, rather than delay and prolong it. Because Herridge cannot demonstrate that each of these prerequisites is satisfied, certification pursuant to § 1292(b) is not appropriate.

### A. There Are No Exceptional Circumstances Supporting Certification Where an Obvious Appellate Remedy Remains Available to Herridge.

Herridge's Motion for Certification gives short shrift to a threshold requirement that is dispositive on the issue of § 1292(b) certification; namely, the well-established rule that certification is reserved only for truly "exceptional" cases. *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 673936, at *2 (D.D.C. Jan. 27. 2000); *Citizens for Resp. & Ethics in Wash. v. Am. Action Network*, 415 F. Supp. 3d 143, 145 (D.D.C. 2019) (Cooper, J.); *Azima*, 325 F. Supp. 3d at 34. Although Herridge bears the burden of establishing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until there is an appealable final order, *Virtual Def. and Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001), she relegates her effort to so demonstrate to only a few sentences at the conclusion of her brief. (Mot. for Certification at 14-15.) Her superficial attempt at demonstrating exceptional circumstances fails, for two key reasons.

First, the Order at issue simply does not leave Herridge without a path to seek appellate review of the core issue of whether she must reveal her confidential source. As Herridge freely acknowledges, "Circuit precedent is clear that subpoena recipients may appeal and challenge the enforceability of a subpoena after refusing to comply and being held in contempt." (*Id.* at 14

(citing *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1011 (D.C. Cir. 1997).) This is a correct statement of the law, and it is the reason why interlocutory appeal of a discovery order directed at a nonparty is not immediately available. *See In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (citations omitted) (holding that where an order "is essentially one compelling testimony and the production of documents," the Supreme Court "has consistently held that such orders are not final and hence are not appealable," because the nonparty "is entitled to refuse to comply and in the event contempt proceedings are brought against [the nonparty] they may then litigate the validity of the [] order"); *see also* Wright & Miller, 15B Fed. Prac. & Proc. Juris. § 3914.23 (2d ed. 2023) ("[T]he rule remains settled that most discovery rulings are not final. The basic means of securing review is disobedience to an order compelling discovery, followed by an adjudication of contempt and appeal from the contempt order…. A nonparty can appeal an order of either civil or criminal contempt.")

Here, Herridge has stated emphatically that when she sits for a deposition, she will "refuse to answer questions" and will not disclose any confidential sources as ordered. (Mot. for Certification at 14.) Thus, if she sticks with that position, a contempt order is a foregone conclusion, and Herridge will then have an order that both she and Plaintiff agree creates a legitimate procedural path for her to litigate the same issues Herridge seeks to have certified now. (*Id.*)[1] This is precisely how these arguments have been presented to the appellate court by journalists in other Privacy Act cases in this Circuit. *See Lee v. Dep't of Justice*, 413 F.3d 53, 55 (D.C. Cir. 2005) ("Five journalists appeal a District Court order holding them in contempt of court for refusing to answer questions regarding confidential sources in a non-party deposition in a civil

[1] Counsel for Herridge and Plaintiff have been in regular communication since the Order was issued in order to schedule a deposition. Due to Herridge's summer travel schedule and other commitments, the current target date for her deposition is the 25th or 26th of September.

case."); Order, *Hatfill v. Mukasey*, No. 08-5049 (D.C. Cir. Nov. 17, 2008) (attached to Mot. for Certification as Ex. B) (noting that the appeal arose from the district court's contempt order). In fact, in *Lee*, this Court denied the nonparty journalists' motion seeking § 1292(b) certification, but they were nevertheless able to obtain appellate review of the district court's discovery order by appealing their subsequent contempt citation. *See* Order, *Lee v. U.S. Dep't of Justice*, No. 99-3380 (TPJ) (D.D.C. Nov. 13, 2003) [Dkt. 116] (attached hereto as Ex. A). In sum, given that she will imminently have an appealable order that allows her to present the same issues to the Circuit court, Herridge simply cannot demonstrate that any exceptional circumstances warrant certification of ***this*** Order for immediate appeal.

