# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANPING CHEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| U.S. DEPARTMENT OF DEFENSE, U.S. | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, | ) |
| | ) |
| Defendants. | ) |

**Case No. 1:18-cv-03074-CRC**

**Hon. Christopher R. Cooper**
**United States District Judge**

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF NON-PARTY CATHERINE V. HERRIDGE'S MOTION TO AMEND ORDER TO INCLUDE CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND MOTION FOR STAY PENDING APPEAL**

Patrick F. Philbin (D.C. Bar No. 453620)
Kyle T. West (D.C. Bar No. 24093346)
ELLIS GEORGE CIPOLLONE
O'BRIEN LLP
1155 F Street, N.W.
Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@egcfirm.com

*Counsel for Catherine V. Herridge and Fox News Network LLC*

August 18, 2023

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................................1

ARGUMENT ...........................................................................................................................3

I.     THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY
APPEAL UNDER 28 U.S.C. § 1292(b). .............................................................3

       A.    The Order Involves Controlling Questions of Law. .................................4

       B.    There Are Substantial Grounds for Difference of Opinion as Shown By
Splintered Decisions of the D.C. Circuit. ...............................................6

       C.    Immediate Appeal Will Materially Advance the Ultimate Termination of
this Litigation. ........................................................................................9

       D.    This Is an Exceptional Case Warranting Exercise of the Court's Discretion
To Certify an Interlocutory Appeal......................................................10

II.    THE COURT SHOULD GRANT A STAY PENDING APPEAL. ...............................11

CONCLUSION.......................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AF Holdings LLC v. Does 1–1,058,*
    286 F.R.D. 39 (D.D.C. 2012)................................................................1, 6, 11

*Akiachak Native Cmty. v. Jewell,*
    995 F. Supp. 2d 7 (D.D.C. 2014) ..............................................................14

*Al-Anazi v. Bush,*
    370 F. Supp. 2d 188 (D.D.C. 2005) ..........................................................14

*Ameziane v. Obama,*
    620 F.3d 1 (D.C. Cir. 2010) .....................................................................13

*Carr Park, Inc. v. Tesfaye,*
    229 F.3d 1192 (D.C. Cir. 2000) .................................................................7

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .................................................................................10

*CREW v. Am. Action Network,*
    415 F. Supp. 3d 143 (D.D.C. 2019) .........................................................10

*Ctr. For Int'l Env't L. v. Off. of U.S. Trade Representative,*
    240 F. Supp. 2d 21 (D.D.C. 2003) ...........................................................14

*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
    390 F. Supp. 3d 128 (D.D.C. 2019) .........................................................14

*EEOC v. Bd. of Governors of State Colls. & Univs.,*
    No. 86 C 0295, 1989 WL 81987 (N.D. Ill. July 14, 1989) ........................6

*Hatfill v. Mukasey,*
    539 F. Supp. 2d 96 (D.D.C. 2008) .........................................................3, 14

*Hatfill v. Mukasey,*
    No. 08-5049, Per Curiam Order, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008) .......3, 8, 14, 15

*In re Miller,*
    438 F.3d 1141 (D.C. Cir. 2006) .................................................................8

*In re Ryan,*
    538 F.2d 435 (D.C. Cir. 1976) .................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jamsports & Ent., LLC v. Paradama Prods., Inc.*,
No. 02 C 2298, 2004 WL 2943649 (N.D. Ill. Dec. 20, 2004) ...................................................6

*John Doe Agency v. John Doe Corp.*,
488 U.S. 1306 (1989) .................................................................................................................14

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
233 F. Supp. 2d 16 (D.D.C. 2002) ..............................................................................................6

*Lee v. Dep't of Just.*,
428 F.3d 299 (D.C. Cir. 2005) ............................................................................................2, 7, 8

*Mohawk Indus. v. Carpenter*,
558 U.S. 100 (2009) ...................................................................................................................12

