PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**YANPING CHEN,**

                       **Plaintiff,**

**v.**

**FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF DEFENSE, and U.S. DEPARTMENT OF HOMELAND SECURITY,**

                       **Defendants.**

**Civil Action No. 1:18-cv-03074**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF YANPING CHEN'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY NON-PARTY CATHERINE HERRIDGE SHOULD NOT BE FOUND IN CIVIL CONTEMPT FOR DEFIANCE OF THE COURT'S AUGUST 1, 2023 ORDER

MEIER WATKINS PHILLIPS PUSCH LLP
Andrew C. Phillips (DC Bar No. 998353)
Shannon B. Timmann (DC Bar No. 1614929)
1629 K. Street NW, Suite 300
Washington, DC 20006
Email: andy.phillips@mwpp.com
Email: Shannon.timmann@mwpp.com

*Counsel for Plaintiff Yanping Chen*

October 30, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ........................................................................................................ 1

    A.    Plaintiff Dr. Yanping Chen. ................................................................... 1

    B.    The Government Investigates Dr. Chen for Years but Ultimately Does Not Charge Her With Any Crime. ........................................................... 2

    C.    The Fox News Reports Concerning Dr. Chen. ...................................... 3

    D.    Discovery Reveals the Origin of the Private Materials Referenced and Depicted in the Fox News Reports ........................................................ 4

    E.    Dr. Chen's Subpoenas to Herridge and Fox News. ............................. 5

    F.    Herridge Defies the Court's Order, Refuses to Identify Her Source(s), and Admits to Destroying Relevant Documents. ................................. 9

ARGUMENT ........................................................................................................... 10

I.    THE EVIDENCE CLEARLY AND CONVINCINGLY DEMONSTRATES THAT HERRIDGE WILLFULLY VIOLATED THE COURT'S UNAMBIGUOUS ORDER. ............................................................. 11

    A.    The Court's Order Was Clear and Specific as to the Testimony Required of Herridge ........................................................................ 11

    B.    Herridge Has Repeatedly Affirmed She Understood the Court's Clear and Specific Order and the Consequences for Violating the Order. ............. 13

    C.    Herridge Unequivocally and Deliberately Disobeyed the Court's Order Requiring Her to Identify Her Confidential Sources. ..................... 15

II.    HERRIDGE'S WILLFUL VIOLATION OF THE ORDER COMPELS SANCTIONS. ...................................................................................... 18

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Exec. Office of the President,*
    1 F.3d 1274 (D.C.Cir.1993) ............................................................. 11

*Cobell v. Babbitt,*
    37 F. Supp. 2d 6 (D.D.C. 1999) .......................................... 10, 11, 12, 15

*Hatfill v. Mukasey,*
    539 F. Supp. 2d 96 (D.D.C. 2008) ............................................. 19, 20

*Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural*
    *Metal & Glass LLC,*
    736 F. Supp. 2d 35 (D.D.C. 2010) ...................................... 10, 11, 12, 15

*Landmark Legal Found. v. E.P.A.,*
    272 F. Supp. 2d 70 (D.D.C. 2003) ......................................... 10, 11, 19

*Lee v. DOJ,*
    401 F. Supp. 2d 123 (D.D.C. 2005) .............................................. 15, 16

*N.L.R.B. v. Blevins Popcorn Co.,*
    659 F.2d 1173 (D.C. Cir.1981) .................................................. 15, 19

*United States v. United Mine Workers of Am.,*
    330 U.S. 258 (1947) ...................................................................... 19

*Wash.–Balt. Newspaper Guild, Local 35 v. Wash. Post Co.,*
    626 F.2d 1029 (D.C.Cir.1980) ........................................................ 15

*Webb v. District of Columbia,*
    146 F.3d 964 (D.C.Cir.1998) ......................................................... 10

**Statutes**

28 U.S.C. § 1292(b) .......................................................................... 8, 12, 13

## INTRODUCTION

Plaintiff Yangping Chen applies to this Court for an order to show cause why non-party Catherine Herridge should not be found in civil contempt for violating this Court's August 1, 2023 Order denying Herridge's motion to quash Dr. Chen's deposition subpoena and requiring Herridge to provide testimony regarding (1) the identity and intent of the source or sources of the documents and images allegedly provided to Herridge in violation of the Privacy Act; and (2) any non-privileged matters relevant to Plaintiff's Privacy Act claim.  (*See* Mem. Op. & Order (Aug. 1, 2023) (hereinafter, the "Order") [Dkt. 140].)  As set forth herein, the Order was clear and specific, and Herridge repeatedly affirmed that she understood the Order required her to provide testimony on those topics.  Notwithstanding the Order, at her September 26, 2023 deposition, Herridge flatly refused to testify regarding the identity or intent of the source or sources that provided Dr. Chen's protected records to her, and she also refused to testify regarding other non-privileged matters relevant to Dr. Chen's Privacy Act claim.

Herridge's willful non-compliance has further delayed Dr. Chen's nearly five-year effort to prosecute her Privacy Act claim.  It has forced Dr. Chen to incur costs and attorneys' fees associated with both the fruitless deposition and this Motion.  Without consequences, Herridge has no reason to comply with the Court's order.  Accordingly, Dr. Chen requests both compensatory sanctions awarded to her and a continuing, coercive financial sanction, payable to the Court, to compel Herridge to comply with the Order.  There being clear and convincing evidence of Herridge's defiance of the August 1, 2023 Order and no valid cause for such defiance, a finding of contempt should issue and sanctions should be imposed.

