**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANPING CHEN,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants*. | **Case No. 1:18-cv-3074-CRC** |

**<u>DECLARATION OF TONI LOCY</u>**

I, Toni Locy, hereby declare as follows:

1. I was a professional journalist for 25 years, specializing in the coverage of federal, state, and local law enforcement, federal trial and appellate courts, and the U.S. Supreme Court. During my journalism career I worked for publications including USA Today, the Associated Press, U.S. News and World Report, The Washington Post, The Boston Globe, The Philadelphia Daily News, and The Pittsburgh Press.

2. I am currently a Professor of Journalism and Mass Communications at Washington & Lee University in Lexington, Virginia.

3. I make this declaration in support of the amicus brief being filed by the Reporters Committee for Freedom of the Press in the above-captioned case, in order to highlight the danger to newsgathering broadly were Privacy Act plaintiffs able to routinely secure court orders compelling journalists, under threat of fines or jail, to disclose the identity of their confidential sources. I am familiar with the publicly available facts of the above-captioned case and the

arguments made to date by the parties with respect to the subpoena seeking the testimony of Catherine Herridge. I have personal knowledge of the facts set forth in this declaration.

4. Throughout my reporting career, I maintained confidential source relationships with numerous present and former government officials and private sector employees. These relationships were essential to my newsgathering about sensitive subjects including national security and ongoing federal criminal investigations.

5. Much of my reporting could not have been done without such confidential sources, as these sources often provided information that was vital to reporting on matters of public concern. These sources provided information at great risk to themselves were they to be identified publicly, including loss of employment, legal consequences, and potential physical harm. Before these sources would provide information to me, they required assurances of confidentiality. Absent those assurances, I am confident that many of those source relationships would not have been possible, to the ultimate detriment of the public.

6. Confidential source relationships are important to many different types of reporting. These include investigative pieces, where sources can often provide accurate information about secret government activities or deliberations, as well as daily reporting on routine government announcements or statements, where confidential sources can serve to verify or provide additional context for such developments.

7. Confidential source relationships are especially valuable for national security reporting, where government policies can hide from the public information detailing government activities that would not, if disclosed, actually harm national security, but may be embarrassing, inconvenient, or revelatory of government misconduct. In my professional experience, the inability of journalists to credibly assure sources that their identities will remain secret would significantly impair the flow to the public and the quality of such information.

8. I also have direct, personal experience with efforts by a plaintiff in a Privacy Act case to compel a journalist to identify their confidential sources.

9. In 2003, I wrote two articles that Dr. Steven Hatfill relied upon to support a Privacy Act claim against federal officials for alleged disclosures in connection with the FBI's investigation into the October 2001 anthrax attacks. Three years after their publication, Mr. Hatfill deposed me about those two articles, and I produced all of the documents in my possession related to that reporting. I testified that I did not remember the confidential sources who provided the information in the articles, and that I no longer had possession of any notes I took in connection with the two articles. In a second deposition, in 2007, I was asked for information broadly about confidential sources I used in my anthrax reporting. I refused to identify confidential sources who had not provided information that was at issue in Mr. Hatfill's case.

10. On February 19, 2008, Judge Reggie Walton of the U.S. District Court for the District of Columbia, held me in contempt. By order of March 7, 2008, he imposed a graduated fine of $500 per day for the first seven days, $1,000 per day for the next seven days, and $5,000 a day for the next seven days. He also required that I pay the fine, personally, and I was prohibited from accepting any reimbursement from my former employer or anyone else. If I still refused to provide the plaintiff the identities of my Justice Department and FBI confidential sources for my reporting about the anthrax investigation, I was to appear in court on April 3, 2008, to face possible additional sanctions, including jail. Judge Walton denied my motion to stay the contempt citation and monetary sanction pending an appeal of both my privilege assertion and the contempt finding. The U.S. Court of Appeals for the District of Columbia Circuit granted my emergency motion for a stay on March 11, 2008, the day the fines were to

begin. Mr. Hatfill ultimately settled with the government, and the D.C. Circuit dismissed my appeal of the privilege claim in November 2008.

11. Although I was employed as a college professor during the litigation of the contempt citation, the dispute was extremely disruptive to my life and, had I still been employed by a news organization, it would have severely hampered my ability to report. In addition to the psychological toll, the possibility that I would have been forced to identify confidential sources would undoubtedly have dissuaded sources from speaking to me in the future. The litigation burden itself would have impaired my ability to report as so much of my time was dominated by the case.

12. In addition, the monetary sanctions would have been catastrophic for me. Had the D.C. Circuit not granted an emergency stay of the fines, the financial burden would have been crushing and I could have faced bankruptcy. At the time of Judge Walton's order, I had little equity in my recently purchased home, my savings had been drained to pay for a family member's medical expenses, and my only other source of funds was a small 401(k) retirement account that would have been depleted had the order gone into effect.

13. I firmly believe, based on my professional experience, that subjecting journalists to contempt and heavy sanctions before they can appeal the merits of a privilege claim chills public interest newsgathering and reporting. I also believe that Privacy Act claims, like the one at issue in my case, pose special risks to reporting about ongoing federal law enforcement investigations. Because journalists are professionally obligated to report on newsworthy information they obtain from confidential government sources, that coverage is more likely than other stories to generate Privacy Act lawsuits. And, absent strong reporter privilege protections, efforts in such cases to force journalists to identify their confidential sources would make it

much more difficult to report on the status of federal law enforcement investigations until someone is charged, tried, and convicted.

14. In my professional opinion as an experienced journalist, were Catherine Herridge held in contempt and immediately subjected to sanctions as she pursues an appeal, that result would itself dissuade sources from coming forward in other stories and chill newsgathering in the public interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: December 14, 2023 in Lexington, Virginia.



____________________
Toni Locy