# CONFIDENTIAL—FILED UNDER SEAL

# EXHIBIT Q

[redacted]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

YANPING CHEN,

Plaintiff,

vs. Civil Action No.

FEDERAL BUREAU OF 1:18cv3074(CRC)

INVESTIGATION, et al.,

Defendants.

________________________________/

Zoom deposition of [redacted]

8:33 a.m. - 4:14 p.m.

Friday, September 17, 2021

REPORTED BY:

STEVEN POULAKOS, RPR

JOB NO. 199198

[redacted]

The deposition of [redacted] was held via Zoom videoconference on Friday, September 17, 2021, commencing at 8:33 a.m., before Steven Poulakos, Notary Public.

REPORTED BY: Steven Poulakos, RPR

[redacted]

determination whether they should or should not generate a 15-6 or not.

BY MR. JONES:

Q Did Mr. Rhoads ever seek to initiate a 15-6 investigation regarding Dr. Chen or the university?

MR. COYLE: Objection, calls for speculation.

You can answer.

THE WITNESS: Not from me.

BY MR. JONES:

Q Let's take a look at Exhibit 23.

([redacted] Exhibit 23 was marked for purposes of identification.)

BY MR. JONES:

Q This is a email dated February 24th, 2014, at Bates DoD 0000087. This appears to be an email that was sent from [redacted] to you CC'ing others.

Do you recognize Exhibit 23?

A I do not recognize it, no. I do not remember it.

Q There's someone copied on this email named [redacted]. Are you familiar with [redacted]?

A Yes, I am.

Q Who is [redacted]?

[redacted]

A [redacted] was [redacted] and he was the [redacted] at that time, I believe. He may have been at that time -- the timing again, this is one where it's right in one of those same periods. He was either the [redacted] or [redacted]. Looking at that email, he was the [redacted].

Q In his -- had he previously served in the intelligence role?

MR. COYLE: Objection, calls for speculation, vague and ambiguous.

You can answer.

THE WITNESS: I do not know what [redacted]'s career path was up until that point.

BY MR. JONES:

Q Do you understand why he would have been included in that communication about the work between Mr. Rhoads and Special Agent Pappa?

MR. COYLE: Objection, calls for speculation.

You can answer.

THE WITNESS: I believe [redacted] worked for [redacted] at that point.

[redacted]

BY MR. JONES:

Q [redacted] writes in the second paragraph of his email that he has asked SA Pappa to send a unclassified summary to [redacted], [redacted]. Are you familiar with -- well, first of all, do you know what unclassified summary references?

A No, I do not.

Q Did you participate in a briefing in February of 2014 with [redacted], Mr. Rhoads, and Special Agent Pappa?

A No.

Q Are you familiar with [redacted]?

A No, I'm not.

Q What is the [redacted]?

A It's the [redacted].

Q A lawyer?

A Yes.

Q The next sentence that [redacted] writes says he will review the documents and advise me as to what actions I can take within the guidelines of intelligence oversight.

What do you understand to be the guidelines of intelligence oversight?

[redacted]

MR. COYLE: Objection, calls for speculation.

You can answer.

THE WITNESS: I don't believe I'm equipped to get into any detail on that.

BY MR. JONES:

Q What about the next sentence that says military intelligence personnel cannot collect information on U.S. persons for intelligence reasons? Is that consistent with your understanding?

MR. COYLE: Same objection.

You can answer.

THE WITNESS: I cannot speak with any authority on a policy or any regulatory or legal guidance on that.

BY MR. JONES:

Q Over the course of your career, did you ever become aware of the communications on the military's ability to collect information on U.S. citizens?

A I was present for academic discussions on it, but nothing that was put out as far as specific guidance to follow.

Q In the context of Mr. Rhoads's special