# CONFIDENTIAL - FILED UNDER SEAL

# EXHIBIT 6

CLARE LOCKE
LLP

ANDREW C. PHILLIPS
andy@clarelocke.com
(202) 628-7404

10 Prince Street
Alexandria, Virginia 22314

(202) 628-7400

www.clarelocke.com

June 23, 2022

**Confidential**

Patrick Philbin
Ellis George Cipollone, LLP
1155 F Street NW
Suite 750
Washington, DC 20004
Email: pphilbin@egcfirm.com

**Re: *Yanping Chen v. FBI*, et al., No. 1:18-cv-03074-CRC (D.D.C.)**

Dear Patrick:

I write in response to your June 7, 2022 letter, and to provide you with information relating to Dr. Chen's exhaustive discovery into the identity of the source(s) who unlawfully leaked her private records and information to Fox News Network, LLC, Catherine Herridge, Cyd Upson, and/or Pamela Browne.

As you note in your letter, Dr. Chen filed a Privacy Act claim against several government agencies (FBI, DOJ, DOD, and DHS) based on the unlawful disclosure that resulted in the publication of three negative reports about Dr. Chen on Fox News (the "2017 stories"), each of which relied heavily on the leaked records. The leaked information included FBI memoranda of interviews with Dr. Chen and her daughter, family photographs that had been seized from Dr. Chen's home during an FBI search, and Dr. Chen's immigration and naturalization forms. All of this leaked information was included in a tightly held PowerPoint presentation (the "PowerPoint") created by FBI Special Agent Timothy Pappa in 2013. Fox News' on-the-record source for these reports was Stephen Rhoads, who identified himself as an FBI informant and who worked under Special Agent Pappa to investigate Dr. Chen.

Since defeating the Government's motion to dismiss on January 27, 2020, Dr. Chen has spent more than two years engaged in an exhaustive discovery process, seeking to identify the source(s) of the leaked documents and information. Notably, the Court bifurcated discovery into two phases. Phase One addresses liability on Dr. Chen's Privacy Act claim, and Phase Two addresses damages. To date, most of Dr. Chen's discovery efforts have been focused on issues relating to

liability (Phase One), including the identities of individuals who had access to the leaked records. Thus far, Dr. Chen has served Defendants with 67 Requests for Production, requested 67 interrogatory responses, issued 57 Requests for Admission, conducted 17 fact depositions (including from four FBI 30(b)(6) deponents on fourteen topics), and obtained 22 declarations from Government personnel involved in and/or aware of the investigation into Dr. Chen. As part of its response, the FBI exhaustively searched for text messages and phone calls between key personnel and Fox News reporters. Dr. Chen has served third-party subpoenas on 13 current or former Government employees in their personal capacity and served a subpoena on Mr. Rhoads' personal cell phone service provider, T-Mobile. Dr. Chen has also aggressively, yet unsuccessfully, litigated motions to compel information that the Government has withheld pursuant to the law enforcement privilege.

Based on the information we have received in discovery, there is strong circumstantial evidence that Mr. Rhoads (the FBI informant and on-the-record source for the 2017 stories) is a source of the leaked documents and information. Mr. Rhoads acknowledged providing Ms. Herridge with highly confidential information about Dr. Chen during their hundreds of communications over the course of the investigation. However, during his deposition Mr. Rhoads vehemently denied leaking any documents and suggested that Ms. Herridge and Fox News received the protected documents and information (which Ms. Herridge showed him) from someone else. And, in spite of Dr. Chen's extensive discovery practice, we have also been unable to locate evidence conclusively proving that Mr. Rhoads possessed the leaked documents. The handful of people who actually possessed the leaked PowerPoint have denied under oath that they leaked it. In addition, each and every current and former Government employee we deposed or obtained a declaration from has also categorically denied leaking any documents.

