APPEAL,CASREF,MEDIATION,TYPE I−PRIVACY

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:18−cv−03074−CRC
# *Internal Use Only*

CHEN v. FEDERAL BUREAU OF INVESTIGATION et al
Assigned to: Judge Christopher R. Cooper
Referred to: Magistrate Judge G. Michael Harvey (Settlement)
Case in other court: USCA, 23−05198
Cause: 05:552 Right to Privacy Act

Date Filed: 12/21/2018
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**YANPING CHEN** represented by

**Andrew C. Phillips**
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW
Suite 650
Washington, DC 20006
847−951−7093
Email: andy.phillips@mwpp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica A. Lutkenhaus**
DEPARTMENT OF DEFENSE
1600 Defense Pentagon
Washington, DC 20301
703−693−9894
Email: jalutkenhaus@gmail.com
*TERMINATED: 02/02/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew T. Jones**
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
202−663−6018
Email: matt.jones@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Joseph Carome**
WILMER CUTLER PICKERING HALE AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
202−663−6610

Email: patrick.carome@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shannon B. Timmann**
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW
Suite 650
Washington, DC 20006
202−318−3655
Email: shannon.timmann@mwpp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**FEDERAL BUREAU OF INVESTIGATION** represented by

**Carol Federighi**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, DC 20044
(202) 514−1903
Email: carol.federighi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 514−5302
Fax: (202) 616−8470
Email: Elizabeth.Shapiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garrett Joseph Coyle**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616−8016
Email: garrett.coyle@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**

U.S. DEPARTMENT OF JUSTICE
1100 L Street
Ste 11008
Washington, DC 20530
(202) 305−8177
Fax: (202) 616−8470
Email: laurel.h.lum@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon W. Taaffe**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252−2544
Fax: (202) 252−2599
Email: taaffed@sec.gov
*TERMINATED: 02/19/2019*

**Leslie Cooper Vigen**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Room 11308
Washington, DC 20005
(202) 305−0727
Fax: (202) 616−8470
Email: leslie.vigen@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF JUSTICE** represented by

**Carol Federighi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garrett Joseph Coyle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon W. Taaffe**
(See above for address)
*TERMINATED: 02/19/2019*

**Leslie Cooper Vigen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF DEFENSE** represented by **Carol Federighi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garrett Joseph Coyle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon W. Taaffe**
(See above for address)
*TERMINATED: 02/19/2019*

**Leslie Cooper Vigen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF HOMELAND SECURITY** represented by **Carol Federighi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garrett Joseph Coyle**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon W. Taaffe**
(See above for address)
*TERMINATED: 02/19/2019*

**Leslie Cooper Vigen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**CATHERINE HERRIDGE** represented by **Kyle West**
TORRIDON LAW PLLC
1155 F Street, NW
Suite 750
Washington, DC 20004
202−249−6659
Email: kwest@egcfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick F. Philbin**
TORRIDON LAW PLLC
1155 F Street NW, Suite 750
20004
Washington, DC 20004
202−249−6633
Email: pphilbin@torridonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Traver Harrington**
TORRIDON LAW PLLC
1155 F St. NW
Suite 750
Washington DC, DC 20004
202−249−6644
Email: charrington@torridonlaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**FOX NEWS NETWORK, LLC** represented by **Kyle West**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Patrick F. Philbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Traver Harrington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS** represented by **Bruce D. Brown**
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St, NW
Suite 1020
Washington, DC 20005
(202) 795−9301
Fax: (202) 795−9310
Email: bbrown@rcfp.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2018 | 1 | COMPLAINT against FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE ( Filing fee $ 400 receipt number 0090−5854856) filed by YANPING CHEN. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet, # 8 Summons to Department of Defense, # 9 Summons to Department of Justice, # 10 Summons to Federal Bureau of Investigation, # 11 Summons to Department of Homeland Security)(Carome, Patrick) (Entered: 12/21/2018) |
| 12/27/2018 | | Case Assigned to Judge Christopher R. Cooper. (zef, ) (Entered: 12/27/2018) |
| 12/27/2018 | 2 | SUMMONS (4) Issued Electronically as to FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Notice and Consent)(zef, ) (Entered: 12/27/2018) |
| 01/03/2019 | 3 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. FEDERAL BUREAU OF INVESTIGATION served on 1/2/2019; U.S. DEPARTMENT OF DEFENSE served on 12/31/2018; U.S. DEPARTMENT OF HOMELAND SECURITY served on 12/31/2018; U.S. DEPARTMENT OF JUSTICE served on 1/2/2019 (Attachments: # 1 Summons Executed as to Department of Defense, # 2 Summons Executed as to Federal Bureau of Investigation, # 3 Summons Executed as to Department of Homeland Security, # 4 Affidavit of Service as to US Attorney General, # 5 Affidavit of Service as to the US Attorney's Office of the DC District)(Carome, Patrick) (Entered: 01/03/2019) |

| | | |
|---|---|---|
| 01/03/2019 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 1/3/2019., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/2/2019. ( Answer due for ALL FEDERAL DEFENDANTS by 3/3/2019.) (See Docket Entry 3 to view document). (znmw) (Entered: 01/08/2019) |
| 01/29/2019 | 5 | NOTICE of Appearance by Damon William Taaffe on behalf of All Defendants (Taaffe, Damon) (Entered: 01/29/2019) |
| 02/19/2019 | 6 | NOTICE of Substitution of Counsel by Carol Federighi on behalf of All Defendants (Federighi, Carol) Modified event title on 3/13/2019 (znmw). (Entered: 02/19/2019) |
| 02/19/2019 | 7 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint,, by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 02/19/2019) |
| 02/19/2019 | | MINUTE ORDER granting 7 Motion for Extension of Time to Answer. Defendants shall file an answer or otherwise respond to the Complaint on or before April 17, 2019. Signed by Judge Christopher R. Cooper on 02/19/2019. (lccrc3) (Entered: 02/19/2019) |
| 03/01/2019 | 8 | NOTICE of Appearance by Matthew T. Jones on behalf of YANPING CHEN (Jones, Matthew) (Entered: 03/01/2019) |
| 04/17/2019 | 9 | MOTION to Dismiss by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Memorandum in Support, # 2 Appendix of Filings from Prior Case, # 3 Text of Proposed Order)(Coyle, Garrett) (Entered: 04/17/2019) |
| 05/01/2019 | 10 | Memorandum in opposition to re 9 MOTION to Dismiss filed by YANPING CHEN. (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Jones, Matthew) (Entered: 05/01/2019) |
| 05/08/2019 | 11 | REPLY to opposition to motion re 9 MOTION to Dismiss filed by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Coyle, Garrett) (Entered: 05/08/2019) |
| 11/13/2019 | 12 | MOTION for Status Conference by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) Modified on 11/14/2019 (ztd). (Entered: 11/13/2019) |
| 01/27/2020 | 13 | OPINION and ORDER denying 9 Defendants' Motion to Dismiss. Signed by Judge Christopher R. Cooper on 01/27/2020. (lccrc3) (Entered: 01/27/2020) |
| 01/27/2020 | | MINUTE ORDER: In light of 13 Opinion and Order denying Defendants' Motion to Dismiss, Defendants are hereby ORDERED to file their Answer on or before February 10, 2020. See Fed. R. Civ. P. 12(a)(4)(A) (requiring a responsive pleading to be served within 14 days of the Court's order). Signed by Judge Christopher R. Cooper on 01/27/2020. (lccrc3) (Entered: 01/27/2020) |
| 01/27/2020 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER denying Plaintiff's 12 Motion for Hearing as moot. Signed by Judge Christopher R. Cooper on 01/27/2020. (lccrc3) (Entered: 01/27/2020) |
| 01/28/2020 | | Set/Reset Deadlines: Answer due by 2/10/2020 (lsj) (Entered: 01/28/2020) |
| 02/10/2020 | 14 | ANSWER to Complaint by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE.(Coyle, Garrett) (Entered: 02/10/2020) |
| 02/10/2020 | 15 | ORDER for Initial Scheduling Conference. The parties are directed to appear for an Initial Scheduling Conference on Wednesday, March 11, 2020 at 11:00 AM in Courtroom 27A. See full Order for details. Signed by Judge Christopher R. Cooper on 02/10/2020. (lccrc3) (Entered: 02/10/2020) |
| 02/10/2020 | | Set/Reset Hearings: Initial Scheduling Conference set for 3/11/2020 at 11:00 AM in Courtroom 27A before Judge Christopher R. Cooper. (lsj) (Entered: 02/10/2020) |
| 02/12/2020 | 16 | Consent MOTION for Extension of Time to *Conduct Conference of Counsel Under Rule 26(f) and LCvR 16.3(a)* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Coyle, Garrett) (Entered: 02/12/2020) |
| 02/14/2020 | | MINUTE ORDER granting 16 Motion for Extension of Time to Meet and Confer. Signed by Judge Christopher R. Cooper on 2/14/2020. (lccrc3) (Entered: 02/14/2020) |
| 02/14/2020 | | Set/Reset Deadlines: Meet & Confer Statement due by 2/25/2020. (nbn) (Entered: 02/14/2020) |
| 03/04/2020 | 17 | MEET AND CONFER STATEMENT. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Jones, Matthew) (Entered: 03/04/2020) |
| 03/11/2020 | | Minute Entry for proceedings held before Judge Christopher R. Cooper: Initial Scheduling Conference held on 3/11/2020. Scheduling Order forthcoming. (Court Reporter Lisa Moreira) (nbn) (Entered: 03/11/2020) |
| 03/11/2020 | 18 | SCHEDULING ORDER. See full Order for details. Signed by Judge Christopher R. Cooper on 03/11/2020. (lccrc3) (Entered: 03/11/2020) |
| 03/11/2020 | 19 | STIPULATED CLAWBACK AGREEMENT AND FEDERAL RULE OF EVIDENCE 502(d) ORDER. See full Order for details. Signed by Judge Christopher R. Cooper on 03/11/2020. (lccrc3) (Entered: 03/11/2020) |
| 03/11/2020 | | Set/Reset Deadlines: Amended Pleadings due by 5/11/2020. Initial Disclosure due by 3/25/2020. Plaintiff Rule 26(a)(2) due by 7/9/2020. Defendant Rule 26(a)(2) due by 8/10/2020. Discovery due by 9/8/2020. (nbn) (Entered: 03/12/2020) |
| 03/11/2020 | | Set/Reset Hearings: Status Conference set for 9/10/2020 at 11:00 AM in Courtroom 25A before Judge Christopher R. Cooper. (nbn) (Entered: 03/12/2020) |
| 03/25/2020 | 20 | Consent MOTION to Stay *Certain Discovery Deadlines in Light of COVID−19 Pandemic* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Declaration of Nancy H. Wiegand, # 2 Text of Proposed Order)(Coyle, Garrett) (Entered: 03/25/2020) |

| | | |
|---|---|---|
| 03/25/2020 | 21 | ORDER granting 20 Consent Motion to Stay Certain Discovery Deadlines. See full Order for details. Signed by Judge Christopher R. Cooper on 03/25/2020. (lccrc3) (Entered: 03/25/2020) |
| 04/29/2020 | 22 | Consent MOTION to Stay re 21 Order on Motion to Stay *to Extend Stay of Certain Discovery Deadlines in Light of COVID−19 Pandemic* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Declaration of Nancy H. Wiegand (Second), # 2 Text of Proposed Order)(Coyle, Garrett) (Entered: 04/29/2020) |
| 04/30/2020 | | MINUTE ORDER granting 22 Motion to Extend Stay of Discovery Deadlines. It is hereby ORDERED that the stay is extended until May 14, 2020. It is further ORDERED that at the conclusion of the stay, the parties may request an extension of the expert disclosure deadlines and fact discovery deadline commensurate with the period of time that the FBI discovery staff was out of the office due to the coronavirus outbreak. It is further ORDERED that Defendant FBI shall notify the Plaintiff and the Court within 2 days of return to work by the Defendant FBI's discovery personnel. So ordered. Signed by Judge Christopher R. Cooper on 04/30/2020. (lccrc3) (Entered: 04/30/2020) |
| 05/06/2020 | 23 | NOTICE *of Limited Re−Opening of FBI's Discovery Operations* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE re Order on Motion to Stay,, (Attachments: # 1 Declaration of Nancy H. Wiegand (Third))(Coyle, Garrett) (Entered: 05/06/2020) |
| 05/11/2020 | 24 | Consent MOTION for Extension of Time to *file Motions to Add Parties or Amend Pleadings in Light of Discovery Stay*, by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 05/11/2020) |
| 05/11/2020 | | MINUTE ORDER granting Plaintiff's 24 Motion for Extension of Time to Add Parties or Amend Pleadings. The deadline to add parties or amend pleadings shall be extended to June 25, 2020. Signed by Judge Christopher R. Cooper on 05/11/2020. (lccrc3) (Entered: 05/11/2020) |
| 05/12/2020 | | Set/Reset Deadlines: Motion for Amended Pleadings due by 6/25/2020. (lsj) (Entered: 05/12/2020) |
| 05/15/2020 | 25 | Civil Statement *(Joint) on Discovery Dispute Over Extension of Stay of Discovery Deadlines in Light of COVID−19 Outbreak*. (Coyle, Garrett) (Entered: 05/15/2020) |
| 05/19/2020 | | MINUTE ORDER: The Court has determined that a telephonic conference is unnecessary to resolve the discovery dispute explained in the parties' 25 Joint Statement. It is hereby ORDERED that:1) the current discovery stay is not extended for responses from other agencies that do not require FBI review, see, e.g., Joint Statement 3 n.1;2) the stay is extended until June 10, 2020 for responses from other agencies that require FBI review; and3) the stay is extended until July 1, 2020 for any requests directed to the FBI. Signed by Judge Christopher R. Cooper on 05/19/2020. (lccrc3) Modified on 5/19/2020 (lsj). (Entered: 05/19/2020) |
| 05/29/2020 | 26 | Consent MOTION for Protective Order by YANPING CHEN (Attachments: # 1 Exhibit A − Proposed Protective Order)(Jones, Matthew) (Entered: 05/29/2020) |
| 06/02/2020 | 27 | |

| | | |
|---|---|---|
| | | STIPULATED PROTECTIVE ORDER. See full Order for details. Signed by Judge Christopher R. Cooper on 06/02/2020. (lccrc3) (Entered: 06/02/2020) |
| 06/24/2020 | 28 | Consent MOTION for Extension of Time to File *Motions to Add Parties or Amend Pleadings in Light of Discovery Stay* by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 06/24/2020) |
| 06/26/2020 | | MINUTE ORDER granting 28 Motion for Extension of Time to File Motions to Add Parties or Amend Pleadings. It is hereby ORDERED that the deadline to file motions to add parties or amend pleadings is extended to August 24, 2020. Signed by Judge Christopher R. Cooper on 06/26/2020. (lccrc3) (Entered: 06/26/2020) |
| 06/29/2020 | | Set/Reset Deadlines: Motion for Amended Pleadings due by 8/24/2020. (lsj) (Entered: 06/29/2020) |
| 07/02/2020 | 29 | Joint MOTION for Extension of Time to Complete Discovery by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 07/02/2020) |
| 07/02/2020 | | MINUTE ORDER granting 29 Joint Motion for Extension of Time to Complete Discovery. It is hereby ORDERED that the case shall proceed according to the following revised schedule:Proponent's Rule 26(a)(2) statements shall be due November 16, 2020;Opponent's Rule 26(a)(2) statements shall be due December 17, 2020; andFact discovery deadline shall be January 18, 2021.The post−discovery status conference currently set for September 10, 2020 is hereby VACATED and RESET for Wednesday, January 20, 2021. Signed by Judge Christopher R. Cooper on 07/02/2020. (lccrc3) (Entered: 07/02/2020) |
| 07/06/2020 | | Set/Reset Deadlines/Hearings: Fact Discovery due by 1/18/2021. Plaintiff Rule 26(a)(2) due by 11/16/2020. Defendant Rule 26(a)(2) due by 12/17/2020. Post−Discovery Hearing set for 1/20/2021 at 10:00 AM in Courtroom 27A before Judge Christopher R. Cooper. (lsj) (Entered: 07/06/2020) |
| 08/24/2020 | 30 | Joint MOTION for Extension of Time to Complete Discovery *in Light of Discovery Stay* by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 08/24/2020) |
| 08/27/2020 | | MINUTE ORDER granting 30 Motion for Extension of Time to Complete Discovery. Any motion to add parties or amend pleadings shall be filed on or before October 8, 2020. Proponents Rule 26(a)(2) statements are due by January 6, 2021. Opponents Rule 26(a)(2) statements are due by February 1, 2021. The deadline for fact discovery is March 4, 2021. Signed by Judge Christopher R. Cooper on 08/27/2020. (lccrc3) (Entered: 08/27/2020) |
| 10/07/2020 | 31 | Consent MOTION for Extension of Time to File *Motions to Add Parties or Amend Pleadings in Light of Discovery Stay* by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 10/07/2020) |
| 10/08/2020 | | MINUTE ORDER granting 31 Motion for Extension of Time to File Motions to Add Parties or Amend Pleadings. Any motion to add parties or amend pleadings shall be filed on or before 12/3/2020. Signed by Judge Christopher R. Cooper on 10/08/2020. (lccrc3) (Entered: 10/08/2020) |
| 10/30/2020 | 32 | NOTICE of Appearance by Jessica A. Lutkenhaus on behalf of YANPING CHEN (Lutkenhaus, Jessica) (Entered: 10/30/2020) |
| 11/30/2020 | | |

| | | |
|---|---|---|
| | | NOTICE: The Court has scheduled a hearing on the Motion to Quash Subpoena in related case 20−mc−107 for 12/3/2020 at 10:00 AM. Members of the public may listen to the hearing by telephone at 888−204−5984 (Access Code 8981531). Signed by Judge Christopher R. Cooper on 11/30/2020. (lccrc3) (Entered: 11/30/2020) |
| 12/03/2020 | 33 | Joint MOTION for Extension of Time to Complete Discovery by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 12/03/2020) |
| 12/04/2020 | | MINUTE ORDER granting 33 Motion for Extension of Time to Complete Discovery. It is hereby ORDERED that the case shall proceed according to the following revised schedule. Any motion to add parties or amend pleadings shall be filed on or before March 3, 2021. Proponent's Rule 26(a)(2) statements are due by April 6, 2021. Opponent's Rule 26(a)(2) statements are due by May 3, 2021. The deadline for fact discovery is June 4, 2021. The post−discovery status conference currently set for January 20, 2021 is hereby VACATED and RESET for June 9, 2021 at 10 a.m. Signed by Judge Christopher R. Cooper on 12/04/2020. (lccrc3) (Entered: 12/04/2020) |
| 01/15/2021 | 34 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order re Motion to Seal, # 2 Motion to Compel, # 3 Declaration in Support of Motion to Compel, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Text of Proposed Order re Motion to Compel)(Jones, Matthew) (Entered: 01/15/2021) |
| 01/15/2021 | 35 | Joint MOTION for Briefing Schedule *Regarding Plaintiff's Motion to Compel*, by YANPING CHEN (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 01/15/2021) |
| 01/20/2021 | | MINUTE ORDER: It is hereby ordered that Plaintiff's 34 Motion for Leave to File Document Under Seal is granted. It is further ordered that the 35 Joint Motion for Briefing Schedule is granted. Defendants shall file their opposition to Plaintiff's Motion to Compel on or before February 16, 2021. Plaintiff shall file her reply on or before March 2, 2021. Signed by Judge Christopher R. Cooper on 01/20/2021. (lccrc3) (Entered: 01/20/2021) |
| 01/20/2021 | 37 | SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibit 1−18, # 3 Text of Proposed Order)(ztd) (Entered: 01/27/2021) |
| 01/21/2021 | | Set/Reset Deadlines: Responses due by 2/16/2021 and Replies due by 3/2/2021. (lsj) (Entered: 01/21/2021) |
| 01/22/2021 | 36 | MOTION to Compel *(Public Version)* by YANPING CHEN. (Attachments: # 1 Declaration of Matthew T. Jones in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Text of Proposed Order)(Jones, Matthew) (Entered: 01/22/2021) |
| 02/16/2021 | 38 | Memorandum in opposition to re 36 MOTION to Compel *(Public Version)* filed by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, |

| | | |
|---|---|---|
| | | U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration (Unclassified) of FBI Assistant Director Alan E. Kohler, Jr.)(Coyle, Garrett) (Entered: 02/16/2021) |
| 02/16/2021 | 39 | NOTICE *of Lodging of Classified In Camera Ex Parte Declaration of FBI Assistant Director Alan E. Kohler, Jr.* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE re 38 Memorandum in Opposition, (Coyle, Garrett) (Entered: 02/16/2021) |
| 02/24/2021 | 40 | Unopposed MOTION for Leave to File *Supplemental Brief in Further Opposition To Motion To Compel 36* , Unopposed MOTION for Extension of Time to File Response/Reply as to 36 MOTION to Compel *(Public Version)* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Government's Proposed Supplemental Brief in Further Opposition To Motion To Compel, # 2 Text of Proposed Order)(Coyle, Garrett) (Entered: 02/24/2021) |
| 02/25/2021 | | MINUTE ORDER: Defendants' 40 Motion for Leave to File Supplemental Brief in Further Opposition To Motion To Compel is hereby granted. Defendants' proposed supplemental brief is deemed filed. It is further ordered that Plaintiff shall file her reply in support of the 36 Motion to Compel on or before March 4, 2021. Signed by Judge Christopher R. Cooper on 02/25/2021. (lccrc3) (Entered: 02/25/2021) |
| 03/02/2021 | 41 | Consent MOTION for Extension of Time to File *Motions to Add Parties or Amend Pleadings* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 03/02/2021) |
| 03/03/2021 | | MINUTE ORDER granting 41 Motion for Extension of Time to File Motions to Add Parties or Amend Pleadings. Any motion to add parties or amend pleadings shall be filed on or before March 24, 2021. Signed by Judge Christopher R. Cooper on 03/03/2021. (lccrc3) (Entered: 03/03/2021) |
| 03/04/2021 | | Set/Reset Deadlines: Motion for Amended Pleadings due by 3/24/2021. (lsj) (Entered: 03/04/2021) |
| 03/04/2021 | 42 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order on Motion to Seal, # 2 Reply in Support of Plaintiff's Motion to Compel, # 3 Declaration of Matthew T. Jones in Support of Reply, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13)(Jones, Matthew) (Entered: 03/04/2021) |
| 03/08/2021 | | MINUTE ORDER: Plaintiff's 42 Motion for Leave to File Document Under Seal is hereby granted. Signed by Judge Christopher R. Cooper on 03/08/2021. (lccrc3) (Entered: 03/08/2021) |
| 03/11/2021 | 43 | REPLY to opposition to motion re 36 MOTION to Compel *(Public Version)* filed by YANPING CHEN. (Attachments: # 1 Declaration of Matthew T. Jones in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13)(Jones, Matthew) (Entered: 03/11/2021) |

