**PUBLIC VERSION**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

YANPING CHEN,

        Plaintiff,

   v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendants.

Civil Action No. 1:18-cv-3074-CRC

## PLAINTIFF YANPING CHEN'S SECOND MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Yanping Chen hereby moves this Court for an order (1) overruling the Federal Bureau of Investigation's objections on law-enforcement-privilege grounds to specific deposition questions and (2) directing the FBI to reproduce specified documents without law-enforcement-privilege redactions. This discovery seeks information about, among other things, the transfer of FBI information about Dr. Chen to Stephen Rhoads and/or to Fox News. As set forth in the accompanying memorandum of law, Dr. Chen is entitled to this discovery to establish violations of the Privacy Act. Support for the motion is set forth in a concurrently-filed declaration and attached exhibits. A proposed order is also submitted herewith.

1

**PUBLIC VERSION**

Pursuant to Local Civil Rule 7(m), counsel for Plaintiff represents that he has conferred with counsel for Defendants with respect to this motion but that, after conferring, Defendant FBI continues to assert the privilege with respect to the disputed discovery requests.

Dated: November 19, 2021

*/s/ Matt Jones*

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Jessica Lutkenhaus (D.C. Bar No. 1046749)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
jessica.lutkenhaus@wilmerhale.com

*Counsel for Plaintiff*

**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YANPING CHEN,

       Plaintiff,

   v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

       Defendants.

Civil Action No. 1:18-cv-3074-CRC

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF YANPING CHEN'S SECOND MOTION TO COMPEL

**PUBLIC VERSION**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ......................................................................................................................10

    I.      Legal Standard ...............................................................................................10

    II.     The FBI's Privilege Objections During Depositions Should Be Overruled ...............11

    III.    The Court Should Direct The FBI To Produce 46 Documents Without Redactions Purportedly Based On The Law Enforcement Privilege ...........................16

    IV.    The Court Should Direct The FBI To Produce Unredacted Versions Of Instant Messages And Text Messages ......................................................................22

CONCLUSION...................................................................................................................23

**PUBLIC VERSION**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44 (D.D.C. 2013).........................................................22

*Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 21 (D.D.C. 1998) .............................10

*BuzzFeed, Inc. v. United States Department of Justice*, 318 F. Supp. 3d 347
    (D.D.C. 2018) ...........................................................................................................................15

*Chekkouri v. Obama*, 158 F. Supp. 3d 4 (D.D.C. 2016).............................................................11

*In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017)..........................10, 15

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988).................................................................10, 11

*Kusuma Nio v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238 (D.D.C. 2018) .....................22

*Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998).............................................................................15

*Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996)........................................................10, 11, 14, 21

*Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323 (D.D.C. 2003) ..............................................15

**STATUTES AND RULES**

Fed. R. Civ. P. 26(b)(1)...............................................................................................................10

Fed. R. Civ. P. 37(a) ...................................................................................................................10

**PUBLIC VERSION**

# INTRODUCTION

This motion to compel arises out of the Federal Bureau of Investigation's broad assertion of the law enforcement privilege to conceal key facts from Plaintiff Yanping Chen.  Before this lawsuit, the FBI failed to protect the confidentiality of private information generated during its years-long investigation of Dr. Chen.  When the FBI's files—and intimate details of Dr. Chen's life—were splashed across Fox News, the lead FBI agent declared it "fantastic."[1]  The FBI then refused to make any effort to find out who had leaked the records.  But now, faced with a suit seeking to hold the FBI accountable, the FBI has become newly vigilant about confidentiality, asserting the law enforcement privilege at nearly every turn.

When properly invoked, the law enforcement privilege serves important public interests.  But here the FBI has invoked that privilege liberally in a way that frustrates efforts to reveal its own misconduct.  The FBI has asserted the privilege to redact every mention of the file number for the Chen investigation (even though that number was published on Fox News) and to obscure the lead FBI agent's communications with FBI colleagues about Fox News' reporting on Dr. Chen.  Even when the FBI's disorderly production process has revealed privilege redactions that the FBI admits were improper, the FBI has refused to revisit its privilege assertions, even for a core set of documents that Dr. Chen has identified as particularly important.

Consistent with this Court's May 11, 2021, Order addressing Dr. Chen's January 2021 motion to compel, Dr. Chen has sought to probe the theory the Court identified—that the FBI disclosed information to Stephen Rhoads in violation of the Privacy Act—by exploring the nature and circumstances of disclosures of FBI information to Mr. Rhoads.  As part of these efforts, Dr. Chen has deposed defendant employees with direct knowledge of the circumstances

---

[1] Declaration of Matthew T. Jones ("Jones Decl."), Ex. 56 at FBI00007634.

**PUBLIC VERSION**

of disclosures to Mr. Rhoads.  But government counsel has frequently asserted the law enforcement privilege to silence those employees, even when responding would not require the employees to confirm whether Mr. Rhoads was an FBI informant.  These privilege assertions have stymied Dr. Chen's ability to seek information important to her Privacy Act claim.

