**PUBLIC VERSION**

# Exhibit 71

**CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER**

WILMERHALE

November 5, 2021

**Matthew T. Jones**

+1 202 663 6018 (t)
+1 202 663 6363 (f)
matt.jones@wilmerhale.com

**By Email**

Carol Federighi
Garrett Coyle
Laurel Lum
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, DC 20005

Re: *Chen v. Federal Bureau of Investigation*, 18-CV-3074 (CRC) (D.D.C.)

Dear Ms. Federighi, Mr. Coyle, and Ms. Lum:

We write regarding your continued aggressive invocation of the law enforcement privilege. In particular, we write in response to your letter of November 3, 2021, regarding your refusal to review law enforcement redactions applied to documents produced by the Federal Bureau of Investigation ("FBI") in response to Plaintiff Dr. Yanping Chen's First Set of Requests for Production and your repeated invocation of the law enforcement privilege to shield important information during recent depositions.

Your November 3 letter erroneously asserts that we "acknowledge" that we are unaware of information that has been improperly redacted in FBI documents "beyond the three one-off mistakes that the FBI has corrected." That assertion grossly mischaracterizes our October 26 letter, which expressly stated that the three examples of improper redactions identified in our July 9, 2021, letter were "merely a notable sampling of *many* similar inconsistencies that are rampant throughout the FBI's productions." We remain concerned that you have ignored our repeated explanation that the three identified discrepancies were not one-off mistakes, but rather reflect a broader misuse of the law enforcement privilege.

For example, our November 3 letter also described the patently improper redaction of FBI0003057, which initially withheld critical—and obviously not privileged—information about how Stephen Rhoads notified Special Agent Tim Pappa of the upcoming Fox News reporting about Dr. Chen. As we have expressed, the FBI's privilege review process has been disordered and unreliable. Notwithstanding these concerning irregularities, we limited our request that you re-review materials produced to us to just 37 documents. In light of your refusal to do so, we agree we are at a regrettable impasse as to this issue.

Separately, we write in regard to your aggressive assertion of the law enforcement privilege in recent depositions of defendant employees. Government counsel has repeatedly asserted the law enforcement privilege in response to questions that do not plausibly implicate meaningful law

enforcement interests. To name just a few examples, government counsel asserted the privilege and directed defendant employees not to answer questions related to:

- The existence of records reflecting whether documents were exchanged with Stephen Rhoads and the location where those records may be maintained[1];
- Where to look to assess whether additional unknown FBI personnel have interacted with Mr. Rhoads[2];
- The existence of records reflecting communications between FBI personnel and Mr. Rhoads[3];
- Context about meetings and communications between FBI personnel and Mr. Rhoads, including the likelihood that those FBI personnel provided information about Dr. Chen to Mr. Rhoads[4];
- Whether FBI officers were limited in what documents they could share with Mr. Rhoads' regarding the investigation into Dr. Chen[5];
- The propriety of sharing evidence seized from Dr. Chen's residence with Mr. Rhoads[6];
- Whether FBI personnel expected to be made aware of press reports about their cases[7];
- The number of FBI cases that were reported upon by the press.[8]

These are just a small subset of the questions that government counsel instructed witnesses not to answer, purportedly because responsive information was covered by the law enforcement privilege.

We are puzzled by the claim that the law enforcement privilege applies to these topics. Information about these issues would not necessarily require the government to confirm Mr. Rhoads's pronouncement that he acted as an FBI informant with respect to the Chen investigation. *See* Unclassified Kohler Decl. ⁋ 8, Dkt. 38-1. And these topics—like FBI personnel's knowledge regarding other press reporting about FBI cases—do not obviously implicate any "law enforcement investigative techniques or sources." *See Tuite v. Henry*, 98 F.3d 1411, 1413 (D.C. Cir. 1996). Moreover, even assuming the law enforcement privilege applies to those topics, the privilege must be weighed against Dr. Chen's need for information. *See, e.g.*, *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988). The information that the FBI is seeking to withhold with respect to these topics is essential to enable Dr. Chen to pursue her claim. Her interest accordingly weighs strongly in favor of disclosure.

In denying without prejudice a prior motion to compel, the Court reasoned that Dr. Chen could prevail on her Privacy Act claim by "prov[ing] that at least the first alleged transfer of

---

[1] SSA-8 Dep. at 92:11-21.
[2] *Id*. at 104:24-105:6.
[3] *Id*. at 105:8-14.
[4] *Id*. at 116:2-10, 130:16-22; 131:11-17; 205:5-10.
[5] *Id*. at.
[6] *Id*. at 131:19-25.
[7] SSA-15 Dep. at 133:11-17.
[8] *Id*. at 136:16-24.

information (from the FBI to Rhoads) constituted a violation of the Privacy Act without obtaining discovery on any source relationship Rhoads might have had with the FBI." May 11, 2021 Order, Dkt. 46, at 9. Consistent with the Court's opinion, Dr. Chen has sought discovery relating to the FBI's potentially unlawful disclosure of documents and information to Mr. Rhoads. Yet government counsel has repeatedly invoked the law enforcement privilege in response to questions that are essential to probe the potential improper transfer of information from the FBI to Mr. Rhoads. It is difficult to imagine how Dr. Chen could possibly pursue the theory of liability outlined in the Court's order without probing, for example, the existence of records reflecting communications between FBI personnel and Mr. Rhoads. If Dr. Chen is unable to obtain discovery as to this critical issue, further deliberation by the Court may be necessary.

We have therefore identified questions from recent depositions as to which we believe the law enforcement privilege was improperly invoked or, if such invocation is proper, Dr. Chen has an overriding interest in obtaining discovery. A list of these questions is included in Appendix A to this letter for your reference. We request that you withdraw your privilege objections to these questions and direct the relevant witness to provide answers to these questions, or, alternatively, explain in detail the basis of your belief that responses to each of these questions are protected by the law enforcement privilege.

We would appreciate a response as soon as possible, particularly in light of the approaching deadline for the close of fact discovery. In order to prepare to request Court intervention, if necessary, we ask that you respond by November 10, 2021. If you would like to discuss further, please feel free to reach out to me at your convenience.

Sincerely,

Matthew T. Jones

**APPENDIX A**

**October 22, 2021 Deposition of SSA-8**

- 90:9-14
- 92:2-9
- 92:16-21
- 93:16-21
- 94:17-23
- 99:4-9
- 104:24-105:6
- 105:7-14
- 108:11-17
- 113:14-21
- 116:2-10
- 130:16-22
- 131:11-17
- 131:18-25
- 141:15-22
- 142:11-20
- 166:7-13
- 167:3-7
- 174:20-175:2
- 205:5-10
- 219:20-220:2
- 220:4-15
- 221:3-13
- 221:15-25
- 229:9-15
- 232:19-233:2
- 233:14-23
- 249:23-250:7
- 252:11-16
- 254:8-16
- 254:18-23
- 254:25-255:6

- 255:8-13
- 258:7-14
- 267:2-10
- 267:23-268:7
- 269:10-15

**October 7, 2021 Deposition of James Gillis**

- 42:22-43:11
- 44:25-45:5
- 169:9-13

**September 30, 2021 Deposition of SSA-15**

- 133:11-17
- 136:16-24

**September 17, 2021 Deposition of [redacted]**

- 58:23-25

**September 9, 2021 Deposition of SSA-2**

- 94:20-93:8
- 162:10-14