Second, Herridge contends that it would be more "efficient" to certify this Order because going through with a deposition and securing a finding of contempt would be a "burdensome process" that could lead to "a largely duplicative round of briefing on the motion for a contempt order." (Mot. for Certification at 2, 14.) But it is well-settled that "convenience alone is not a ground for granting certification under § 1292(b)." *Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 18-19 (D.D.C. 2002); *Hammons v. Univ. of Md. Med. Sys. Corp.*, 2021 WL 4951921, at *5 (D. Md. Oct. 25, 2021) (certification is not available solely because early review of difficult decisions would be "convenient"). While Herridge undoubtedly might find it more convenient to pursue an appeal before she refuses to obey this Court's Order and is held in contempt, that argument is unavailing and ultimately fatal because it explicitly concedes that there is no exceptional circumstance warranting a premature appeal where that path of review remains available to her before she would ever have to reveal her source.

At bottom, "Section 1292(b) 'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'"

*Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984) (quoting 10 Wright & Miller, Fed. Practice & Proc. § 2658.2, at 80 (2d ed. 1983)). Herridge simply cannot demonstrate that this case presents exceptional circumstances where she acknowledges that denial of her Motion for Certification will not foreclose her ability to obtain meaningful appellate review of the Court's Order in the near future upon a finding of contempt. Particularly given that the two most recent and analogous Privacy Act cases in this Circuit reached the Court of Appeals in the posture of an appeal from a contempt order, Herridge offers no valid argument for exceptionality here.

### B. There Is No Ground for Difference of Opinion as to the Controlling Law Where Binding Circuit Precedent is Clear.

Next, Herridge fails to meet her burden to demonstrate that there is "substantial ground for difference of opinion" meriting certification. 28 U.S.C. § 1292(b). While it is abundantly clear at this point that Herridge disagrees with the D.C. Circuit's precedent on the scope of the qualified First Amendment privilege in a Privacy Act case, that she wishes the law were different is irrelevant. Fundamentally, Herridge's motion fails to grapple with the showing that is required to demonstrate a sufficient dispute as to the validity of the Court's Order.

"The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." *Jud. Watch*, 233 F. Supp. 2d at 18-19. Moreover, "[m]ere disagreement, even if vehement," with a district court's decision "does not establish a 'substantial ground for difference of opinion.'" *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996). Demonstrating "substantial ground for difference of opinion" requires far more than showing that some Circuit judges disagreed with prior precedent, or expressing a hope that prior precedent might be reversed on appeal; rather, courts have required that, for example, the question is one of first impression in the circuit, or that there is an intracircuit split regarding the issue. *See In re Vitamins Antitrust Litig.*,

2000 WL 673936, at *3; *Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009). Critically, "[i]f a controlling court of appeals has decided the issue, no substantial ground for difference of opinion exists and there is no reason for an immediate appeal." *Kirkland & Ellis v. CMI Corp.*, No. 95-cv-7457, 1996 WL 674072, at *4 (N.D. Ill. Nov. 19, 1996); *Fowler v. First Chem. Corp.*, No. 05-cv-16, 2006 WL 2423043, at *3 (S.D. Miss. Aug. 21, 2006) (same); *see also Frontier-Kemper Constructors, Inc. v. American Rock Salt Co.*, No. 01-cv-6217, 2003 WL 22384797, at *4 (W.D.N.Y. Sept. 4, 2003) ("When the circuit court of appeals has already ruled on an issue, there is no substantial ground for difference of opinion."); *Able v. United States*, 870 F. Supp. 468, 471 (E.D.N.Y. 1994) (citation omitted) ("Because second circuit case law supports this court's conclusion that exhaustion is required, there is no substantial ground for difference of opinion, and certification is not appropriate.").