*Molock v. Whole Foods Mkt. Grp., Inc.*,
317 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................................9

*Sherrod, Teed, Vanderhagen, and Ware v. VNA*,
No. 5:17-cv-10164-JEL-KGA, 2022 WL 997261 (E.D. Mich. Apr. 1, 2022) ...................9, 11

*Tesfaye v. Carr Park, Inc.*,
85 F. Supp. 2d 37 (D.D.C. 2000) ................................................................................................7

*United States v. Anderson*,
464 F.2d 1390 (D.C. Cir. 1972) ................................................................................................12

*United States v. Honeywell Int'l Inc.*,
No. 08-0961 (PLF), 2021 WL 2493382 (D.D.C. June 18, 2021) ...............................................7

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017) ......................................................................................................13

*Wash. Area. Metropolitan Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (1977) ................................................................................................................3, 8

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) ................................................................................................2, 12

## STATUTES

28 U.S.C. § 1292(b) ........................................................................................................ *passim*

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**RULES**

Fed. R. Civ. P. 26 ....................................................................................................................2, 9, 10

**INTRODUCTION**

Plaintiff's opposition confirms that the Court should certify its Order of August 1, 2023 ("Order") for interlocutory review and grant a stay pending appeal. Nothing in Plaintiff's arguments undermines Ms. Herridge's showing that all prongs of 28 U.S.C. § 1292(b) are satisfied, and the traditional four factors overwhelmingly favor a stay.

Plaintiff's primary argument on section 1292(b) skips the terms of the statute and instead focuses on the assertion that there are no "exceptional circumstances" warranting an appeal because Ms. Herridge can force an appeal by being held in contempt. Opp. 7–8. That gets things backwards. Courts limit section 1292(b) to "exceptional circumstances" to protect the general policy disfavoring piecemeal appeals. When there is going to be an interlocutory appeal in this case no matter what, there is no reason for the Court *not* to certify the appeal now. No rule requires the Court to force the parties (and itself) through the more cumbersome route of contempt, which will only further delay the progress of this case to the court of appeals. *Cf. AF Holdings LLC v. Does 1–1,058*, 286 F.R.D. 39, 62 (D.D.C. 2012) (certifying order denying motion to quash for appeal even though third parties presumably could have disobeyed and drawn a contempt order).

Moreover, this case plainly presents exceptional circumstances warranting an exercise of discretion to certify an appeal. The Court's Order overrides a First Amendment protection that is vital for the functioning of the press. Forced disclosure of sources under the Order would have a widespread chilling effect and undermine the ability of the press to keep the people informed. A decision on a constitutional issue where an error will have such broad effects on the public interest plainly warrants allowing the court of appeals to weigh in before the Order is enforced.

The statutory requirements of section 1292(b) are also readily met. The proper scope of balancing under *Zerilli*, is a "controlling question of law"—and contrary to Plaintiff's assertions,

defining what must be weighed in the balance is a pure question of law that will not require the court of appeals to delve into the facts of this case.

A "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), on how to apply *Zerilli* is readily shown by the dissents from denial of rehearing en banc in *Lee v. Dep't of Just.,* 428 F.3d 299 (D.C. Cir. 2005).  Saying that such public disagreement about the law among circuit judges is not enough to provide "substantial ground for difference of opinion" blinks reality.

And an appeal will "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because if the subpoena is quashed, Plaintiff will be unable to make her case and this litigation will end.  Plaintiff's suggestion that the case will carry on no matter what, because after a loss on appeal she will simply pursue "unreasonable" discovery in her quest to find the source of a leak (Opp. 17) is nonsense.  Rule 26, by definition, does not allow *unreasonable* discovery.  If the subpoena is quashed after an appeal, this case will end.