## BACKGROUND

### A.    Plaintiff Dr. Yanping Chen.

Dr. Yanping Chen is an accomplished scientist, entrepreneur, and educator and has been a

naturalized U.S. citizen for 22 years.  Before moving to the U.S. from China in 1987, she earned a medical degree as a cardiologist and worked as a Medical Researcher and the Director of Planning for the Chinese astronaut program.  (Compl. ¶ 11 (Dec. 21, 2018) [Dkt. 1].)  She came to the U.S. as a visiting scholar at George Washington University ("GWU"), where she built on her work in space policy to earn a master's degree and PhD in Public Policy.  (*Id*.).  She met her now-husband, an academic and U.S. citizen, while at GWU and decided to make the U.S. her home.  (Compl. ¶ 12.)  Dr. Chen became a lawful permanent resident in 1993, and she renounced her Chinese citizenship and gained U.S. citizenship in 2001.  (*Id*.)

In 1998, Dr. Chen founded the University of Management and Technology ("UMT"), an accredited university that provides post-secondary and graduate education to working adults.  (*Id*. ¶ 13.)  Given UMT's location in Arlington, Virginia, and the diverse coursework offered, many of its students worked for the U.S. Government, and—like thousands of other well-respected educational institutions—UMT participated in the Department of Defense's ("DOD") Tuition Assistance program, which provides funding to military students to further their secondary education.  UMT excelled under Dr. Chen's leadership, with more than 12,000 students receiving degrees as of December 2018, (*id*. ¶13.), and thousands more since that time.  Dr. Chen wholly owns UMT and derives a substantial portion of her income from its operations.  (*Id*. ¶ 14.)

**B.      The Government Investigates Dr. Chen for Years but Ultimately Does Not Charge Her With Any Crime.**

No later than 2010, Dr. Chen became the target of an FBI investigation focused on statements she made on immigration documents relating to her work in the 1980s as a scientist for the Chinese astronaut program.  (*Id.* ¶ 15.)  As part of that investigation, the FBI spent seven years probing deeply into Dr. Chen's personal and professional lives.  (*Id.* ¶ 16.)  Agents of the U.S. Government interrogated her family members, obtained her immigration records, monitored her

travel, employed an undercover informant to gather information about her, and secretly monitored and recorded her conversations. (*Id*.) On December 5, 2012, the FBI executed search warrants for Dr. Chen's home and the main office of UMT, both located in Arlington. (*Id.* ¶ 18.) During the searches, the FBI seized dozens of boxes of material from Dr. Chen's home and office, including tax and business records, communications, personal memorabilia, and years of personal photographs of her, her husband, her then-minor daughter, and other family members and friends. (*Id.* ¶ 20.) After years of investigation, in March of 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Dr. Chen that no charges would be filed against her, and she was never charged with, let alone convicted of, any crime. (*Id*. ¶ 22.)

### C.     The Fox News Reports Concerning Dr. Chen.

Fox News aired on its cable channel its first broadcast report about Dr. Chen on February 24, 2017. (*Id*. ¶ 25.)[1] Fox News subsequently published a print version of that February 24, 2017 report on its website.[2] These would be followed by broadcast and website stories published on April 28, 2017,[3] and on June 28, 2017.[4] These stories, primarily authored and reported by Catherine Herridge, strung together portions of leaked materials and information about Dr. Chen

---

[1] Fox News, *Taxpayer-funded school suspected of Chinese military ties*, (Feb. 24, 2017), https://www.youtube.com/watch?v=jh2Xk42PVA8.

[2] C. Herridge, P. Browne, & C. Upson, *Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties*, Fox News (Feb. 24, 2017), https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties.

[3] C. Herridge, P. Browne, & C. Upson, *Congress investigating taxpayer-backed school over alleged ties to Chinese military after Fox News report*, Fox News (May 1, 2017), https://www.foxnews.com/politics/congress-investigating-taxpayer-backed-school-over-alleged-ties-to-chinese-military-after-fox-news-report (the broadcast reported that aired on April 28, 2017 is embedded and playable at this URL on which the print story was posted).

[4] C. Herridge, P. Browne, & C. Upson, *FBI 'reopening' probe of DoD-funded school with suspected Chinese military ties, rep says*, Fox News (June 28, 2017), https://www.foxnews.com/politics/fbi-reopening-probe-of-dod-funded-school-with-suspected-chinese-military-ties-rep-says (the broadcast reported that aired on June 28, 2017, is embedded and playable at this URL on which the print story was posted).

and coupled them with misleading insinuations about Dr. Chen's background in order to accuse her of spying for China.  The Fox News reports displayed, among other things:

- Information derived from, and images of, an FBI FD-302 Form memorializing an FBI interview of Dr. Chen's daughter;
- Information taken from, and images of, Dr. Chen's immigration and naturalization forms;
- Information taken from, and images of, Dr. Chen's certificate of U.S. citizenship;
- Numerous personal photographs of Dr. Chen, including a photograph depicting her and her husband, a photograph of Dr. Chen's family members, and a photograph of Dr. Chen visiting her father's gravesite;
- An excerpt of an interrogation of Dr. Chen's daughter indicating that the case was a "200d," which Fox News described as a "counter-intelligence case" and "one of the most highly sensitive categories for a federal probe."