As you know, the reporter's privilege you cite in your letter is overcome by a showing that: (1) the information sought goes to the "'heart of the matter'"; and (2) the litigant exhausted "every alternative source of information." *Lee v. DOJ*, 413 F.3d 53, 59 (D.C. Cir. 2005) (quoting *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981)). First, it is indisputable that the source(s) of the illegal disclosures go to the "heart" of Dr. Chen's Privacy Act claim. *See Lee*, 413 F.3d at 57 (finding the identity of the actual source of disclosed information "is clearly central" to proving a violation of the Privacy Act and therefore goes to the "heart of the matter"). Thus, there is no question the first factor is met. Second, Dr. Chen's extensive discovery practice to date easily satisfies that exhaustion requirement under relevant precedent. Notably, the D.C. Circuit has clarified that ***literal*** exhaustion of every conceivable source is not required to defeat the privilege—only ***reasonable efforts***. And plaintiffs are not required to depose "every individual who conceivably could have leaked the information." *Lee*, 413 F.3d at 61. Importantly too, Dr. Chen's discovery efforts here parallel those in *Lee*, where the D.C. Circuit found exhaustion was satisfied. Like here, the plaintiff in *Lee* made use of "the five principal [discovery] devices" against defendants: analyzing the Answer, requesting documents, using interrogatories, issuing requests for admission, and taking depositions.

I have taken the time to confer with my client about your requests for information relating to our discovery efforts. As I am sure you can understand, given the sensitive and highly confidential nature of many of the documents and information we have received from the Government, we will need to consult with Defendants' counsel about what information and documents we can provide under the Protective Order. However, understanding the time constraints and in an effort to

expedite your analysis of the issues, we have taken the time to address your requests for information, as they relate to our discovery efforts below, and will provide relevant (and non-confidential) documents in conjunction with this letter.

1) **Dr. Chen's Private Documents and Information.**

The 2017 stories rely heavily on the PowerPoint created in 2013 by FBI Special Agent Timothy Pappa. The Government's interrogatory responses and documents produced to date, as well as the testimony of several Government witnesses, indicate that the only individuals who had possession of copies of the PowerPoint were FBI Special Agent Pappa, DHS [redacted], and DHS [redacted]. (DHS_00000184–85; FBI Response to Interrogatory No. 16; DHS Response to Interrogatory No. 14; DOD Response to Interrogatory No. 15; DOJ Response to Interrogatory No. 14; [redacted] Dep. 76–80; [redacted] Dep. 44, 85–87).

In the 2017 stories, Fox News displayed several photographs of Dr. Chen with her family, her immigration forms, and an FBI memorandum of an interview with Dr. Chen's daughter. The highlighting, notation, and cropping of the displayed records suggest that Fox News was provided with the PowerPoint about Dr. Chen that was created by Special Agent Pappa on or around March 16, 2013 and finalized on or around May 7, 2013. The 2017 stories also quoted from an FBI memorandum of an interview with Dr. Chen and other confidential information contained within the FBI's investigation records—information also reflected in the PowerPoint created by Special Agent Pappa.[1]

For example:

| Fox Photo | Image from the PowerPoint | Production Match[2] |
|---|---|---|
|   |   | FBI0007483 |

[1] Rhoads testified during his deposition that Fox News possessed more of Dr. Chen's private documents and information than what was published and broadcast in the 2017 stories but, given the passage of time, he could not recall exactly what documents and information. It is therefore possible that materials outside of the PowerPoint were leaked. Fox News is in the best position to confirm what private records and information it obtained and possessed.

[2] The "Production Match" column refers to the Bates numbers of relevant pages from FBI0007480–7611, the version of the May 7, 2013 PowerPoint presentation which the FBI produced to Dr. Chen in response to her Requests for Production of Documents. DHS produced a substantively identical version of this presentation from its files, DHS_00000298–429, although the DHS version was produced in portrait-mode formatting rather than landscape formatting due to the methods used for converting the .pptx file to a PDF for purposes of production in this case.

<table>
<tr>
<td></td>
<td></td>
<td>FBI0007555</td>
</tr>
<tr>
<td></td>
<td></td>
<td>FBI0007510</td>
</tr>
<tr>
<td></td>
<td></td>
<td>FBI0007520</td>
</tr>
</table>

<table>
<tr>
<td>
</td>
<td></td>
<td>FBI0007520</td>
</tr>
<tr>
<td>

</td>
<td></td>
<td>FBI0007520<br>[Note: Second image in the “Fox Photo” column is a magnified version of the first image.]</td>
</tr>
<tr>
<td>