| | | |
|---|---|---|
| 03/12/2021 | 44 | SEALED REPLY TO OPPOSITION filed by YANPING CHEN re 37 SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13)(ztd) (Entered: 03/12/2021) |
| 03/23/2021 | 45 | Civil Statement *(Joint) on Discovery Dispute Over Production Schedule*. (Attachments: # 1 Declaration of Deborah A. Crum, # 2 Declaration of David P. Bennett)(Coyle, Garrett) (Entered: 03/23/2021) |
| 03/25/2021 | | MINUTE ORDER: The Court has reviewed 45 the parties' Joint Statement on Discovery Dispute Over Production Schedule and finds that formal briefing and a hearing are not necessary at this time. The Government's request to extend all discovery deadlines by 90 days is granted. Any motion to add parties or amend pleadings shall be filed on or before June 22, 2021. Proponent's Rule 26(a)(2) statements are due by July 5, 2021. Opponent's Rule 26(a)(2) statements are due by August 2, 2021. The deadline for fact discovery is September 2, 2021. The post−discovery status conference currently set for June 9, 2021 is hereby vacated and reset to September 9, 2021 at 11:00 AM in Courtroom 27A.<br><br>To the extent that Plaintiff seeks an order setting a specific deadline during the discovery period for the Government to complete its responses to all requests for production, that request is denied without prejudice. However, the Court expects the Government to finish its document productions in a sufficiently timely manner to allow Plaintiff a reasonable opportunity to complete all fact discovery, including depositions, by September 2, 2021. So Ordered. Signed by Judge Christopher R. Cooper on 03/25/2021. (lccrc3) (Entered: 03/25/2021) |
| 03/29/2021 | | Set/Reset Deadlines/Hearings: Motion for Amended Pleadings due by 6/22/2021. Discovery due by 9/2/2021. Plaintiff Rule 26(a)(2) due by 7/5/2021. Defendant Rule 26(a)(2) due by 8/2/2021. Post−Discovery Hearing reset for 9/9/2021 at 11:00 AM in Courtroom 27A before Judge Christopher R. Cooper. (lsj) (Entered: 03/29/2021) |
| 04/12/2021 | | MINUTE ORDER: Counsel for the Government is hereby directed to appear for a sealed, ex parte status conference on April 19, 2021 at 11:00 AM, regarding the Government's ex parte submission of February 16, 2021. Signed by Judge Christopher R. Cooper on 04/12/2021. (lccrc3) (Entered: 04/12/2021) |
| 04/19/2021 | | MINUTE ORDER: The parties are hereby directed to appear by video for a sealed hearing on the 36 Motion to Compel on April 28, 2021 at 3:00 PM. Video connection information will be sent to the parties separately. Signed by Judge Christopher R. Cooper on 04/19/2021. (lccrc3) (Entered: 04/19/2021) |
| 05/11/2021 | 46 | UNSEALED PURSUANT TO MINUTE ORDER FILED 5/19/2021. . . . . MEMORANDUM OPINION AND ORDER denying without prejudice 36 Plaintiffs Motion to Compel. The parties shall submit any proposed redactions to this Memorandum Opinion and Order on or before May 18, 2021. If no proposed redactions are forthcoming, the Court will unseal the Memorandum Opinion and Order. Signed by Judge Christopher R. Cooper on 05/11/2021.(This document is SEALED and only available to authorized persons.) Signed by Judge Christopher R. Cooper on 5/11/21.(zlsj) Modified on 5/19/2021 (ztd). (Entered: 05/11/2021) |

| | | |
|---|---|---|
| 05/19/2021 | | MINUTE ORDER: Hearing no objection from the parties, the Court hereby directs the Clerk's Office to unseal the 46 Memorandum Opinion and Order denying without prejudice 36 Plaintiff's Motion to Compel. Signed by Judge Christopher R. Cooper on 05/19/2021. (lccrc3) (Entered: 05/19/2021) |
| 06/11/2021 | 47 | Consent MOTION for Extension of Time to Complete Discovery by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Coyle, Garrett) (Entered: 06/11/2021) |
| 06/14/2021 | | MINUTE ORDER: Upon consideration of the 47 Consent Motion for Extension of Time to Complete Discovery, the Court hereby adopts the following deadlines. Motions to add parties or amend pleadings are due August 23, 2021. Proponent's Rule 26(a)(2) statements are due September 3, 2021. Opponent's Rule 26(a)(2) statements are due October 1, 2021. Fact discovery shall close November 1, 2021. The post−discovery status conference previously scheduled for September 9, 2021 is hereby vacated and reset to November 9, 2021, at 11:00 AM by video. So Ordered. Signed by Judge Christopher R. Cooper on 06/14/2021. (lccrc3) (Entered: 06/14/2021) |
| 06/14/2021 | | Set/Reset Deadlines/Hearings: Motion for Amended Pleadings due by 8/23/2021. Fact−Discovery due by 11/1/2021. Plaintiff Rule 26(a)(2) due by 9/3/2021. Defendant Rule 26(a)(2) due by 10/1/2021. Post−Discovery Hearing set for 11/9/2021 at 11:00 AM by before Judge Christopher R. Cooper. (lsj) (Entered: 06/14/2021) |
| 08/23/2021 | 48 | Consent MOTION for Extension of Time to File *Motions to Add Parties or Amend Pleadings* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 08/23/2021) |
| 08/23/2021 | | MINUTE ORDER granting 48 Motion for Extension of Time to File Motions to Add Parties or Amend Pleadings. Any motion to add parties or amend pleadings shall be filed on or before September 3, 2021. Signed by Judge Christopher R. Cooper on 08/23/2021. (lccrc3) (Entered: 08/23/2021) |
| 09/01/2021 | 49 | Consent MOTION for Extension of Time to *Conduct Discovery Related to Economic Damages Experts* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 09/01/2021) |
| 09/02/2021 | | MINUTE ORDER granting 49 Consent Motion to Extend Deadlines for Discovery Related to Economic Damages Experts. Upon consideration of the motion, the Court hereby sets the following deadlines. Proponent's Rule 26(a)(2) Statements with respect to economic damages experts are due September 24, 2021. Opponent's Rule 26(a)(2) Statements with respect toeconomic damages experts are due October 22, 2021. The Parties are permitted to take the deposition of any economic damages experts after the close of fact discovery on November 1, 2021, but no later than November 22, 2021. This extension is only for economic damages experts and does not affect any other deadlines. SO ORDERED. Signed by Judge Christopher R. Cooper on 9/2/2021. (lccrc3) (Entered: 09/02/2021) |
| 09/20/2021 | 50 | NOTICE of Appearance by Laurel H. Lum on behalf of All Defendants (Lum, Laurel) (Entered: 09/20/2021) |
| 09/22/2021 | 51 | Consent MOTION to Extend Deadlines for Economic Damages Expert Disclosures by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) Modified event on 9/23/2021 (ztd). (Entered: 09/22/2021) |

| | | |
|---|---|---|
| 09/24/2021 | | MINUTE ORDER granting 51 Consent Motion to Extend Deadlines for Economic Damages Expert Disclosures. Upon consideration of the motion, the Court hereby sets the following deadlines. Proponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 1, 2021. Opponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 29, 2021. The Parties are permitted to take the deposition of any economic damages experts after the close of fact discovery on November 1, 2021, but no later than November 22, 2021. This extension is only for economic damages experts and does not affect any other deadlines. Signed by Judge Christopher R. Cooper on 9/24/2021. (lccrc3) (Entered: 09/24/2021) |
| 09/24/2021 | | Set/Reset Deadlines: Proponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 1, 2021. Opponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 29, 2021. The Parties are permitted to take the deposition of any economic damages experts after the close of fact discovery on November 1, 2021, but no later than November 22, 2021. (znbn) (Entered: 09/24/2021) |
| 10/01/2021 | 52 | Consent MOTION to Extend Deadlines for Economic Damages Expert Disclosures by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 10/01/2021) |
| 10/01/2021 | | MINUTE ORDER: The Court grants the 52 Consent Motion to Extend Deadlines for Economic Damages Expert Disclosures. Upon consideration of the motion, the Court hereby sets the following deadlines. Proponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 8, 2021. Opponent's Rule 26(a)(2) Statements with respect to economic damages experts are due November 5, 2021. The Parties are permitted to take the deposition of any economic damages experts after the close of fact discovery, but no later than November 22, 2021. This extension is only for economic damages experts and does not affect any other deadlines. Signed by Judge Christopher R. Cooper on 10/1/2021. (lccrc3) (Entered: 10/01/2021) |
| 10/08/2021 | 53 | Consent MOTION to Extend Deadlines for Economic Damages Expert Disclosures by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 10/08/2021) |
| 10/11/2021 | | MINUTE ORDER: The Court grants the 53 Consent Motion to Extend Deadlines for Economic Damages Expert Disclosures. Upon consideration of the motion, the Court hereby sets the following deadlines. Proponent's Rule 26(a)(2) Statements with respect to economic damages experts are due October 13, 2021. Opponent's Rule 26(a)(2) Statements with respect to economic damages experts are due November 10, 2021. The Parties are permitted to take the deposition of any economic damages experts after the close of fact discovery, but no later than November 22, 2021. This extension is only for economic damages experts and does not affect any other deadlines. Signed by Judge Christopher R. Cooper on 10/11/2021. (lccrc3) (Entered: 10/11/2021) |
| 10/13/2021 | 54 | Joint MOTION to Modify *Scheduling Order 18 , Minute Order dated June 14, 2021, and Minute Order dated October 11, 2021* by FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Coyle, Garrett) (Entered: 10/13/2021) |

| | | |
|---|---|---|
| 10/15/2021 | 55 | SCHEDULING ORDER granting 54 Motion to Modify the Scheduling Order. See full Order for details. Signed by Judge Christopher R. Cooper on 10/15/2021. (lccrc3) (Entered: 10/15/2021) |
| 10/19/2021 | | MINUTE ORDER: As stated in the Court's 55 Amended Scheduling Order, the post−discovery status conference scheduled for November 9, 2021, at 11:00 AM is vacated. The Court will reset that status conference for January 20, 2022 at 11:00 AM, by video before Judge Christopher R. Cooper. Video connection information will be provided to the parties separately. Signed by Judge Christopher R. Cooper on 10/19/2021. (lccrc3) (Entered: 10/19/2021) |
| 10/27/2021 | 56 | Consent MOTION for Extension of Time to *Extend the Deadline for the Deposition of Stephen J. Rhoads* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 10/27/2021) |
| 10/29/2021 | | MINUTE ORDER: The Court grants the 56 Consent Motion to Extend the Deadline for the Deposition of Stephen J. Rhoads. It is hereby ORDERED that the deposition of Mr. Rhoads may be taken after the November 19, 2021, liability phase fact discovery deadline, but no later than January 7, 2022. Signed by Judge Christopher R. Cooper on 10/29/2021. (lccrc3) (Entered: 10/29/2021) |
| 11/16/2021 | | MINUTE ORDER: The parties have notified the Court of several discovery disputes. The Court hereby grants leave to file motions related to those disputes and sets the following deadlines. First, as to the discovery dispute regarding the law enforcement privilege: Plaintiff shall file her motion to compel on or before November 19, 2021; Defendants shall file their opposition on or before December 17, 2021; Plaintiff shall file her reply on or before January 5, 2022.<br><br>Second, as to issues related to Plaintiffs request for the FBI to conduct further searches: Plaintiff shall file her motion to compel on or before November 19, 2021; Defendants shall file their opposition on or before December 10, 2021; Plaintiff shall file her reply on or before December 22, 2021.<br><br>And third, as to the protective order issue: Defendants shall file their motion for a protective order on or before November 19, 2021; Plaintiff shall file her opposition on or before December 3, 2021; Defendants shall file their reply on or before December 17, 2021. The Court has not set briefing page limits but encourages the parties to be efficient in their arguments. Signed by Judge Christopher R. Cooper on 11/16/2021. (lccrc3) (Entered: 11/16/2021) |
| 11/18/2021 | 57 | Joint MOTION for Extension of Time to *Extend the Deadline for Motions and to Conduct Certain Discovery* by YANPING CHEN. (Attachments: # 1 Proposed Order)(Jones, Matthew) (Entered: 11/18/2021) |
| 11/19/2021 | 58 | ORDER granting 57 Motion for Extension of Time. The Court hereby adopts the parties' proposed revised schedule. See full Order for details. Signed by Judge Christopher R. Cooper on 11/19/2021. (lccrc3) (Entered: 11/19/2021) |
| 11/19/2021 | 59 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order regarding Motion to Seal, # 2 Motion to Compel, # 3 Declaration in Support of Motion to Compel, # 4 Exhibits 1 −5, # 5 Exhibits 6 − 51, # 6 Exhibits 52 − 59, # 7 Exhibits 60 − 74, # 8 Text of Proposed Order re Motion to Compel)(Jones, Matthew) (Entered: 11/19/2021) |

| | | |
|---|---|---|
| 11/21/2021 | | Set/Reset Deadlines: Plaintiff's Motion for further searches is due by 11/23/2021; Defendants' Opposition is due by 12/14/2021; Plaintiff's Reply in support of motion for further searches is due by 12/23/2021; Defendants' Motion for Protective Order is due by 12/3/2021; Plaintiff's Opposition is due by 12/17/2021; Defendants' Reply in support of motion for Protective Order is due by 1/6/2022. (jth) (Entered: 11/21/2021) |
| 11/22/2021 | | MINUTE ORDER: Plaintiff's 59 Motion for Leave to File Documents Under Seal is hereby granted. Signed by Judge Christopher R. Cooper on 11/22/2021. (lccrc3) (Entered: 11/22/2021) |
| 11/22/2021 | 62 | SEALED MOTION to Compel filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibits 1−5, # 3 Exhibits 6−51, # 4 Exhibits 52−59, # 5 Exhibits 60−74, # 6 Text of Proposed Order)(znmw) (Entered: 12/07/2021) |
| 12/03/2021 | 60 | MOTION for Protective Order *by Federal Bureau of Investigation to Limit Rule 30(b)(6) Deposition Topics* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Memorandum in Support, # 2 Declaration (unclassified) of Deputy Assistant Director Kurtis Ronnow, FBI, # 3 Declaration of Carol Federighi, # 4 Exhibit 1 to Federighi Decl: 30(b)(6) Notice, # 5 Exhibit 2 to Federighi Decl: Oct. 22, 2021, Letter, # 6 Exhibit 3 to Federighi Decl: Nov. 4, 2021, Letter, # 7 Exhibit 4 to Federighi Decl: FBI's responses to first set of RFPs, # 8 Exhibit 5 to Federighi Decl: FBI's responses to fourth set of RFPs, # 9 Exhibit 6 to Federighi Decl: FBI's responses to first set of interrogatories, # 10 Exhibit 7 to Federighi Decl: July 31, 2020, Letter, # 11 Exhibit 8 to Federighi Decl: Sept. 10, 2020, # 12 Exhibit 9 to Federighi Decl: Oct. 16, 2020, Letter, # 13 Exhibit 10 to Federighi Decl: Nov. 20, 2020, Letter, # 14 Exhibit 11 to Federighi Decl. Dec. 23, 2020, Letter, # 15 Exhibit 12 to Federighi Decl: Jan. 12, 2021, Letter, # 16 Text of Proposed Order)(Federighi, Carol) (Entered: 12/03/2021) |
| 12/03/2021 | 61 | NOTICE *of Lodging of Classified In Camera Ex Parte Declaration of FBI Deputy Assistant Director Kurtis Ronnow* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE re 60 MOTION for Protective Order *by Federal Bureau of Investigation to Limit Rule 30(b)(6) Deposition Topics* (Federighi, Carol) (Entered: 12/03/2021) |
| 12/17/2021 | 63 | Joint MOTION FOR LEAVE TO CONDUCT DEPOSITIONS OUT OF TIME by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 12/17/2021) |
| 12/17/2021 | 64 | NOTICE of Filing Subpoena dated 9/30/2020 by YANPING CHEN. "Leave to File Granted," signed by Judge Christopher R. Cooper on 12/17/2021. (znmw) (Entered: 12/17/2021) |
| 12/17/2021 | 65 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Government's Opposition to Plaintiff's Second Motion to Compel, # 2 Notice to Counsel/Party of Lodging, # 3 Declaration of Alan Kohler Jr. (Unclassified), # 4 Declaration of Garrett Coyle, # 5 Text of Proposed Order)(Coyle, Garrett) (Entered: 12/17/2021) |

| | | |
|---|---|---|
| 12/17/2021 | 66 | Memorandum in opposition to re 60 MOTION for Protective Order *by Federal Bureau of Investigation to Limit Rule 30(b)(6) Deposition Topics* filed by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 12/17/2021) |
| 12/20/2021 | | MINUTE ORDER: The Court grants the 63 Joint Motion for Leave to Conduct Depositions Out of Time. The Rule 30(b)(6) deposition(s) of Defendant Federal Bureau of Investigation as to the parties' agreed−upon topics may take place no later than January 28, 2022. Signed by Judge Christopher R. Cooper on 12/20/2021. (lccrc3) (Entered: 12/20/2021) |
| 12/20/2021 | | MINUTE ORDER: The post−discovery status conference scheduled for January 20, at 11:00 AM is vacated. The Court will reset that status conference for February 3, 2022, at 3:00 PM, by video before Judge Christopher R. Cooper. Video connection information will be provided to the parties separately. Signed by Judge Christopher R. Cooper on 12/20/2021. (lccrc3) (Entered: 12/20/2021) |
| 12/21/2021 | | MINUTE ORDER: The Court grants the government's 65 Motion to Seal and for an Order on Service. It is hereby ORDERED that the government's opposition to plaintiff's second motion to compel and the declaration of Garett Coyle and attached exhibits be maintained under seal. It is further ORDERED that the government may serve a copy of its opposition to the second motion to compel with the designated information redacted. Signed by Judge Christopher R. Cooper on 12/21/2021. (lccrc3) (Entered: 12/21/2021) |
| 12/21/2021 | 67 | Memorandum in opposition to re 62 SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) *(Public Version)* filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration of Alan Kohler Jr., # 2 Declaration of Garrett Coyle, # 3 Notice of Lodging)(Coyle, Garrett) (Entered: 12/21/2021) |
| 12/21/2021 | 68 | SEALED OPPOSITION filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE re 62 SEALED MOTION to Compel filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Notice of Lodging, # 2 Declaration of Alan Kohler Jr., # 3 Declaration of Garrett Coyle)(znmw) (Entered: 12/30/2021) |
| 01/05/2022 | 69 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support of Second Motion to Compel)(Jones, Matthew) (Entered: 01/05/2022) |
| 01/06/2022 | | MINUTE ORDER: Plaintiff's 69 Motion to Seal is hereby granted. Signed by Judge Christopher R. Cooper on 1/6/2022. (lccrc3) (Entered: 01/06/2022) |
| 01/06/2022 | 70 | REPLY to opposition to motion re 60 MOTION for Protective Order *by Federal Bureau of Investigation to Limit Rule 30(b)(6) Deposition Topics* filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Lum, Laurel) (Entered: 01/06/2022) |
| 01/06/2022 | 71 | |