Separately, the FBI has heavily redacted documents and communications produced to Dr. Chen, again purportedly based on assertions of the law enforcement privilege.  Dr. Chen has tolerated many of the FBI's assertions (such as the redaction of the investigative file number), but carelessness in the FBI's privilege-review process and the clear significance of other concealed information call into question whether many of the agency's redactions are warranted. Dr. Chen therefore asked the FBI to reconsider its privilege assertions with respect to a core set of documents that, based on timing and context, appear especially important to her Privacy Act claim.  The FBI refused to do so.

Accordingly, Dr. Chen respectfully asks this Court to issue an order (1) overruling the assertion of privilege as to specific deposition questions, and (2) directing the FBI to produce versions of 46 documents, as well as specific instant and text messages, without redactions tied to assertions of law enforcement privilege.[2]

## BACKGROUND

As the Court is familiar, Dr. Chen brings a claim against the FBI and other federal agencies for violations of the Privacy Act.  Using its immense investigatory powers, the FBI amassed private information about Dr. Chen over the course a long-running investigation.  When prosecutors declined to bring charges, someone leaked the FBI's records to Fox News, which

---

[2] Dr. Chen presently challenges only the FBI's assertion of the law enforcement privilege to withhold responsive documents and information.  She does not challenge the assertion of any other privilege at this time.

PUBLIC VERSION

published three reports drawing heavily on the FBI's files.  Those selective leaks, broadcast to the world, inflicted serious personal and professional harm on Dr. Chen.  *See* Compl. ¶¶ 38-42.

### Dr. Chen's First Motion To Compel

On January 22, 2021, Dr. Chen moved this Court for an order compelling the FBI to (1) respond to Dr. Chen's request for admission that the FBI used Mr. Rhoads to gather information about Dr. Chen, and (2) produce documents responsive to a request regarding "any employment, agent, or informant relationship" between the FBI and Mr. Rhoads.  ECF No. 36.  The FBI opposed Dr. Chen's motion.  ECF No. 38.  It cited the law enforcement privilege and argued that it had an interest in not confirming the covert source relationship that Mr. Rhoads had described on television.  *Id.*

On May 11, 2021, this Court denied Dr. Chen's motion without prejudice.  The Court agreed that Dr. Chen "has a point" that "Rhoads' televised affirmation that he was an FBI informant does, to some extent, mitigate" the FBI's asserted interests in not confirming that relationship.  ECF No. 46 (the "Order") at 7.  But the Court concluded that, while the FBI's interest in nondisclosure was "not at its zenith in this case," the FBI nonetheless had a "substantial" interest in nondisclosure.  *Id*. at 8.  Recognizing that Dr. Chen "is litigating in good faith and pursuing non-frivolous claims," the Court concluded her interest in disclosure of Mr. Rhoads' relationship with the FBI nonetheless was mitigated because Dr. Chen may be able to prove that "the first alleged transfer of information (from the FBI to Rhoads) constituted a violation of the Privacy Act without obtaining discovery on any source relationship Rhoads might have had with the FBI."  *Id*. at 9.  In describing this theory, this Court assumed that "the fact that the FBI disclosed (or did not disclose) records to Rhoads is not privileged," and thus the "circumstances relevant to determining whether any such disclosure was willful and intentional

**PUBLIC VERSION**

are not privileged, either." *Id*. at 11.  This Court concluded that, "[u]nless and until this path reaches a dead end, Chen has only a diminished need" for information confirming that the FBI used Mr. Rhoads to gather information concerning Dr. Chen. *Id*. at 9-10.[3]

### The FBI's Assertion Of The Law Enforcement Privilege In Depositions

Consistent with the Court's May 11 Order, Dr. Chen has diligently sought discovery relating to the FBI's sharing of information with Mr. Rhoads, in order to assess whether, as the Court described, "the first alleged transfer of information (from the FBI to Rhoads) constituted a violation of the Privacy Act." Order at 9.  Dr. Chen has also sought information regarding other aspects of her Privacy Act claim, including the FBI's recordkeeping practices and the pattern of disclosures from the team that investigated Dr. Chen to a particular reporter at Fox News.

Unfortunately, the FBI has continued to take an aggressive approach in depositions of defendant employees—critical witnesses with first-hand knowledge of how photographs and records about Dr. Chen were collected, stored, and disseminated.  Most significantly, in the October 22, 2021, deposition of an FBI employee (known to Dr. Chen only as "SSA-8"), FBI counsel invoked the law enforcement privilege dozens of times and directed SSA-8 not to answer the questions at issue.  Many of these questions bear directly on the circumstances under which FBI personnel transferred information to Mr. Rhoads.  For example:



- ████████████████████████████████████████████ Jones Decl., Ex. 1 at 131:19-21.

- ████████████████████████████████████████████ *Id*. 131:11-13.

---

[3] The Court indicated it would be willing to revisit the issue of Mr. Rhoads' source status if discovery regarding disclosures by the FBI to Mr. Rhoads hit a "dead end," Order at 10, and thus denied Dr. Chen's earlier motion without prejudice.  The present motion does not ask the Court to revisit its prior ruling.  Dr. Chen anticipates, however, that such revisiting may become necessary following the upcoming deposition of Mr. Rhoads.

PUBLIC VERSION



- ████████████████████████████████████████ *Id*. 105:8-10.

- ████████████████████████████████████████ *Id*. 93:16-17.

- ████████████████████████████████████████ *Id*. 94:17-19.