This alone forecloses the motion. In its Order, this Court held that its ruling was in accord with "the binding case law of this Circuit." (Order at 1.) Specifically, the Court held that "[t]he D.C. Circuit's opinion in *Zerilli* provides the test for applying 'a non-party journalist's qualified privilege in a civil action such as this one, where testimony of journalists is sought because government officials have been accused of illegally providing the journalist with private information." (*Id*. at 5 (quoting *Lee*, 413 F.3d at 59).) The Court further held that *Zerilli* sets forth the guidelines for a district court to consider in such a case; namely, whether the information sought goes to the heart of the matter, whether the litigant has exhausted reasonable alternative avenues to obtain the information, and whether the journalist is a party to the action. (Order at 7-8 (citing *Zerilli v. Smith*, 656 F.2d 705, 712-714 (D.C. Cir. 1981).) Finally, the Court held that the conclusion "[t]hat courts must tailor the balancing test to those central factors identified in *Zerilli* is confirmed by the D.C. Circuit's subsequent application of the analysis in *Lee v. Department of*

*Justice*, 413 F.3d 53 (D.C. Cir. 2005)." (Order at 9.) Thus, far from determining that this case presents a question of first impression or of confusion regarding the proper factors to be applied, this Court held that the question has already been answered by binding D.C. Circuit precedent.

Nor can Herridge point to an intracircuit split that would justify certification under § 1292(b). Instead, this Court specifically determined that "[r]eading *Zerilli* and *Lee* to require a balancing test focused primarily, even if not exclusively, on centrality and exhaustion (and, where applicable, whether the journalists are parties or non-parties) also ***accords with the approach of other courts in this district***." (Order at 11 (emphasis added).) The Court then discussed the holding in *Hatfill v. Gonzalez*, 505 F. Supp. 2d 33 (D.D.C. 2007)—a Privacy Act case involving analogous circumstances—as well as numerous other cases in this district cabining the focus of the qualified privilege test to the guidelines set forth in *Zerilli* and *Lee*. (*Id*. at 11-12.)

In arguing that substantial grounds for difference of opinion exist, Herridge relies almost exclusively on the Circuit Court's split vote denying rehearing en banc in the *Lee*. Herridge argues that "'a summary denial of rehearing en banc is insufficient to confer any implication or inference regarding the court's opinion relevant to the merits of a case.'" (Mot. for Certification at 10 (quoting *Luckey v. Miller*, 929 F.2d 618, 622 (11th Cir. 1991)).) But Herridge misses the key point, which is that no "precedential weight" attaches to a denial of a rehearing en banc. *Luckey*, 929 F.2d at 622. Thus, the denial of rehearing in *Lee* merely left undisturbed as precedent the panel's opinion, which, as this Court has already held, "confirmed" *Zerilli's* also-precedential holding that the balancing test must be tailored to the central factors identified in *Zerilli*. (Order at 9.) At bottom, Herridge's argument that a substantial ground for difference of opinion "can be established through concurrences, plurality opinions, or dissents from rehearing when a question has not been definitively resolved by the court of appeals" fails on its own terms because, as this Court has held,

the question of which factors govern the qualified privilege in the Privacy Act context ***has been definitively resolved*** by the D.C. Circuit. (*See* Mot. for Certification at 11 (citing *Howard v. Off. of Chief Admin. Officer of the U.S. House of Representatives*, 840 F. Supp. 2d 52, 55-56 (D.D.C. 2012), as finding substantial grounds for difference of opinion where "there was no binding circuit precedent on point").)