A stay pending appeal is also warranted.  Plaintiff's assertion that there would be no jurisdiction under the collateral order doctrine largely ignores the primary case on point: *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018).  There, the Fifth Circuit squarely held that a discovery order to a third party that impaired First Amendment rights is appealable under the collateral order doctrine.  *Id.* at 367–68.  The Court should not presume that the D.C. Circuit would create a circuit split when confronted with the same issue.

In addition, the traditional four factors overwhelmingly favor a stay.

*First*, Plaintiff cannot and does not dispute that Ms. Herridge would suffer irreparable harm if she is forced to disclose her source(s).  And contrary to Plaintiff's assertion (Opp. 18–19), the option of being held in contempt does not change that analysis.  Every party subject to a court

order could disobey and draw a contempt citation, but irreparable harm is assessed by looking at the harm *compliance* with the order would cause.  The contempt option is irrelevant.

*Second*, the scope of balancing under *Zerilli* presents, at a minimum, a "serious legal question."  *Wash. Area. Metropolitan Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (1977).

*Third*, Plaintiff cannot point to any irreparable harm she would suffer from a stay.  She cites the generic observation from the district court in *Hatfill* that "the lapse of time generally jeopardizes a party's ability to advance [her] claims."  *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 104 (D.D.C. 2008).  But the D.C. Circuit obviously found little weight in that rationale, because it *granted* the stay in *Hatfill* after the district court had denied it.

*Fourth*, the public interest strongly favors a stay.  Any public interest in enforcing the Privacy Act can be vindicated after an appeal.  The public interest in supporting a free press and the constitutional principles protected by the reporter's privilege, by contrast, would be irreparably harmed if Ms. Herridge were erroneously forced to disclose her source(s).  Once that damage is done, the chilling effect on newsgathering would be widespread and long-lasting.

## ARGUMENT

## I.   THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

It speaks volumes about Plaintiff's argument under section 1292(b) that Plaintiff does not begin by addressing the actual requirements under the statute.  Instead, Plaintiff's leading argument (Opp. 7–10) is an effort to elevate the general principle that section 1292(b) should be used for "exceptional cases" into an insuperable barrier blocking an immediate appeal in this case.  That argument distorts the cases on which it is based, which present no bar to certifying an appeal here.

The three requirements actually imposed by the statute are readily met, and there are ample grounds for the Court to exercise its discretion to grant an interlocutory appeal.

**A.      The Order Involves Controlling Questions of Law.**

The first requirement for certification under section 1292(b) is that the order must involve a controlling question of law.  According to Plaintiff (Opp. 14–16), the Court's Order does not involve such a question because a controlling question of law should be a "pure" question of law that the court of appeals can decide without delving deeply into the facts.  Here (says Plaintiff) the Court already applied the sort of broader balancing under *Zerilli* that Ms. Herridge has called for, and that means that an appeal would require the court of appeals not just to declare the legal lines around the balancing test but also to reweigh the facts itself.  That argument is wrong for two reasons.

First, Ms. Herridge respectfully submits that the Court did not actually engage in the full balancing under *Zerilli* that Ms. Herridge has called for.  The Court indicated only that it was "likely" that if it conducted broader balancing the result would be the same.  Order at 22.  Predicting what is "likely" under an alternative analysis does not state an alternative holding.  In addition, the Court did not conduct the sort of analysis Ms. Herridge has discussed.  For example, in response to the argument that little would remain of Plaintiff's Privacy Act claim because her damages were caused by DOD's action terminating tuition assistance, the Court expressly stated that, "[t]o these arguments, it is sufficient to repeat *Zerilli*'s observation that Chen's 'suit is not frivolous.'"  *Id.* (quoting 656 F.2d at 714).  In other words, the Court concluded that it was sufficient for the balance to tilt in Plaintiff's favor as long as *something*—anything—of her claim survived.  But that is not what a full balancing under *Zerilli* would look like.  An actual balancing

would require determining the magnitude of any claim that would survive so that it could be weighed in the balance against the First Amendment interests at stake.[1]

Similarly, the Court stated that, without expert opinions relevant to causation and damages, it could not tell at this point whether Plaintiff would be "unable" to show damages caused by Privacy Act violations. *Id.* at 23. But the whole point of more robust balancing is that it would require the Court to press the case to the stage—including partial summary judgment—that would enable the Court to know what claims can survive and what relative magnitudes are at stake before forcing disclosure of a reporter's confidential sources.