(*Id.* ¶¶ 26–31.)  These materials came from the FBI's investigation of Dr. Chen, including materials obtained from Dr. Chen's home during the December 5, 2012 FBI search.  (*Id.* ¶¶ 26–34.)  In addition to the records displayed onscreen, the Fox News reports also disclosed a wide variety of other confidential information from the FBI case file, including:

- The identities of the law enforcement agencies working with the FBI;
- That the investigation began in "at least 2012 – and perhaps as early as 2009";
- The year that Dr. Chen first entered the United States;
- The type of visa under which Dr. Chen first visited the United States;
- The identity of a child who accompanied Dr. Chen when she first entered the country;
- The name of an Assistant U.S. Attorney assigned to investigate Dr. Chen; and
- Details of the disagreement between the FBI and prosecutors about whether to prosecute Dr. Chen.

Dr. Chen filed the instant Privacy Act action to seek redress for the unlawful leaking of her protected records to Herridge by an unknown government official.

### D.   Discovery Reveals the Origin of the Private Materials Referenced and Depicted in the Fox News Reports.

Discovery in this case to date has revealed the likely source of much of the private and

personal information of Dr. Chen that was referenced, quoted, and visually depicted in the Fox News broadcasts: a PowerPoint presentation authored by FBI Special Agent Timothy Pappa, versions of which were produced in discovery by Defendants FBI and DHS.  Pappa, who led the investigation of Dr. Chen, testified that ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ (Timothy Pappa Dep. Tr. ("Pappa Dep.") at 18:13–18, 20:6–21:3, 28:2–8, 31:22–32:11, 58:8–59:11, 65:8–66:21, 83:19–89:2, 92:19–94:6 (Nov. 19, 2021) (Ex. 1).)   In numerous instances, the highlighting, notation, and cropping of the records displayed in the Fox News reports match exactly the versions and images of those same documents in the PowerPoint created by Pappa, and the Fox News reports also quote from an FBI interview memorandum of an interview with Dr. Chen that is also reflected in Pappa's PowerPoint.[5]  These commonalities make clear—and Herridge and Fox do not dispute—that Herridge obtained at least some of the investigative materials displayed in and relied upon by the Fox News reports in the form of Pappa's PowerPoint.

E.    Dr. Chen's Subpoenas to Herridge and Fox News.

On January 27, 2020, Dr. Chen defeated the Defendant agencies' motion to dismiss and, thereafter, the Court bifurcated discovery into two phases.  (Op. & Order Den. Mot. to Dismiss (Jan. 27, 2020) [Dkt. 13]; Am. Scheduling Order (Oct. 15, 2021) [Dkt. 55].)  Phase One addresses liability on Dr. Chen's Privacy Act claim, and Phase Two will address damages.  For more than two years, Dr. Chen engaged in exhaustive discovery of Defendants and third parties, most of

---

[5] *See* Ltr. from A. Phillips to P. Philbin (June 23, 2022) (containing a chart visually depicting the commonalities between the images and statements in the Fox News broadcasts and the same materials in Pappa's PowerPoint presentation) (Ex. 2).

which was focused on issues relating to liability, seeking to identify the source(s) of the leaked documents and information—and, in particular, who provided a copy of Pappa's PowerPoint presentation to Herridge and Fox News.[6]  This included serving scores of document requests, interrogatories, and requests for admission, issuing over a dozen third-party subpoenas, taking eighteen depositions, and obtaining twenty-two declarations—aimed at uncovering the identity of the suspected government official that leaked her Privacy Act-protected records to Herridge. (Order at 3).

When those efforts failed to definitively identify the leaker(s), Dr. Chen served Fox and Herridge with document and deposition subpoenas in May and June of 2022.  (*Id*.)  Both Herridge and Fox then moved to quash.  (Mem. in Support of Non-Party Catherine V. Herridge's Mot. to Quash (Aug. 8, 2022) [Dkt. 96-1]; Mem. in Supp. of Non-Party Fox News Corp.'s Mot. to Quash (Aug. 8, 2022) [Dkt. 97-1].)  Both argued that Dr. Chen had not overcome the journalists' qualified First Amendment privilege to withhold the identity of the leaker because (1) the subpoenas were overbroad and sought information not central to Dr. Chen's Privacy Act claims; (2) Dr. Chen had not sufficiently exhausted reasonable alternative means to discover the identity of the leaker; (3) the Court should engage in a wide-ranging balancing of Herridge's First Amendment interest in maintaining her source(s)' confidentiality against Dr. Chen's personal interest in prosecuting her Privacy Act claims; and (4) alternatively, that the Court should find a federal common law reporter's privilege that allowed it to engage in the same expansive balancing.  (Order at 4.)  In response, Dr. Chen argued that (1) the First Amendment privilege is overcome because she sought only information central to her claims and had exhausted reasonable alternative means to identify

---

[6] The exhaustive discovery efforts Dr. Chen engaged in prior to serving subpoenas on Herridge and Fox News are described in detail in Dr. Chen's Memorandum in Opposition to Non-Party Catherine V. Herridge's Motion to Quash (Aug. 24, 2022) [Dkt. 123].

the leaker; (2) that under binding D.C. Circuit precedent, the Court's analysis must focus on the issues of centrality and exhaustion, and not an amorphous, subjective balancing of the litigants' interests; and (3) that there is no federal common law reporter's privilege that would allow an end-run around established precedent regarding the proper scope of the qualified privilege. (*See generally* Pl.'s Mem. in Opp'n to Non-Party Catherine V. Herridge's Mot. to Quash (Aug. 24, 2022).)