Undated photo of Yanping Chen and family wearing PLA uniforms. (Exclusively obtained by Fox News)</td>
<td>
</td>
<td>FBI0007495</td>
</tr>
<tr>
<td>
2000-WF-210088<br>
Continuation of FD-302 of WANG Lele , On 05/08/2012 , Page 3<br>
SONIS is a UMT student database system. UMT students can access a portal online where they can view their course grades as well as their personal information, such as work and home addresses. Overseas UMT students, such as mainland Chinese students who attend UMT courses in classrooms rather than online, do not have access to SONIS, however, their student records are also put into the SONIS database. Those records are managed by the UMT Beijing office. "Contractors" in the UMT Beijing office have administer privileges to the SONIS system in order to enter records for the mainland Chinese students.<br>
WANG only knows that CHEN worked "space-related stuff" before she came to the United States.
</td>
<td>
(Chen File #), (F)<br>
Continuation of FD-302 of WANG Lele , On 05/08/2012 , Page 3<br>
SONIS is a UMT student database system. UMT students can access a portal online where they can view their course grades as well as their personal information, such as work and home addresses. Overseas UMT students, such as mainland Chinese students who attend UMT courses in classrooms rather than online, do not have access to SONIS, however, their student records are also put into the SONIS database. Those records are managed by the UMT Beijing office. "Contractors" in the UMT Beijing office have administer privileges to the SONIS system in order to enter records for the mainland Chinese students.<br>
WANG only knows that CHEN worked "space-related stuff" before she came to the United States.</td>
<td>FBI0007603</td>
</tr>
</table>

| | | |
|---|---|---|
|  |  | FBI0007511 |
|  |  | FBI0007581 |

Based on these facts that we ascertained during discovery, it is evident a source or sources for the 2017 stories possessed the PowerPoint presentation and disclosed part or all of it to one or more of your clients.

2) **Relevant Systems.**

Dr. Chen served the FBI with a Rule 30(b)(6) subpoena seeking testimony on topics relating to the storage, access and distribution of Dr. Chen's records. We are providing a copy of the Deposition Notices with the listed topics, along with the Government's Motion for a Protective Order relating to certain topics, Dr. Chen's Opposition to that Motion, and the Court's Order which granted the Government's Motion. In any event, its quite clear that the documents leaked to your clients included the PowerPoint created in 2013 by Special Agent Pappa. Accordingly, the key question is who had access to that PowerPoint, not the list of Government employees who had access to small bits and pieces of the information contained in that PowerPoint before the information had been annotated, highlighted, or otherwise manipulated.

3) **Personnel with Access to Dr. Chen's Private Documents and Information that Appeared in the 2017 Stories.**

The below charts include the individuals we believe may have had possession of or access to the PowerPoint. Dr. Chen served interrogatories on each of the Defendants requesting the identity of "each and every person" who "received from the FBI or otherwise had possession, custody, or control" of the PowerPoint, "or any version or subpart thereof, including," the name of the individual, the dates and times when the PowerPoint came into their possession, custody or control, and the format of the document, and we trust the Government was truthful in its responses. Both DOD and DOJ averred that they were not aware of any individuals who possessed the PowerPoint. The FBI identified only one individual, Special Agent Pappa, and DHS identified [redacted] and his supervisor, [redacted]. The following chart identifies those

individuals we identified who possessed the PowerPoint, along with a brief description of their involvement in the Chen investigation, and the discovery actions taken.

| Name | Description | Discovery Actions Taken |
|---|---|---|
| | **FBI** | |
| 1. Timothy Pappa | • FBI lead case agent for Chen investigation from at least 2012 – 2015<br>• Identified by FBI as the only individual at the FBI in possession of the PowerPoint<br>• Created the PowerPoint on or around March 16, 2013 | Deposition (11/19/21); Rule 45 subpoena issued |
| | **DHS** | |
| 2. [redacted] | • [redacted]<br>• Immediate supervisor of [redacted] during Dr. Chen investigation | Deposition (9/10/21); Rule 45 subpoena issued |
| 3. [redacted] | • [redacted]<br>• Acted as the DHS lead case agent on the Chen investigation, including participating in the execution of the search warrant on Chen's residence and attending inter-agency briefings with Pappa | Deposition (11/8/21); Rule 45 subpoena issued |

In addition, Dr. Chen also learned through additional discovery—including deposition testimony—that other individuals may have seen or accessed the PowerPoint. The below table includes all of the individuals we identified through discovery, who may have had access to, saw, or likely saw the PowerPoint, along with a brief description of their involvement, and the discovery actions taken.