| | | |
|---|---|---|
| | | Joint MOTION to Take Deposition from Stephen J. Rhoads *(Joint Motion For Leave To Conduct Deposition Out Of Time)* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 01/06/2022) |
| 01/06/2022 | 73 | SEALED REPLY TO OPPOSITION filed by YANPING CHEN re 62 SEALED MOTION to Compel filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (znmw) (Entered: 01/11/2022) |
| 01/07/2022 | | MINUTE ORDER: The Court grants the 71 Joint Motion for Leave to Conduct the Deposition of Stephen J. Rhoads Out of Time. It is hereby ORDERED that the deposition of non−party Mr. Rhoads may take place after January 7, 2022, but no later than February 28, 2022. Signed by Judge Christopher R. Cooper on 1/7/2022. (lccrc3) (Entered: 01/07/2022) |
| 01/11/2022 | 72 | REDACTED DOCUMENT− Reply Memorandum of Law in Further Support of Plaintiff Yanping Chen's Second Motion to Compel by YANPING CHEN. (Jones, Matthew) (Entered: 01/11/2022) |
| 01/13/2022 | | MINUTE ORDER: The post−discovery status conference scheduled for February 3, 2022, is vacated. The Court will reset that status conference for March 29, 2022, at 3:00 PM, by video before Judge Christopher R. Cooper. Video connection information will be provided to the parties separately. Signed by Judge Christopher R. Cooper on 1/13/2022. (lccrc3) (Entered: 01/13/2022) |
| 01/25/2022 | 74 | Joint MOTION for Leave to Conduct Deposition Out of Time by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 01/25/2022) |
| 01/25/2022 | | MINUTE ORDER: The Court grants the 74 Joint Motion for Leave to Conduct Deposition Out of Time. It is hereby ORDERED that the Rule 30(b)(6) deposition(s) of Defendant Federal Bureau of Investigation as to the parties' agreed−upon topics may take place no later than February 18, 2022. Signed by Judge Christopher R. Cooper on 1/25/2022. (lccrc3) (Entered: 01/25/2022) |
| 01/31/2022 | | MINUTE ORDER: The parties are hereby directed to appear for a sealed status conference on February 9, 2022, at 10:00 AM, in Courtroom 27−A in person before Judge Christopher R. Cooper. Signed by Judge Christopher R. Cooper on 1/31/2022. (lccrc3) (Entered: 01/31/2022) |
| 02/09/2022 | | Minute Entry for video Status Conference held before Judge Christopher R. Cooper on 2/9/2022. Forthcoming Order. (Court Reporter: Lisa Moreira) (lsj) (Entered: 02/09/2022) |
| 02/09/2022 | 75 | ORDER granting the 60 Defendants' Motion for Protective Order to Limit Rule 30(b)(6) Deposition Topics, and granting in part and denying in part the 62 Plaintiff's Motion to Compel. See full Order for details. Signed by Judge Christopher R. Cooper on 2/9/2022. (lccrc3) (Entered: 02/09/2022) |
| 02/14/2022 | 76 | Joint MOTION for Extension of Time to *Depose Stephen J. Rhoads* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order)(Jones, Matthew) (Entered: 02/14/2022) |
| 02/14/2022 | | MINUTE ORDER: The Court grants the 76 Joint Motion to Extend the Deadline for the Deposition of Stephen J. Rhoads. It is hereby ORDERED that the deposition of non−party Mr. Rhoads may take place no later than March 24, 2022. Signed by Judge Christopher R. Cooper on 2/14/2022. (lccrc3) (Entered: 02/14/2022) |

| | | |
|---|---|---|
| 02/18/2022 | 77 | TRANSCRIPT OF STATUS CONFERENCE before Judge Christopher R. Cooper held on February 9, 2022; Page Numbers: 1−11. Date of Issuance:February 18, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased f rom the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/11/2022. Redacted Transcript Deadline set for 3/21/2022. Release of Transcript Restriction set for 5/19/2022.(Moreira, Lisa) (Entered: 02/18/2022) |
| 03/25/2022 | | Set/Reset Hearings: Post−Discovery Hearing set for 3/29/2022 at 3:00 PM by VTC before Judge Christopher R. Cooper. (lsj) (Entered: 03/25/2022) |
| 03/25/2022 | | MINUTE ORDER: The post−discovery status conference scheduled for March 29 is hereby vacated and will be reset at a later date. Further, the parties shall file a Joint Status Report by April 28, 2022, updating the Court on whether there are any outstanding matters for discovery. So Ordered by Judge Christopher R. Cooper on 3/25/2022. (lccrc3) (Entered: 03/25/2022) |
| 04/28/2022 | 78 | Joint STATUS REPORT *on Outstanding Discovery Issues* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Coyle, Garrett) (Entered: 04/28/2022) |
| 05/02/2022 | | MINUTE ORDER: In light of the 78 Joint Status Report, the Court hereby GRANTS the plaintiff's request for a 60−day period in which she can seek third−party discovery from media entities or journalists regarding the alleged disclosure(s). The Court takes no position on the availability of such discovery. The parties are directed to file a Joint Status Report on or before July 1, 2022, updating the Court on the status of any discovery requests directed at media entities or journalists. The report shall also advise the parties' positions on mediation in the event a request for a mediation referral has not been made by then. So Ordered by Judge Christopher R. Cooper on 5/2/2022. (lccrc3) (Entered: 05/02/2022) |
| 05/04/2022 | 79 | TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE before Judge Christopher R. Cooper held on March 11, 2020; Page Numbers: 1−12. Date of Issuance:May 4, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the |

| | | |
|---|---|---|
| | | courthouse at a public terminal or purchas ed from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/25/2022. Redacted Transcript Deadline set for 6/4/2022. Release of Transcript Restriction set for 8/2/2022.(Moreira, Lisa) (Entered: 05/04/2022) |
| 05/10/2022 | 80 | NOTICE of Appearance by Andrew C. Phillips on behalf of YANPING CHEN (Phillips, Andrew) (Entered: 05/10/2022) |
| 06/01/2022 | | MINUTE ORDER: The Court has been made aware of a discovery dispute regarding a potential additional deposition of Stephen Rhoads. As the Court would prefer to resolve this matter on an expedited basis, it hereby sets the following deadlines and page limits. Plaintiff shall file her opening brief in support of her position on or before June 6, 2022. Defendants shall file their response on or before June 16, 2022. Plaintiff shall file a reply, if any, on or before June 21, 2022. Opening briefs shall not exceed 10 pages, and any reply shall not exceed 5 pages. So Ordered by Judge Christopher R. Cooper on 6/1/2022. (lccrc3) (Entered: 06/01/2022) |
| 06/03/2022 | 81 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order re Sealing, # 2 Motion for Limited Deposition, # 3 Text of Proposed Order re Motion for Limited Deposition, # 4 Declaration of Matthew T. Jones in Support Thereto, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5)(Jones, Matthew) (Entered: 06/03/2022) |
| 06/06/2022 | | MINUTE ORDER: The Court grants 81 Plaintiff's Motion to Seal. It is hereby ORDERED that Plaintiff's Motion for Limited Deposition and supporting memorandum of law, the declaration of Matthew T. Jones, and supporting exhibits be maintained under seal. Signed by Judge Christopher R. Cooper on 6/6/2022. (lccrc3) (Entered: 06/06/2022) |
| 06/06/2022 | 82 | NOTICE of Appearance by Shannon B. Timmann on behalf of YANPING CHEN (Timmann, Shannon) (Entered: 06/06/2022) |
| 06/06/2022 | 83 | SEALED MOTION for Limited Deposition filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Matthew T. Jones in Support Thereto, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5)(znmw) (Entered: 06/06/2022) |
| 06/16/2022 | 84 | RESPONSE re 83 SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Attachments: |

| | | |
|---|---|---|
| | | # 1 Text of Proposed Order)(Coyle, Garrett) (Entered: 06/16/2022) |
| 06/21/2022 | 85 | REPLY to opposition to motion re 83 SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. (Jones, Matthew) (Entered: 06/21/2022) |
| 06/22/2022 | | MINUTE ORDER: The Court has considered the Plaintiff's 83 Motion for Limited Deposition of Stephen Rhoads. Defendants' 84 Response takes no position on the Motion, but they reserve the right to oppose a second deposition in the context of any motion to quash that may be filed in response to a deposition subpoena. It is hereby ORDERED that the Motion for Limited Deposition of Stephen Rhoads is GRANTED. It is FURTHER ORDERED that Plaintiff may issue a deposition subpoena to Stephen Rhoads for a two−hour remote deposition for the limited purpose of obtaining testimony related to the apparent disappearance of the phone at issue and Rhoads's search of that phone for messages responsive to the prior subpoena issued to him under Federal Rule of Civil Procedure 45. Signed by Judge Christopher R. Cooper on 6/22/2022. (lccrc3) (Entered: 06/22/2022) |
| 07/01/2022 | 86 | Joint STATUS REPORT − *Status of Discovery Requests* by YANPING CHEN. (Jones, Matthew) (Entered: 07/01/2022) |
| 07/06/2022 | 87 | REDACTED DOCUMENT− Motion for Limited Deposition of Stephen Rhoads and Supporting Documents Thereto re 83 SEALED MOTION for Limited Deposition by YANPING CHEN. (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Matthew T. Jones in Support Thereto, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5)(Jones, Matthew) Modified on 7/7/2022 to add docket link (zjm). (Entered: 07/06/2022) |
| 07/07/2022 | | MINUTE ORDER: In light of the parties' 86 Joint Status Report, the Court hereby refers this case to mediation to Magistrate Judge G. Michael Harvey for a period of 120 days. The parties shall file a Joint Status Report on or before November 4, 2022, updating the Court on the general progress of mediation. Further, the discovery proceedings mentioned in the 86 Joint Status Report may continue during the period of this referral. So Ordered by Judge Christopher R. Cooper on 7/7/2022. (lccrc3) (Entered: 07/07/2022) |
| 07/07/2022 | | CASE DIRECTLY REFERRED to Magistrate Judge G. Michael Harvey for mediation. (zsb) (Entered: 07/12/2022) |
| 07/13/2022 | 88 | MEDIATION STANDING ORDER. Signed by Magistrate Judge G. Michael Harvey on 7/13/22. (MFB) (Entered: 07/13/2022) |
| 07/19/2022 | | Set/Reset Hearings: Settlement Conference set for 10/26/2022 at 10:00 AM before Magistrate Judge G. Michael Harvey. Location will be determined at a later date. (MFB) (Entered: 07/19/2022) |
| 07/20/2022 | 89 | NOTICE of Appearance by Patrick Philbin on behalf of CATHERINE HERRIDGE, FOX NEWS NETWORK, LLC (Philbin, Patrick) (Entered: 07/20/2022) |
| 07/20/2022 | 90 | Joint MOTION for Briefing Schedule by FOX NEWS NETWORK, LLC, CATHERINE HERRIDGE. (Attachments: # 1 Text of Proposed Order)(Philbin, Patrick) (Entered: 07/20/2022) |
| 07/21/2022 | | MINUTE ORDER: The Court grants the 90 Joint Motion to Establish a Briefing Schedule, and hereby sets the following deadlines. The Subpoena Recipients shall file their motions to quash on or before July 29, 2022. Plaintiff shall file her opposition on |

| | | |
|---|---|---|
| | | or before August 22, 2022. The Subpoena Recipients shall file any replies on or before September 6, 2022. Signed by Judge Christopher R. Cooper on 7/21/2022. (lccrc3) (Entered: 07/21/2022) |
| 07/28/2022 | 91 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Kyle West, Filing fee $ 100, receipt number ADCDC−9403296. Fee Status: Fee Paid. by FOX NEWS NETWORK, LLC. (Attachments: # 1 Declaration Declaration of Kyle West, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Philbin, Patrick) (Entered: 07/28/2022) |
| 07/29/2022 | | MINUTE ORDER: The Court denies without prejudice the 91 Motion for Admission of Attorney Pro Hac Vice as to Mr. Kyle West. It appears from the filing that Mr. West practices law from an office located in the District of Columbia. Under this Court's rules, any attorney who practices law from an office located in the District of Columbia must be a member of the District of Columbia Bar and the Bar of this Court to submit papers to this Court. See LCvR 83.2(c)(2) & Comment to LCvR 83.2(c)(2). Accordingly, Attorney West is ineligible for admission pro hac vice, and must instead apply for admission to the Bar of this Court. But Mr. West may renew his pro hac vice motion once he notifies the Court that his application for admission to the Bar of this Court has been submitted and is pending. So Ordered by Judge Christopher R. Cooper on 7/29/2022. (lccrc3) (Entered: 07/29/2022) |
| 07/29/2022 | 92 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Motion to Quash, # 3 Memorandum in Support of Motion to Quash, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P, # 20 Exhibit Q, # 21 Exhibit R, # 22 Exhibit S, # 23 Exhibit T, # 24 Exhibit U, # 25 Exhibit V, # 26 Exhibit W, # 27 Exhibit X, # 28 Exhibit Y, # 29 Text of Proposed Order)(Philbin, Patrick) (Entered: 07/29/2022) |
| 07/29/2022 | 93 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FOX NEWS NETWORK, LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Motion to Quash, # 3 Memorandum in Support of Motion to Quash, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Text of Proposed Order)(Philbin, Patrick) (Entered: 07/29/2022) |
| 08/01/2022 | | MINUTE ORDER: The 92 and 93 Motions for Leave to File Documents Under Seal are hereby granted. Signed by Judge Christopher R. Cooper on 8/1/2022. (lccrc3) (Entered: 08/01/2022) |
| 08/01/2022 | 94 | SEALED MOTION to Quash filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit G, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Text of Proposed Order)(zjm) (Entered: 08/05/2022) |
| 08/01/2022 | 95 | |

| | | |
|---|---|---|
| | | SEALED MOTION to Quash filed by FOX NEWS NETWORK, LLC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Text of Proposed Order)(zjm) (Entered: 08/05/2022) |
| 08/08/2022 | 96 | MOTION to Quash *(Redacted Public Version)* by CATHERINE HERRIDGE. (Attachments: # 1 Memorandum in Support of Motion to Quash, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Text of Proposed Order)(Philbin, Patrick) (Entered: 08/08/2022) |
| 08/08/2022 | 97 | MOTION to Quash *(Public Version)* by FOX NEWS NETWORK, LLC. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Text of Proposed Order)(Philbin, Patrick) (Entered: 08/08/2022) |
| 08/19/2022 | 98 | Joint MOTION for Extension of Time to File Response/Reply as to 95 SEALED MOTION filed by FOX NEWS NETWORK, LLC. (This document is SEALED and only available to authorized persons.), 94 SEALED MOTION filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) by FOX NEWS NETWORK, LLC, CATHERINE HERRIDGE. (Attachments: # 1 Text of Proposed Order)(Philbin, Patrick) (Entered: 08/19/2022) |
| 08/22/2022 | | MINUTE ORDER granting 98 Joint Motion to Extend Briefing Deadlines, and setting the following deadlines. Plaintiff shall file its opposition on or before August 24, 2022. The Subpoena Recipients shall file any replies on or before September 12, 2022. Signed by Judge Christopher R. Cooper on 8/22/22. (lccrc1) (Entered: 08/22/2022) |
| 08/24/2022 | 99 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order Proposed Order re Sealing, # 2 Memorandum in Support Plaintiff's Memorandum in Opposition, # 3 Exhibit Exhibit 1, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7, # 8 Exhibit Exhibit 8, # 9 Exhibit Exhibit 9, # 10 Exhibit Exhibit 10, # 11 Exhibit Exhibit 11, # 12 Exhibit Exhibit 12, # 13 Exhibit Exhibit 13, # 14 Exhibit Exhibit 14, # 15 Exhibit Exhibit 15, # 16 Exhibit Exhibit 16, # 17 Exhibit Exhibit 17, # 18 Exhibit Exhibit 18, # 19 Exhibit Exhibit 19, # 20 Exhibit Exhibit 20, # 21 Exhibit Exhibit 21, # 22 Exhibit Exhibit 22, # 23 Exhibit Exhibit 23, # 24 Exhibit Exhibit 24)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 100 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Exhibit 25, # 2 Exhibit Exhibit 26, # 3 Exhibit Exhibit 27, # 4 Exhibit Exhibit 28, # 5 Exhibit Exhibit 29, # 6 Exhibit Exhibit 30, # 7 Exhibit Exhibit 31)(Phillips, Andrew) (Entered: 08/24/2022) |

| | | |
|---|---|---|
| 08/24/2022 | 101 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 3a)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 102 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 3b)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 103 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 3c)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 104 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2a)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 105 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2b)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 106 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2c)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 107 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2d)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 108 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2e)(Phillips, |

| | | |
|---|---|---|
| | | Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 109 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2f)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 110 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2g)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 111 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2h)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 112 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2i)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 113 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38)(Timmann, Shannon) (Entered: 08/24/2022) |
| 08/24/2022 | 114 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2j)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 115 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 113 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 7a)(Timmann, |

| | | |
|---|---|---|
| | | Shannon) (Entered: 08/24/2022) |
| 08/24/2022 | 116 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 99 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2k)(Phillips, Andrew) (Entered: 08/24/2022) |
| 08/24/2022 | 117 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 113 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 7b)(Timmann, Shannon) (Entered: 08/24/2022) |
| 08/24/2022 | 118 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 113 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 8a)(Timmann, Shannon) (Entered: 08/24/2022) |
| 08/24/2022 | 119 | SEALED LARGE ADDITIONAL ATTACHMENT filed by YANPING CHEN. re 113 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. *CONTINUATION* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 8b)(Timmann, Shannon) (Entered: 08/24/2022) |
| 08/26/2022 | | MINUTE ORDER: The 99 and 113 Motions for Leave to File Documents Under Seal are hereby granted. Signed by Judge Christopher R. Cooper on 8/26/2022. (lccrc1) (Entered: 08/26/2022) |
| 08/26/2022 | 120 | SEALED OPPOSITION filed by YANPING CHEN re 95 Sealed Motion, (Attachments: # 1 Exhibit 1, # 2 Exhibit 4, # 3 Exhibit 5, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 8, # 7 Exhibit 9, # 8 Exhibit 10, # 9 Exhibit 11, # 10 Exhibit 12, # 11 Exhibit 13, # 12 Exhibit 14, # 13 Exhibit 15, # 14 Exhibit 16, # 15 Exhibit 17, # 16 Exhibit 18, # 17 Exhibit 19, # 18 Exhibit 20, # 19 Exhibit 21, # 20 Exhibit 22, # 21 Exhibit 23, # 22 Exhibit 24)(zjm) (Entered: 08/29/2022) |
| 08/26/2022 | 121 | SEALED OPPOSITION filed by YANPING CHEN re 94 Sealed Motion,, (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 9, # 8 Exhibit 10, # 9 Exhibit 11, # 10 Exhibit 12, # 11 Exhibit 13, # 12 Exhibit 14, # 13 Exhibit 15, # 14 Exhibit 16, # 15 Exhibit 17, # 16 Exhibit 18, # 17 Exhibit 19, # 18 Exhibit 20, # 19 Exhibit 21, # 20 Exhibit 22, # 21 Exhibit 23, # 22 Exhibit 24, # 23 Exhibit 25, # 24 Exhibit 26, # 25 Exhibit 27, # 26 Exhibit 28, # 27 Exhibit 29, # 28 Exhibit 30, # 29 Exhibit 31, # 30 Supplement 32, # 31 Exhibit 33, # 32 Exhibit 34, # 33 Exhibit 35, # 34 Exhibit 36, # 35 Exhibit 37, # 36 Exhibit 38)(zjm) (Entered: 08/29/2022) |
| 09/06/2022 | 122 | Memorandum in opposition to re 95 Sealed Motion, *Opposition (Redacted Public Version) to Fox News Network's Motion to Quash* filed by YANPING CHEN. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit |

| | | |
|---|---|---|
| | | 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31)(Phillips, Andrew) (Entered: 09/06/2022) |
| 09/06/2022 | 123 | Memorandum in opposition to re 94 Sealed Motion,, *OPPOSITION (Redacted Public Version) to Catherine Herridge's MOTION to Quash* filed by YANPING CHEN. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38)(Phillips, Andrew) (Entered: 09/06/2022) |
| 09/12/2022 | 124 | NOTICE of Appearance by Kyle West on behalf of FOX NEWS NETWORK, LLC, CATHERINE HERRIDGE (West, Kyle) (Entered: 09/12/2022) |
| 09/12/2022 | 125 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Reply in Support of Motion to Quash, # 3 Exhibit Z)(West, Kyle) (Entered: 09/12/2022) |
| 09/12/2022 | 126 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FOX NEWS NETWORK, LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Reply in Support of Motion to Quash)(West, Kyle) (Entered: 09/12/2022) |
| 09/12/2022 | | MINUTE ORDER: The 125 and 126 Motions for Leave to File Documents Under Seal are hereby granted. Signed by Judge Christopher R. Cooper on 9/12/2022. (lccrc1) (Entered: 09/12/2022) |
| 09/12/2022 | 127 | SEALED REPLY TO OPPOSITION filed by CATHERINE HERRIDGE re 94 Sealed Motion,, (This document is SEALED and only available to authorized persons.) (Attachment: # 1 Exhibit Z)(zjm) (Entered: 09/15/2022) |
| 09/12/2022 | 128 | SEALED REPLY TO OPPOSITION filed by FOX NEWS NETWORK, LLC re 95 Sealed Motion, (This document is SEALED and only available to authorized persons.)(zjm) (Entered: 09/15/2022) |
| 09/13/2022 | | NOTICE OF ERROR re 125 Sealed Motion for Leave to File Document Under Seal; emailed to kwest@egcfirm.com, cc'd 20 associated attorneys -- The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. DO NOT REFILE. Counsel is reminded that log in and password should match signature page. (zjm, ) (Entered: 09/13/2022) |
| 09/22/2022 | 129 | REPLY to opposition to motion re 94 SEALED MOTION filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) *(Redacted Public Version)* filed by CATHERINE HERRIDGE. (Attachments: # 1 Exhibit Z)(Philbin, Patrick) (Entered: 09/22/2022) |
| 09/22/2022 | 130 | REPLY to opposition to motion re 95 SEALED MOTION filed by FOX NEWS NETWORK, LLC. (This document is SEALED and only available to authorized |