- ████████████████████████████████████████ *Id*. 92:2-5.

FBI counsel instructed SSA-8 not to answer these and dozens of other similar questions,

purportedly because responsive information is covered by the law enforcement privilege, and

SSA-8 accordingly refused to answer.

      The FBI followed a similar approach in the deposition of four other defendant employees,

instructing witnesses not to answer questions on a broad array of topics that do not require the

FBI to confirm any source relationship with Mr. Rhoads.  For example, government counsel

directed SSA-8 and other deponents not to answer questions related to such topics as:

- The existence and location of records reflecting the exchange of documents with Mr. Rhoads[4];

- How to determine whether additional unknown FBI personnel interacted with Mr. Rhoads[5];

- Meetings and communications between FBI personnel and Mr. Rhoads, including the likelihood that FBI personnel provided information about Dr. Chen to Mr. Rhoads[6];

- Whether FBI employees were limited in what documents they could share with Mr. Rhoads[7]; and

---

[4] Jones Decl., Ex. 1 at 92:11-21.

[5] *Id*. at 104:24-105:6.

[6] *Id*. at 116:2-10, 130:16-22; 205:5-10.

[7] *Id*. at. 131:11-17.

PUBLIC VERSION

- Whether FBI personnel expected to be made aware of press reports about their cases.[8]

On November 5, 2021, counsel for Dr. Chen wrote to government counsel explaining that many topics as to which the government asserted privilege did not appear to implicate any law enforcement interest and, even if some interest were implicated, Dr. Chen had an overriding interest in disclosure. *See* Jones Decl., Ex. 71 at 2-3. To focus this dispute, Dr. Chen's counsel enumerated approximately 45 questions posed to five witnesses. *See id.* at App'x A. Her counsel requested that the FBI either withdraw its objections or explain why it believed the law enforcement privilege applied.[9] On November 11, 2021, the government replied, asserting without explanation that the law enforcement privilege was properly asserted as to every identified question. In light of the FBI's refusal to provide any explanation, and given the impending discovery deadline, Dr. Chen brings the instant motion.

**The FBI's Over-Redaction Of Documents**

Separate from the deposition issues explained above, Dr. Chen has for months attempted to engage with the FBI regarding its improper application of the law enforcement privilege to conceal information in documents it has produced (in part) to Dr. Chen.

Dr. Chen first raised this issue to the FBI in a July 9, 2021, letter. Dr. Chen's counsel explained that the FBI had inconsistently invoked the law-enforcement-privilege across various versions of the same documents. Jones Decl., Ex. 60. These inconsistencies revealed that, in many instances, there was no valid basis for the redactions. Dr. Chen's counsel flagged three exemplar documents in which inconsistent redactions reflected the FBI's misuse of the asserted

---

[8] Jones Decl., Ex. 3 at 133:11-17.

[9] The questions as to which privilege was improperly asserted are identified at Jones Decl. ¶¶ 3-7 and may be found in Exhibits 1-5.

PUBLIC VERSION

privilege.[10]  Dr. Chen's counsel also identified four additional documents that, based on their

timing and context, appeared to reflect the FBI's pre-publication knowledge of the Fox News

reporting about Dr. Chen and communications during and immediately following publication.

Jones Decl., Ex. 60 at 4-6.  Given the apparent significance of the redacted documents, Dr. Chen

explained that her need for the information would likely overcome any potentially valid

assertions of the qualified privilege.  Dr. Chen's letter also highlighted the FBI's lack of a

privilege log justifying its assertions.  Noting that the FBI's improper redactions in the sample

documents raised serious questions about the FBI's other privilege assertions, Dr. Chen's

counsel requested that the FBI review and remove other unwarranted redactions in documents

produced to date.

On August 31, 2021, the FBI conceded that the identified inconsistencies in the small

sample of documents were "mistakes" and that the law enforcement privilege did not actually

apply, but denied any "broader systemic issue."  Jones Decl., Ex. 66 at 2.  The FBI agreed to

produce partially unredacted versions of the four "key" documents identified in Dr. Chen's July

9, 2021, letter, but ultimately left those documents heavily redacted.  In addition, the FBI refused

to re-examine other documents to confirm it had properly asserted the privilege.  Although Dr.

---

[10] The information redacted from one document, for instance, merely summarized purely factual
details from a publicly available news article, Jones Decl., Ex. 64 at FBI0001660.  The
information redacted from a second document appeared to be a factual description of the FBI's
and DOD's ongoing administration actions taken or attempted as a result of the FBI's
investigation—not investigative steps taken or techniques used during the FBI's investigation.
Jones Decl., Ex. 61 at FBI0001493.  And the information redacted from the third document was
information that DOD had *sent in unredacted form to Dr. Chen.  See* Jones Decl., Ex. 62.

PUBLIC VERSION

Chen continued to identify inconsistencies and errors in the FBI's redaction process,[11] and narrowed her request for the FBI's re-review—ultimately, to just 37 documents that appeared most central to her claim—the FBI refused.  *See* Jones Decl., Exs. 67-70.