Herridge's argument that there are grounds for a substantial difference of opinion as to the existence of a common law reporter's privilege fails for similar reasons. After surveying the Circuit Court's decisions directly addressing the scope of a journalist's privilege in a Privacy Act case, this Court determined, correctly, that recognizing a separate common law privilege with an amorphous and wide-ranging balancing element would "circumvent" this Circuit's "well-established First Amendment privilege [jurisprudence] that both protects journalists' interests and channels judicial discretion in balancing that interest against evidentiary need." (Order at 26 (quoting *Lee v. Dep't of Justice* ("*Lee II*"), 401 F. Supp. 2d 123, 139, 141-42 (D.D.C. 2005)).) And again, far from recognizing a substantial dispute on the question in this Circuit, the Court's Order instead noted that Judge Collyer (in *Lee*) and Judge Walton (in *Hatfill*) have both addressed the issue in the specific context of the Privacy Act, and the Court agreed with their determination that recognizing a common law privilege in that context would saddle district courts with a "daunting and well-nigh impossible task" and "risk undermining 'the fundamental purpose of the Privacy Act' of 'discourag[ing] the kind of [alleged] leaks that are at issue in this action." (Order at 26 (quoting *Lee II*, 401 F. Supp. 2d at 139).)

Against the weight of this authority, Herridge offers only the divided panel decision in *In re Miller*, 438 F.3d 1141 (D.C. Cir. 2006). And in so doing, she attempts to muddle the fact that of the three judges on that panel, one outright rejected a common law privilege (*id*. at 1153-1159

(Sentelle, J. concurring)), while another also declined to recognize a common law privilege and concluded that, even if one did exist, it would be limited to an analysis of centrality and exhaustion of available alternative sources—*i.e.*, be coextensive with the existing *Zerilli* First Amendment privilege test. (*Id*. at 1159-64 (Henderson, J., concurring).) Thus, on its face, the Circuit Court's panel decision in *Miller* does not assist Herridge in making her requisite "high" showing that there is ground for a substantial difference of opinion as to whether a common law reporter's privilege applies in the Privacy Act context.

**C. Herridge Cannot Demonstrate That the Order Involves a Controlling Question of Law.**

Next, Herridge fails to demonstrate that the Order involves a "controlling question of law" as required for § 1292(b) certification. Herridge argues that the issues of the scope of balancing required under *Zerilli* and the existence of a common law reporter's privilege "are controlling because if the court of appeals disagreed with this Court and applied the balancing Ms. Herridge has called for, the motion to quash would likely be granted and this litigation would come to an end." (Mot. for Certification at 6.) But this argument ignores that the Court actually held that ***even if it did*** engage in the broader type of balancing that Herridge erroneously argued the law requires, that would "likely not change the outcome here in any event." (Order at 22.) Thus, appeal of the Order would require not just a pure legal determination, but the appellate court would also need to second guess whether this Court correctly weighed and balanced the relative interests that Herridge argued should apply. This presents a mixed question of law and fact that is not appropriate for an appeal pursuant to § 1292(b).

In arguing that an appeal would involve a "controlling question of law," Herridge focuses almost exclusively on whether reversal of this Court's Order would materially impact Plaintiff's claims. (Mot. for Certification at 5-8.) But she neglects to consider what the phrase "controlling

question of law" means in the § 1292(b) context. Importantly, courts routinely hold that a question of law in this context "must refer to a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y 2008) (quoting *In re Worldcom, Inc.*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)); *see also Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336-37 (11th Cir. 2018) (interlocutory appeal under § 1292(b) only appropriate where "the appeal presents a pure question of law" and not "fact-driven issues"); *U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017) (rejecting as improvidently certified an appeal pursuant to § 1292(b) that "does not present [] pure question[s] of law"). This, in turn, means that certification is inappropriate where a review of a district court's order would "be highly fact intensive and would likely require consideration of how the Court weighed other factors within its overall balancing analysis," *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 919 (S.D. Ohio 2013), or would "require the [appellate] court to apply law to the particular facts of the case" and dive into the record, *Drummond Co*., 885 F.3d at 1337.