Second, and more important, whatever balancing analysis this Court employed would not change the fact that, on appeal, the court of appeals would be asked to set the legal boundaries of a balancing test and then could remand for application of that test in the first instance. Thus, for example, the court of appeals might be asked to clarify that, in conducting balancing under *Zerilli*, a district court must take the case through whatever stages are necessary—including partial summary judgment—to determine how much of a plaintiff's claim is actually viable and what the magnitude of the claim is. Under that rule, it would not be permissible for a district court to conclude that it was impossible to know at a particular stage of the litigation whether a plaintiff would be able to prove causation and damages but nevertheless breach the First Amendment reporter's privilege and order the disclosure of sources anyway.

---

[1] The Court also stated that Plaintiff necessarily had separate claims apart from damages caused by DOD because she claimed damages for consulting fees and reputation management services. Order at 22. A proper balancing, however, would also require analyzing whether *those* claimed damages were caused by DOD publicly announcing that Plaintiff had been terminated "on national security grounds."

There can be no dispute, moreover, that if the court of appeals decided such legal questions in Ms. Herridge's favor, they would qualify as controlling for purposes of section 1292(b).  If the court of appeals disagreed with this Court and articulated the broader balancing test Ms. Herridge has called for, the motion to quash would almost certainly be granted and this litigation would come to an end.  And there can be no question it would, at a minimum, "materially affect the course of litigation."  *AF Holdings LLC v. Does 1–1,058*, 286 F.R.D. 39, 62 (D.D.C. 2012) (quotation marks and citation omitted); *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002) (a question of law can be controlling if it determines the outcome "or even the future course of the litigation").

### B.    There Are Substantial Grounds for Difference of Opinion as Shown By Splintered Decisions of the D.C. Circuit.

Plaintiff's argument on the second prong of section 1292(b)—whether there are substantial grounds for difference of opinion—boils down to the assertion that, if the Court can discern binding circuit precedent to apply, there can never be substantial grounds for difference of opinion on an issue.  Opp. 11.  That rigid and overly restrictive test misstates the law.

As Ms. Herridge pointed out in her opening brief, district courts have found a "substantial ground for difference of opinion" even where there is circuit precedent on point based on the fact that one judge in the circuit wrote a concurrence calling that precedent "anomalous."  *EEOC v. Bd. of Governors of State Colls. & Univs.*, No. 86 C 0295, 1989 WL 81987, at *2 (N.D. Ill. July 14, 1989).  Similarly, the test can be satisfied if a circuit precedent, although still binding, has been questioned in subsequent opinions.  *See Jamsports & Ent., LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2004 WL 2943649, at *3 (N.D. Ill. Dec. 20, 2004) (suggesting that the court of appeals might take the case en banc to reverse precedent).  Indeed, a court in this circuit found a substantial ground for difference of opinion where there were no contrary decisions on the issue, but the court

believed there was potentially ambiguity in circuit precedent.  *Tesfaye v. Carr Park, Inc.*, 85 F. Supp. 2d 37, 38–39 (D.D.C. 2000); *see also Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192, 1193–94 (D.C. Cir. 2000) (describing district court as believing that circuit precedent "could be seen as in tension with the plain wording of [a] statute").  As these cases show, assessing whether there are "substantial grounds for difference of opinion" is a practical inquiry in which the district court can consider any inputs that bear upon whether there is a substantial issue on which there could be reasonable disagreement and that would benefit from clarification from the court of appeals.  As another court in this district explained, if "the arguments in favor of each parties' position . . . are not without merit, a court may conclude that the issue is truly one on which there is a substantial ground for dispute."  *United States v. Honeywell Int'l Inc.*, No. 08-0961 (PLF), 2021 WL 2493382, at *3 (D.D.C. June 18, 2021) (quotation marks and citation omitted).