On August 1, 2023, the Court issued its Order granting in part and denying in part Herridge's motion to quash and granting Fox's motion to quash. After careful review, the Court held that binding precedent instructed district courts to focus their analysis on whether the information sought is central to the plaintiff's claims, whether the plaintiff has exhausted reasonable alternative avenues of discovery, and whether the journalist is a party to the underlying litigation. (Order at 5-14.) The Court rejected Herridge and Fox's arguments that the Court should engage in a "free-form balancing of interests" as inconsistent with D.C. Circuit precedent. (*Id*. at 10-11.) Reviewing the discovery record against Fox and Herridge's arguments, the Court then concluded that, with respect to the deposition subpoena to Herridge, Dr. Chen had demonstrated that the identity of the leaker was central to Dr. Chen's claims and that she had exhausted reasonable alternative efforts to identify the leaker. (*Id*. at 14-21.)

The Court then held that although circuit precedent did not require "either a full-bore analysis of [Plaintiff's] likelihood of success on the merits … or an assessment of the public and private interests at play," the Court would nevertheless, "explain[] why Herridge and Fox's arguments along those lines likely would not change the outcome here in any event." (*Id.* at 22.) The Court then proceeded to evaluate and weigh the First Amendment interests Fox and Herridge asserted against their claims concerning supposed infirmities in Dr. Chen's case, as well as their

claim that Dr. Chen's claims involved only her private and personal interests.  (*Id*. at 22-24.)  The Court concluded that Fox and Herridge's claims regarding supposed flaws in Dr Chen's claims or recoverable damages were misguided or premature and that Dr. Chen's claims did not advance a purely private interest because they also implicated Congress's intent, in enacting the Privacy Act, to deter unlawful leaking of private records by government officials.  (*Id*.)  Finally, the Court rejected Herridge and Fox's invitation to recognize a federal common law reporter's privilege that would allow district courts to engage in the same free-form balancing test not encompassed by the D.C. Circuit's prior decisions on the scope of a reporter's privilege in a Privacy Act case.  (*Id*. at 25-27.)

Ultimately, the Court determined that Dr. Chen was entitled to depose Herridge about the identity of her confidential source(s) for any Privacy Act-protected information, as well as any non-privileged matters relevant to Dr. Chen's claim.  (*Id*. at 28.)  The Court also granted Fox's motion to quash, without prejudice to Dr. Chen renewing her subpoenas to Fox if Dr. Chen does not obtain the information she seeks from Herridge.  (*Id*.)

Herridge subsequently requested that this Court certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), but the Court declined to do so.  (Non-Party Catherine Herridge's Mot. to Am. Order to Include Certification for Interlocutory App. Under 28 U.S.C. § 1292(b) (Aug. 11, 2023) [Dkt. 144]; Op. & Order (Sept. 6, 2023) [Dkt. 152].)  While that request was pending, Herridge sought to appeal the Order to the Circuit Court pursuant to the collateral order doctrine, (Notice of App. to the U.S. Ct. of App. for the D.C. Cir. (Aug. 31, 2023) [Dkt. 150]), and also asked the Circuit Court to stay the Order.  (Non-Party Catherine V. Herridge's Opposed Em. Mot. for Stay Pending App. and for Admin. Stay Pending Disposition of the Stay Mot., *Chen v. Federal Bureau of Investigation*, No. 23-5198 (D.C. Cir. Sept. 11, 2023).)  On September 25, 2023, the

8

Circuit Court dismissed the appeal for lack of jurisdiction—holding that Herridge could not appeal the denial of her motion to quash unless and until she was held in contempt for violating it—and denied her request for a stay of the Order pending appeal as moot. (Order, *Chen v. Federal Bureau of Investigation*, No. 23-5198 (D.C. Cir. Sept. 25, 2023).)

### F.   Herridge Defies the Court's Order, Refuses to Identify Her Source(s), and Admits to Destroying Relevant Documents.

Pursuant to the Court's August 1, 2023 Order, Herridge's deposition took place in Washington, DC on September 26, 2023. (*See generally* Catherine Herridge ("Herridge Dep.") (Sept. 26, 2023) (Ex. 3).) As set forth in greater detail below,[7] although she acknowledged her understanding that the Court's August 1, 2023 Order required her to disclose the identity of the source or sources that leaked Dr. Chen's protected records to her, (Herridge Dep. at 19:17-20:13), and that she knew the identity of that person or persons, (*id*. at 84:20-85:12, 86:11-87:5, 91:5-14, 94:18-95:10), Herridge repeatedly refused to answer any questions that would reveal that information or to provide information such as when she obtained the materials in question, how she obtained them, and in what form she received them. (*See, e.g., id*. at 33:19-41:23, 44:20-49:11, 52:18-58:11, 61:2-62:3, 64:15-71:15, 73:15-74:1, 83:21-97:7, 109:11-110:23, 115:1-121:15.) In addition, Herridge refused to answer questions unrelated to confidential source identity but relevant to Dr. Chen's claims—including questions concerning the preparation of the Fox News stories, the timing of their publication, and why certain materials and information were included or omitted—as required by the Court's Order. (*Id*. at 121:16-124:7; 154:10-24; 167:11-24.)