| Name | Description | Discovery Actions Taken |
|---|---|---|
| | **FBI** | |
| 1. SI-1 | • [redacted]<br>• Attended briefing where PowerPoint about Dr. Chen was displayed | Declaration (10/26/21) |
| 2. SSA-7 | • [redacted]<br>• Attended briefing where PowerPoint about Dr. Chen was displayed | Declaration (10/26/21) |

| | | |
|---|---|---|
| 3. SSA-14 | • [redacted]<br>• Attended briefing where PowerPoint about Dr. Chen was displayed | Declaration (11/1/21) |
| **DOD** | | |
| 1. [redacted] | • [redacted]<br>• Authorized Rhoads to work on a "special project" to be available to law enforcement<br>• Attended briefing where PowerPoint about Dr. Chen was displayed | Deposition (9/17/21); Rule 45 subpoena issued |
| 2. Stephen Rhoads | • Fox News on-the-record source for Chen reports<br>• Identified himself as an "informant" for the FBI<br>• Attended at least part of briefing where PowerPoint about Dr. Chen was displayed | Deposition (3/24/21); Rule 45 subpoena issued |
| 3. [redacted] | • [redacted]<br>• Likely attended briefing where PowerPoint about Dr. Chen was displayed | Declaration (10/19/21) |
| **DHS** | | |
| 1. [redacted] | • [redacted]<br>• Likely attended briefing where PowerPoint about Dr. Chen was displayed | Rule 45 subpoena issued |
| **DOJ** | | |
| 1. James Gillis | • Assistant U.S. Attorney for the Eastern District of Virginia<br>• Assigned to the Chen investigation and ultimately declined to prosecute<br>• Attended briefing where PowerPoint about Dr. Chen was displayed | Deposition (10/7/21); Rule 45 subpoena issued |

In order to further narrow down and identify the individual(s) who may have leaked Dr. Chen's private documents and information to Fox News, it is imperative that Dr. Chen learn ***when*** these items were delivered to Fox News, because (of course) individuals who had access to or possession of the PowerPoint ***after*** Fox News received the documents and information can be eliminated as potential sources. During his deposition, Mr. Rhoads (Fox News' on-the-record-source) testified that he reviewed the leaked documents in Ms. Herridge's possession "years before" the 2017 stories, in either 2014 or 2015, but he could not say for certain when he reviewed them. (Rhoads Dep. 38:5-10, 58:4-11, 128:6-8). This information is solely within the possession of

Ms. Herridge and/or Fox News, and we ask that you provide us with the exact date Ms. Herridge, or any other current or former employee at Fox News, first received Dr. Chen's private information and documents. To the extent that your clients claim that additional discovery is necessary with respect to individuals who may have obtained some of the leaked documents and information late in the investigation, information solely within your possession about when such documents and information came to Fox News may eliminate the need for such further inquiry.

**4) Discovery Efforts.**

To date, Dr. Chen has served Defendants with 191 Requests for Production, Interrogatory Responses, and Requests for Admission, comprising of:

- 67 Requests for Production:
  - 16 Requests for Production to DHS
  - 18 Requests for Production to DOD
  - 16 Requests for Production to DOJ
  - 17 Requests for Production to FBI
- 67 Interrogatories:
  - 17 Interrogatories propounded to DHS
  - 20 Interrogatories propounded to DOD
  - 14 Interrogatories propounded to DOJ
  - 16 Interrogatories propounded to FBI
- 57 Requests for Admission:
  - 42 Requests for Admission to DHS
  - 7 Requests for Admission to DOD
  - 8 Requests for Admission to the FBI

We are providing you with Dr. Chen's Requests for Production. We trust that, when responding, the Government conducted searches of its computers, network drives, shared folders, email account(s), databases, and Government-issued phones.

Dr. Chen has taken 18 depositions of current and former Government employees:

- 9 Depositions of FBI personnel, including:
  - 4 Rule 30(b)(6) depositions on 14 topics
  - Please Note: Topics 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 17, and 18 are described in the FBI Rule 30(b)(6) Notices of Deposition, which are contained within the documents we are sending along with this letter.
  - Please Note: 4 additional topics (1, 5, 12, 16) are being addressed through production of documents and/or response to written questions
- 2 Depositions of former or current DHS personnel
- 4 Depositions of former or current DOD personnel
- 1 Deposition of former or current DOJ personnel
- 1 Deposition of former or current VA personnel
- 1 Deposition of an expert witness

Dr. Chen has obtained 22 declarations from Defendants, comprising of:

- 1 declaration from current or former DHS personnel
- 4 declarations from current or former DOD personnel
- 2 declarations from current or former DOJ personnel
- 12 declarations from current or former FBI personnel
- 3 declarations from current or former VA personnel

This includes discovery of the lead FBI and DHS case agents for the investigation: Tim Pappa, SSA-8, [redacted], and [redacted], and their primary supervisors SSA-14 and [redacted].