| | | |
|---|---|---|
| | | persons.) *(Public Version)* filed by FOX NEWS NETWORK, LLC. (Philbin, Patrick) (Entered: 09/22/2022) |
| 10/13/2022 | | Set/Reset Hearings: Settlement Conference set for 10/26/2022 at 10:00 AM in Courtroom 6− In Person before Magistrate Judge G. Michael Harvey. (MFB) (Entered: 10/13/2022) |
| 10/26/2022 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Settlement Conference held on 10/26/2022. (MFB) (Entered: 10/27/2022) |
| 11/03/2022 | 131 | Joint STATUS REPORT *re Mediation* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Coyle, Garrett) (Entered: 11/03/2022) |
| 11/04/2022 | | MINUTE ORDER: In light of the parties' 131 Joint Status Report, it is hereby ORDERED that the parties shall file a further joint status report by November 21, 2022. Signed by Judge Christopher R. Cooper on 11/4/2022. (lccrc1) (Entered: 11/04/2022) |
| 11/18/2022 | 132 | Joint STATUS REPORT *re: Mediation* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Coyle, Garrett) (Entered: 11/18/2022) |
| 12/28/2022 | 133 | NOTICE OF WITHDRAWAL OF APPEARANCE *of Withdrawal of Patrick Carome as Counsel* by YANPING CHEN (Carome, Patrick) Modified on 12/28/2022 to correct event (zjm). (Entered: 12/28/2022) |
| 01/26/2023 | 134 | NOTICE of Change of Address by Matthew T. Jones (Jones, Matthew) (Entered: 01/26/2023) |
| 04/19/2023 | | MINUTE ORDER: The parties shall appear for a Motion Hearing regarding the 96 and 97 Motions to Quash filed by Catherine Herridge and Fox News Network, LLC on May 30, 2023 at 10:00 AM in Courtroom 27A (In Person) before Judge Christopher R. Cooper. Signed by Judge Christopher R. Cooper on 4/19/2023. (lccrc1) (Entered: 04/19/2023) |
| 05/23/2023 | 135 | NOTICE of Appearance by Leslie Cooper Vigen on behalf of DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE (Vigen, Leslie) (Entered: 05/23/2023) |
| 05/30/2023 | | Minute Entry for proceedings held before Judge Christopher R. Cooper: Motion Hearing held on 5/30/2023 re 96 MOTION to Quash *(Redacted Public Version)* filed by CATHERINE HERRIDGE, 97 MOTION to Quash *(Public Version)* filed by FOX NEWS NETWORK, LLC. Oral arguments heard, motions taken under advisement. (Court Reporter Lisa Moreira) (nbn) (Entered: 05/30/2023) |
| 06/06/2023 | 136 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Hearing transcript with proposed redactions, # 2 Text of Proposed Order)(Vigen, Leslie) (Entered: 06/06/2023) |

| | | |
|---|---|---|
| 06/08/2023 | | MINUTE ORDER: The Court grants the Government's 136 Consent Motion to Seal. Any version of the public portion of the May 30, 2023 hearing transcript released to the public will be redacted in the manner requested by the Government. Signed by Judge Christopher R. Cooper on 6/8/2023. (lccrc1) (Entered: 06/08/2023) |
| 06/21/2023 | 137 | STIPULATION by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Vigen, Leslie) (Entered: 06/21/2023) |
| 06/26/2023 | 138 | ORDER re 137 Joint Stipulation. See full Order for details. Signed by Judge Christopher R. Cooper on 6/26/2023. (lccrc1) (Entered: 06/26/2023) |
| 07/31/2023 | | Minute Order: The parties indicate in their briefing that Plaintiff's counsel served a deposition subpoena on Ms. Herridge on June 16, 2022. However, the Court does find the subpoena for Ms. Herridge's testimony in the submitted exhibits. The parties are therefore directed to file a copy of this subpoena by August 1, 2023. Signed by Judge Christopher R. Cooper on 7/31/2023. (lccrc1) (Entered: 07/31/2023) |
| 07/31/2023 | 139 | NOTICE *of Filing Deposition Subpoena* by YANPING CHEN re Order,, Set Deadlines, (Attachments: # 1 Exhibit Exhibit A)(Phillips, Andrew) (Entered: 07/31/2023) |
| 08/02/2023 | | MINUTE ORDER: Because it cites material and exhibits filed under seal by the parties, the Court has filed under seal the 140 Memorandum Opinion and Order. The parties are directed to submit any proposed redactions to this Memorandum Opinion and Order on or before August 9, 2023. If no proposed redactions are forthcoming, the Court will unseal the Memorandum Opinion and Order. Signed by Judge Christopher R. Cooper on 8/2/2023. (lccrc1) (Entered: 08/02/2023) |
| 08/09/2023 | 141 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Aug. 1, 2023, Memorandum Opinion and Order with Proposed Redactions, # 2 Text of Proposed Order)(Federighi, Carol) (Entered: 08/09/2023) |
| 08/09/2023 | 142 | ERRATA *Correcting Plaintiffs Memorandum in Opposition To Non−Party Catherine V. Herridges Motion to Quash* by YANPING CHEN re 123 Memorandum in Opposition,,,. (Phillips, Andrew) (Entered: 08/09/2023) |
| 08/09/2023 | 143 | NOTICE of Change of Address by Andrew C. Phillips (Phillips, Andrew) (Entered: 08/09/2023) |
| 08/11/2023 | 144 | MOTION for Certification for interlocatory appeal by CATHERINE HERRIDGE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Philbin, Patrick) (Entered: 08/11/2023) |
| 08/11/2023 | 145 | MOTION to Stay *Mem. Op. and Order, ECF No. 140 (August 1, 2023)* by CATHERINE HERRIDGE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Philbin, Patrick) (Entered: 08/11/2023) |
| 08/12/2023 | | MINUTE ORDER: In light of the 144 Motion for Certification for Interlocutory Appeal and 145 Motion for Stay Pending Appeal, Plaintiff is hereby directed to file any opposition by August 16, 2023. Signed by Judge Christopher R. Cooper on 8/12/2023. (lccrc1) (Entered: 08/12/2023) |

| | | |
|---|---|---|
| 08/16/2023 | 146 | ORDER granting 141 Sealed Motion for Leave to File Document Under Seal. See full Order for details. Signed by Judge Christopher R. Cooper on 8/16/2023. (lccrc1) (Entered: 08/16/2023) |
| 08/16/2023 | 147 | Memorandum in opposition to re 145 Motion to Stay, 144 Motion for Certification for interlocatory appeal filed by YANPING CHEN. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Phillips, Andrew) (Entered: 08/16/2023) |
| 08/17/2023 | 148 | REDACTED MEMORANDUM OPINION AND ORDER granting in part and denying in part Catherine Herridge's 94 and 96 Motion to Quash and granting 95 and 97 Fox News Network's Motion to Quash. See full Redacted Memorandum Opinion and Order for details. Signed by Judge Christopher R. Cooper on 8/18/2023. (lccrc1) (Entered: 08/17/2023) |
| 08/18/2023 | 149 | REPLY to opposition to motion re 145 MOTION to Stay *Mem. Op. and Order, ECF No. 140 (August 1, 2023),* 144 MOTION for Certification for interlocatory appeal filed by CATHERINE HERRIDGE. (Philbin, Patrick) (Entered: 08/18/2023) |
| 08/31/2023 | 150 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 140 Order, , Memorandum & Opinion, by CATHERINE HERRIDGE. Filing fee $ 505, receipt number ADCDC−10319865. Fee Status: Fee Paid. Parties have been notified. (Philbin, Patrick) Modified on 9/1/2023 to add docket link (zjm). (Entered: 08/31/2023) |
| 09/01/2023 | 151 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 150 Notice of Appeal to DC Circuit Court,. (zjm) (Entered: 09/01/2023) |
| 09/06/2023 | 152 | OPINION AND ORDER denying Catherine Herridge's 144 Motion for Certificate of Appealability and denying 145 Motion to Stay. See full Opinion and Order for details. Signed by Judge Christopher R. Cooper on 9/6/2023. (lccrc1) (Entered: 09/06/2023) |
| 09/06/2023 | | USCA Case Number 23−5198 for 150 Notice of Appeal to DC Circuit Court, filed by CATHERINE HERRIDGE. (znmw) (Entered: 09/07/2023) |
| 10/02/2023 | 153 | MOTION for Reconsideration re 152 Order on Motion for Certification for Interlocatory Appeal, Order on Motion to Stay by CATHERINE HERRIDGE. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A)(Philbin, Patrick). Added MOTION to Expedite on 10/3/2023 (zjm). (Entered: 10/02/2023) |
| 10/03/2023 | 154 | NOTICE of Appearance by Chase Traver Harrington on behalf of FOX NEWS NETWORK, LLC, CATHERINE HERRIDGE (Harrington, Chase) (Entered: 10/03/2023) |
| 10/04/2023 | | MINUTE ORDER: In light of the 153 Motion for Reconsideration, Plaintiff is hereby directed to file a response by October 9, 2023, and Ms. Herridge is directed to file her reply by October 11, 2023. Signed by Judge Christopher R. Cooper on 10/4/2023. (lccrc1) (Entered: 10/04/2023) |
| 10/09/2023 | 155 | NOTICE of Change of Address by Shannon B. Timmann (Timmann, Shannon) Modified on 10/10/2023 to correct dated filed (zjm). (Entered: 10/10/2023) |
| 10/09/2023 | 156 | Memorandum in opposition to re 153 Motion for Reconsideration,, Motion to Expedite, filed by YANPING CHEN. (Phillips, Andrew) Modified on 10/10/2023 to correct dated filed (zjm). (Entered: 10/10/2023) |
| 10/11/2023 | 157 | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re 153 MOTION for Reconsideration re 152 Order on Motion for Certification for Interlocutory Appeal, Order on Motion to Stay MOTION to Expedite filed by CATHERINE HERRIDGE. (Philbin, Patrick) (Entered: 10/11/2023) |
| 10/27/2023 | 158 | OPINION AND ORDER denying 153 Motion for Reconsideration. See full Opinion and Order for details. Signed by Judge Christopher R. Cooper on 10/27/2023. (lccrc1) (Entered: 10/27/2023) |
| 10/30/2023 | 159 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Application for Order to Show Cause, # 3 Memorandum in Support of Application for Order to Show Cause, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Text of Proposed Order)(Phillips, Andrew) (Entered: 10/30/2023) |
| 10/31/2023 | 160 | MOTION for Extension of Time to File Response/Reply as to 159 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) , MOTION to Expedite by CATHERINE HERRIDGE. (Attachments: # 1 Text of Proposed Order re: Motion to Extend Deadlines, # 2 Text of Proposed Order re: Motion to Expedite, # 3 Memorandum in Support)(Philbin, Patrick) (Entered: 10/31/2023) |
| 11/01/2023 | | NOTICE of Hearing: Telephone Conference re Motion 160 for Extension of Time to File Response/Reply set for 11/1/2023 at 12:00 PM by VTC before Judge Christopher R. Cooper. (lsj) (Entered: 11/01/2023) |
| 11/01/2023 | | Minute Entry for Telephonic Status Conference held before Judge Christopher R. Cooper on 11/1/2023. Forthcoming Order. (Court Reporter: Lisa Moreira) (lsj) (Entered: 11/01/2023) |
| 11/03/2023 | | MINUTE ORDER: Plaintiff's 159 Motion for Leave to File Document Under Seal is hereby granted. Signed by Judge Christopher R. Cooper on 11/3/2023. (lccrc1) (Entered: 11/03/2023) |
| 11/03/2023 | 164 | SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Text of Proposed Order)(zjm) (Entered: 11/21/2023) |
| 11/07/2023 | 161 | MOTION for Order to Show Cause *Public Version* by YANPING CHEN. (Attachments: # 1 Memorandum in Support of Application to Show Cause, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Phillips, Andrew) (Entered: 11/07/2023) |
| 11/14/2023 | 162 | ORDER granting 161 Motion for Order to Show Cause. See full Order to Show Cause for details. Signed by Judge Christopher R. Cooper on 11/14/2023. (lccrc1) (Entered: 11/14/2023) |
| 11/14/2023 | | MINUTE ORDER: In light of the 162 Order to Show Cause, the Court denies as moot the 160 Motion for Extension of Time to File Response. Signed by Judge Christopher R. Cooper on 11/14/2023. (lccrc1) (Entered: 11/14/2023) |
| 11/17/2023 | 163 | MANDATE of USCA as to 150 Notice of Appeal to DC Circuit Court, filed by CATHERINE HERRIDGE ; USCA Case Number 23−5198. (Attachments: # 1 USCA Order 9/25/2023)(znmw) (Entered: 11/17/2023) |

| | | |
|---|---|---|
| 11/27/2023 | 165 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Motion to Unseal Documents, # 3 Memorandum in Support, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Text of Proposed Order)(Philbin, Patrick) (Entered: 11/27/2023) |
| 11/30/2023 | 166 | NOTICE of Appearance by Elizabeth J. Shapiro on behalf of All Defendants (Shapiro, Elizabeth) (Entered: 11/30/2023) |
| 12/11/2023 | 167 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order re Motion for Leave, # 2 Cross−Motion to Unseal, # 3 Opposition to Motion to Seal and Memorandum in Support of Cross−Motion to Unseal, # 4 Exhibit s to Opposition to Motion to Seal and Memorandum in Support of Cross−Motion to Unseal, # 5 Text of Proposed Order re Motion to Seal)(Phillips, Andrew) (Entered: 12/11/2023) |
| 12/11/2023 | 168 | ENTERED IN ERROR.....SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order re Motion for Leave, # 2 Cross−Motion to Unseal, # 3 Opposition to Motion to Seal and Memorandum in Support of Cross−Motion to Unseal, # 4 s to Opposition to Motion to Seal and Memorandum in Support of Cross−Motion to Unseal, # 5 Text of Proposed Order re Motion to Seal)(Phillips, Andrew) Modified on 1/12/2024 duplicate entry of 167 (zjm). (Entered: 12/11/2023) |
| 12/13/2023 | 169 | MOTION for Extension of Time to File Response/Reply as to 165 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) by CATHERINE HERRIDGE. (Attachments: # 1 Text of Proposed Order)(Philbin, Patrick) (Entered: 12/13/2023) |
| 12/14/2023 | 170 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Response to the Order to Show Cause, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H)(Philbin, Patrick) (Entered: 12/14/2023) |
| 12/15/2023 | | MINUTE ORDER granting 169 Motion for Extension. Ms. Herridge shall file her Reply in support of her 165 Motion to Unseal Documents by January 3, 2024. Signed by Judge Christopher R. Cooper on 12/15/2023. (lccrc1) (Entered: 12/15/2023) |
| 12/15/2023 | 171 | Consent MOTION for Extension of Time to *Extend Briefing Schedule* by YANPING CHEN. (Attachments: # 1 Text of Proposed Order PROPOSED ORDER)(Phillips, Andrew) (Entered: 12/15/2023) |
| 12/18/2023 | | MINUTE ORDER granting 171 Motion for Extension of Time. Plaintiff shall file her reply in support of her 159 Application for an Order to Show Cause by January 5, 2024. Signed by Judge Christopher R. Cooper on 12/18/2023. (lccrc1) (Entered: 12/18/2023) |
| 12/19/2023 | 172 | Consent MOTION for Extension of Time to *Respond to Plaintiff's Cross−Motion to Unseal* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF |

| | | |
|---|---|---|
| | | JUSTICE. (Attachments: # 1 Text of Proposed Order)(Lum, Laurel) (Entered: 12/19/2023) |
| 12/20/2023 | | MINUTE ORDER granting 172 Motion for Extension. Defendants shall respond to Plaintiff's Cross−Motion to Unseal Judicial Records by January 25, 2024. Signed by Judge Christopher R. Cooper on 12/20/2023. (lccrc1) (Entered: 12/20/2023) |
| 12/20/2023 | | NOTICE OF ERROR re 172 Motion for Extension of Time to; emailed to laurel.h.lum@usdoj.gov, cc'd 27 associated attorneys −− The PDF file you docketed contained errors: 1. **Please note the following deficiency and file/refile document as instructed**, 2. Counsel directed to file an Errata containing a valid attorney signature. (zjm, ) (Entered: 12/20/2023) |
| 12/20/2023 | 173 | ERRATA *Government's Consent Motion for Extension of Time to Respond to Plaintiff's Cross−Motion to Unseal* by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE re 172 Motion for Extension of Time to,. (Lum, Laurel) (Entered: 12/20/2023) |
| 01/02/2024 | 174 | MOTION to Unseal Document *(Public, Redacted Version)* by CATHERINE HERRIDGE. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order)(Philbin, Patrick) (Entered: 01/02/2024) |
| 01/03/2024 | 175 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Reply in Support of Motion to Unseal, # 3 Exhibit D)(Philbin, Patrick) (Entered: 01/03/2024) |
| 01/04/2024 | 176 | RESPONSE TO ORDER TO SHOW CAUSE re 162 Order on Motion for Order to Show Cause, Set/Reset Deadlines *(Public Version)* filed by CATHERINE HERRIDGE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Philbin, Patrick) (Entered: 01/04/2024) |
| 01/04/2024 | 177 | Unopposed MOTION for Leave to File *Brief as Amicus Curiae in Support of Non−Party Catherine V. Herridges Response to the Order to Show Cause* by REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS. (Attachments: # 1 Proposed Brief of Amicus Curiae, # 2 Declaration of Toni Locy, # 3 Text of Proposed Order)(Brown, Bruce) (Entered: 01/04/2024) |
| 01/04/2024 | 178 | NOTICE of Appearance by Bruce D. Brown on behalf of REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS (Brown, Bruce) (Main Document 178 replaced on 1/5/2024) (zjm). NOTICE of Appearance by Bruce D. Brown on behalf of REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS (Brown, Bruce) (Main Document 178 replaced on 1/5/2024) (zjm). (Entered: 01/04/2024) |
| 01/05/2024 | 179 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by YANPING CHEN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Reply in Support of Application for an Order to Show Cause, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L)(Phillips, Andrew) (Entered: 01/05/2024) |
| 01/10/2024 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: The 165 , 167 , 170 , 175 , and 179 Motions for Leave to File Documents Under Seal are hereby granted. Signed by Judge Christopher R. Cooper on 1/10/2024. (lccrc1) Modified on 1/12/2024 (zjm). (Entered: 01/10/2024) |
| 01/10/2024 | 180 | SEALED MOTION filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order)(zjm) (Entered: 01/12/2024) |
| 01/10/2024 | 181 | SEALED Cross MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) (Attachment: # 1 Text of Proposed Order)(zjm) (Entered: 01/12/2024) |
| 01/10/2024 | 182 | SEALED OPPOSITION filed by YANPING CHEN re 180 Sealed Motion (Attachment: # 1 Exhibit s to Opposition to Motion to Seal and Memorandum in Support of Cross−Mot)(zjm) (Entered: 01/12/2024) |
| 01/10/2024 | 183 | SEALED DOCUMENT filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(zjm) (Entered: 01/12/2024) |
| 01/10/2024 | 184 | SEALED REPLY TO OPPOSITION filed by CATHERINE HERRIDGE re 180 Sealed Motion (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit D)(zjm) (Entered: 01/12/2024) |
| 01/10/2024 | 185 | SEALED REPLY TO OPPOSITION filed by YANPING CHEN re 164 Sealed Motion (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(zjm) (Entered: 01/12/2024) |
| 01/17/2024 | 186 | NOTICE of Change of Address by Patrick F. Philbin (Philbin, Patrick) (Entered: 01/17/2024) |
| 01/17/2024 | 187 | NOTICE of Change of Address by Kyle West (West, Kyle) (Entered: 01/17/2024) |
| 01/17/2024 | 188 | NOTICE of Change of Address by Chase Traver Harrington (Harrington, Chase) (Entered: 01/17/2024) |
| 01/18/2024 | 189 | STIPULATION re 181 SEALED MOTION filed by YANPING CHEN. (This document is SEALED and only available to authorized persons.) by DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit − Redacted Ex. M to Herridge's Mot. to Quash, # 2 Exhibit − Redacted Ex. N to Herridge's Mot. to Quash, # 3 Exhibit − Redacted Ex. O to Herridge's Mot. to Quas, # 4 Exhibit − Redacted Ex. P to Herridge's Mot. to Quas, # 5 Exhibit − Redacted Ex. Q to Herridge's Mot. to Quas, # 6 Exhibit − Redacted Ex. R to Herridge's Mot. to Quas, # 7 Exhibit − Redacted Ex. S to Herridge's Mot. to Quas, # 8 Exhibit − Redacted Ex. T to Herridge's Mot. to Quas, # 9 Exhibit − Redacted Ex. U to Herridge's Mot. to Quas, # 10 Exhibit − Redacted Ex. V to Herridge's Mot. to Quas, # 11 Exhibit − Redacted Ex. W to Herridge's Mot. to Quas, # 12 Exhibit − Redacted Ex. 5 to Plaintiff's Opp'n, # 13 Exhibit − Redacted Ex. 6 to Plaintiff's Opp'n, # 14 Exhibit − Ex. 11 to Plaintiff's Opp'n, # 15 Exhibit − Redacted Ex. 12 to Plaintiff's Opp'n, # 16 Exhibit − Redacted Ex. 13 to Plaintiff's Opp'n, # 17 Exhibit − Redacted Ex. 18 to |

| | | |
|---|---|---|
| | | Plaintiff's Opp'n, # 18 Exhibit − Redacted Ex. 36 to Plaintiff's Opp'n, # 19 Exhibit − Redacted Ex. 37 to Plaintiff's Opp'n)(Vigen, Leslie) (Entered: 01/18/2024) |
| 01/26/2024 | 190 | REPLY to opposition to motion re 180 SEALED MOTION filed by CATHERINE HERRIDGE. (This document is SEALED and only available to authorized persons.) *(Public Version)* filed by CATHERINE HERRIDGE. (Attachments: # 1 Exhibit D)(Philbin, Patrick) (Entered: 01/26/2024) |
| 01/31/2024 | 191 | REPLY to opposition to motion re 170 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CATHERINE HERRIDGE (This document is SEALED and only available to authorized persons.) filed by YANPING CHEN. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Phillips, Andrew) (Entered: 01/31/2024) |
| 02/02/2024 | 192 | NOTICE OF WITHDRAWAL OF APPEARANCE as to YANPING CHEN. Attorney Jessica A. Lutkenhaus terminated. (Lutkenhaus, Jessica) (Entered: 02/02/2024) |
| 02/29/2024 | | MINUTE ORDER granting 177 Motion for Leave to File Amicus Brief. Signed by Judge Christopher R. Cooper on 2/29/2024. (lccrc1) (Entered: 02/29/2024) |
| 02/29/2024 | 193 | MEMORANDUM OPINION AND ORDER finding Ms. Herridge in civil contempt of the August 1, 2023 Order of this Court; imposing a fine of $800.00 per day, payable to the United States, until Herridge complies therewith; staying the aforementioned fine for a period of thirty days, or until completion of proceedings on a timely appeal, whichever is later; and denying without prejudice Chen's application for a compensatory award of sanctions. See full Memorandum Opinion and Order for details. Signed by Judge Christopher R. Cooper on 2/29/2024. (lccrc1) (Entered: 02/29/2024) |
| 03/08/2024 | 194 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 193 Memorandum & Opinion,, Order,, Set Deadlines, 148 Memorandum & Opinion,, Order, by CATHERINE HERRIDGE. Filing fee $ 605, receipt number ADCDC−10742227. Fee Status: Fee Paid. Parties have been notified. (Harrington, Chase) (Entered: 03/08/2024) |
| 03/08/2024 | 195 | ERRATA *Re−submitting Notice of Appeal so log in and password matches the signature page* by CATHERINE HERRIDGE re 194 Notice of Appeal to DC Circuit Court,. (Philbin, Patrick) (Entered: 03/08/2024) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANPING CHEN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | **Case No. 1:18-cv-03074-CRC**<br><br>**Hon. Christopher R. Cooper**<br>**United States District Judge** |

**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE D.C. CIRCUIT**

Non-Party witness Catherine V. Herridge hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order of the United States District Court for the District of Columbia entered on February 29, 2024 (ECF No. 193), adjudging her in civil contempt, and from the Order of August 1, 2023 (ECF No. 140) (redacted version filed on August 17, 2023, ECF No. 148), denying in part her motion to quash and compelling her to give deposition testimony identifying her confidential source(s) in this matter, and from all orders antecedent to such orders and thus incorporated therein.