### The FBI's Over-Redaction Of Instant Messages And Text Messages

Also in dispute are a total of eight documents containing heavily redacted instant messages and text messages transmitted among and between law enforcement personnel and Mr. Rhoads, reproduced in the form they have been produced at Exhibits 52-59.  While Dr. Chen has no way of assessing the legitimacy of the FBI's privilege claims with respect to the redacted portions of these records, the timing and context of these messages suggest their importance to her Privacy Act claim.

The three series of instant messages at issue contain extensive redactions of likely communications.  The first set of instant messages, sent between "SSA-7" and "SSA-10" on November 28, 2016, was entirely redacted.  Jones Decl., Ex. 52.  Notably, these messages came days after Special Agent Pappa alerted his FBI colleagues that Mr. Rhoads "texted me yesterday about Fox News planning to run a special in December called 'Sex, Lies, and Chinese Spies' that will prominently feature the CHEN case."  Jones Decl., Ex. 49 at FBI0007650.  The second series of instant messages were exchanged between Special Agent Pappa and "SSA-1" between February and April 2017.  The series is redacted in part, but the unredacted portions indicate that they were discussing meeting with DOD about the Fox News reports.  Jones Decl., Ex. 53.  The final series of disputed messages were exchanged between Special Agent Pappa and other law

---

[11] The FBI's productions have been replete with inconsistent redactions.  In some instances, upon Dr. Chen's identification of the inconsistency, the FBI has clawed back the documents and re-produced them with redactions.  In other instances, such as when DOD produced emails with Mr. Rhoads' name, the FBI has conceded that its redaction of the same information in other versions of the documents was unwarranted.

**PUBLIC VERSION**

enforcement personnel.  The exchanges are heavily redacted, but unredacted portions refer to communications with Mr. Rhoads and Fox News' reporting.  In an exchange on May 9, 2016, Special Agent Pappa wrote, "our only hope is Rhoads and publicity."  Jones Decl., Ex. 54 at FBI0007626.

 The text messages at issue include exchanges between Mr. Rhoads and Special Agent Pappa.  These messages, too, are heavily redacted.  For example, one exchange from June 15, 2015, is entirely redacted except for the message "Wow.  I'm speachless [sic]."  Jones Decl., Ex. 59 at FBI0007659.  Given the context, these messages may reflect the participants' frustration with the government's inaction toward Dr. Chen—frustration that Dr. Chen surmises is what prompted the media leaks alleged in this litigation and will demonstrate their willfulness.  Other redacted text messages are from February 2017, shortly before the publication of the first Fox News reports.  *Id*.  In light of the likely importance of these messages to Dr. Chen's claim, Dr. Chen requested that the FBI produce unredacted versions of documents containing instant messages and text messages, depicted in Exhibits 52-59.  The FBI has refused to withdraw privilege with respect to these messages.

*  *  *

 Dr. Chen's efforts to uncover the truth have been thwarted by the FBI's sweeping assertions of privilege.  That maximalist approach, coupled with the FBI's disorderly document review process, raise grave concerns about the FBI's invocation of the privilege and imperil Dr. Chen's ability to hold the FBI accountable for misconduct.  Repeated attempts to resolve disputes related to the government's privilege assertions have been unsuccessful.  Accordingly, Dr. Chen now respectfully moves for an order (1) overruling the FBI's objections on law-enforcement-privilege grounds in response to specified questions asked in depositions and

PUBLIC VERSION

(2) directing the FBI to reproduce versions of the documents, text messages, and instant

messages depicted in Exhibits 6-59 without law-enforcement-privilege redactions.

## ARGUMENT

### I.     Legal Standard

Information "relevant to any party's claim or defense"—broadly construed—is

discoverable.  Fed. R. Civ. P. 26(b)(1).  A party may move to compel disclosure of relevant

materials that are being withheld.  Fed. R. Civ. P. 37(a).  A motion to compel requires the court

to determine if the material sought is relevant and covered by a privilege that permits it to be

withheld.  *See Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 21, 43 (D.D.C. 1998).

The law enforcement privilege is "a *qualified* privilege that protects against the release of

documents whose disclosure might reveal law enforcement investigative techniques or sources."

*Tuite v. Henry*, 98 F.3d 1411, 1413 (D.C. Cir. 1996) (emphasis added).  To determine whether

the privilege applies, the Court must weigh the government's interest in nondisclosure (if any)

against a litigant's need for the information.  *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir.

1988).  The D.C. Circuit has identified non-exclusive factors to be considered in weighing these

interests, including "the extent to which disclosure will thwart governmental processes,"

"whether the party seeking discovery is an actual or potential defendant in any criminal

proceeding," "whether the … investigation has been completed," whether the suit is "non-

frivolous and brought in good faith," and whether the information is available through other

sources.  *Tuite*, 98 F.3d at 1417.

The government bears the burden of proving that the law enforcement privilege applies.

*In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 166 (D.D.C. 2017).  To invoke the

privilege, "(1) there must be a formal claim of privilege by the head of the department having

control over the requested information; (2) assertion of the privilege must be based on actual

PUBLIC VERSION

personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271.