Certification here would require the Circuit Court to do just that, because even though this Court held that the scope of the First Amendment privilege in a Privacy Act case should generally be limited to an examination of centrality, exhaustion, and the status of the parties, the Court ***also*** determined that it would likely reach the same ultimate result even if a broader balancing test were to apply—and it then proceeded to conduct that analysis. (Order at 22-24.) Contrary to Herridge's suggestion that the Court "limited its discussion to the 'observation that [Plaintiff's] "suit is not frivolous,"'" (Mot. for Certification at 8), the Court assessed each of Herridge's arguments under her preferred balancing approach. In weighing Herridge's First Amendment interests against

Plaintiff's Privacy Act interests, the Court considered Herridge's argument that Plaintiff cannot obtain damages based on the Defense Department's revocation of tuition assistance funding, and noted that Plaintiff seeks other damages that Herridge did not dispute. (Order at 22-23.) With respect to Herridge's argument that the Court should consider whether Plaintiff could recover damages at all given that some of the Fox reporting came from publicly available information, the Court correctly noted that this argument ignored some of the most damaging aspects of the Fox reporting that indisputably did not come from public sources. (*Id*. at 23.) And in balancing Herridge's broader First Amendment interest here against countervailing interests, the Court observed that Plaintiff's claims implicated a broader interest than her own because Congress's intent in passing the Privacy Act was to deter the kind of disclosure at issue by creating a private right of action for violations of the Privacy Act. (*Id*. at 24.)[2]

Because the Court's analysis included "an assessment of the public and private interests at play" beyond those prescribed by *Zerilli* and *Lee*, (Order at 22), an appeal of the Order would necessarily require Herridge to not only ask the Circuit Court to decide that *Zerilli* and *Lee* allow for a broader balancing (which would require en banc review), but also to then apply that balancing to the specific facts of this case (and in a way that is contrary to this Court's analysis of that balancing). The appeal therefore would not be limited solely to a "controlling question of law," and therefore certification under § 1292(b) is not appropriate.

**D. Herridge Cannot Demonstrate That Immediate Appeal Will Materially Advance the Litigation.**

Finally, Herridge has not demonstrated that appeal of the Order would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Herridge assumes that a reversal

[2] Similarly, an appeal would also require review of this Court's finding that Plaintiff exhausted all reasonable avenues of discovery prior to issuing a subpoena to Herridge, which, as the Court well knows, is a highly fact-intensive inquiry.

of the Order that results in a granting of her motion to quash the deposition subpoena would "actually end this litigation," (Mot. for Certification at 13), but there is no reason to conclude that is so. Although the Court held that Plaintiff has exhausted all ***reasonable*** alternative sources to discover who leaked her private information to Herridge, (Order at 16-21), a successful appeal may well result in Plaintiff seeking to go to ***unreasonable*** lengths to try and identify the source of the leak without Herridge's cooperation, or to relitigate, along with Defendants, this Court's prior rulings on the application of the law enforcement privilege. Such a result would dramatically draw out the ultimate conclusion of the case, not lead to a hastened resolution.

## II. The Court Should Deny Herridge's Request for a Stay Pending Appeal.

If the Court denies Herridge's request for § 1292(b) certification, it should also deny her request for a stay pending her anticipated appeal. Absent certification, Herridge's appeal is certain to fail for lack of jurisdiction because the Order directing a nonparty to comply with a discovery request is not an appealable order under the collateral order doctrine. Therefore, Herridge simply cannot demonstrate an entitlement to a stay, or that a stay would accomplish anything other than delay.

### A. The Order is Not Appealable Under the Collateral Order Doctrine.

While Herridge states that she will appeal the Order pursuant to the collateral order doctrine and proceeds to argue the factors relevant to a discretionary stay pending appeal, she conspicuously neglects to offer any analysis demonstrating that the Order is appealable in the first place. To qualify under the collateral order doctrine, "the order being appealed must: '(i) conclusively determine the disputed question; (ii) resolve an important issue completely separate from the merits of the action; and (iii) be effectively unreviewable on appeal from a final judgment.'" *Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (quoting *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375 (1987)). Here, Herridge cannot demonstrate