More important, there certainly is no rigid rule that would foreclose finding a "substantial ground for difference of opinion" based on the legal landscape in this case, which is *sui generis* and squarely presents concrete evidence of substantial differences of opinion.  The last time the court of appeals addressed the scope of balancing under *Zerilli*, it failed to take the issue en banc by an equally divided four-four vote.  *See Lee v. Dep't of Just.*, 428 F.3d 299, 300 & nn. 1&5 (D.C. Cir. 2005).  Two dissenters wanted to adopt exactly the test Ms. Herridge has pressed here and a third noted that it was "evident" "[t]hat there are different views regarding the proper application of *Zerilli* in Privacy Act cases"  *Lee*, 428 F.3d at 300 (Rogers, J., dissenting from denial of reh'g en banc).  Any suggestion that such open disagreement among the judges on a court of appeals cannot suffice to show that there are "substantial grounds for difference of opinion" on a legal issue blinks reality.  And Plaintiff's suggestion that the Court should ignore the disagreement because a decision on denial of rehearing has no "precedential weight" (Opp. 12) misses the point.

Ms. Herridge is not asking the Court to give precedential weight to anything in the denial of rehearing.  Instead, she is simply asking the Court not to blind itself to the reality that the judges on the court of appeals wrote opinions demonstrating substantial disagreement on *Zerilli*, and the court of appeals has never resolved that disagreement.  Adopting a rule that requires the Court to ignore that disagreement—simply because the court in *Lee* failed to actually take the case en banc—would require abandoning common sense.

On top of that, there is even further evidence of substantial grounds for a difference of opinion given the court of appeals' decision granting a stay pending appeal in *Hatfill*.  *See Hatfill v. Mukasey,* No. 08-5049, Per Curiam Order, Doc. No. 1104546 (D.C. Cir. Mar. 11, 2008) (attached as Ex. A to Ms. Herridge's motion, ECF No. 145-1).  The stay could not have been granted unless the panel found that the issue presented there (which is the same as the issue here) involved at least a "serious legal question."  *Wash. Area. Metropolitan Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (1977).  In addition, the court of appeals went out of its way in dismissing the case as moot to announce that it presented "close questions . . . under the First Amendment."  *Hatfill v. Mukasey*, No. 08-5049, Per Curiam Order, Doc. No. 1149629 at 1–2 (D.C. Cir. Nov. 17, 2008) (attached as Ex. B to Ms. Herridge's motion, ECF No. 145-1).  It is hard to see any material difference between a "serious legal question" that is "close" and a question on which there are "substantial grounds for difference of opinion."  The court of appeals' decisions in *Hatfill* thus strongly support a finding that there are substantial grounds for difference of opinion here.

For similar reasons, there are substantial grounds for difference of opinion on the existence of a federal common law privilege based on the conflicting opinions in *In re Miller*, 438 F.3d 1141, 1154–59 (D.C. Cir. 2006).

**C.    Immediate Appeal Will Materially Advance the Ultimate Termination of this Litigation.**

Plaintiff cannot and does not dispute that an interlocutory appeal would advance this litigation by sparing the parties and the Court a largely duplicative round of briefing on a contempt motion that would be required if Ms. Herridge is forced to go through the formality of appearing for a deposition and refusing to answer questions.  Obviating the need for such briefing alone has been held sufficient to "materially advance the ultimate termination of the litigation" for purposes of section 1292(b).  *See, e.g.*, *Sherrod, Teed, Vanderhagen, and Ware v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 WL 997261, at *2 (E.D. Mich. Apr. 1, 2022).  As courts in this district have explained, it is enough for this prong of section 1292(b) if immediate appeal "would hasten or at least simplify the litigation in some material way," such as by "conserving judicial resources, or saving the parties from needless expense."  *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018).  That test is plainly satisfied.