Finally, during her deposition, Herridge also admitted to taking active steps to destroy documents that are highly relevant to Dr. Chen's claims. Herridge admitted that she did a "clear out" of her hard-copy files and materials "earlier this year," including "materials pertaining to

---

[7] *See* Argument Section I.B-C, *infra*.

Dr. Chen." (*Id*. at 134:22-136:1.)  That would have been many months after Herridge received subpoenas for documents and testimony in this case in June 2022.  After her counsel abruptly called for a break in the deposition and spoke with Herridge off the record, she then returned and changed her testimony to say that she was "confused about the timing" and insisted that she actually destroyed her records relating to Dr. Chen early in 2022, "prior to the subpoena."  (*Id*. at 136:2-137:12.)  Regardless, Herridge admitted to being aware of this litigation as early as 2019 or 2020 and acknowledged that she spoke with Stephen Rhoads around March 2021, when he received a subpoena for documents in this case.  (*Id*. at 137:22-139:5.)  Thus, Herridge acknowledged that at the time she "shredded" materials in her possession relating to Dr. Chen— whether it was early 2023, or early 2022, as she belatedly claimed—she was aware not only of this litigation but of Dr. Chen's discovery efforts to uncover the source of the leak of protected records to Herridge.  (*Id.*. at 137:22-139:24.)

## ARGUMENT

This Court should issue an order to show cause why Herridge should not be held in contempt of the Court's August 1, 2023 Order.  It is well-settled that a federal district court has "the inherent power to protect its integrity and to prevent abuses of the judicial process by holding those who violate its orders in contempt and ordering sanctions for such violation."  *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003); *see also Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999); *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C.Cir.1998).  A finding of civil contempt is appropriate if Dr. Chen shows, "by clear and convincing evidence," that (1) there was a court order in place; (2) the order clearly and unambiguously required certain conduct by Herridge; and (3) Herridge "failed to comply with that order."  *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (citing *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289

(D.C.Cir.1993).)   Moreover, in "this circuit, a finding of bad faith by the contemnor is not required," and Herridge cannot justify her defiance of the Court's Order and escape a finding of contempt by claiming she had a good-faith basis to defy the Order. *Cobell*, 37 F. Supp at 9; *Int'l Painters*, 736 F. Supp. 2d at 38 ("The defendant's intent regarding compliance with the order is irrelevant.").   Finally, because the purpose of a civil contempt proceeding is both to compel compliance and to vindicate the rights of the non-violating party, the Court has broad discretion to impose sanctions on Herridge and to award compensatory relief to Dr. Chen, including, but not limited to, an award of fees and costs related to the contempt proceeding.  *Landmark Legal*, 272 F. Supp. 2d at 76; *Cobell*, 37 F. Supp. 2d at 10-11.

Here, Herridge's knowing and intentional violation of the Court's Order far surpasses the threshold test for a finding of civil contempt.   There can be no dispute that the Order required Herridge to testify regarding specific subjects and that she knowingly declined to do so. Accordingly, the Court should find Herridge to be in civil contempt of the Order, it should award Dr. Chen her attorneys' fees associated with this Motion as well as preparing for and taking Herridge's deposition, and it should impose ongoing sanctions to compel Herridge's compliance with the Order.

**I.      The Evidence Clearly and Convincingly Demonstrates that Herridge Willfully Violated the Court's Unambiguous Order.**

**A.      The Court's Order Was Clear and Specific as to the Testimony Required of Herridge.**

That the Court's Order was in place at the time of Herridge's September 26, 2023 deposition cannot be disputed.   Although Herridge filed numerous motions asking this Court and/or the Circuit Court to amend and/or stay that Order, none were successful.  (*See, e.g.*, Op. & Order (Sept. 6, 2023) ("Order on Certification") [Dkt. 152]; Order, *Chen v. Federal Bureau of Investigation*, No. 23-5198 (D.C. Cir. Sept. 25, 2023).)  Thus, the only remaining question this

Court must consider with respect to the Order itself is whether it clearly and unambiguously required certain conduct of Herridge.  *See Int'l Painters,* 736 F. Supp. 2d at 38.  In so doing, the Court must "employ an objective standard" to assess whether the Order "is clear and reasonably specific."  *Cobell*, 37 F. Supp. 2d at 16.  This objective test focuses on the language of the order, and where the language is "facially plain," it follows that the order is "clear and reasonably specific."  *Id*.

Here, the central issue for decision raised in Herridge's Motion to Quash was whether a qualified First Amendment journalist privilege and/or a common law privilege protected Herridge against having to give testimony concerning the identity and intent of the source(s) that leaked Privacy Act protected materials to Herridge, or whether Herridge's privilege claims were overcome and she should be compelled to disclose her source(s).  (Order at 1-2, 15-16.)  After examining in detail Herridge's arguments in favor of a privilege, the Court held that "Chen has overcome the qualified First Amendment privilege in this case," and the Court further declined Herridge's invitation to create a federal common law privilege that would shield her testimony. (*Id*. at 25-27.). Having so concluded, the Court held that Dr. Chen "may depose Herridge regarding the identity and intent of the source or sources of the documents and images allegedly provided to her in violation of the Privacy Act, and any non-privileged other matters relevant to her Privacy Act claim."  (*Id*. at 28.)