a. **Testimony Provided by the Possible Source(s) for the Leaked Documents and Information.**

Dr. Chen took the deposition of or obtained a declaration from the following individuals who we believe were in possession of the PowerPoint:

From the FBI:
- Tim Pappa (Deposition)

From DHS:
- [redacted] (Deposition)
- [redacted] (Deposition)

Dr. Chen similarly took the deposition of or obtained discovery from the following individuals who may have seen or otherwise had access to the PowerPoint:

From the FBI:
- SI-1 (Declaration)
- SSA-14 (Declaration)
- SSA-7 (Deposition)

From DHS:
- [redacted] (Rule 45 subpoena)

From DOD:
- Stephen Rhoads (Deposition)
- [redacted] Deposition)
- [redacted] (Declaration)

From DOJ:
- James Gillis (Deposition)

Each and every one of these individuals denied being the source of the leaked documents and information.

b. **Searches of Communications.**

First, please see Dr. Chen's Requests for Production as they relate to her requests for relevant communications.

Second, Dr. Chen issued Rule 45 subpoenas to the following current and former Government employees in their personal capacities who had possession of the PowerPoint:

- Tim Pappa

- [redacted]
- [redacted]

Dr. Chen also issued Rule 45 subpoenas to additional current and former Government employees in their personal capacities may have seen or had some sort of access to the PowerPoint:

- [redacted]
- Stephen Rhoads
- [redacted]
- James Gillis

Each of the subpoenas requested relevant communications and documents and defined "Documents" and "Communications" as follows:

> "Communications" means the transmittal of information by or through any means, including but not limited to speech, writings, language (machine, foreign, or otherwise), graphics, computer or digital media of any kind (including, but not limited to electronic mail, SMS, text messaging, videos, and voicemail), magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, sound, radio, video, telecommunications, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types, digital and other tapes, or through any other means of transmission, whether direct, indirect, or through an intermediary.
>
> "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data. A draft or non-identical copy is a separate document within the meaning of this term.

Third, during the course of discovery the FBI initially refused to search for or produce text messages that Dr. Chen believed were critical to her case, including messages that may have revealed the source(s) of the leak. There were also noticeable time gaps in the text messages initially produced from Special Agent Pappa's phone, which the FBI attributed to a technical error. After extensive negotiations and a threatened motion to compel, the FBI finally agreed to:

- Broad searches of text messages between 18 personnel (including Special Agent Pappa) and 13 key individuals (including Fox News reporters, employees of DOD, DHS, DOJ, and Special Agent Pappa's personal cell phone);
    - The 18 FBI personnel:
        - SSA-1
        - SSA-2
        - SSA-5
        - SSA-7
        - SSA-8
        - SSA-14
        - SSA-15

    - SA-1
    - SA-2
    - SA-4
    - SA-5
    - SA-8
    - SA-9
    - SA-13
    - PAS-2
    - SI-1
    - Timothy Pappa
    - [redacted]
  - The 13 key individuals:
    - Catherine Herridge
    - Pamela Browne
    - Cyd Upson
    - Denis King
    - [redacted]
    - [redacted]
    - IA#1
    - [redacted]
    - [redacted]
    - [redacted]
    - [redacted]
    - James Gillis
    - Timothy Pappa (personal phone)
- Produce phone logs of any calls between the same 18 FBI personnel and 13 key individuals;
- An individualized review of text messages between Special Agent Pappa's Samsung work cell phone and five of his closest colleagues on the squad which handled the investigation, with production of responsive messages [redacted], SA-5, SSA-1, SSA-8, SSA-14); and
- Additional searches for text messages between Special Agent Pappa and the same five colleagues during the time periods for which his text messages were missing, due to the FBI's technical errors.

Finally, in September 2020, Dr. Chen served a subpoena on Stephen Rhoads' personal cell phone service provider, T-Mobile, and initially received phone logs from August 1, 2014 through June 28, 2017. Dr. Chen then moved to compel additional phone logs to cover the time period of December 1, 2012 to December 31, 2018. The Court granted that motion in part and expanded the temporal scope of the subpoenaed phone records to the period from December 1, 2012 until December 31, 2018 for communications with certain numbers of interest, including those belonging to Ms. Herridge, Ms. Upson, and Ms. Browne.

c. **Searches of Social Media Accounts.**

See information above.

Very truly yours,

Andrew C. Phillips