Respectfully submitted.

/s/ *Patrick F. Philbin*
Patrick F. Philbin (D.C. Bar No. 453620)
Kyle West (D.C. Bar No. 24093346)
Chase Harrington (D.C. Bar No. 1619501)
TORRIDON LAW PLLC
1155 F Street, NW Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@egcfirm.com

March 8, 2024

*Attorneys for Catherine Herridge*

**CERTIFICATE OF SERVICE**

I, Patrick F. Philbin, hereby certify that, on March 8, 2024, the foregoing Notice of Appeal to the United States Court of Appeals for the D.C. Circuit was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Respectfully submitted.

/s/ *Patrick F. Philbin*

Patrick F. Philbin (D.C. Bar No. 453620)
Kyle West (D.C. Bar No. 24093346)
Chase Harrington (D.C. Bar No. 1619501)
TORRIDON LAW PLLC
1155 F Street, NW Suite 750
Washington, DC 20004
(202) 249-6633
pphilbin@egcfirm.com

March 8, 2024

*Attorneys for Catherine Herridge*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **YANPING CHEN**,<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL BUREAU OF INVESTIGATION, *et al.***,<br><br>Defendants. | Case No. 18-cv-3074 (CRC) |

**MEMORANDUM OPINION AND ORDER**

In 2017, Fox News Network aired a series of investigative reports about Plaintiff Yanping Chen. The thrust of the stories, principally authored by journalist Catherine Herridge, was that Ms. Chen had concealed her former membership in the Chinese military on her U.S. immigration forms and might have been using a professional school she founded in Virginia to funnel valuable information about the American military to the Chinese government. The reports also contained materials—including photographs and images of internal government documents—that Chen alleges were leaked by government personnel to Herridge and Fox, in violation of the Privacy Act. After extensive discovery and several opinions by this Court, Chen has been unable to identify the source of the alleged leak. She thus issued subpoenas to Herridge and Fox, seeking to compel them to reveal their confidential source or sources. Asserting the First Amendment's qualified privilege for journalists, and urging the Court to adopt a federal common law newsgathering privilege, Herridge and Fox moved to quash the subpoenas.

The Court recognizes both the vital importance of a free press and the critical role that confidential sources play in the work of investigative journalists like Herridge. But applying the binding case law of this Circuit, the Court concludes that Chen's need for the requested evidence

overcomes Herridge's qualified First Amendment privilege in this case. The identity of Herridge's source is central to Chen's claim, and despite exhaustive discovery, Chen has been unable to ferret out his or her identity. The only reasonable option left is for Chen to ask Herridge herself.

## I. Background

As it has already detailed the factual and procedural background of this case in several previous opinions, the Court provides only a brief summary here. See Chen v. FBI, 435 F. Supp. 3d 189 (D.D.C. 2020); Chen v. FBI, Case No. 20-mc-107 (CRC), 2020 WL 7668880 (D.D.C. Dec. 24, 2020); Chen v. FBI, Case No. 20-mc-107 (CRC), 2021 WL 6125379 (D.D.C. Nov. 23, 2021); Chen v. FBI, Case No. 22-mc-0074 (CRC), 2022 WL 17851618 (D.D.C. Oct. 18, 2022). Plaintiff, Dr. Yanping Chen, founded the University of Management and Technology ("UMT"), an educational institution that attracted a substantial number of military servicemembers who attended with tuition assistance from the Department of Defense ("DOD"). Compl. ¶¶ 13, 42. Beginning in 2010, Chen, a naturalized U.S. citizen, became the focus of an FBI investigation concerning statements she made on certain immigration forms about her work in China in the 1980s. Id. ¶ 15. As a part of that investigation, the FBI executed search warrants for Chen's home and the main office of UMT, seizing materials during both searches. Id. ¶¶ 18, 20.

Prosecutors eventually informed Chen that no charges would be filed against her, but about a year later, Fox News Network ("Fox") ran a series of television segments and news articles about her. The articles, authored by then-Fox reporter Catherine Herridge, focused on Chen's alleged ties to the Chinese military and former role as a colonel in the People's Liberation Army. Id. ¶¶ 22, 25–31; see Catherine Herridge, Fox News Investigation: DoD-Funded School at Center of Federal Probes over Suspected Chinese Military Ties, Fox News (Feb. 24, 2017), https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-

probes-over-suspected-chinese-military-ties. The reporting also included family photographs of Chen; excerpts from Chen's immigration forms; and a snippet from what appears to be an FBI memorandum summarizing an interview conducted for the investigation. Compl. ¶¶ 25–31.

Believing that someone in the government leaked these materials to Herridge and Fox, in December 2018, Chen filed this Privacy Act lawsuit against the FBI, the Department of Defense ("DOD"), and two other federal agencies. Compl. ¶ 23. Since then, Chen has endeavored to suss out the identity of the potential leaker, including by serving scores of document requests, interrogatories, and requests for admission, taking eighteen depositions of current and former government employees, issuing over a dozen third-party subpoenas, and obtaining declarations from 22 government personnel who had a connection to the FBI's investigation. Opp. to Herridge Mot. at 2. Through that discovery, Chen has developed a theory for how Herridge and Fox obtained the allegedly leaked materials: that they came from an internal FBI PowerPoint presentation created by the lead agent on Chen's case. Id. at 1. She has also homed in on a few individuals who, she thinks, may have leaked that PowerPoint—namely FBI special agent Timothy Pappa (who created the PowerPoint), alleged FBI-informant Stephen Rhoads (who was an on-the-record source for Herridge's reporting), and a few other government agents who, at one time or another, might have possessed the PowerPoint. Id. at 10–11. Despite her efforts, Chen has been unable to obtain direct evidence that any of them, or any other person, was responsible for the alleged leak.

Accordingly, Chen now seeks to pursue the one seemingly surefire method to discover how Herridge and Fox obtained the materials in question: to ask them herself. Chen served Fox and Herridge with deposition subpoenas in May and June of 2022, respectively. See Notice of Filing Dep. Subpoena (Herridge deposition subpoena); Fox Mot. to Quash ("Fox Mot."), Ex. H. (Fox deposition subpoena). She also served both with subpoenas for documents and

communications relating to the materials in question. See Herridge Mot. to Quash ("Herridge Mot."), Ex. L (Herridge document subpoena); Fox Mot., Ex. G (Fox document subpoena). Among other things, the document subpoenas ask Herridge and Fox to produce "all Private Documents and Information in your possession" and to produce documents or communications "sufficient to identify the individual(s) that transmitted or provided the Private Documents and Information to you." Herridge Mot., Ex. L, Schedule A at 6–7. The subpoenas define "Private Documents and Information" to include "any and all documents and information concerning Dr. Chen and/or the University that were provided to or obtained by you from a third party and that were presented in, referred to, or considered in relation to the" Fox reporting on Chen, including in particular the photographs depicting her, FBI and immigration documents relating to her, and any "PowerPoint presentation, compilation, and/or report concerning" her. Id. at 3.

Herridge and Fox moved to quash the subpoenas, relying primarily on the qualified First Amendment journalist's privilege. Specifically, Herridge and Fox contend that Chen's subpoenas are overbroad, that she has not sufficiently exhausted alternative avenues to identify the alleged leaker, and, more broadly, that the public interest in maintaining the confidentiality of journalists' sources outweighs Chen's personal interest in her Privacy Act suit. Additionally, Herridge and Fox urge the Court to apply a common law newsgathering privilege to quash the subpoenas. Having held a hearing, the Court will now address the motions.

## II. Legal Standards

The Court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). "The individual or entity seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed." U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp., 301 F.R.D. 20, 25 (D.D.C. 2014) (quoting Sterne Kessler Goldstein & Fox, PLLC v.

Eastman Kodak Co., 276 F.R.D. 376, 379 (D.D.C. 2011)). As relevant here, a "party asserting the reporter's privilege . . . bears the burden of showing that it applies in a particular case." U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., 507 F. Supp. 2d 45, 50 (D.D.C. 2007). If the information sought by the subpoena falls within the privilege as a threshold matter, the party seeking the information may nevertheless compel compliance with the subpoena by showing that the balance of factors set forth in Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981), warrants disclosure. See Lee v. Dep't of Justice, 413 F.3d 53, 59–60 (D.C. Cir. 2005); Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115, 119 n.4 (D.D.C. 2002) ("Courts engage in the [Zerilli] balancing test . . . only after the reporter . . . has demonstrated that the privilege applies." (citing Shoen v. Shoen, 5 F.3d 1289, 1296 (9th Cir. 1993))); Goldberg v. Amgen, Inc., 123 F. Supp. 3d 9, 15 (D.D.C. 2015) ("In other words, if the privilege applies, [the requesting party] bears the burden of abrogating it.").

## III. Analysis

Herridge and Fox primarily invoke the First Amendment journalist's privilege. The Court therefore begins by assessing whether Chen has overcome that privilege, which she does not dispute applies in the first instance. The Court then assesses whether a federal common law newsgathering privilege may also warrant quashing the subpoenas.

### A. First Amendment Journalist's Privilege

The D.C. Circuit's opinion in Zerilli provides the test for applying "a non-party journalist's qualified privilege in a civil action such as this one, where testimony of journalists is sought because government officials have been accused of illegally providing the journalists with private information." Lee, 413 F.3d at 59. As a threshold matter, the parties agree that the Zerilli test governs this case and that the test begins, at least, by considering whether the information Chen seeks goes to "the heart of the matter" and whether Chen has exhausted "every reasonable

alternative source of information." Id. (quoting Zerilli, 656 F.2d at 713). They disagree, however, about whether the Zerilli test ends with those two considerations or, instead, requires (or at least permits) the Court to balance a host of other factors bearing on the parties' interests and the stakes of the case. The Court therefore begins by clarifying the contours of the Zerilli inquiry before proceeding to apply the relevant factors.

*1. The Zerilli Framework*

Chen asserts that Zerilli established a "two-part test for determining when a Privacy Act plaintiff seeking information about the disclosure of her protected information is entitled to obtain that information from a non-party reporter." Opp. to Herridge Mot. at 14. Those two elements, she says, are (1) whether the information sought is "central" to her claim and (2) whether she has exhausted other reasonable avenues of obtaining the information before seeking it from the journalist. Id. Herridge and Fox counter that the "[a]nalysis under Zerilli does not abruptly end with a mechanical assessment" of those two factors but rather requires "a broad balancing analysis," weighing such considerations as the plaintiff's personal interest in damages, her likelihood of success on the merits, the egregiousness of the government's alleged misconduct, and the importance of journalism in the context of reporting on national security matters. See Herridge Mot. at 22–39. In the Court's view, Zerilli, particularly as interpreted and applied in Lee, does not contemplate the kind of free-form, anything-goes analysis that Herridge and Fox seek. To be sure, Zerilli calls for a balancing test and counsels that, properly applied, the test should result in the privilege "prevail[ing] in all but the most exceptional cases." 656 F.2d at 712. But, as the Court will explain, Zerilli also channeled district courts' discretion by identifying the specific factors that weigh in the balance.

As here, Zerilli concerned the application of the First Amendment reporter's privilege to a Privacy Act suit brought against government officials accused of leaking sensitive information

about the plaintiffs—transcripts of incriminating conversations obtained during an FBI investigation—to the Detroit News. Id. at 707–08. In affirming the district court's denial of the plaintiffs' motion to compel the reporter to reveal his source for the transcripts, the D.C. Circuit first reiterated its previous conclusion that "to determine whether the privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." Id. at 712 (citing Carey v. Hume, 492 F.2d 631, 636 (D.C. Cir. 1974)). "In general," Zerilli explained, courts must "be mindful of the preferred position of the First Amendment and the importance of a vigorous press." Id. Accordingly, the rules governing compelled disclosure of confidential sources must "minimize impingement upon the reporter's ability to gather news." Id. Zerilli further predicted that, properly applying those rules, "the civil litigant's interest in disclosure should yield to the journalist's privilege" in "all but the most exceptional cases." Id.

Zerilli did not, however, end the analysis with that "general" guidance; rather, it proceeded to identify a "number of more precise guidelines" that "can be applied to determine how the balance should be struck in a particular case." Id. at 712–13. First, the court explained that the "civil litigant's need for the information he seeks" must be "of central importance," that is, go to "the heart of the matter" and be "crucial to his case." Id. at 713 (quoting Carey, 492 F.2d at 636). If the requested information is of central importance, "then the argument in favor of compelled disclosure may be relatively strong." Id.

Zerilli then added a second consideration—the "efforts made by the litigants to obtain the information from alternative sources"—which the court explained was "also of central importance." Id. "Even when the information is crucial to a litigant's case, reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." Id. That reasonable exhaustion requirement, the

court added, would reflect the "values resident in the protection of the confidential sources of newsmen." Id. (quoting Carey, 492 F.2d at 638).

Last, Zerilli explained that courts must mind the distinction "between civil cases in which the reporter is a party, as in a libel action, and cases in which the reporter is not a party." Id. at 714. If "the journalist is a party, and successful assertion of the privilege will effectively shield him from liability," that fact will "weigh somewhat more heavily in favor of disclosure," as application of the privilege in such circumstances, particularly in libel cases, "would effectively prevent recovery" most of the time. Id. Even so, the court emphasized that this third factor must be balanced against the "other relevant factors" recounted in the opinion—such as whether the information sought is crucial for the plaintiff's case—to determine whether "the privilege should prevail." Id.

"Applying *these* guidelines to the facts of the case," Zerilli concluded that the district court did not abuse its discretion by upholding the assertion of the First Amendment privilege. Id. (emphasis added). Although the suit was "not frivolous" and the information sought was "crucial" to the case, Zerilli held that the plaintiffs had "not fulfilled their obligation to exhaust possible alternative sources of information," noting in particular the plaintiffs' failure to depose individuals the Government identified as either possessing or knowing a great deal about the allegedly leaked transcripts. Id. at 714–15 (citing failure to depose "the four employees who had the greatest knowledge about the logs"). Zerilli thus prescribed a balancing test, but it did not give district courts free rein to populate that test with whatever factors they please. Rather than judge in the abstract "the civil litigant's interest" against "the public interest in protecting a newspaper's confidential sources," Zerilli instructed courts to weigh three "more precise guidelines" of "central importance" to the balancing analysis. Id. at 712–713.

That courts must tailor the balancing test to those central factors identified in Zerilli is confirmed by the D.C. Circuit's subsequent application of the analysis in Lee v. Department of Justice, 413 F.3d 53 (D.C. Cir. 2005). There, as here, the court considered the application of the First Amendment reporter's privilege to a Privacy Act claim stemming from an alleged leak by government personnel of sensitive personal information about the plaintiff. Id. at 55–56. After making hundreds of written discovery requests and deposing twenty government officials, the plaintiff finally issued subpoenas to the journalists who had published the information. Id. at 56. Applying Zerilli, the district court denied the journalists' motions to quash the subpoenas, and the D.C. Circuit affirmed in relevant part.[1] Id. at 55, 57.

Zerilli, Lee explained, "provides for a non-party journalist's qualified privilege in a civil action such as this one, where testimony of journalists is sought because government officials have been accused of illegally providing the journalists with private information." Id. at 59. After acknowledging Zerilli's consideration of the distinction between cases in which the reporter is a party and those in which the reporter is not a party, id. 57 n.1, Lee proceeded to identify the two remaining "guidelines [for] determining when a court can compel a non-party journalist to testify about a confidential source"—namely, whether the information sought goes to "the heart of the matter" and whether the litigant has exhausted "every reasonable alternative source of information," id. at 59 (quoting Zerilli, 656 F.2d at 713).

Emphasizing that "the protections of the Privacy Act do not disappear when the illegally disclosed information is leaked to a journalist, no matter how newsworthy the government official

[1] The Circuit vacated the district court's contempt order as to one of the reporters not based on the Zerilli analysis but rather because it found no clear and convincing evidence that that reporter had actually violated the district court's discovery order requiring the journalists to truthfully answer questions regarding the identities of the alleged leakers. Id. at 56, 63–64.

may feel the information is," Lee applied "the factors laid out in Zerilli" to find that the district court "did not abuse its discretion in requiring the journalists to testify." Id. at 60. Without the "identities of the leakers," the court reasoned, the plaintiff's ability "to show the other elements of the Privacy Act claim, such as willfulness and intent, will be compromised." Id. As to exhaustion, Lee observed that "the number of depositions necessary for exhaustion must be determined on a case-by-case basis" and concluded that, although the plaintiff "did not depose every individual who conceivably could have leaked the information," such absolute exhaustion is not necessary. Id. at 61. Requiring exhaustion of "every individual who could have had any kind of access to the information regardless of other evidence that the deponents on whom [the plaintiff] focused were in fact the sources of the leaks," the court continued, would impose an "unreasonable burden of discovery" on Privacy Act plaintiffs. Id.

Like Zerilli, then, Lee did not apply a free-form balancing of interests but rather struck the balance between private and public interests by reference to the specific factors identified in Zerilli—the centrality of the requested discovery and the exhaustion of reasonable alternatives. To be sure, the Court does not read Lee and Zerilli to *prohibit* district courts from considering additional factors. For instance, as Herridge points out, Zerilli also observed at the outset of its balancing analysis that "appellants' suit" there was "not frivolous." Zerilli, 656 F.2d at 714; see Herridge Reply at 9. One of Zerilli's chief sources for its balancing test, Carey v. Hume, 492 F.2d 631 (D.C. Cir. 1974), likewise noted that "the facts disclosed by the record" there were "inadequate to support a conclusion that" the plaintiff's likelihood of ultimate success on the merits was so remote "that no purpose would be served by disclosure of the identity of the sources." Id. at 638. These comments are fairly read to contemplate some limited consideration of the merits of a Privacy Act plaintiff's underlying claim, at least insofar as requiring disclosure

in a frivolous suit would serve "no purpose."[2] But consideration of a lawsuit's patent futility is a far cry from the full-blown preview of summary judgment briefing that Herridge and Fox seek here. Moreover, Carey itself cautioned against such an extensive interrogation of the merits at this stage of a case, observing that there had "been no motion by appellant for summary judgment" and "thus no showing of facts bearing upon the likelihood" of plaintiff's success on the merits, and emphasizing that the court did not "intimate any opinion as to" whether the plaintiff "will ultimately prevail." Id. at 637–38. In any case, whether or not Carey and Zerilli suggest that some consideration of the merits in frivolous cases might be permitted, Lee's affirmance of the district court based on balancing centrality and exhaustion alone suggests that those factors will be dispositive in the mine-run of cases.