In this case, it is impossible for Dr. Chen to address in detail the strength of the FBI's purported interests because the FBI has insisted that its interests can be asserted only *ex parte* and *in camera*.  Such *ex parte* submissions are highly disfavored because they "conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them." *Chekkouri v. Obama*, 158 F. Supp. 3d 4, 5-6 (D.D.C. 2016) (citation omitted).  The FBI's insistence that Dr. Chen be unable to respond to its purported interests is particularly unwarranted here, given the government's error-prone discovery production process to date.  Defendants should be required to assert their purported interests openly so that Dr. Chen may address them.

## II.     The FBI's Privilege Objections During Depositions Should Be Overruled

To determine when the qualified law enforcement privilege should give way, a court must assess "the importance of the information sought to the plaintiff's case." *Tuite*, 98 F.3d at 1417 (quoting *In re Sealed Case*, 856 F.2d at 272).  Here, the information sought is not peripheral, but goes to the heart of the illegality alleged in the complaint.  For example, the Fox News report on Dr. Chen was originally anticipated to also include another FBI investigation. Counsel for Dr. Chen inquired what other investigation FBI personnel expected Fox News to report on to determine which FBI employees were positioned to leak information about both cases:

-  Jones Decl., Ex. 5 at 94:20-25.

- *Id.* at 95:3-8.

PUBLIC VERSION

A pattern of leaking confidential investigative materials by the FBI to Fox News would clearly

be relevant to Dr. Chen's Privacy Act claim, as would the manner and method through which

Fox News obtained the leaked information.  Of particular import is whether the Fox News report

on Dr. Chen was originally anticipated to also include information about Special Agent Pappa's

investigation of Xiaoming Gao.  As described in more detail in support of Dr. Chen's reply in

support of her motion to expand the scope of Mr. Rhoads' phone records, discovery produced to

date indicates that Mr. Rhoads and Special Agent Pappa orchestrated an April 2015 Fox News

story (by the same reporter who later wrote about Dr. Chen) about an FBI investigation into Ms.

Gao based on purported ties to Chinese intelligence; that investigation, like the investigation into

Dr. Chen, resulted in no prosecution.  *See* 20-mc-00107-CRC (D.D.C. Oct. 22, 2021), ECF No.

41 ("Phone Logs Reply").  In an email to his commander, ████████████████, Mr.

Rhoads linked to the Gao article and wrote, "Phase 1 has gone public.  COL Chen's story hits

next week.  I don't think you were briefed in depth on the Ms. Goa [sic] situation in the article

below.  The two are related." Jones Decl., Ex. 72.[12]

   Later, in 2016, the FBI became aware of an upcoming Fox News special titled "Sex, Lies,

and Chinese Spies" that was expected to "████████████████." Jones Decl., Ex. 47 at

FBI0003052.  One of the cases anticipated to be part of the feature was, of course, Dr. Chen's.

References to the other case to be included in the Fox News report are uniformly redacted from

---

[12] The same day the instant motion was filed, November 19, 2021, Special Agent Pappa was
deposed.  In that deposition, the government aggressively asserted the law enforcement privilege
in response to questions concerning Ms. Gao in relation to Fox News' reporting.  It is premature
at this time, but Dr. Chen may need to seek relief in connection with this most recent assertion of
privilege.

**PUBLIC VERSION**

produced FBI documents—yet context suggests that the other case is the Gao case.[13] Understanding the FBI's involvement or awareness of Fox News reporting about Ms. Gao, whether in 2015 or 2016, is significant to the willfulness element of Dr. Chen's Privacy Act claim, and is also relevant to demonstrating the participants in and method of the unlawful disclosure.

Counsel for the FBI also refused to allow FBI personnel to respond to inquiries directly bearing on the dissemination of records and information about Dr. Chen to Mr. Rhoads:



- ███████████████████████████████ Jones Decl., Ex. 1 at 116:3-10.

- █████████████████████████ *Id*. at 92:16-21.

- ██████████████████████████████ *Id*. at 92:2-9.

- ████████████████████ *Id*. at 104:24-105:6.

- ████████████████████████████████ *Id*. at 90:9-14.

- ███████████████████████████████ Jones Decl., Ex. 2 at 42:22-43:4.

- █████████████████████ *Id*. at 44:25-45:5.

---

[13] In one of the FBI internal email chains preceding the Fox News report, for example, "SSA-1" wrote to Special Agent Pappa, Special Agent ████████████, and nine redacted FBI employees, ███████████████████████ ███████████████████ Jones Decl., Ex. 45 at FBI0003601.  Ms. Gao was a State Department translator whose case had previously been the subject of a Fox News report.

**PUBLIC VERSION**

Responsive answers to these questions could reveal a host of basic factual information, including whether there were additional meetings between Mr. Rhoads and FBI personnel at which documents were shared and the likelihood that FBI personnel provided information to Mr. Rhoads.  In denying Dr. Chen's prior motion to compel, the Court concluded that Dr. Chen could prevail without obtaining discovery on any covert source relationship between Mr. Rhoads and the FBI by showing that "at least the first alleged transfer of information (from the FBI to Rhoads) constituted a violation of the Privacy Act."  Order at 9.  It is difficult to imagine how Dr. Chen could pursue this theory without probing, for example, the existence of records reflecting the communications between FBI personnel and Mr. Rhoads or the circumstances of meetings between FBI personnel and Mr. Rhoads.  Thus, there is no "possibility that the information will turn out to be unimportant to her claim."  *Id.* at 9.