that the Order is final and effectively unreviewable because, as discussed above, she acknowledges that she will have a right to appeal the merits of the Order should she defy the order and be held in contempt. (Mot. for Certification at 14.) This available avenue of review dooms appeal of a discovery order directed to a nonparty under the collateral order doctrine. *See In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (holding that where an order "is essentially one compelling testimony and the production of documents," the Supreme Court "has consistently held that such orders are not final and hence are not appealable," because the nonparty "is entitled to refuse to comply and in the event contempt proceedings are brought against [the nonparty] they may then litigate the validity of the [] order"); *United States v. Anderson*, 464 F.2d 1390, 1390-91 (D.C. Cir. 1972) (holding that "an order compelling testimony of a non-party witness is interlocutory and not appealable under 28 U.S.C. § 1921" because "[a]ppellate review of the decision is available only by an appeal from a subsequent order of the district court adjudging the recalcitrant witness in contempt"); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (disclosure orders adverse to the attorney-client privilege do not qualify for immediate appeal under the collateral order doctrine).

And although Herridge attempts to differentiate this Order, and the possibility of a contempt finding, because it involves an asserted First Amendment right, (*see* Mot. to Stay at 8), the rule applies with equal force in the context of claimed Constitutional rights or other privileges. *See, e.g., Anderson,* 464 F.2d at 1391-92 (D.C. Circuit holding that a nonparty witness who claimed a district court order compelling his testimony would result in violation of his Fifth Amendment rights could not appeal the order until being adjudged in contempt); *Ohio A. Philip Randolph Institute v. Larose*, 761 F. App'x 506, 511 (6th Cir. 2019) (quoting *Mohawk Indus.*, 558 U.S. at 111 (holding that a nonparty's "'long-recognized option'" to defy the disclosure orders and incur an

appealable contempt citations" counseled "'strongly against permitting immediate collateral order review of all discovery orders adverse to a claimed First Amendment privilege'"); *see also In re Motor Fuel Temperature Sales Practice Litig.*, 641 F.3d 470, 483-484 (10th Cir. 2011) (noting "there are several additional alternatives to collateral review of a discovery order that may adequately remedy alleged violations of a First Amendment privilege," including that "parties claiming a privilege may defy the discovery order, incur court-imposed sanctions, and appeal from the sanctions," and that "[t]he availability of these alternatives counsels strongly against permitting immediate collateral order review of all discovery orders adverse to a claimed First Amendment privilege"); *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 490 F.3d 99, 107-108 (2d Cir. 2007) (order directing attorney to disclose materials claimed to be work product not appealable as collateral order because attorney could refuse, be held in contempt, and appeal that order); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 (3d Cir. 2002) (denying nonparty's appeal of a discovery order prior to a contempt finding and holding that "[n]onparties challenging discovery orders requiring the production of documents allegedly protected by the attorney-work product doctrine must stand in contempt" or there is "no jurisdiction to consider their appeals").[3]

The authority that Herridge relies upon to claim that orders allegedly infringing on First Amendment rights are immediately appealable under the collateral order doctrine is inapposite. For example, Herridge relies on a handful of cases involving discovery orders directed at ***parties*** to a litigation, rather than a nonparty as here.[4] But that context is entirely distinguishable because

---

[3] While Herridge portrays the choice between compliance and contempt as a "Hobson's choice," (Mot. to Stay at 6), this is in fact by design. As the Sixth Circuit explained in *In re Flat Glass Litig*., 288 F.3d at 89, requiring a nonparty to stand in contempt before appealing a discovery order ensures that the nonparty has a sufficient stake in the issue, and also gives both the litigant and the nonparty an opportunity for a second look, in that the nonparty may ultimately decide to comply.