In addition, it is abundantly clear that this case would end entirely if the Court's Order is reversed on appeal and the subpoena is quashed.  Plaintiff fails to provide any realistic scenario in which the case could go forward after such a ruling.  Plaintiff acknowledges that she cannot proceed with her case without identifying the source of the alleged leak.  And she also acknowledges (Opp. 17) that she has already exhausted all reasonable discovery efforts to find the source of the leak.  Plaintiff's suggestion (*id.*) that, if the subpoena to Ms. Herridge is quashed, Plaintiff will simply carry on to pursue "unreasonable" discovery efforts borders on the frivolous.  Rule 26 would not permit such a waste of resources.  In setting "Discovery Scope and Limits," Rule 26 restricts discovery to steps that are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy . . . [and] whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Unreasonable discovery, by definition, is not permitted under Rule 26.

Since Plaintiff has exhausted reasonable discovery and she cannot proceed without the source of the alleged leak, if the subpoena is quashed, this case will be over.

### D. This Is an Exceptional Case Warranting Exercise of the Court's Discretion To Certify an Interlocutory Appeal.

The First Amendment interests at stake in this case, the irreparable harm that would be caused by erroneously forcing disclosure of Ms. Herridge's source(s), and the clear disagreements among judges on the court of appeals concerning *Zerilli* readily establish that this case warrants an exercise of the Court's discretion to certify an interlocutory appeal.

According to Plaintiff (Opp. 7–8), this case cannot involve "exceptional circumstances" warranting certification under section 1292(b) because Ms. Herridge will imminently have another route for an interlocutory appeal if she refuses to answer questions and is held in contempt. That argument gets things backwards. Courts developed the limitation that section 1292(b) should be used for "exceptional circumstances" to maintain the general federal policy against piecemeal appeals, which tend to disrupt the orderly progress of litigation. *See, e.g.*, *CREW v. Am. Action Network*, 415 F. Supp. 3d 143, 145 (D.D.C. 2019) ("exceptional circumstances" are meant to "justify a departure from the basic policy of postponing appellate review until after the entry of final judgment") (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). Here, however, as Plaintiff points out, there will definitely be an interlocutory appeal in this case, because Ms. Herridge has another route to force such an appeal. That does not cut *against* certifying an appeal under section 1292(b). Instead, it means there is no reason *not* to certify the appeal under section 1292(b), because this case will be disrupted by an interlocutory appeal no matter what.

In such a situation, the more rational consideration is whether it makes sense to force the parties and the Court through a largely duplicative round of briefing on a contempt motion in order to arrive at the same spot at the end of the day—an interlocutory appeal challenging the rulings in the Court's Order.  *See, e.g.*, *Sherrod, Teed, Vanderhagen, and Ware*, 2022 WL 997261, at *2 (certifying appeal to avoid such duplicative briefing).  Contrary to Plaintiff's misplaced argument (Opp. 9), no one is suggesting that "convenience alone" justifies certification under section 1292(b).  The point is simply that, where there is going to be an interlocutory appeal anyway, there is no reason not to accomplish it by the most efficient route.

Plaintiff has not pointed to a single case holding that, under such circumstances, certification under section 1292(b) should be denied.  To the contrary, courts have certified interlocutory appeals on denial of a motion to quash even though the parties presumably could have defied the discovery orders and appealed from contempt.  *See, e.g.*, *AF Holdings LLC*, 286 F.R.D. at 62–63.  The mere fact that appeals in prior cases involving disclosure of reporters' sources went up on contempt citations provides no rationale for concluding that certification under section 1292(b) is somehow barred.  To the contrary, it has been viewed as a rational and more efficient solution in cases such as this.  *See, e.g.*, *Sherrod*, 2022 WL 997261, at *2.