In denying Herridge's subsequent request to certify the Order pursuant to 28 U.S.C. § 1292(b), the Court affirmed that the Order "requir[ed] [Herridge] to divulge her source[s]," and noted that "Herridge has suggested she does not intend to comply with the subpoena, in which case she will be held in contempt and can appeal [the] contempt order."  (Op. & Order (Sept. 6, 2023) [Dkt. 152].)   Thus, it cannot be seriously disputed that the Court's Order clearly and

unambiguously instructed that Dr. Chen was entitled to depose Herridge regarding the identity and intent of the source or sources of the documents and images allegedly provided to her in violation of the Privacy Act, **and** that the Order clearly and unambiguously held that Herridge's privilege claims were not a valid reason for her to refuse to comply with the deposition subpoena.

### B.     Herridge Has Repeatedly Affirmed She Understood the Court's Clear and Specific Order and the Consequences for Violating the Order.

That the Order is more than sufficiently clear and specific is also manifest from the fact that Herridge and her counsel have repeatedly acknowledged—in her many filings since the Order was issued and throughout her September 26, 2023 deposition—that the Order required her to provide substantive deposition testimony relating to the identity of the source who provided her with Dr. Chen's Privacy Act protected information.   Similarly, Herridge and her counsel repeatedly affirmed their understanding that Herridge's failure to do so would subject her to civil contempt for defiance of the Order.

For example, in her motion seeking certification of the Order pursuant to 28 U.S.C. § 1292(b), Herridge confirmed that Court's ruling "requires [her] to disclose confidential source(s) for a series of stories," and that the Court "required [her] to respond to the deposition subpoena to answer questions identifying confidential source(s) for the Fox reporting."  (Mem. in Support of Non-Party Catherine V. Herridge's Mot. to Amend [the] Order [Denying the Motion to Quash] to Include Certification for Interlocutory Appeal Under 28 U.S.C. § 1292(b) at 1, 4 ("Mot. for Certification") (Aug. 11, 2023) [Dkt. 144-1].)  In her contemporaneous motion seeking a stay of the Order, Herridge further affirmed her understanding that "[u]nder the Order, she will be forced to reveal her confidential source(s)," and that her only alternative was to "defy the Court's Order and incur a contempt sanction."  (Mem. in Supp. of Non-Party Catherine V. Herridge's Mot. for Stay Pending Appeal at 1, 6 (Aug. 11, 2023) [Dkt. 145-1].)  Similarly, in her motion seeking an

13

emergency stay of the Order from the Circuit Court, Herridge stated that "[t]he Order would require her to reveal her confidential source(s)," and argued that her only alternative to doing so was to suffer "a contempt sanction for defying the Order."  (Non-Party Catherine V. Herridge's Opposed Em. Mot. for Stay Pending App. & for Admin. Stay Pending Disposition of the Stay Mot. at 2, *Chen v. Federal Bureau of Investigation*, No. 23-5198 (D.C. Cir. Sept. 11, 2023).)

From the outset of her deposition, Herridge made clear that she understood what the Order required her to do and that she did not intend to comply with the Order:

> Q.  Ms. Herridge, do you understand that – and I'll represent it was August 1, 2023 – that on August 1, 2023, the district court entered an order requiring you to sit for a deposition and identify the source or sources of any Privacy Act material related to Dr. Chen that you received in the course of your reporting on Dr. Chen and the University of Management and Technology?
>
> A.  Yes.
>
> Q.  You are here today for the deposition that the court ordered you to attend, correct?
>
> A.  Yes.
>
> Q.  Do you intend to provide substantive answer to questions relating to your source or sources for the Privacy Act materials in question?
>
> A.  I have complete respect for the court and its authority and for the order.  I have no desire to defy a court order, but my understanding is that the courts have ruled that in order to seek further judicial review, I must now disobey the order, and for that reason, among others, I am invoking my First Amendment rights and declining to answer the question.

(Herridge Dep. at 19:17-20:13.)  Herridge further affirmed her understanding that "the court in this case ruled that … [her] First Amendment objections to identifying [her] source or sources was overcome" and that "Dr. Chen was entitled to obtain that information from [Herridge] in a deposition."  (*Id*. at 207:16-23.)

Thus, in light of the plain language of the Order and Herridge's repeated admissions that she understood it clearly, there can be no dispute that the Court's Order directing Herridge to

answer questions relating to the identity of the source(s) of the materials she received in violation

of the Privacy Act was clear and specific.  *See Lee v. DOJ*, 401 F. Supp. 2d 123, 142 (D.D.C.

2005) (finding "there is no doubt that the Court's … Order was clear and specific" and "the Order

can hardly be deemed ambiguous" where the parties "fully briefed the issues relating to whether

[the journalist] should be compelled to answer" questions regarding his confidential source).  The

only remaining question for the Court in evaluating whether Herridge is subject to a civil contempt

finding is whether she failed to comply with the Order.

### C. Herridge Unequivocally and Deliberately Disobeyed the Court's Order Requiring Her to Identify Her Confidential Sources.