Reading Zerilli and Lee to require a balancing test focused primarily, even if not exclusively, on centrality and exhaustion (and, where applicable, whether the journalists are parties or non-parties) also accords with the approach of other courts in this district. Take Hatfill v. Gonzales, 505 F. Supp. 2d 33 (D.D.C. 2007). Although the court there rejected "[a]s an initial matter" the non-party journalists' arguments that "the disclosures at issue" did not violate the Privacy Act, id. at 37–39, it then explained that Lee provided "direct and unequivocal guidance and instruction" for the plaintiff's motion to compel responses from the journalists, holding that the plaintiff had "satisfied both prongs of the Zerilli guidelines necessary to defeat the journalists' qualified privilege," id. at 40–43. In later rejecting the journalists' request that the court recognize a federal common law reporters' privilege, the court concluded that requiring courts to balance the

[2] Indeed, some consideration of the merits of a plaintiff's case may also factor into the analysis of the centrality of the sought-after information; if an obvious flaw will prevent a plaintiff from succeeding on her Privacy Act claim, then it might be said that the leaker's identity does not go to "the heart of the matter." Zerilli, 656 F.2d at 713 (quoting Carey, 492 F.2d at 636).

private interest, measured by the harm the leak caused, against the public interest in newsgathering, measured by the leaked information's value—the same considerations invoked by Herridge and Fox here—would be "inherently unworkable," putting courts in the position of judging "the newsworthiness of" a reporter's story. Id. at 46–47 & n.8 (quoting Lee v. Dep't of Justice (Lee II), 401 F. Supp. 2d 123, 139 (D.D.C. 2005)). Herridge correctly observes that there is some variation in how other courts have categorized or numbered the relevant factors. But the weight of authority is that Zerilli and Lee set forth the applicable considerations and did not give trial courts free rein to consider private and public interests in disclosure in the abstract. See, e.g., Tripp v. Dep't of Def., 284 F. Supp. 2d 50, 55 (D.D.C. 2003) (describing factors to be considered as centrality, exhaustion, "whether the journalist" is a party, and "whether the information sought is confidential or non-confidential in nature"); Hutira, 211 F. Supp. 2d at 119, 121–22 & n.8 (listing centrality and exhaustion as primary considerations, although exhaustion was dispositive, and noting that "the Court was unable to find any case in this circuit that suggests that it should appraise the underlying civil action so as to decide whether it is worth abrogating the privilege"); Goldberg, 123 F. Supp. 3d at 16 ("Courts must consider two main factors in deciding whether to compel a journalist to provide evidence."); id. at 17 (evaluating "the two Zerilli factors"); In re Subpoena to Goldberg, 693 F. Supp. 2d 81, 85 (D.D.C. 2010) (explaining that Zerilli "articulated a three-part test to determine the appropriate balance between the litigant's interest in the information and the public's interest," composed of centrality, exhaustion, and party-non-party status); McGraw-Hill Cos., 507 F. Supp. at 50 ("The balancing test requires evaluation of two factors: (1) the need for the information and (2) whether the party seeking the information has exhausted all reasonably available alternative sources.").[3]

[3] Herridge cites Grunseth v. Marriott Corp., 868 F. Supp. 333 (D.D.C. 1994), as an example of a court looking beyond the factors identified in Zerilli to consider also the relative

Before applying the Zerilli test to the facts at hand, the Court emphasizes that restricting the test largely to the "precise guidelines" set forth in that case "does not leave journalists without protection." Lee, 413 F.3d at 60. Herridge and Fox worry that if the Zerilli test mainly boils down to consideration of centrality and exhaustion, then Privacy Act plaintiffs "will eventually get access to confidential sources in *every* case," contrary to Zerilli's admonition that the privilege should prevail "in all but the most exceptional cases." Herridge Mot. at 3 (quoting Zerilli, 656 F.2d at 712); see also id. at 23–24. Vigilant application of the centrality and exhaustion factors, however, should ensure that compelled disclosure will be the exception, not the rule. For one, ensuring that the requested information is central to a plaintiff's claim, even in Privacy Act cases, will preclude overly broad subpoenas that reach further into the journalist's privilege than is required. Moreover, it is no easy task to exhaust all reasonable alternative sources of information. Many of the cases cited above concluded that plaintiffs had failed to do just that. See, e.g., Hutira, 211 F. Supp. 2d at 121–22; Tripp, 284 F. Supp. 2d at 60–61; In re Subpoena to Goldberg, 693 F. Supp. 2d at 88. In the Court's view, it is likely that, when forced to exhaust all reasonable alternatives, plaintiffs will often be able to identify the source of a journalist's reporting without resort to the journalist. And even where the Zerilli factors favor disclosure, "the usual requirements of relevance, need, and limited burdens on the subpoenaed person still apply." Lee,

"societal interest[s]" implicated by a request for disclosure of a journalist's source, id. at 335–36 (after analyzing the three Zerilli factors, observing that the case did not involve "election fraud, or governmental corruption, or any other issue that affects the fundamental validity of the electoral process" but only the plaintiff's demand for damages). Grunseth's consideration of societal interests unmoored from the Zerilli factors, however, is inconsistent with both Lee's analysis and the trend in this district. And as explained below, even if the Court were to analyze such considerations, Chen's interest in enforcing the Privacy Act here implicates public interests to a greater degree than the gubernatorial candidate in Grunseth who sought to identify sources of a newspaper report that he had an extramarital affair. Id. at 334.

413 F.3d at 60. In short, the Court is less troubled by Herridge and Fox's parade of horribles, particularly since there appears to have been no such widespread fallout since Lee.[4]

*2. Centrality*

The Court now turns to the first Zerilli factor: whether the information sought by Chen's subpoenas goes to "the heart of" her Privacy Act claim. Lee, 413 F.3d at 59 (quoting Zerilli, 656 F.2d at 713). The document subpoena to Herridge consists of four requests:

> **REQUEST NO. 1:**
> Produce all Private Documents and Information in your possession, in the form in which you received them.
>
> **REQUEST NO. 2:**
> Produce all Documents and Communications comprising, reflecting, or relating to transmission or provision of the Private Documents and Information to you.
>
> **REQUEST NO. 3:**
> Produce Documents or Communications sufficient to identify the individual(s) that transmitted or provided the Private Documents and Information to you.
>
> **REQUEST NO. 4:**
> Produce all Communications between or among, you, on the one hand, and, on the other hand, Stephen Rhoads and/or Timothy Pappa.

Herridge Mot., Ex. L, Schedule A at 6–7. The phrase "Private Documents and Information," in turn, is defined to include "any and all documents and information concerning Dr. Chen and/or the University that were provided to or obtained by you from a third party and that were presented in, referred to, or considered in relation to" Fox's broadcasts and news stories that contained the allegedly leaked information about Chen. Id. at 3. The document subpoena to Fox includes four similar requests. Fox Mot., Ex. G, Schedule A at 7. Herridge and Fox contend that these

[4] In his dissent from the denial of rehearing en banc in Lee, Judge Tatel expressed a concern similar to the one raised by Herridge and Fox, but they point to no evidence that the floodgates to journalists' notepads have opened in the eighteen years since then. See Lee v. Dep't of Justice, 428 F.3d 299, 301–02 (D.C. Cir. 2005) (Tatel, J., dissenting from denial of reh'g en banc).

subpoenas are overbroad as written because they would require disclosure of every document or piece of information obtained from anyone relating to Chen or her university, whether or not the documents or information bear any relation to the alleged release of records protected under the Privacy Act. Herridge Mot. at 17.

The Court agrees with Herridge and Fox that, as drafted, the subpoenas sweep beyond the information that is central to Chen's case. "As in Zerilli, the relevant information is the identity of the individuals who may have leaked information in violation of the Privacy Act," and without that information, Chen's "ability to show the other elements of the Privacy Act claim, such as willfulness and intent, will be compromised." Lee, 413 F.3d at 60. Read at their broadest, however, the subpoenas could require the disclosure of all of Herridge's sources who contributed information to her reporting, even if that information is not protected by the Privacy Act.

But this overbreadth does not doom Chen's requests. The Court has authority under Rule 45 to "quash or modify" a subpoena, Fed. R. Civ. P. 45(d)(3)(A), and "when appropriate," courts should "consider the possibility of modifying the subpoena rather than quashing" it, Est. of Klieman v. Palestinian Auth., 293 F.R.D. 235, 240 (D.D.C. 2013) (quoting Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)). Here, Herridge and Fox's counsel suggested at oral argument that the centrality factor would not be an obstacle for Chen if the subpoenas are "cut down to focus only on the deposition for the . . . identity of the source or sources" who provided Herridge with the material purportedly covered by the Privacy Act, namely, the photographs of Chen, the FBI interview reports, the immigration or naturalization documents, and the PowerPoint presentation created by Agent Pappa. Hearing Transcript at 9; see also Herridge Mot., Ex. L, Schedule A at 3 (listing relevant documents). The Court thus finds that the centrality factor favors disclosure if, as discussed below, the Court quashes the other subpoenas but enforces Chen's deposition subpoena of Herridge.

*3. Exhaustion of Alternatives*

Next, Zerilli and Lee require that "reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." Zerilli, 656 F.2d at 713; accord Lee, 413 F.3d at 59. Although the exhaustion requirement is "very substantial," "there are some limits to the obligation to pursue alternative sources." Zerilli, 656 F.2d at 714. A Privacy Act plaintiff need not, for instance, "depose every individual who conceivably could have leaked the information" or "who could have had any kind of access to the information regardless of other evidence that the deponents on whom [she] focused were in fact the sources of the leaks and were denying it." Lee, 413 F.3d at 61. To that end, litigants need not "be made to carry wide-ranging and onerous discovery burdens where the path is . . . ill-lighted." Id. (alteration in original) (quoting Carey, 492 F.2d at 639). Nor does Zerilli "require proof positive that the knowledge exists nowhere else on earth but in the minds of the journalists and their anonymous confidants." Lee v. U.S. Dep't of Justice (Lee III), 287 F. Supp. 2d 15, 23 (D.D.C. 2003). The number of depositions or extent of other discovery required for "reasonable" exhaustion "must be determined on a case-by-case basis," considering such factors as the efforts already undertaken, the burden of further discovery, and the likelihood that it would uncover the relevant information. Lee, 413 F.3d at 60–61.

Here, Chen's request to compel disclosure of the leaker's identity from Herridge and Fox has come at "the end, and not the beginning, of the inquiry." Zerilli, 656 F.2d at 713 (quoting Carey, 492 F.2d at 638). Chen has served the defendants in this case with 67 requests for production of documents, 67 interrogatories, and 57 requests for admission. Opp. to Herridge Mot. at 2. She has taken eighteen depositions of current and former government employees, including four 30(b)(6) depositions of FBI employees, issued thirteen third-party subpoenas, and obtained 22 declarations from other government personnel who were either part of or aware of the

underlying investigation into Chen. Id. In particular, she has deposed both FBI Agent Pappa—the creator of the PowerPoint Chen believes to be the source of the leaked material—and Stephen Rhoads—Herridge's on-the-record source who was privy to Pappa's work, who, in an email intended to prompt a Congressional investigation into Chen, boasted that "[n]obody on the planet [knew] more about this case than" he, and who proclaimed that he had "documents, emails, recordings and pictures that nobody else has." Id., Ex. 25 (cleaned up). During her depositions of other government employees, moreover, Chen also asked if they had any idea who might have provided the private documents used in Herridge's reporting. See, e.g., id., Ex. 17 at 164 [redacted]; id., Ex. 18 at 248 [redacted]; id., Exs. 20 & 21 [redacted]; id., Ex. 32 at 129 [redacted]. In a word, Chen's pursuit of discovery has been probing, yet she has been unable to ascertain the alleged leaker's identity. Indeed, her efforts have been far more extensive than those of the plaintiffs in Zerilli, who had made no attempt to depose any of the individuals who were most familiar with or who had access to documents from the investigation there. 656 F.2d at 714–15; see also Tripp, 284 F. Supp. 2d at 59 (upholding privilege where "the party seeking to compel disclosure has made no effort whatsoever, or insufficient efforts, to obtain the information sought from alternative sources, or has made conclusory claims that the information cannot be obtained from other sources"); In re Subpoena to Goldberg, 693 F. Supp. 2d at 88 (requiring litigant to seek out other sources that could "likely" provide requested information); Goldberg, 123 F. Supp. 3d at 20 (pointing out failure to seek "information from the obvious alternative sources").

Despite Chen's efforts, Herridge and Fox identify several stones they believe she must turn to exhaust reasonable alternative sources. Particularly in light of the extensive discovery Chen has already undertaken, however, the Court does not believe further exploration of any of these additional sources offers more than a speculative prospect of identifying the source of the leak.

First, Herridge and Fox insist that Chen should have secured a comprehensive list of—and either deposed or sought declarations from—all FBI personnel who might have had access to Agent Pappa's PowerPoint [redacted]. That group, they say, would include [redacted]. Herridge Mot. at 18. But Chen did try, unsuccessfully, to identify the relevant subset of those individuals who accessed the PowerPoint from that location. See Opp. to Herridge Mot., Ex. 30 at 29 (FBI 30(b)(6) deponent stating that [redacted]); id., Ex. 11 at 6 (FBI response to interrogatory stating that the [redacted]). In any event, requiring Chen to seek depositions or declarations from every person who nominally had access [redacted]—without any evidence that those individuals actually did access the PowerPoint (or, for that matter, were aware of its existence)—would be contrary to Lee's instruction that plaintiffs need not depose every individual "who could have had any kind of access to the information." 413 F.3d at 61.

Similarly speculative is Herridge and Fox's argument that Chen should have further pursued information about individuals who [redacted]. Specifically, Herridge and Fox point to [redacted].

See Herridge Mot. at 19; Opp. to Herridge Mot., Ex. 30 at 100. They also point to [redacted] to his supervisors. Herridge Mot. at 18; id., Ex. P at 90–91, 178–79. [redacted], Herridge and Fox contend that Chen should have identified and deposed (or sought declarations from) [redacted].

The foundation for such suppositions, however, is far too shaky. Although Pappa stated in his deposition that he believed [redacted], he also emphasized [redacted] Opp. to Herridge Mot., Ex. 5 at 214. At best, he could not recall [redacted] Id. at 215; see also id. at 217 (Pappa stating he could not recall [redacted]); id. at 228–29 (Pappa stating that he could not recall [redacted]); id. at 298 (Pappa stating he did not recall [redacted]). One [redacted] recalled that [redacted] but also remembered that [redacted]. Opp. to Herridge Mot., Ex. 33 at 28. [redacted] Id., Ex. 14 at 88–91. As lukewarm as these leads are, Chen nevertheless attempted to

ascertain the identities of [redacted] through the FBI's 30(b)(6) deponent, who stated [redacted]. Id., Ex. 30 at 35–36, 38. In short, Chen did conduct follow-up discovery to ascertain [redacted], and in any case, Herridge and Fox have identified nothing in the record to suggest it is reasonably likely someone from [redacted] accessed, absconded with, or leaked the PowerPoint.

Finally, the Court is unpersuaded by the remaining specters Herridge and Fox cite as potential recipients of the PowerPoint. They point to the possibility that Agent Pappa might have given a copy of the PowerPoint to [redacted] employee named [redacted] to convey to [redacted] (whom Chen deposed). But [redacted]. Id., Ex. 13. And [redacted] testified that he could not [redacted]. Id., Ex. 15 at 86–87. Herridge and Fox cite another email in which a [redacted], requested that Pappa send [redacted] based on the PowerPoint to [redacted]. Herridge Mot. at 18–19. But neither [redacted] nor another recipient of that email, both of whom Chen deposed, could say [redacted], Opp. to Herridge Mot., Ex. 16 at 114; id., Ex. 32 at 65, nor is there any reason to believe [redacted], had any contact with or reason to leak to Herridge. Last, Herridge and Fox cite [redacted]. Herridge Mot., Ex. R. Once again, Chen asked [redacted] in his deposition. He replied that [redacted]

[redacted]. Opp. to Herridge Mot., Ex. 32 at 110–11.

To summarize, none of the potential leads on which Herridge and Fox rely amounts to anything more than speculation that some government officials might have seen or potentially had access to the alleged Privacy Act materials in this case. Moreover, far from amounting to "a reasonably well-defined number of possible alternative sources," Goldberg, 123 F. Supp. 3d at 18, the number of potential sources Herridge and Fox would require Chen to exhaust would balloon to [redacted], all without any non-speculative evidence that they ever possessed, let alone leaked, the relevant materials. To require Chen to pursue these "ill-lighted" paths after the extensive discovery she has already conducted, and when evidence suggests that other individuals (such as Rhoads) both had access to the Chen investigation and an interest in publicizing it, see Opp. to Herridge Mot., Ex. 18 at 90–91, 184–86; id., Ex. 25, would read the word "reasonable" out of Zerilli's exhaustion requirement. This factor, accordingly, tilts sharply in Chen's favor.

*4. Reporter's Status*

Next, as instructed by Zerilli, the Court considers the distinction between cases in which "the reporter is a party" and those "in which the reporter is not a party." 656 F.2d at 714. As Zerilli explained, this factor can point strongly in favor of disclosure when the reporter is a party and "successful assertion of the privilege will effectively shield him from liability," as in libel cases that require proof of actual malice. Id. Herridge and Fox are not parties to this case, so Zerilli's concern about the "equities" does not decisively favor disclosure. At the same time, neither does that fact weigh against disclosure. Indeed, Lee acknowledged that the reporters there

were all non-parties and yet did not hesitate to affirm the district court's disclosure ruling based on the weight of the centrality and exhaustion factors there. 413 F.3d at 57 n.1.

*5. Other Factors and Considerations*

For the reasons discussed above, the Court does not read Zerilli or Lee to require either a full-bore analysis of Chen's likelihood of success on the merits of her Privacy Act claim or an assessment of the public and private interests at play beyond the factors discussed above. But, for the sake of completeness, the Court briefly explains here why Herridge and Fox's arguments along these lines likely would not change the outcome here in any event.

The Court will group Herridge and Fox's remaining arguments into two considerations. First, they maintain that their First Amendment interests outweigh Chen's interest in pursuing her Privacy Act claim because, in their view, she will be unable to obtain damages at the end of the day, either because Chen's alleged damages were caused by the Defense Department's independent decision to cut off tuition assistance to her university or because much (but not all) of Fox's reporting on her was derived from sources that do not implicate the Privacy Act. Herridge Mot. at 26–34. To these arguments, it is sufficient to repeat Zerilli's observation that Chen's "suit is not frivolous." 656 F.2d at 714. The Court need not, and does not, decide now whether Herridge and Fox are correct that Chen is barred from pursuing damages based on the Defense Department's revocation of tuition assistance, as those are not the only damages Chen alleges she suffered. She also seeks economic damages for consulting fees and reputation management services she claims to have incurred to remediate the harm caused by the Fox reporting. Opp. to Herridge Mot., Ex. 34 at 2; cf. Fleck v. Dep't of Veterans Affs. Off. of Inspector Gen., 596 F. Supp. 3d 24, 57 (D.D.C. 2022) ("Legal fees that a plaintiff incurs to protect against the effects of an agency's Privacy Act violations are cognizable damages under Section 552a(g)(4)."). She seeks further damages for lost profits, a sum that might include lost business opportunities without

regard to the loss of tuition assistance from the Defense Department. Opp. to Herridge Mot., Ex. 34 at 2; Compl. ¶ 56 ("The illegal leak of personal information has diminished Dr. Chen's income, limited her professional opportunities, and decreased the value of the university that she wholly owns and into which she has invested the last two decades.").

Even if Chen may ultimately have to distinguish between damages caused by the leak of information covered by the Privacy Act—such as the compromising photographs of herself and her husband—and not by other information in the Fox reporting that was either not so protected or was publicly available, the Court cannot say at this juncture that she will be unable to do so, particularly without expert opinions that could be crucial to that analysis. Indeed, even if Herridge and Fox are correct that only the photographs that appeared in the reporting could serve as the basis for Privacy Act damages—a question the Court does not decide—the Court does not doubt that the images of Chen holding or wearing a Chinese military uniform could have given the Fox reporting more traction than it otherwise would have had and caused Chen more damage than she otherwise would have suffered. A picture, after all, "is worth a thousand words." Andy Warhol Found. for the Visual Arts v. Goldsmith, 143 S. Ct. 1258, 1295 (2023) (Kagan, J., dissenting). Were the photographs here irrelevant, moreover, the Court wonders why Herridge would have thought to include them in her reporting, notwithstanding the rather obvious legal implications of doing so. Although the Court does not intimate "any opinion as to whether" Chen "will ultimately prevail," the current record does not support the conclusion "that no purpose would be served by disclosure of the identity of the sources." Carey, 492 F.2d at 638.

Second, Herridge and Fox urge the Court to conclude that Chen's "purely parochial, private interest" in her Privacy Act claim, absent evidence that the government "smeared an innocent person," simply does not outweigh the First Amendment interest in promoting a robust free press, particularly in the area of reporting on national security. Herridge Mot. at 26, 34–39.

At the outset, the Court rejects the assertion that Chen's Privacy Act claim implicates only her own personal interests. To make out a Privacy Act claim, a litigant must show that the government's disclosure of covered material was "intentional or willful," 5 U.S.C. § 552a(g)(4), and Congress has recognized the weightiness of such willful disclosures by creating a private right of action to deter them. Nor does the Court read Lee, Hatfill, or any of the other D.C. Circuit cases discussing the reporter's privilege to turn on whether the Privacy Act plaintiff was wrongfully "smeared" by government leaks or, to paraphrase Herridge and Fox's argument, "had it coming." For good reason: The Privacy Act protects not just Chen but all private citizens, whether blameworthy or blameless, from the risk that government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals.

Of course, the Court does not question the vital role of a free press in "bar[ing] the secrets of government and inform[ing] the people." N.Y. Times Co. v. United States, 403 U.S. 713, 717 (1971) (Black, J., concurring). But here, if Herridge and Fox are correct that only a few (in their view, insignificant) elements of their stories even implicated the Privacy Act, then that press function, including the reliance on confidential sources, need not have come into conflict with Chen's statutory privacy rights at all. And, at the end of the day, the binding precedent of this Circuit does not permit this Court to cast aside all the "more precise guidelines" analyzed above based solely on the abstract "importance of a vigorous press." Zerilli, 656 F.2d at 712–13.

* * *

The Court is mindful both "of the preferred position of the First Amendment," Zerilli, 656 F.2d at 712, and of the fact that "the protections of the Privacy Act do not disappear when the illegally disclosed information is leaked to a journalist, no matter how newsworthy the government official may feel the information is," Lee, 413 F.3d at 60. As described above, the

two most important factors identified by Zerilli and Lee point decidedly in Chen's favor. The subpoenas, as modified, go to the heart of her Privacy Act claim, and she has exhausted all but the speculative alternative sources of information suggested by Herridge and Fox. That Herridge and Fox are not parties to the case does not outweigh those factors, nor do their concerns about the extent of Chen's damages or the importance of Herridge's work. Accordingly, balancing the foregoing factors, the Court concludes that Chen has overcome the qualified First Amendment privilege in this case.

B. Common Law Newsgathering Privilege

Although most of the parties' briefing is devoted to the qualified First Amendment privilege, Herridge and Fox also urge the Court to recognize a newsgathering privilege under federal common law. See Herridge Mot. at 39–45; Fox Mot. at 13–14. For the same reasons stated by Judge Collyer in Lee II and Judge Walton in Hatfill, the Court declines to recognize a federal common law newsgathering privilege here.