On the other side of the ledger, any interests the government might have in nondisclosure are minimal.  In the first place, the government has no apparent interest in nondisclosure as to many of the questions at issue, as they do not implicate "investigative techniques or sources."  *Tuite*, 98 F.3d at 1413.  This Court assumed in its prior Order that "the fact that the FBI disclosed (or did not disclose) records to Rhoads is not privileged," and thus the "circumstances relevant to determining whether any such disclosure was willful and intentional are not privileged, either."  Order at 11.  These are the precise circumstances Dr. Chen seeks to probe.  As another example, the FBI objected on privilege grounds to questions probing FBI personnel's awareness of press reporting in other cases.  Jones Decl., Ex. 3 at 133:11-13.  Although the FBI has declined to provide any additional information about the basis of its privilege assertion, it is hard to imagine how that topic—knowledge of public press reports—would involve privileged investigative techniques.

14

PUBLIC VERSION

Moreover, any governmental interest in nondisclosure of the assertedly privileged information is greatly mitigated by the existing protective order in this case. *See* Stipulated Protective Order (June 2, 2020), ECF No. 27; *see also BuzzFeed, Inc. v. United States Department of Justice*, 318 F. Supp. 3d 347, 364-365 (D.D.C. 2018) (granting motion to compel and ordering responsive affidavit subject to protective order); *In re Anthem, Inc.*, 236 F. Supp. 3d 167 (disclosure proper where "all the materials to be disclosed will be covered by the protective order in the underlying litigation").

The remaining balancing factors weigh heavily in favor of disclosure. There is no question Dr. Chen has brought a "nonfrivolous" claim "in good faith." *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998). This Court has denied a motion to dismiss, ECF No. 13, and observed that "[b]y all indications, Chen is litigating in good faith and pursuing non-frivolous claims." Order at 9. Likewise, as this Court previously assumed, no alternative source of discovery could substitute for answers to the disputed questions. Order at 9; *see also Tuite*, 181 F.R.D. at 176. (Indeed, many of the questions to which the FBI objects involve exploring additional avenues of discovery, such as the location of pertinent records.) Nor is Dr. Chen a defendant in any pending criminal proceeding or any proceeding reasonably likely to follow. *Tuite*, 181 F.R.D. at 176. And, finally, to her knowledge, the law enforcement investigation regarding Dr. Chen has been closed without charges. *See Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003) (compelling disclosure in part because litigant was not a defendant in a criminal case).

Given Dr. Chen's compelling interest in disclosure, and the weakness of any governmental interest in nondisclosure, Dr. Chen respectfully requests that the Court overrules the FBI's law-enforcement privilege objections as to the questions identified at Jones Decl. ¶¶ 3-

PUBLIC VERSION

7 and found in Exhibits 1-5, and direct the witnesses to re-sit for depositions for the limited

purpose of answering the identified questions and any reasonably related follow-up questions.

## III.    The Court Should Direct The FBI To Produce 46 Documents Without Redactions Purportedly Based On The Law Enforcement Privilege

Dr. Chen's counsel has identified a total of 46 documents (found at Exhibits 6-51) that,

based on timeframe and other context, appear significant to Dr. Chen's claim but are heavily

redacted, purportedly because they contain information protected by the law enforcement

privilege.[14]  The unreliability of the FBI's redaction process makes it impossible to accept the

FBI's privilege assertions at face value.  Accordingly, Dr. Chen requests that the Court order the

FBI to produce unredacted versions of the documents at issue or, alternatively, review the

redactions *in camera* and order the production as to any documents where privilege was

improperly applied or where Dr. Chen's interest in disclosure outweighs the government's

interest in confidentiality.

The disputed documents fall into four primary categories.

*First*, the most important documents reflect the FBI's pre-publication knowledge of the

upcoming Fox News reports about Dr. Chen or the FBI's internal communications during and

immediately following the reporting.[15]  These documents are from the period of November

2016—when Special Agent Pappa notified other FBI personnel about the upcoming Fox New

---

[14] As stated above, *see supra* p. 2 n.2, Dr. Chen challenges only the assertion of the law enforcement privilege at this time.  Dr. Chen acknowledges that the FBI has invoked other privileges in connection with some of the documents at issue.  However, the FBI has taken a blunderbuss approach to redactions, redacting entire passages and entire pages as assertedly privileged under the law enforcement privilege and other privileges.  Given the FBI's heavy-handed redactions, it is impossible to ascertain whether (1) the FBI believes that a given passage is privileged in whole under the law enforcement privilege and, independently, under another privilege, or whether (2) the FBI instead believes different information is protected from disclosure by different privileges, but the FBI failed to so distinguish in the redaction process.

[15] *See* Jones Decl., Exs. 7, 8, 10, 17, 18, 21, 22, 24, 25.

reports—through March 2017 after the first report was published.  These documents appear to be highly relevant to multiple elements of Dr. Chen's Privacy Act claim:  They shed light on the timing and manner of the unauthorized disclosure of Dr. Chen's files; may bear on who leaked to Fox News; indicate the FBI's authorization or endorsement of the leak; or describe the documents and/or information possessed by Fox News.  They also reveal FBI supervisors' request for an internal review following the Fox News reports, and factual findings pursuant to that request.  Most notably, SSA-2's analysis of the first Fox News article contains redactions of certain notes from SSA-2 analyzing whether information publicized by Fox News came from the FBI, and the earlier part of the chain redacts updates regarding pre-publication knowledge about Fox News' reporting.  Jones Decl., Ex. 44.  Such information is critical to Dr. Chen's Privacy Act claim.