[4] *See* Mot. to Stay at 5, 7-8 (citing *Marceaux v. City-Parish Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013) (involving an order directing plaintiffs to take down a website); *Ctr. for Int'l Env't Law*

unlike nonparties, parties to an ongoing litigation do not have a right to appeal a resulting contempt citation prior to a final judgment in the case. *See Byrd v. Reno*, 180 F.3d 298, 300 (D.C. Cir. 1999) ("a civil contempt order against a party in a pending proceeding is not appealable as a final order under 28 U.S.C. § 1291"); *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (unlike a party, "[t]he right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action"). Because as a nonparty Herridge ***will*** be able to appeal a contempt citation, those cases do not support her argument or overcome the clear law in this Circuit that the Order at issue is not appealable as a collateral order before Herridge actually defies the Order and stands in contempt. *In re Ryan*, 538 F.2d at 437; *Anderson*, 464 F.2d at 1390.

**B. Application of the Factors Relevant to a Discretionary Stay Favors Plaintiff, Not Herridge.**

Given that her proposed appeal is untimely, Herridge simply cannot meet her burden of demonstrating that a discretionary stay is warranted here. Indeed, the first relevant factor is whether she can demonstrate a likelihood that she will ultimately prevail on the merits of her

---

*v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (involving an order directing "defendants" to produce withheld documents); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (order directing defendant to produce withheld documents to plaintiff)). And while *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) (cited in Mot. to Stay at 5) did find an order directing a nonparty religious organization to comply with a subpoena to be appealable under the collateral order doctrine, there were several unusual factors at play in that case, including an aggressive district court repeatedly imposing unreasonable deadlines on the third party despite its voluntary cooperation with discovery and claims of religious privilege over the relatively small number of documents it withheld. *See Smith*, 896 F.3d at 366-369. The Fifth Circuit also acknowledged that its approach to the issue differed from that of other circuit courts, *id*. at 368, and the Fifth Circuit has more recently affirmed that unless a case implicates "some particular value of a high order" or "substantial public interest," "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order because nonparties have alternative avenues for appellate review." *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022).

appeal. (Mot to. Stay at 6 (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).) Because summary dismissal of any appeal of the Order pursuant to the collateral order doctrine is virtually assured under this Circuit's precedent, there is no likelihood of Herridge succeeding on an interlocutory appeal of this Order. Moreover, as the Court's Order makes clear, Herridge's expected arguments on appeal are plainly inconsistent with the Circuit Court's precedent as set forth in *Zerilli*, 656 F.2d at 705, and *Lee*, 413 F.3d at 53. (Order at 1 (holding that the Court's determination as to the scope of the qualified First Amendment privilege is in accord with "the binding case law of this Circuit").)[5]

Her claims of irreparable harm fare no better. (*See* Mot. to Stay at 6 (acknowledging that the proponent of a stay pending appeal must show a likelihood of irreparable harm absent a stay).) Herridge devotes most of her Motion to Stay to trying to establish that the Order causes her irreparable harm because it requires her to identify her source, and yet she has also stated emphatically that she will not suffer this harm as a result of this Order because she will not reveal her source in a deposition. (Mot. for Certification at 5 ("Ms. Herridge does not intend to reveal any confidential source(s) if her deposition is scheduled and would refuse to answer questions about her source(s) if that becomes necessary to seek an immediate appeal.").) Recognizing this tension, Herridge then attempts to argue that the future ***possibility*** of a contempt citation should be

[5] Herridge mischaracterizes *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7 (D.D.C. 2014), which in fact supports Plaintiff. (*See* Mot. to Stay at 1, 6, 8-9.) First, *Akiachak* noted that, after *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), "likelihood of success on the merits" may be "a threshold inquiry" that is required even if all other stay factors are met. *Akiachak*, 995 F. Supp. 2d at 12 (citing *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)). Second, even under the traditional "sliding scale approach," *Akiachak* does not state that a "serious legal question" on the merits suffices if irreparable harm is shown. It suffices under that approach *only* "'in cases where *the three other factors strongly favor* issuing an injunction'"—namely, "'when little if any harm will befall other interested persons or the public, *and* when denial of the order would inflict irreparable injury on the movant.'" *Akiachak*, 995 F. Supp. 2d at 12-13 (emphases added) (quoting *Aamer*, 742 F.3d at 1043; *Shays v. FEC*, 340 F. Supp. 2d 39, 45 (D.D.C. 2004)).