## II.   THE COURT SHOULD GRANT A STAY PENDING APPEAL.

As Ms. Herridge has explained, the four factors courts consider on a stay pending appeal weigh overwhelmingly in favor of a stay here.  Tacitly conceding that those factors weigh against her, Plaintiff frames her primary argument against a stay around the theory that Ms. Herridge cannot pursue an appeal under the collateral order doctrine.  *See* Opp. 17–20.  Her arguments are wrong on that score, and the stay factors favor a stay pending appeal.

11

Plaintiff's arguments on the collateral order doctrine largely miss the point as Plaintiff buries in a footnote (Opp. 20 n.4) the most relevant precedent—the precedent Ms. Herridge cited in her motion.  In *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), the Fifth Circuit held that an order enforcing discovery against a third party that implicated important First Amendment rights was appealable under the collateral order doctrine.  *Id.* at 367–68.  The Fifth Circuit explained that such an order was "effectively unreviewable" after final judgment, because if the third party were forced to comply, its First Amendment rights would be irreparably harmed by disclosure of the information—and there would be no way to fix that after a final judgment.  *Id.* The Fifth Circuit carefully placed its reasoning within the Supreme Court's most recent analysis of the collateral order doctrine in *Mohawk Industries v. Carpenter*, 558 U.S. 100 (2009), explaining that a third party—unlike the parties at issue in *Mohawk*—could not get relief from erroneous disclosure of information by a reversal of a judgment on appeal at the end of the case.  *See id.* ("*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect.").  This case is effectively on all fours with *Whole Woman's Health*, and the reasoning there would permit appeal in this case under the collateral order doctrine.

Plaintiff points to a D.C. Circuit decision from over fifty years ago treating orders compelling third party witnesses to testify (over Fifth Amendment objections) as non-final orders. *See United States v. Anderson*, 464 F.2d 1390 (D.C. Cir. 1972).[2]  But it does not appear that the D.C. Circuit has ever been squarely presented with the issue of collateral order doctrine jurisdiction over an appeal from an order forcing third party discovery that would irreparably harm a third

---

[2] Plaintiff also cites *In re Ryan*, 538 F.2d 435 (D.C. Cir. 1976), but that case is not on point because it involved a collateral proceeding to secure discovery from the parties in the underlying action.

party's First Amendment interests—Plaintiff does not cite such a case.  And it certainly has not been presented with that question in the last few years since the Fifth Circuit has articulated its rationale for a focused use of the collateral order doctrine in such First Amendment cases.  In addition, in the analogous context of orders to unseal materials, the D.C. Circuit has recognized the same basic principle that sets this case apart: once confidential material is revealed, it can never become confidential again and the irreparable nature of the harm in such a case warrants treating an order as final under the collateral order doctrine.  *See Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010); *accord United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017).  As a result, the Court should not presume that the D.C. Circuit would create a circuit split on the collateral order doctrine by rejecting the Fifth Circuit approach in a case where compelled disclosure of confidential material would irreparably harm First Amendment rights.  And a motion for a stay pending appeal is certainly not the vehicle for this Court to prejudge the court of appeals' analysis of its own jurisdiction in such a developing area of the law.

      The four factors for a stay also weigh overwhelmingly in favor of a stay pending appeal.