There can be no dispute that Herridge defied the Court's Order during her September 26,

2023 deposition by refusing to answer questions relating to the identity of her confidential

source(s) for her reporting on Dr. Chen.  Again, Herridge's non-compliance with the Order must

only be demonstrated with clear and convincing evidence, and neither willfulness nor bad faith is

required.  *See Int'l Painters*, 736 F. Supp. 2d at 38 (citing *Wash.–Balt. Newspaper Guild, Local 35

v. Wash. Post Co.*, 626 F.2d 1029, 1031 (D.C.Cir.1980); *Cobell*, 37 F. Supp at 9.[8]  In *Lee*, this

Court found that this prong of the test was "easily satisfied" where the non-party journalist in a

Privacy Act case "stated that although he was aware of the Court's order requiring that he answer

questions concerning the identity of his confidential sources, he would decline to do so," and then

at his deposition, "kept his promise, and when asked questions concerning the identity of

Government sources who provided him with information about [the plaintiff] and the investigation,

he continued to assert a 'reporter's privilege.'"  *Lee*, 401 F. Supp. 2d at 143.

As in *Lee*, this prong is easily satisfied here.  Even prior to the deposition, Herridge and

---

[8] *See also N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1186 (D.C. Cir.1981) (rejecting the reasonable doubt standard and willfulness requirement when ascertaining noncompliance and only requiring proof of noncompliance by clear and convincing evidence).

her counsel stated that they were aware that the Order "requires Ms. Herridge to disclose her confidential source(s)" for her reporting on Dr. Chen and that if deposed, Ms. Herridge would decline to do so. (Mot. for Certification at 1, 5.)  And as in *Lee*, Herridge kept that promise when at her deposition she refused to answer any questions regarding the identity or intent of the source(s) that leaked Privacy Act-protected materials to her.  As noted above, at the outset of the deposition, Herridge affirmed her understanding of the Order and stated that she nevertheless chose to defy it and to invoke a First Amendment right to refuse to answer questions about her sourcing. (Herridge Dep. at 20:4-13.)  Counsel for Dr. Chen nevertheless proceeded, in vain, to ask detailed questions about the origins of all of the Privacy Act-protected materials and information that appeared in the digital and broadcast stories published by Herridge for Fox News.

For example, with respect to the February 24, 2017 digital story published on Fox News's website with the headline, "Fox News investigation: DoD-funded school at center of federal probes over suspected Chinese military ties," Herridge was asked about how she obtained personal photographs of Dr. Chen that appeared in and/or were described in the story.  (*Id.* at 32:5-33:18.)  Herridge confirmed that she obtained those photographs from a source in the course of her reporting on Dr. Chen, that she understood them to be Dr. Chen's personal photographs, and that she believed them to have come into the possession of the government, but she refused to answer specific questions about (1) when she obtained the photographs, (2) how she obtained the photographs, (3) what form she received them in, (4) who provided them to her, (5) her understanding of the intent of the source(s) who provided them to her, and (5) whether she had an understanding as to whether her source(s) was legally authorized to provide them to her.  (*Id*. at 33:19-41:23.)  With respect to portions of the February 24, 2017 digital story describing the content of Dr. Chen's immigration records that were provided to Herridge by a source, Herridge similarly

refused to answer questions about what immigration records she received, what form she received them in, and who the source was the provided them to her.  (*Id.* at 44:20-49:11.)  Asked about summaries of FBI interviews with Dr. Chen and her daughter that are described in the story, Herridge again refused to provide any information about when, how, and from whom she obtained those government records.  (*Id.* at 52:18-58:11, 61:2-62:3.)  Herridge similarly refused to answer questions concerning the source(s) for various statements about the government's investigation of Dr. Chen that appears in the February 24, 2017 story.  (*See, e.g., id.* at 28:9-30:8 (refusing to testify as to how she learned when the government began investigating Dr. Chen); 30:9-32:4 (refusing to testify about how she learned the investigation was a "200d" counter-intelligence case); 42:19-44:19 (refusing to testify as to how she obtained information regarding when Dr. Chen immigrated to the United States and how her college tuition was funded); 59:3-60:19 (refusing to answer questions about how she learned of government investigators' alleged concerns that records of students at Dr. Chen's university were being remotely accessed from China).)

This recalcitrance repeated as Herridge was asked about Privacy Act protected materials that appeared in subsequent Fox News reports.  With respect to the April 28, 2017 digital story published on Fox News's website, Herridge again refused to divulge information about how and from whom she obtained personal photographs of Dr. Chen that were shown and described in the story.  (*Id.* at 64:15-71:15.)  With respect to a February 24, 2017 broadcast report that aired on Fox News's cable channel, Herridge refused to divulge when, where, how, and from whom she obtained Dr. Chen's personal photographs and immigration records that are referenced and depicted in the broadcast report.  (*Id.* at 73:15-74:1, 83:21-97:7.)  And when questioned about an April 28, 2017 report broadcast on Fox News, Herridge similarly refused to provide any information as to how she obtained photographs of Dr. Chen that appeared in the broadcast.  (*Id.*

17

at 109:11-110:23, 115:1-121:15.)