Herridge and Fox contend that the relationship between a journalist and her confidential source is "rooted in the imperative need for confidence and trust" and serves important public ends. Herridge Mot. at 40–41 (quoting Jaffee v. Redmond, 518 U.S. 1, 10 (1996)). But to "qualify as an exception from the general rule disfavoring testimonial privileges requires a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Hatfill, 505 F. Supp. 2d at 44 (alterations and internal quotation marks omitted) (quoting Jaffee, 518 U.S. at 9). The "transcendent importance of a free press is that reporters can report the news and express opinions without fear of Government oppression or interference," and the use of confidential sources is "not a *sine qua non* of journalism but only an important and useful tool." Lee II, 401 F. Supp. 2d at 141; accord Hatfill, 505 F. Supp. 2d at 45.

Moreover, "[u]nlike the psychotherapist's privilege recognized in Jaffee, 'the likely evidentiary benefit that would result from the denial of the [reporter's] privilege'" could be substantial. Hatfill, 505 F. Supp. 2d at 45 (second alteration in original) (quoting Jaffee, 518 U.S. at 11). Even if not absolute, a common law privilege that would preclude disclosure of a confidential source in a case such as this one, which the Court has found satisfies the Zerilli and Lee test, would "circumvent" this Circuit's First Amendment privilege case law and would risk undermining "the fundamental purpose of the Privacy Act" of "discourag[ing] the kind of [alleged] leaks that are at issue in this action." Lee II, 401 F. Supp. 2d at 139, 141–42. Moreover, as noted above, the balancing of interests contemplated by Herridge and Fox's proposed common law privilege "would create a subjective and elastic standard whose outcome could not be predicted," saddling district courts with the "daunting and well-nigh impossible task" of determining "whether the harm caused by leaked information outweighs the 'value' of that information to the citizenry." Id. at 139. Given that this Circuit already has a well-established First Amendment privilege that both protects journalists' interests and channels judicial discretion in balancing that interest against evidentiary need, Herridge and Fox fail to "demonstrate with a high degree of clarity and certainty that" their proposed privilege "will effectively advance a public good" relative to these potential drawbacks. Id. at 137 (quoting In re Sealed Case, 148 F.3d 1073, 1076 (D.C. Cir. 1998)).

To be sure, as Herridge and Fox point out, almost all of the states have adopted some form of reporter's privilege, although the contours of those protections vary significantly from state to state. See In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1157–58 (D.C. Cir. 2006) (Sentelle, J., concurring). That factor weighs somewhat in favor of recognizing a similar federal common law privilege. But "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." United

States v. Nixon, 418 U.S. 683, 710 (1974). For that reason, "new privileges should be created sparingly and with caution." Lee II, 401 F. Supp. 2d at 136. And, although not dispositive, recognizing the common law privilege Herridge and Fox seek would stand in some tension with the Supreme Court's pronouncement that "the common law recognized no such privilege," at least in the criminal context. Branzburg v. Hayes, 408 U.S. 665, 698 (1972); see id. at 685 ("At common law, courts consistently refused to recognize the existence of any privilege authorizing a newsman to refuse to reveal confidential information to a grand jury."). Accordingly, the Court will not create a federal common law newsgathering privilege here.

C. Sequencing of Discovery

The Court must tackle one last question—Fox's arguments that the subpoenas to it should be quashed as duplicative of the Herridge subpoenas, at least until discovery efforts are exhausted with respect to her. Fox contends that Zerilli's exhaustion requirement demands that Chen seek discovery from Herridge first and that requiring Fox to submit to a deposition would be unnecessarily cumulative and duplicative under Federal Rule of Civil Procedure 26(b)(2)(C). Fox Mot. at 12–13, 14–16. Although Chen contends that Herridge and Fox may be able to provide different materials relevant to her claim, she does not oppose sequencing discovery to require Fox's compliance with the subpoenas only if the discovery sought from Herridge is incomplete. Opp. to Fox Mot. at 18–19.

The Court agrees with this proposed approach. The "names of the sources who leaked information about Dr. [Chen] to the media are central to [her] Privacy Act claim[]," and Chen's subpoena to depose Herridge is "directly targeted at obtaining" that information. Hatfill, 505 F. Supp. 2d at 49. Until Chen has exhausted her efforts to obtain the alleged leaker's identity from Herridge, she will not have exhausted reasonable alternative sources sufficient to require Fox to submit to a subpoena as well. Id. Of course, "depending upon the outcome of the reporter's

deposition[], it may be necessary for the Court to revisit in the future whether corporate representatives of" Fox "should be compelled to provide deposition testimony." Id. But, at least for now, the Court believes it prudent to proceed one step at a time.

Accordingly, the Court will grant Herridge's motion insofar as it defers enforcement of Chen's document subpoena and cabins her deposition subpoena, but it will otherwise deny her motion. Consistent with this opinion, Chen may depose Herridge regarding the identity and intent of the source or sources of the documents and images allegedly provided to her in violation of the Privacy Act, and any non-privileged other matters relevant to her Privacy Act claim. The Court will grant Fox's motion, without prejudice to Chen renewing her subpoenas to Fox in the event Herridge cannot provide the information she seeks.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. Nos. 94 & 96] Catherine Herridge's Motion to Quash is GRANTED in part and DENIED in part. It is further

**ORDERED** that [Dkt. Nos. 95 & 97] Fox News Network's Motion to Quash is GRANTED.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 1, 2023

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **YANPING CHEN**, Plaintiff, v. **FEDERAL BUREAU OF INVESTIGATION, *et al.***, Defendants. | Case No. 18-cv-3074 (CRC) |

**MEMORANDUM OPINION AND ORDER**

In August 2023, the Court partially denied journalist Catherine Herridge's motion to quash a subpoena in this Privacy Act lawsuit, thereby permitting Plaintiff Yanping Chen to depose Herridge regarding the sources for her investigative reports on Chen's affiliations with the Chinese military. At her deposition the following month, though, Ms. Herridge refused to answer any questions about the identity and intent of her sources. The question now is whether Herridge should be found in civil contempt for defying the Court's clear and unambiguous order. After careful consideration, the Court concludes that a finding of civil contempt is warranted.

The Court does not reach this result lightly. It recognizes the paramount importance of a free press in our society and the critical role that confidential sources play in the work of investigative journalists like Herridge. Yet the Court also has its own role to play in upholding the law and safeguarding judicial authority. Applying binding precedent in this Circuit, the Court resolved that Chen's need for the requested information to vindicate her rights under the Privacy Act overcame Herridge's qualified First Amendment reporter's privilege in this case. Herridge and many of her colleagues in the journalism community may disagree with that decision and prefer that a different balance be struck, but she is not permitted to flout a federal

court's order with impunity. Civil contempt is the proper and time-tested remedy to ensure that the Court's order, and the law underpinning it, are not rendered meaningless.

At the same time, Herridge does have a right to appeal this contempt order in the hopes of persuading the D.C. Circuit to recalibrate the existing qualified reporter's privilege in her favor or forge a new federal common law newsgathering privilege that sweeps more broadly than the Constitution. To provide ample room for her to exercise that right, the Court will stay the contempt sanction pending a timely appeal.

## I. Background

Before delving into the present dispute, it is worth recounting the long journey to this point. Dr. Yanping Chen is a naturalized U.S. citizen who, in 1998, founded the University of Management and Technology ("UMT"), an educational institution that attracted a substantial number of military servicemembers who attended with tuition assistance from the Department of Defense. Compl. ¶¶ 13, 42. Beginning in 2010, Chen became the focus of an FBI investigation concerning statements she made on immigration forms about her work in China in the 1980s. Id. ¶ 15. As a part of that investigation, the FBI executed search warrants for Chen's home and the main office of UMT, seizing materials during both searches. Id. ¶¶ 18, 20.

Prosecutors eventually informed Chen that no charges would be filed against her, but about a year later, Fox News Network ("Fox") ran a series of television segments and news articles about her. The thrust of the stories, principally authored by then-Fox reporter Catherine Herridge, was that Chen had concealed her former membership in the Chinese military on her U.S. immigration forms and might have used UMT to funnel valuable information about the American military to the Chinese government. Id. ¶¶ 22, 25–31; see Catherine Herridge, Fox News Investigation: DoD-Funded School at Center of Federal Probes over Suspected Chinese

Military Ties, Fox News (Feb. 24, 2017, 1:58 PM), https://www.foxnews.com/politics/fox-news-investigation-dod-funded-school-at-center-of-federal-probes-over-suspected-chinese-military-ties. The reporting also included family photographs of Chen, excerpts from Chen's immigration forms, and a snippet from what appears to be an internal FBI memorandum summarizing an interview of Chen's daughter conducted for the investigation. Compl. ¶¶ 25–31.

Believing these materials could only have come from the FBI's search and that someone in the government leaked them to Herridge and Fox in violation of the Privacy Act—which generally prohibits federal agencies from disclosing internal records about a person without her consent—Chen filed suit in 2018 against the FBI, the Department of Defense, and two other agencies. Id. ¶ 23; see 5 U.S.C. § 552a. Over the next five years, Chen pounded the pavement to uncover the identity of the potential leaker. She served scores of document requests, interrogatories, and requests for admission; took 18 depositions of current and former government employees; issued over a dozen third-party subpoenas; and obtained declarations from 22 government personnel who had a connection to the FBI's investigation. Opp'n to Herridge Mot. to Quash at 2. Through that discovery, Chen developed a theory for how Herridge and Fox obtained the allegedly leaked records: that they came from an internal FBI PowerPoint presentation created by the lead agent on her case. Id. at 1. She also homed in on a few individuals who, she thinks, may have leaked the PowerPoint—namely, the lead case agent who created the PowerPoint, self-identified FBI-informant Stephen Rhoads (who was an on-the-record source for Herridge's reporting), and a few other government agents who might have possessed the PowerPoint. Id. at 10–11. Despite her best efforts, Chen has been unable to obtain direct evidence that any of them, or any other person, was responsible for the suspected leak.

After years of failed efforts and false starts, Chen sought to pursue the one seemingly surefire method to discover how Herridge and Fox obtained the materials in question: to ask them herself. Chen served Fox and Herridge with deposition subpoenas in May and June of 2022, respectively. See Notice of Filing Dep. Subpoena (Herridge deposition subpoena); Fox Mot. to Quash, Ex. H. (Fox deposition subpoena). She also served both with subpoenas for relevant documents and communications. See Herridge Mot. to Quash, Ex. L (Herridge document subpoena); Fox Mot. to Quash, Ex. G (Fox document subpoena). Herridge and Fox moved to quash the subpoenas, asserting the qualified First Amendment reporter's privilege and, alternatively, urging the Court to adopt a federal common law newsgathering privilege.

The Court partially denied Herridge's motion on August 1, 2023. See Chen v. Fed. Bureau of Investigation, No. 18-cv-3074 (CRC), 2023 WL 5289432 (D.D.C. Aug. 17, 2023) (redacted public version). Following binding case law, the Court explained that Chen's need for the requested evidence overcame Herridge's qualified First Amendment privilege and that it would be improper for the Court to circumvent that precedent by fashioning a wider common law privilege. Id. at *11.

Starting with the First Amendment, the Court faithfully applied the test that the D.C. Circuit established over forty years ago in Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981). Zerilli began from the premise that the *qualified* reporter's privilege requires courts to weigh "the public interest in protecting the reporter's sources against the private interest in compelling disclosure." Id. at 712. Zerilli did not, however, end its analysis with that "general" guidance or contemplate that district courts would engage in a free-form, anything-goes balancing exercise. Id. It instead identified a "number of more precise guidelines" that "can be applied to determine how the balance should be struck in a particular case." Id. Chief among those considerations are

(1) whether the information sought is "central" to the claim and (2) whether the plaintiff has "exhausted every reasonable alternative source of information." Id. at 713. Twenty-four years later, the Circuit doubled down on this test in Lee v. Department of Justice, reiterating that, in deciding when to "compel a non-party journalist to testify about a confidential source," courts must focus on whether the information goes to "the heart of the matter" and whether the litigant has "exhausted 'every reasonable alternative source of information.'" 413 F.3d 53, 59 (D.C. Cir. 2005) (quoting Zerilli, 656 F.2d at 713). Thus, while not forbidding consideration of other factors, the Circuit has made clear—not once, but twice—that district courts should anchor their analysis to Zerilli's two guideposts: centrality and exhaustion.

Both factors weigh heavily in Chen's favor, the Court concluded. On centrality, directly tracking the Circuit's reasoning when confronted with the identical issue in Lee, "it is clear that the information [Chen] is seeking goes to the heart of [her] case." Id. at 60. "[T]he relevant information is the identity of the individuals who may have leaked information in violation of the Privacy Act. If [Chen] cannot show the identities of the leakers, [her] ability to show the other elements of the Privacy Act claim, such as willfulness and intent, will be compromised." Id. As to exhaustion, Chen's five-year odyssey to uncover the leaker's identity assured the Court that her request to depose Herridge had come at "the end, and not the beginning, of the inquiry." Zerilli, 656 F.2d at 713 (quoting Carey v. Hume, 492 F.2d 631, 638 (D.C. Cir. 1974)). The only reasonable option left was for Chen to ask Herridge herself. With the two central factors lopsided in Chen's favor, the Court resolved that Herridge's qualified First Amendment privilege must give way. See Chen, 2023 WL 5289432 at *3–11.

The Court could have stopped there. But for sake of completeness and in recognition of the important First Amendment rights at stake, it proceeded to explain why a full-bore analysis

of Chen's likelihood of success on the merits of her claim or a free-form balancing of the public and private interests was unlikely to tilt the scales back in Herridge's direction. Though it was premature to preview summary judgment, the Court recognized that Zerilli permits courts to sneak a peek at the merits to ensure the case is "not frivolous" such that no purpose would be served in forcing disclosure. 656 F.2d at 714. Peering around the corner, the Court found that Chen's Privacy Act claim easily surpassed that low bar. The Court was also unmoved by Herridge's contention that Chen's "parochial" interest in her Privacy Act claim should yield to the public interest in a robust free press, especially when the reporting touches on national security and the subject is not an "innocent person." See Herridge Mot. to Quash at 26, 34–39. Privacy Act claims vindicate more than the personal interests of the litigant, the Court explained; they serve a systemic function in deterring the "intentional or willful" dissemination of private records maintained by our government. Chen, 2023 WL 5289432 at *11 (quoting 5 U.S.C. § 552a(g)(4)). That is as true here as in any other case. On the other side of the ledger, the Court questioned just how much the public interest was actually advanced by Herridge including the purportedly leaked materials in the reporting when, on her own account, these records added little of substance to her stories. If they were just garnish, as Herridge claims, any conflict between the Privacy Act and the First Amendment could have been avoided without a serious loss to public understanding. Therefore, even if it were to venture beyond the Circuit's "more precise guidelines" and consider the full panoply of possible interests, the Court found the outcome would likely remain the same. See id. at *10–11.

Moving beyond the First Amendment's scope, the Court rejected Herridge and Fox's invitation to open a back door to a broader balancing test by recognizing a federal common law newsgathering privilege. Id. at *11–12. In doing so, the Court followed the lead of other courts

in this district that have uniformly declined similar requests to "circumvent" the D.C. Circuit's First Amendment case law by forging a more protective common law privilege. Lee v. Dep't of Just. ("Lee II"), 401 F. Supp. 2d 123, 139 (D.D.C. 2005); accord Hatfill v. Gonzales, 505 F. Supp. 2d 33, 43–48 (D.D.C. 2007). As these courts recognized, a federal common law newsgathering privilege of the sort Herridge and Fox advocated "would create a subjective and elastic standard," saddle courts with the "daunting and well-nigh impossible task" of determining "whether the harm caused by leaked information outweighs the 'value' of that information to the citizenry," and undermine "the fundamental purpose of the Privacy Act" of "discourag[ing] the kind of [alleged] leaks that are at issue in this action." Lee II, 401 F. Supp. 2d at 139, 141–42. Given that the Circuit recognizes a well-established First Amendment privilege that protects journalists' interests and channels judicial discretion in balancing that interest against evidentiary need, the Court found that Herridge and Fox had not carried their burden of "demonstrat[ing] with a high degree of clarity and certainty that" their proposed privilege would "effectively advance a public good" relative to these potential drawbacks. Chen, 2023 WL 5289432 at *12 (quoting Lee II, 401 F. Supp. 2d at 137).

To minimize any intrusion into the press function, the Court concluded its opinion by sequencing discovery. Id. at *12–13. It first provisionally granted Fox's motion to quash both subpoenas directed against the network as duplicative of the Herridge subpoenas. Id. at *12. By the same token, the Court granted Herridge's motion to quash the document subpoena for the time being because this request would have proven unnecessary if Herridge provided the missing link in her deposition. Id. at *13. It further cabined Herridge's deposition subpoena to ensure she did not have to answer any questions concerning sources who did not provide her information covered by the Privacy Act. Id. at *7, 13. Having whittled down the subpoenas to

their core, the Court concluded with a clear order: "Chen may depose Herridge regarding the identity and intent of the source or sources of the documents and images allegedly provided to her in violation of the Privacy Act, and any non-privileged other matters relevant to her Privacy Act claim." Id. at *13.

Herridge then requested that this Court certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Exercising its discretion, the Court declined to certify because, in part, Herridge could refuse to comply with the Order and appeal from any subsequent finding of civil contempt. See Op. & Order, ECF No. 152 ("Certification Order"); Op. & Order, ECF No. 158 ("Motion for Reconsideration Order"). As the Court explained, that procedure is customary both in this jurisdiction and throughout the country. Herridge simultaneously sought an immediate appeal of this Court's Order to the D.C. Circuit under 28 U.S.C. § 1292(b)'s collateral-order doctrine. The Circuit dismissed the appeal for lack of jurisdiction, reasoning along similar lines that Herridge could adequately vindicate her assertion of privilege by "seek[ing] appellate review of the district court's order denying her motion to quash by defying that order and appealing from any contempt citation." Order, Chen v. Fed. Bureau of Investigation, No. 23-5198 (D.C. Cir. Sept. 25, 2023). As a result, the Court's Order remained in full effect.

Pursuant to that Order, Herridge sat for her deposition on September 26, 2023. See Contempt Mot., Ex. 3 ("Herridge Dep."). In it, Herridge acknowledged that the Court's Order required her to "identify the source or sources of any Privacy Act material related to Dr. Chen that [she] received in the course of [her] reporting on Dr. Chen and the University of Management & Technology." Id. at 19:20–24; see id. at 19:25 (answering "yes"). Herridge also repeatedly admitted that she knew who the source was. See id. at 84:20–85:12, 86:11–87:5, 91:5–14, 94:18–95:10. Nonetheless, she steadfastly refused to disclose her source's identity or

provide any information on when and in what form she received the allegedly leaked materials. See, e.g., id. at 33:19–41:23, 44:20–49:11. When pressed, Herridge declared:

> I have complete respect for the court and its authority and for the order. I have no desire to defy a court order, but my understanding is that the courts have ruled that in order to seek further judicial review, I must now disobey the order, and for that reason, among others, I am invoking my First Amendment rights and declining to answer the question.

Id. at 20:7–13; see also id. at 208:2–10 (repeating that statement).

Chen responded by filing an application for an order to show cause why Ms. Herridge should not be found in civil contempt for defying the Court's Order. Herridge opposes the application, urging the Court to modify its Order based on "additional information." Alternatively, she requests that any civil-contempt sanction be nominal and stayed pending appeal.

## II. Legal Standards

This Court has both an "inherent and a statutory power to enforce compliance with its orders through the remedy of civil contempt." SEC v. Bilzerian, 112 F. Supp. 2d 12, 16 (D.D.C. 2000). The "power to punish for contempts is inherent in all courts; its existence is essential to . . . the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice.'" Broderick v. Donaldson, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting Ex parte Robinson, 86 U.S. (19 Wall.) 505, 510 (1874)). Building on that innate power, Federal Rule of Civil Procedure 45(e) provides that an "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."

A person is in contempt of court if she "violates a definite and specific court order requiring [her] to perform or refrain from performing a particular act or acts with knowledge of that order." SEC v. Bankers All. Corp., 881 F. Supp. 673, 678 (D.D.C. 1995) (citation omitted).

The party seeking a finding of contempt must demonstrate, by clear and convincing evidence, that (1) there was a court order in place; (2) the order clearly and unambiguously required certain conduct; and (3) the alleged contemnor failed to comply with that order. Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC, 736 F. Supp. 2d 35, 38 (D.D.C. 2010). The alleged contemnor's intent in failing to comply is irrelevant, so a court need not find that an individual acted in bad faith to hold her in contempt. Bilzerian, 112 F. Supp. 2d at 16.

The purpose of civil contempt is not to punish but "to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." NLRB v. Blevins Popcorn Co., 659 F.2d 1173, 1184 (D.C. Cir. 1981). Accordingly, civil-contempt sanctions "must be calibrated to coerce compliance or compensate a complainant for losses sustained." In re Fannie Mae Sec. Litig., 552 F.3d 814, 823 (D.C. Cir. 2009).

## III. Analysis

### A. Herridge Is in Contempt of Court

There is no genuine dispute that Herridge is in contempt of the Court's August 1, 2023 Order partially denying her motion to quash Chen's deposition subpoena. The Order clearly and unambiguously required Herridge to answer questions about "the identity and intent of the source or sources of the documents and images allegedly provided to her in violation of the Privacy Act, and any non-privileged other matters relevant to [Chen's] Privacy Act claim." Chen, 2023 WL 5289432, at *13. Herridge understood that straightforward directive. In her motion for certification, filed ten days later, she acknowledged the Court had directed her "to respond to the deposition subpoena to answer questions identifying confidential source(s) for the Fox reporting." Mot. to Certify Appeal at 4. At her deposition the following month, however,

Herridge willfully disobeyed the Order by refusing to answer questions about the identity of the sources who supplied the allegedly leaked materials. See Herridge Dep. at 20:11 ("I must now disobey the order."). That obvious violation of "a definite and specific court order" warrants a finding of civil contempt. Bankers Alliance Corp., 881 F. Supp. at 678.