The FBI's earlier reproduction of one document in this category demonstrates both the importance of the information to Dr. Chen and the FBI's misuse of the law enforcement privilege.  On August 21, 2021, in response to a request by Dr. Chen's counsel, the FBI removed some redactions from an email chain containing a November 23, 2016, email from Special Agent Pappa to his colleagues.  The newly-revealed text stated that "Stephen Rhoads" had "texted [Special Agent Pappa] yesterday about Fox News planning to run a special in December called 'Sex, Lies, and Chinese Spies' that will prominently feature the CHEN case."  Jones Decl., Ex. 49.  Special Agent Pappa further wrote that "Rhoads [had] called me as a heads up several months ago if not longer on Fox News running something on CHEN" and "it's obvious he has been a key to facilitating this story."  *Id.* at FBI0007650-7651.  Remarkably, the FBI had previously withheld this *entire* email based on supposed national-security classification and the law enforcement privilege—assertions that were clearly unfounded.  *See* Jones Decl., Ex. 63.

**PUBLIC VERSION**

Other versions of the same November 23, 2016, contained similarly extensive redactions, in part also relying on the inexplicable claim that the redacted text was not responsive.  *See* Jones Decl., Exs. 48 & 73.  The change is demonstrated, in part, by the excerpts below:



*Figure 1:  Previously Produced November 23, 2016 Email (Jones Decl., Ex. 63)*



*Figure 2:  Re-produced November 23, 2016 Email (Jones Decl., Ex. 49)*

The redaction of patently responsive material and the improper assertion of the law enforcement privilege reflect either a deep misunderstanding on the FBI's part or a serious lack of care with respect to the privilege it purports to invoke.  If Dr. Chen had simply accepted the FBI's privilege assertion, she would have never learned of Special Agent Pappa's pre-publication conclusion after speaking with Mr. Rhoads that "it's obvious he has been a key to facilitating this story."  Jones Decl., Ex. 49 at FBI0007651.  This experience heightens Dr. Chen's belief that the remaining redactions in this document, and redactions in other documents around this time period, are likewise unwarranted and should be removed.

*Second*, Dr. Chen's interest is strong with respect to disputed documents that appear to reference the FBI's investigation into Ms. Gao.  As discussed above, the leak to Fox News of information regarding the Gao investigation appears to have unfolded in an almost identical manner to the way the unlawful disclosure concerning Dr. Chen likely unfolded:  Special Agent Pappa provided investigatory information to Mr. Rhoads—commenting on how the media had failed to report on the story—and Mr. Rhoads in turn leaked it to Catherine Herridge of Fox News.  This pattern strongly suggests that Special Agent Pappa was aware that he could use Mr. Rhoads as a conduit to leak information to Fox News.  Yet it appears that the government withheld information related to the Gao case, including redacting documents from November 2016 about the upcoming Fox News special regarding Dr. Chen and another investigation from the Washington Field Office.  Dr. Chen has a strong interest in documents in which the Gao case is discussed in the context of Fox News' reporting on either the Gao or Chen reports; such material would tend to confirm a pattern of disclosures in violation of the Privacy Act.

To be sure, the FBI may have an interest in not disclosing information concerning the Gao investigation—much as it had an interest in not disclosing information concerning the

19

**PUBLIC VERSION**

investigation into Dr. Chen, though confidential information was leaked nonetheless.  However,

Dr. Chen seeks information related to Ms. Gao only in a narrow context—where references to

Gao are made in the context of media reporting on Ms. Gao or on Dr. Chen.  Whatever interest

the FBI has in maintaining confidentiality as to this narrow issue is outweighed by Dr. Chen's

strong interest in establishing a pattern suggesting that Special Agent Pappa knew that

information shared with Mr. Rhoads would in turn be shared with the media.  Further, if the

Court agrees that references to Ms. Gao, in the context of media reporting, are improperly

withheld, Dr. Chen respectfully requests that the Court order the FBI to conduct a broader search

of documents in its possession to identify and produce in unredacted form any additional

documents discussing Ms. Gao in connection with Fox News reporting into either the Gao or

Chen investigations.

*Third*, the FBI redacted numerous documents that were created at moments critical to the

unauthorized disclosure of Dr. Chen's records.  Multiple emails with significant redactions

reference the dissemination of Dr. Chen's information outside of the FBI, including one critical

communication with the subject line ███████████ that discusses—in limited fashion, due

to the redactions—the forthcoming dissemination of Dr. Chen's records to DOD and the

Department of Veterans Affairs.  Jones Decl., Ex. 28.  As explained in more detail in Dr. Chen's

reply in support of her motion to expand the scope of Mr. Rhoads' phone records, this

communication took place on May 7, 2013, the same date that Special Agent Pappa finalized the

PowerPoint presentation that Dr. Chen believes to be a primary source of the leak.  Phone Logs

Reply at 14.  Other documents also discuss the FBI's coordination with DOD at multiple points

in time to ███████████████████████████████████

PUBLIC VERSION

█████████████████████████ Dr. Chen's university.  Jones Decl., Ex. 37 at FBI00004343; *see also* Ex. 26 at FBI0003990.