considered irreparable harm. But she cites no authority to support this proposition,[6] which is unsurprising given that the actual imposition of a contempt sanction is a necessary step for Herridge to even be able to appeal the merits of the Order in the first place. *In re Ryan*, 538 F.2d at 437; *Anderson*, 464 F.2d at 1390. Whether any sanctions arising from a future contempt finding should be stayed as irreparably harmful pending an appeal of that potential future order is a question for another day.

Herridge next argues that Plaintiff would not be harmed in any way by imposition of a stay, reasoning that further delay in Plaintiff's ability to prosecute her case is not sufficient. (Mot. to Stay at 6, 12 (acknowledging that in determining whether to issue a stay, the Court must consider the potential harm to Plaintiff).) But as this Court held in the *Hatfill* case in denying the reporter's motion to stay contempt sanctions pending appeal, "the lapse of time generally jeopardizes a party's ability to advance [her] claims." *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 104 (D.D.C. 2008). As the Court well knows, Plaintiff was required to undertake years of painstaking discovery of the government and third parties before seeking the source's identify from Herridge, and given the tendency of witness memories to fade over time, "further delay of a case that is already [nearly] four years old may very likely prejudice [Plaintiff], with the potential result being the erosion of [her] ability to effectively establish [her] Privacy Act claims." *See id*. at 104.

Finally, in arguing that the public interest favors a stay, Herridge focuses almost solely on her claimed First Amendment interest while entirely downplaying the public interest in enforcement of the Privacy Act. (Mot. to Stay at 12-13.) As the Court noted in its Order, "[t]he

---

[6] Herridge cites only to *In re Roche*, 448 U.S. 1312, 1316 (1980), in which Justice Brennan issued a stay of a civil contempt order to a journalist pending that journalist's ***appeal of the contempt order***. *In re Roche* in fact supports the proper sequencing here, which is that Herridge must defy the Court's Order and stand in contempt before she is able to seek an appeal of the merits of that Order.

Privacy Act protects not just [Plaintiff] but all private citizens, whether blameworthy or blameless, from the risk that government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals." (Order at 24.) "[T]he protections of the Privacy Act do not disappear when the illegally disclosed information is leaked to a journalist, no matter how newsworthy … the information is." *Lee*, 413 F.3d at 60. The public interest thus favors deterrence of, and redress for, such abuses, and every day that Herridge is permitted to delay disclosure of her source is another day that an intentional bad actor is allowed to remain unidentified and unpunished, and another day that Congress's intent in passing the Privacy Act is being thwarted.

In sum, the Court should decline to issue a stay of its Order pending Herridge's anticipated appeal. The Order itself is simply not appealable under the collateral order doctrine, and therefore, a stay will only result in delay until the appeal is dismissed and Herridge's deposition can be rescheduled. Because Herridge has no prospect of succeeding on an appeal of this Order, the Order itself is causing no irreparable harm to Herridge, a further delay would harm Plaintiff, and the public interest favors unmasking unlawful government leakers and providing redress to those harmed by such leaks, Herridge's Motion to Stay should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Herridge's Motion to Amend Order to Include Certification for Interlocutory Appeal Under 28 U.S.C. § 1291(b), as well as Herridge's Motion for Stay Pending Appeal.

Dated: August 16, 2023

Respectfully Submitted,

*/s/ Andrew C. Phillips*

Andrew C. Phillips (DC Bar No. 998353)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K. Street NW, Suite 300
Washington, DC 20006
Email: andy.phillips@mwpp.com

*Counsel for Plaintiff Yanping Chen*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court and served upon all counsel of record through the CM/ECF system.

*/s/ Andrew C. Phillips*
Andrew C. Phillips