      *First*, Plaintiff cannot and does not dispute that complying with the Court's Order would cause irreparable harm by requiring disclosure of Ms. Herridge's confidential sources.  Instead, Plaintiff pretends (Opp. 21–22) that there is no irreparable harm because Ms. Herridge has another option: disobeying the Order and being held in contempt.  But that is no answer at all.  In *every* case in which a court enters an order that is injunctive in form (including a permanent injunction ending a case), the party subject to the injunction technically has the "option" of disobeying the order and being held in contempt.  But the availability of that choice is never treated as eliminating whatever irreparable harm might flow from implementing the court's order.  To the contrary, irreparable harm is always measured from the perspective of whether *compliance* with the court's

order will cause irreparable harm pending appeal if the order is later overturned. *See, e.g.*, *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 390 F. Supp. 3d 128, 133 (D.D.C. 2019) (tracing injury from compliance with disclosure order); *Ctr. For Int'l Env't L. v. Off. of U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (finding "strong showing of irreparable harm because disclosure" in compliance with the order "will render any appeal moot"); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure of the *Vaughn* index would also create an irreparable injury").  The option of being held in contempt gives Ms. Herridge another route for an appeal, but it cannot eliminate irreparable harm.

*Second*, for all the reasons explained above and in Ms. Herridge's motion, the Order involves, at a minimum, a "serious legal question."  Where, as here, the other factors weigh strongly in favor of a stay, that is all that is required.  *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 12 (D.D.C. 2014); *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (movant need only "demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay" (citations omitted)).

*Third*, on the other side of the balance, Plaintiff cannot point to any irreparable harm that she will suffer from a stay pending appeal.  Plaintiff does not dispute that there is not anything particularly time sensitive about the information she seeks from Ms. Herridge such that its usefulness will expire at some point.  Instead, she simply points to the generic observation made by the district court in *Hatfill* in denying a stay pending appeal that "the lapse of time generally jeopardizes a party's ability to advance [her] claims."  *Hatfill*, 539 F. Supp. 2d at 104.  But that decision is not sound precedent.  The D.C. Circuit plainly disagreed with that analysis, because it effectively reversed the district court and *granted* a stay pending appeal in the *Hatfill* case.  *See*

14

*Hatfill* Per Curiam Order, Doc. No. 1104546 (attached as Ex. A to Ms. Herridge's motion, ECF No. 145-1).  A generic concern that delay may generally make it harder to advance claims provides no concrete showing of harm—and certainly not *irreparable* harm—to weigh in the balance against the indisputable irreparable harm to Ms. Herridge here.

*Fourth*, and finally, Plaintiff has no credible claim that the public interest weighs against a stay.  The public has a vital interest in ensuring that the press can play its role in keeping the people informed, particularly in matters involving national security.  That interest would be irreparably harmed if Ms. Herridge's confidential source(s) are wrongly disclosed.  Such a disclosure would have a broad chilling effect, deterring potential sources from supporting the efforts of the press to report on the government.  And the mere fact that there may also be a public interest in enforcing the Privacy Act does not change the analysis, because there is nothing time sensitive about that interest.  The public interest in enforcing the Privacy Act can be fully vindicated *after* an appeal in this case.  Plaintiff presents no basis whatsoever for thinking that an incremental delay from an appeal would materially affect the ability to vindicate whatever Privacy Act interest is genuinely implicated in this case.  Accordingly, the obvious way to reconcile the two aspects of the public interest involved here is *first*, to avoid irreparable harm to the public interest in supporting a free press by granting a stay, and *second*, to allow the public interest in enforcing the Privacy Act to be vindicated after an appeal—if, that is, the case is not dismissed.

## CONCLUSION

The Court should certify the Order for immediate appeal under section 1292(b) and enter a stay pending appeal.

August 18, 2023                          Respectfully submitted,

                                          /s/ *Patrick F. Philbin*
                                          Patrick F. Philbin (D.C. Bar No. 453620)
                                          Kyle West (D.C. Bar No. 24093346)
                                          ELLIS GEORGE CIPOLLONE
                                          O'BRIEN LLP
                                          1155 F Street, N.W.
                                          Suite 750
                                          Washington, DC 20004
                                          (202) 249-6633
                                          pphilbin@egcfirm.com

                                          *Counsel for Catherine V. Herridge and Fox
                                          News Network LLC*