Finally, Herridge also refused to answer questions about the particular individuals that discovery in this case has suggested as the likely sources of the leak of Dr. Chen's records; namely, former FBI informant Stephen Rhoads and FBI Agent Timothy Pappa.  Although Rhoads was interviewed for the Fox News reporting at issue, Herridge declined to testify about how she came into contact with Rhoads (*id*. at 76:7-25), when she first communicated with him about Dr. Chen (*id*. at 78:8-14), and whether he provided any information about Dr. Chen to Herridge aside from what was reflected in his on-camera interview (*id*. at 173:15-174:2).  Herridge similarly refused to answer questions about whether she ever communicated with Agent Pappa concerning Dr. Chen. (*Id*. at 181:2-183:16.)

Importantly, Herridge did repeatedly affirm that she knows the identity of the source(s) that provided the materials at issue to her, but she nevertheless refused to provide that person or persons' identities or any information that would help Dr. Chen to discover them.  (*See, e.g*., *id*. at 84:20-85:12, 86:11-87:5, 91:5-14, 94:18-95:10.)  Herridge's flat and persistent refusal to provide any substantive testimony regarding the identity and motivations of the person or persons that leaked Privacy Act protected information to her—despite her acknowledgment that the Court's August 1, 2023 Order required her to do just that—represents clear and unequivocal defiance of that Order.

## II.    Herridge's Willful Violation of the Order Compels Sanctions.

Because it cannot be disputed that the Order was clear on its face, that Herridge understood the Court's Order, and that Herridge willfully chose to defy it, the Court should find Herridge in civil contempt and impose a sanction.  Civil contempt sanctions may "be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."  *United States v. United Mine Workers of Am.*,

330 U.S. 258, 303-04 (1947); *see also Blevins Popcorn*, 659 F.2d at 1184 (civil contempt is a "remedial sanction" that is "used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance").  Here, the Court should impose sanctions for both purposes.

First, as the Court recognized in denying Herridge's motion to quash the deposition subpoena, "the identity of Herridge's source[s] is central to Chen's claim," and Dr. Chen having no viable alternative to obtain that information other than from Herridge, "the only reasonable option" for Dr. Chen to obtain the information she needs to prosecute her Privacy Act claim is "to ask Herridge herself."  (Order at 1-2.)  Herridge's refusal to comply with the Court's Order thus continues to frustrate Dr. Chen's ability to move her case forward.  Without an effective sanction intended to coerce Herridge's compliance with the Order, there is every reason to believe that she will simply persist in her defiance.  In the *Hatfill* case in this District—which also involved a non-party reporter refusing to disclose her confidential sources in a Privacy Act case—Judge Walton imposed a graduated fine of $500 for the first seven days following entry of the contempt order, which increased to $1,000 a day the following week, and $5,000 a day thereafter if the reporter continued to refuse to comply.  *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 99 n.5 (D.D.C. 2008).  Dr. Chen submits that a similar sanction would be appropriate here in order to incentivize Herridge to comply with the Order.

Second, Dr. Chen requests a separate sanction, payable to her, to compensate her for losses sustained as a result of Herridge's refusal to comply with the Court's Order.  "An appropriate amount for such a sanction is the award of costs and attorney's fees," and the Court has the authority to award attorneys' fees "up to the entire cost of the litigation as a sanction for willful disobedience" of the Order.  *Landmark Legal*, 272 F. Supp. 2d at 86.  Here, Dr. Chen has had to

expend considerable resources attempting to secure Herridge's compliance with the subpoena.  In particular, she was forced to incur attorneys' fees and costs for a deposition that ultimately was entirely frustrated by Herridge's defiance of the Court's Order, and she was then forced to incur additional fees to bring the instant Motion.  None of those losses would have occurred but for Herridge's disobedience of the Court's Order, and therefore, Dr. Chen submits that it would be appropriate for Herridge to compensate her for the costs and fees associated with preparing for and taking the deposition and for preparing this Motion.

Finally, Dr. Chen also requests that in order for these sanctions to be effective, Herridge should be ordered to pay them herself and not to accept funding or indemnification from any other persons or entity.  Judge Walton so held in *Hatfill*, concluding that "[t]o relieve a contemnor of the order's coercive impact by allowing the contemnor to receive reimbursement for her disobedient behavior defeats this underlying rationale [of coercing compliance] and would handicap the court's ability to extract the compliance it seeks," and that "permitting reimbursement would encourage others to disregard court orders, knowing that they will not ultimately be held personally responsible for their disobedience."  *Hatfill*, 539 F. Supp. 2d at 107.  Herridge's exhaustive efforts to date to avoid compliance with the deposition subpoena and Order have almost certainly been bankrolled by her former employer, Fox News, with whom she shares the same counsel.  If Herridge were permitted to have Fox News or any other third-party payor(s) cover the costs of any sanctions imposed, then the coercive impact of those sanctions will be greatly hindered.

## **CONCLUSION**

For the foregoing reasons, Dr. Chen respectfully requests that the Court enter an Order to show cause why Herridge should not be found in contempt of its August 1, 2023 Order and, upon a finding of contempt, award coercive and compensatory sanctions, together with any other relief

the Court deems appropriate.


Dated:  October 30, 2023                              Respectfully submitted,


   */s/ Andrew C. Phillips*
Andrew C. Phillips (DC Bar No. 998353)
Shannon B. Timmann (DC Bar No. 1614929)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K. Street NW, Suite 300
Washington, DC 20006
Email: andy.phillips@mwpp.com
Email: Shannon.timmann@mwpp.com

*Counsel for Plaintiff Yanping Chen*