Herridge does not attempt to argue otherwise. She instead requests that, in lieu of finding her in contempt, the Court modify its Order based on "additional information that is relevant under Zerilli balancing"—including declarations from two esteemed journalists on the importance of confidential sources and from two former counterintelligence officials discussing the national-security interests purportedly at play here. See Opp'n at 17–28. But this "additional information" is just a new chapter in the same book of arguments Herridge raised, and the Court rejected, in her motion to quash the subpoenas. It does not undermine the Court's prior decision or support the requested modification.

For starters, none of the additional information speaks to the two "precise guidelines" established in Zerilli and echoed in Lee: (1) whether the requested discovery is central to the plaintiff's claim and (2) whether the plaintiff has exhausted other reasonable alternatives of accessing the information. See Zerilli, 656 F.2d at 712–13; Lee, 413 F.3d at 57–60. As the Court explained previously, in defining the contours of the reporter's privilege, Zerilli and Lee did not embrace an open-ended weighing of all possible interests but rather struck the balance between private and public interests by reference to these two central factors. See Chen, 2023 WL 5289432, at *3–6. Applying this framework here, the Court found that both considerations favored Chen. Identifying the alleged leaker was central to Chen's Privacy Act claim, and she had exhausted all reasonable alternative avenues of identifying Herridge's source. See id. at *7–

9. With a one-sided score on the two most important factors, the Court concluded, the balance weighed in Chen's favor and supported her request to depose Herridge.

Herridge's current motion does not refute any of this analysis. She does not contend that the Court erred in finding Chen had satisfied her burden on both factors. Nor does she point to any new authority indicating that the Court misconstrued Zerilli and Lee when resolving that the balancing test should center on centrality and exhaustion—an understanding shared by numerous courts in this district.[1] Herridge simply renews her prior claim that "Zerilli calls for a broad-ranging balancing inquiry" to decide whether to pierce the reporter's privilege. See Opp'n at 18–19. The Court rejected this contention once before and, upon second look, it is equally unpersuaded. It therefore reaffirms the core rationale behind its prior decision: Zerilli and Lee call on courts to focus primarily (even if not exclusively) on centrality and exhaustion, and those two factors are dispositive here.

Moreover, as was true the last go-around, the Court continues to believe that a free-wheeling balancing of interests would not change the outcome in any event. Herridge urges the Court to place three more considerations onto the scale: (1) the merits of Chen's Privacy Act claim, including her prospects for recovering damages; (2) the national-security interests at stake; and (3) the broad chilling effect that Herridge fears will result from forcing her to disclose her sources. The Court mulled each of these considerations in its prior opinion, see Chen, 2023 WL 5289432, at *10–11, and nothing in the current motion alters the Court's thinking.

[1] See, e.g., Hatfill, 505 F. Supp. 2d at 37–47; Lee II, 401 F. Supp. 2d at 139; In re Subpoena to Goldberg, 693 F. Supp. 2d 81, 85 (D.D.C. 2010); U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc., 507 F. Supp. 2d 45, 50 (D.D.C. 2007); Tripp v. Dep't of Def., 284 F. Supp. 2d 50, 55 (D.D.C. 2003); Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115, 119, 121–22 & n.8 (D.D.C. 2002).

*First*, Herridge plows old ground in arguing that her First Amendment interests outweigh Chen's interest in pursuing her Privacy Act claim because, in her view, Chen will be unable to recover any damages. Herridge asserts that any financial harm to UMT was caused by the Defense Department's independent decision in January 2018 to cut off tuition assistance, not her reporting, and that any reputational harm is impossible to trace to the alleged Privacy Act violation because the lion's share of her reporting came from lawful sources. See Opp'n at 1, 18–19. As the Court has explained, however, this effort to pick apart Chen's claim far exceeds Zerilli's cursory inspection to ensure the "suit is not frivolous." See Chen, 2023 WL 5289432, at *10–11 (quoting Zerilli, 656 F.2d at 714). And regardless, even if it proves true that only a snippet of Herridge's reporting—such as the compromising photographs of Chen and her husband—could support a Privacy Act claim, the Court still "does not doubt that the images of Chen holding or wearing a Chinese military uniform could have given the Fox reporting more traction than it otherwise would have had and caused Chen more damage than she otherwise would have suffered." Id. at *10.

Downplaying the significance of the leaked materials is also a double-edged sword for Herridge. If the leaked materials truly did not affect the substance of her reporting on Chen but were instead mere ornamentation, as Herridge says, the press function need not have come into conflict with Chen's statutory privacy rights at all. Herridge could have published the same set of stories minus the records—the incriminating photographs, excerpts from immigration forms, and snippets of FBI interviews—without compromising the informational value of her pieces. Had she done so, the Privacy Act would not be implicated, Chen would have no case, and the subpoenas would never have issued. Herridge (or her producers) instead decided to gild the lily

by including these evocative (and click-inducing) details—opening the door for a Privacy Act claim and discovery into the identity of the potential leaker.

*Second*, Herridge again urges the Court to consider the national-security implications of requiring her "to reveal the identity of her confidential source(s) to Plaintiff—a former colonel in the [People's Liberation Army] whom [the Department of Defense] expressly determined to be a national security risk." Opp'n at 21. She submits declarations from two counterintelligence experts who contend that, from their vantage, there is a "serious risk" Chen used UMT "to provide information on U.S. servicemembers" to Chinese officials and that Chen was not absolved of wrongdoing just because she was never prosecuted. Id. at 22–24. But whether or not these charges are true, any national-security concerns over requiring Herridge to reveal her source ring hollow. It is hard to fathom how disclosing Herridge's source would place America in jeopardy. In fact, it is much more plausible that ferreting out the government agent who may have leaked the records would benefit, not harm, national security by exposing someone inclined to mishandle highly sensitive law-enforcement records. And on the off chance there were an actual security risk, the government is a party to this action and could easily intervene to protect these interests (as it has done on occasion in this case already).

Under the banner of "national security," Herridge also maintains that it is appropriate to consider the "risk that Plaintiff was making U.S. servicemembers' information available to a foreign power—and thus that her 'private interest' in this Privacy Act suit is, in effect, seeking taxpayer money to recover funding for that conduct." Id. at 25–26. The Court strongly disagrees. The Court's job is to apply the law evenhandedly, not to adjudicate who is worthy of the law's protection. That the plaintiff "had it coming" is not a viable defense under the Privacy Act. The Act protects "all private citizens, whether blameworthy or blameless, from the risk that

government officials might be tempted to abuse their access to sensitive information by leaking materials intended to embarrass particular individuals." Chen, 2023 WL 5289432, at *11. Whatever her past, Chen is no exception.

*Third*, Herridge asserts that forcing her to disclose her source would have a chilling effect and undermine the ability of the press to inform the public on important matters. On this score, Herridge submits declarations from the Dean of the Columbia Journalism School, Jelani Cobb, and Pulitzer Prize winning investigative journalist Steve Coll. See Opp'n at 19–21. Dean Cobb explains that confidential sources are "vital to the functioning of a free and independent press" and contends that the "act of disclosing a confidential source, even as the result of a court order, erodes the ability of journalists everywhere to credibly promise confidentiality to sources who demand it, and would have a chilling effect on the flow of important information to journalists reporting on government matters." Id., Ex. B ¶¶ 5, 11. Mr. Coll adds that these concerns are only magnified in the areas of national security and international affairs, where it is often impossible to uncover what's going on without confidential sources who are willing to turn over protected information. Id., Ex. C ¶¶ 6–8. The Reporters Committee for Freedom of the Press echoes these worries in its amicus brief. After touting that confidential sources have enabled journalists to tell some of the most important public-interest stories of the past half century—from Watergate to the Iran-Contra affair to warrantless surveillance post-9/11—the Reporters Committee warns that compelled disclosure here could stifle similar stories going forward, especially those involving sensitive issues of national security. Reps. Comm. Br. at 2–3, 11–13.

The Court appreciates these concerns and does not question the vital role of a free press in "bar[ing] the secrets of government and inform[ing] the people." N.Y. Times Co. v. United States, 403 U.S. 713, 717 (1971) (Black, J., concurring). It also recognizes and respects that, in

many instances, confidential sources provide an essential ingredient for investigative reporting. That does not give the Court a free pass to ignore binding precedent, however. The Circuit in Zerilli was also "mindful of the preferred position of the First Amendment and the importance of a vigorous press." 656 F.2d at 712. Yet, recognizing that the reporter's privilege is not ironclad, the Circuit crafted a balancing test to determine when confidentiality must give way to competing interests—the central one being the interest of a litigant who needs the information to vindicate her rights and has exhausted every reasonable alternative source. Id. at 712–13; see also Carey, 492 F.2d at 639 (rejecting the contention that there is "an absolute First Amendment barrier to the compelled disclosure by a newsman of his confidential sources under any circumstances"). The Court is not free to disregard the balance the Circuit has struck by placing a thumb on the scale in favor of confidentiality.

Even if the Court enjoyed such discretion, it is important not to overstate the impact of requiring disclosure here. Judge Tatel expressed similar concerns about the detrimental effect compelling disclosure may have on journalists' ability to gather information in his dissent from the denial of rehearing en banc in Lee back in 2005. See Lee v. Dep't of Just., 428 F.3d 299, 301–02 (D.C. Cir. 2005) (Tatel, J., dissenting from denial of reh'g en banc). Time has told a somewhat different story. Almost two decades have passed since Lee reaffirmed Zerilli and required the reporter there to divulge his source, yet there is limited evidence that the floodgates to journalists' notepads have opened or the wellspring of confidential sources has dried up during that period. At most, there appears to have been an uptick in the number of subpoena requests for confidential sources in federal proceedings during the early 2000s. See RonNell Andersen Jones, Avalanche or Undue Alarm? An Empirical Study of Subpoenas Received by the News Media, 93 Minn. L. Rev. 585, 637–52 (2008); see also id. at 586 (acknowledging that the uptick

in subpoena requests did "not constitute an avalanche in scale"). But whether this was a blip or a sustained increase, a matter Herridge does not plumb, it has not resulted in widespread piercing of the privilege. Other courts in this district have long embraced and applied this Court's reading of Zerilli and Lee. See supra pg. 12 n.1. And still, cases requiring reporters to divulge confidential sources have remained few and far between, as the Reporters Committee acknowledges. See Reps. Comm. Br. at 2 ("Privacy Act cases involving efforts to compel the identities of confidential journalistic sources are rare[.]"). That's because, as Lee recognized, vigilant application of the centrality and exhaustion factors should ensure that compelled disclosure is the exception, not the rule. Lee, 413 F.3d at 60 (finding that an inquiry centered on these guidelines "does not leave journalists without protection"). Consistent with this expectation, courts applying the Circuit's framework often have found that plaintiffs' subpoena requests falter on one or both of these factors. See, e.g., In re Subpoena to Goldberg, 693 F. Supp. 2d at 88; Hatfill, 505 F. Supp. 2d at 49–50; Tripp, 284 F. Supp. 2d at 60–61; Hutira, 211 F. Supp. 2d at 121–22. That suggests Zerilli and Lee may have found the right balance after all.

To be sure, beyond actual case results, stakeholders in this area should remain attuned to the ripple effects that court decisions have on confidential sources' willingness to come forward in the first place. Identifying this impact can be tricky business, however. Much of the reporting on this score is anecdotal, and systematic studies lend only mild support for the notion that confidential sources may be slightly more hesitant to speak up nowadays. See Jones, supra, at 648–49 (finding 62.5% of newsroom leaders in 2007 reported that sources were as willing to speak on condition of confidentiality as five years before whereas 25.5% reported they were "somewhat less" willing to do so). But even then, it is uncertain whether sources are holding their tongues because, in their view, courts appear more solicitous of requests to compel

reporters to disclose sources. See Randall D. Eliason, The Problems with the Reporter's Privilege, 57 Am. U. L. Rev. 1341, 1359 (2008) (contending that "of all of the risks of exposure that a source faces, the danger that a reporter will be subpoenaed and compelled to testify is probably the most remote"). At a minimum, any marginal chilling effect has certainly not frozen the information pipeline. Instances of journalism built on confidential sources remain legion. See Reps. Comm. Br. at 12–13 (offering a "small sampling" of examples). The current dispute is a case in point. The Court's interpretation of Zerilli and Lee was the prevailing law in this district at the time of the alleged leak. But Herridge's source was still apparently undeterred by the prospect that, at some point in the future, a court might order Herridge to name her source. Projecting forward, then, it is far from clear that the Court's decision will unnecessarily clog the free flow of information.

*Finally*, beyond these three considerations Herridge raised, the Reporters Committee also notes that the Department of Justice recently amended its internal policies to restrict its own use of compulsory processes to pierce the reporter's privilege. See Reps. Comm. Br. at 8–10 (citing 28 C.F.R. § 50.10). That amendment may well be a salutary development deserving of applause, but it does not alter how the Court should resolve the current dispute based on this Circuit's precedent. In fact, the Department of Justice's forbearance showcases that federal court enforcement of the First Amendment is not the final word when it comes to protecting confidential sources. There is a robust body of local, state, and federal laws promoting the freedom of speech and press in ways that extend beyond the First Amendment's safeguards. See Genevieve Lakier, The Non-First Amendment Law of Freedom of Speech, 134 Harv. L. Rev. 2299 (2021). One need look no further than the reporter's privilege. Almost every State has enacted some form of "shield law" protecting reporters from having to disclose their sources.

See Chen, 2023 WL 5289432, at *12. Congress could do the same with a few strokes of a pen, but it has not done so. See Branzburg v. Hayes, 408 U.S. 665, 706 (1972) ("At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate."). Absent congressional intervention or a shift in Circuit precedent, the Court's duty is to apply and enforce the law on the books.

* * *

In sum, after considering all the "additional information" Herridge has provided, the Court finds no compelling reason to modify its August 1, 2023 Order requiring her to answer questions concerning the identity and intent of the source or sources of the records allegedly given to her in violation of the Privacy Act, as well as any non-privileged other matters relevant to her Privacy Act claim. Herridge plainly violated that Order when she refused to divulge the identity of the suspected leaker during her deposition last September. That defiance warrants a finding of civil contempt, no matter how noble Herridge's justification for refusing to reveal her source. See Bilzerian, 112 F. Supp. 2d at 16 (noting a contemnor's intent is irrelevant). Herridge may disagree with the Court's decision, as is her right, and she may believe that the Circuit's reporter's privilege doctrine strikes the wrong balance by undervaluing the importance of confidentiality for a free press. Still, the fact remains that "[l]itigants may not defy court orders because their commands are not to the litigants' liking. If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority and to compel compliance with lawfully issued directives." Am. Rivers v. Army Corps of Eng'rs, 274 F. Supp.

2d 62, 70 (D.D.C. 2003). A finding of civil contempt is therefore appropriate and necessary to uphold those principles here.

Yet contempt must be confined to the clear and unambiguous scope of the Court's order, see Int'l Painters, 736 F. Supp. 2d at 38, so it cannot extend as far as Chen advocates. To repeat, the August 1, 2023 Order required Herridge to divulge her source and answer questions about any non-privileged other matters relevant to Chen's Privacy Act claim. Chen complains that, in addition to not naming the leaker, Herridge also declined to answer questions on various other matters such as "the preparation of the Fox News stories, the timing of their publication, and why certain materials and information were included or omitted." Contempt Mot. at 9. But those matters at least arguably fall within the First Amendment reporter's privilege, which "shields both confidential and nonconfidential information from compelled disclosure," Hutira, 211 F. Supp. 2d at 120, and generally guards against compelled disclosure of information that would have "a chilling effect upon the newsgathering and editorial processes," Maughan v. NL Indus., 524 F. Supp. 93, 95 (D.D.C. 1981). Disclosing these other items would intrude upon, and possibly chill, Herridge's newsgathering and editorial processes. The Court's Order therefore did not clearly require Herridge to answer these questions, so she cannot be found in contempt for refusing to do so.

B. Contempt Sanction

The remaining question is: What is the appropriate sanction for Herridge's contempt? Civil-contempt sanctions may "be employed for either or both of two purposes; to coerce the [contemnor] into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947). In considering these twin purposes, courts have "wide discretion" and "broad equitable powers to

craft remedial sanctions." United States v. Two Gen. Elec. Aircraft Engines, 317 F. Supp. 3d 516, 522 (D.D.C. 2018) (quotation marks omitted). Exercising that discretion here, the Court will impose a fine of $800 per day until Herridge complies with the Court's Order but stay that fine for thirty days or until completion of proceedings on a timely appeal, whichever is later.

Herridge requests that the Court impose no more than a nominal sanction, such as $1 per day. See Opp'n at 29. But such a trivial sanction would not serve the fundamental purpose of civil contempt: ensuring compliance with a court order. It would permit Herridge to pay pittance in perpetuity while continuously violating the Court's directive and effectively vitiating Chen's right to pursue her Privacy Act claim. That cannot be correct. Judicial orders are not tollbooths that can be bypassed with spare change. Recognizing this reality, other courts in this district have imposed far stiffer penalties in similar contexts to ensure journalists comply with disclosure orders. In Hatfill II, for example, the court imposed a graduated fine of $500 for the first seven days following entry of the contempt order, which increased to $1,000 per day the following week, escalating to $5,000 per day thereafter. Hatfill v. Mukasey ("Hatfill II"), 539 F. Supp. 2d 96, 99 n.5 (D.D.C. 2008). Similarly, in Lee III, the court rejected the reporter's request for a nominal sanction as "insufficient to [ ] coerce compliance" and imposed a fine of $500 per day. Lee v. U.S. Dep't of Just. ("Lee III"), 327 F. Supp. 2d 26, 33 (D.D.C. 2004). The Court will adopt the low-end of this range (roughly adjusted for inflation) and impose a fine of $800 per day until Herridge complies with the August 1, 2023 Order.

The Court will stay that contempt sanction, however, to afford Herridge an opportunity to appeal this decision. Courts in this district and beyond have routinely stayed contempt sanctions to provide journalists ample room to litigate their assertions of privilege fully in the court of appeals before being coerced into compliance. See, e.g., Lee III, 327 F. Supp. 2d at 33; United

States v. Cutler, 6 F.3d 67, 70 (2d Cir. 1993); United States v. Cuthbertson, 630 F.2d 139, 143 (3d Cir. 1980). Indeed, when the district court denied a stay of contempt sanctions in Hatfill III, 539 F. Supp. 2d at 106, the D.C. Circuit stepped in and granted the stay request, see Hatfill v. Mukasey, No. 08-5049, Doc. No. 1104546 (D.C. Cir. March 11, 2008) (per curiam). Following suit, the Court will stay the contempt sanction against Herridge pending a timely appeal.

Apart from being the standard practice in this context, a stay pending appeal is justified here under the four-factor test for determining whether such a stay is warranted: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Cuomo v. U.S. Nuclear Regul. Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam). First, given that prior reporter's privilege cases have divided the Circuit and attracted en banc activity, and that almost two decades have passed since the Circuit decided Lee, it is possible that the Circuit may take the opportunity to refine the applicable First Amendment test in Herridge's favor or recognize a new federal common law newsgathering privilege broader than the constitutional analog. See Citizens for Resp. & Ethics in Washington v. Off. of Admin., 565 F. Supp. 2d 23, 28 (D.D.C. 2008) (noting a "court is not required to find that ultimate success by the movant is a mathematical probability" (quotation marks omitted)). Second, absent a stay, Herridge would have to choose between disclosing her source's identity—a decision that "is, by its very nature, irreparable," Robert Half Int'l Inc. v. Billingham, 315 F. Supp. 3d 419, 433–34 (D.D.C. 2018)—or face possible financial hardship by racking up potentially hundreds of thousands of dollars in fines in the interim. Third, though the Court appreciates that an appeal will further delay resolution of Chen's Privacy Act claim, the time it will take to pursue an

appeal is somewhat marginal in comparison to the five years Chen has already spent to suss out the leaker's identity. Fourth, the Court recognizes there are competing public interests at stake—namely, the First Amendment interest in protecting confidential sources versus a substantial interest in ensuring compliance with court orders and enforcement of the Privacy Act. But given that the question now is only whether to defer contempt sanctions in the interim to ensure that Herridge can litigate her First Amendment claim to the hilt before revealing her source, the Court finds that the public interest also favors the stay request. See Certification Order at 3 ("[I]t is better to be safe than sorry when it comes to First Amendment rights.").

The Court concludes that these two elements—a $800 per day fine combined with a stay pending appeal—will adequately ensure compliance with the Court's Order while preserving Herridge's right to appeal that decision. See Lee III, 327 F. Supp. 2d at 33 ("[T]he journalists' argument that the fine should be nominal where constitutional issues will be presented on appeal can be addressed simply by staying the fine pending appeal."). At the present juncture, the Court does not deem it necessary to award Chen any compensatory sanctions for costs and fees related to Herridge's deposition or the ensuing contempt proceeding. Chen argued all along (and the Court and the Circuit agreed) that refusing to comply with the Court's Order and being found in contempt was the ordinary and proper route for obtaining appellate review here. That Herridge ultimately chose to pursue this avenue to appellate review does not necessarily warrant compensation for Chen. The Court also opts, for now, not to follow the approach adopted in Hatfill II and forbid Herridge from accepting funding from any other persons or entity to pay her contempt sanction. See 539 F. Supp. 2d at 107. The Court may reconsider these matters down the line depending on how things play out after any appellate proceedings.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that Herridge is in civil contempt of the August 1, 2023 Order of this Court; it is further

**ORDERED** that Herridge is fined in the sum of $800.00 per day, payable to the United States, until she complies therewith; it is further

**ORDERED** that the aforementioned fine will be stayed for a period of thirty days, or until completion of proceedings on a timely appeal, whichever is later; it is further

**ORDERED** that Chen's application for a compensatory award of sanctions is denied without prejudice.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 29, 2024