*Fourth*, and finally, a number of documents are simply too heavily redacted for Dr. Chen to make a reasonable assessment as to the weight of her interest compared to any interest the FBI might have in nondisclosure.  Multiple documents were produced entirely redacted, with no context, date, or custodian information.[16]  Nor did the FBI produce information to confirm whether these documents are attachments to particular emails.  Similarly, the FBI produced email chains with all substance redacted, so there is no information beyond the sender, recipient, and date.[17]  The limited information available suggests that the emails are from important moments in the case—for example, shortly after Special Agent Pappa first briefed DOD employee ██████████ about the case, Jones Decl., Ex. 11, or around the time that Special Agent Pappa was discussing preparing a presentation for DOD with DHS agent ████ ████, Jones Decl., Ex. 36.  Yet the FBI refused to provide a privilege log or any additional information about the justification for its redactions.  Given the FBI's previous mistakes in redactions and improper invocation of the law enforcement privilege to hide important, non-privileged information, Dr. Chen seeks to ensure that these extreme redactions are warranted.

The importance of these 46 documents to the claim at issue weighs in favor of removing the law enforcement redactions.  *See Tuite*, 98 F.3d at 1417.  Given the FBI's lack of transparency and refusal to re-assess the legitimacy of its redactions, it is impossible for Dr. Chen to assess the weight of the FBI's interest, if any, in maintaining redactions.  But, for the reasons stated above, any law enforcement interest in nondisclosure will be served by

---

[16] *See* Jones Decl., Exs. 9, 13, 15, 16, 27, 30, 31, 32, 33, 34, 39, 43.

[17] Jones Decl., Exs. 11, 14, 19, 20, 29, 35, 36, 41.

PUBLIC VERSION

designating the produced documents as confidential under the protective order.  *See Kusuma Nio v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 245 (D.D.C. 2018) ("Where Plaintiffs' needs outweigh the public interest in protecting sensitive law enforcement information contained within the May 2018 Guidance, the 'Protected Material' designation will mitigate the risks of disclosure.").

Given the FBI's error-prone and heavy-handed redaction process, Dr. Chen alternatively requests that the Court review *in camera* the disputed documents to scrutinize the FBI's privilege assertions.  *See A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 47 (D.D.C. 2013) (noting referral of privilege dispute for *in camera* review); *Kusuma Nio*, 314 F. Supp. 3d at 243 (discussing *in camera* review of purportedly privileged document and ordering disclosure of partially unredacted version of document).

## IV.    The Court Should Direct The FBI To Produce Unredacted Versions Of Instant Messages And Text Messages

For the same reasons, the FBI should be directed to produced unredacted versions of eight documents containing a series of instant messages and text messages, found at Exhibits 52-59.  The heavily redacted messages reflect direct communications between Mr. Rhoads and Special Agent Pappa, or between law enforcement personal.  Based on timing and context, the redacted messages appear to be highly pertinent to Dr. Chen's claim.  For example, on February 7, 2017, two weeks before the first Fox News report about Dr. Chen, Special Agent Pappa and "SSA-1" exchanged several messages that have been produced to Dr. Chen only in heavily redacted form.  They indicated that SSA-1 has "a meeting with the Pentagon tomorrow."  Jones Decl., Ex. 53.  SSA-1's next potentially substantive message is redacted.  Then, after Special Agent Pappa says he cannot attend the meeting, and sends a redacted message, SSA-1 writes: "no problem!  Our main thing we are saying is that none of the FBI information can be released

**PUBLIC VERSION**

due to the Privacy Act." *Id.*  In an unredacted reply the same day, Special Agent Pappa writes,

"it seems increasin[g]ly clear DoD people leaked some of that binder to the media." *Id.*  From

context, the withheld information very likely relates to the upcoming Fox News reporting on Dr.

Chen and may concern the method by which that information was disseminated.

     Likewise, on February 28, 2017—just days after the publication of the first Fox News

report on Dr. Chen—there are a series of nearly twenty messages between Special Agent Pappa

and another FBI employee, yet every message in this exchange is entirely redacted.  Jones Decl.,

Ex. 54 at FBI0007621.  These messages contain information very likely bearing on FBI

personnel's knowledge of the Fox News report in the weeks preceding and immediately

following the report's publication.  For that reason, Dr. Chen has a strong interest in obtaining

the withheld information.  The government's interest in nondisclosure—if any—is minimal and

further mitigated by the existence of a protective order.

## CONCLUSION

     For the foregoing reasons, this Court should grant Dr. Chen's motion to compel.

Dated:  November 19, 2021

*/s/ Matt Jones*

Matt Jones (D.C. Bar No. 502943)
Patrick Carome (D.C. Bar No. 385676)
Jessica Lutkenhaus (D.C. Bar No. 1046749)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com
patrick.carome@wilmerhale.com
jessica.lutkenhaus@wilmerhale.com

*Counsel for Plaintiff*
