**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YANPING CHEN,

*Plaintiff*,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

*Defendants*,

and

FREEDOM OF THE PRESS FOUNDATION,

*Proposed Intervenor*.

Civil Action No. 18-03074 (CRC)

**MEMORANDUM OF IN SUPPORT OF FREEDOM OF THE PRESS FOUNDATION'S MOTION TO INTERVENE AND FOR UNSEALING**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARDS ........ 4

ARGUMENT ........ 5

I. The Court Should Allow the Press Foundation to Intervene. ........ 5

II. The Court Should Order Unsealing of the DOD Files. ........ 7

A. The DOD Files are judicial records. ........ 8

B. The *Hubbard* factors support unsealing. ........ 9

C. The First Amendment Also Requires Unsealing. ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*,
121 F. Supp. 3d 21 (D.D.C. 2013) ........ 11

*Appl. of N.Y. Times Co.*,
585 F. Supp. 2d 83 (D.D.C. 2008) ........ 12, 14

*Appl. of WP Co.*,
No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ........ 15

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
714 F. Supp. 2d 1 (D.D.C. 2010) ........ 7, 11

*Bristol-Meyers Co. v. FTC*,
598 F.2d 18 (D.C. Cir. 1978) ........ 13

*Brown v. Advantage Eng'g, Inc.*,
960 F.2d 1013 (11th Cir. 1992) ........ 10

*Chen v. FBI*,
153 F.4th 1289 (D.C. Cir. 2025) ........ 2, 3

*EEOC v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998) ........ 4, 7

*EEOC v. Nat'l Children's Ctr., Inc.*,
98 F.3d 1406 (D.C. Cir. 1996) ........ 12

*FTC v. Standard Fin. Mgmt. Corp.*,
830 F.2d 404 (1st Cir. 1987) ........ 10

*Gannett Co., Inc. v. DePasquale*,
443 U.S. 368 (1979) ........ 6

*Globe Newspaper Co. v. Super. Ct. Norfolk Cnty.*,
457 U.S. 596 (1982) ........ 6, 13, 14

*In re Appl. for Access to Certain Sealed Video Exhibits*,
546 F. Supp. 3d 1 (D.D.C. 2021) ........ 8

*In re Cendant Corp.*,
260 F.3d 183 (3d Cir. 2001) ........ 9

*In re Chodiev*,
No. 18-mc-13 (EGS/RMM), 2021 WL 1795423 (D.D.C. Mar. 23, 2021) ........ 9

*In re Guantanamo Bay Detainee Litig.*,
630 F. Supp. 2d 1 (D.D.C. 2009) ........ 7

*In re Leopold*,
964 F.3d 1121 (D.C. Cir. 2020) .......... 1, 4, 8, 13

*In re McCormick & Co., Inc.*,
No. 15-mc-1825 (ESH), 2017 WL 2560911 (D.D.C. June 13, 2017) .......... 12

*In re Nat'l Broad. Co.*,
653 F.2d 609 (D.C. Cir. 1981) .......... 5

*In re Wash. Post Co.*,
807 F.2d 383 (4th Cir. 1986) .......... 6

*League of Women Voters of U.S. v. Newby*,
963 F.3d 130 (D.C. Cir. 2020) .......... 4

*Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*,
607 F. Supp. 3d 11 (D.D.C. 2022) .......... 8

*MetLife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017) .......... *passim*

*Miller v. Indiana Hosp.*,
16 F.3d 549 (3d Cir. 1994) .......... 9

*Nixon v. Warner Commn'cs, Inc.*,
435 U.S. 589 (1978) .......... 8, 14

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) .......... 13

*Press-Enter. Co. v. Super. Ct. of Cal.*,
464 U.S. 501 (1984) .......... 6

*Press-Enter. Co. v. Super. Ct. of Cal.*,
478 U.S. 1 (1986) .......... 13, 14

*Proctor & Gamble Co. v. Bankers Tr. Co.*,
78 F.3d 219 (6th Cir. 1996) .......... 11

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) .......... 8

*Rushford v. New Yorker Mag., Inc.*,
846 F.2d 249 (4th Cir. 1988) .......... 6

*S.E.C. v. Am. Int'l Grp.*,
712 F.3d 1 (D.C. Cir. 2013) .......... 4

*United States v. Brice*,
649 F.3d 793 (D.C. Cir. 2011) .......... 13

*United States v. El-Sayegh*,
131 F.3d 158 (D.C. Cir. 1997) ........ 4, 6

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980) ........ 4, 9, 10, 12

*United States v. Moussaoui*,
65 F. App'x 881, 884 (4th Cir. 2003) ........ 7

*United States v. Munchel*,
567 F. Supp. 3d 9 (D.D.C. 2021) ........ 8, 13

*Vanda Pharms., Inc. v. FDA*,
539 F. Supp. 3d 44 (D.D.C. 2021) ........ 8, 12, 13

*Wash. Post v. Robinson*,
935 F.2d 282 (D.C. Cir. 1991) ........ 6, 13

**Rule**

Fed. R. Civ. P. 24 ........ 4

**Other Authorities**

Letter from Brad Hinshelwood, U.S. Dep't of Just.,
to Clifford Cislak, Clerk of Court, U.S. Ct. of Appeals for D.C. Cir.,
*Chen v. FBI*, No. 24-5050 (D.C. Cir. May 29, 2025) ........ 2, 11, 13

Seth Stern,
*Crucial transparency case may be heard in secret*, Freedom of the Press Found.
(Nov. 8, 2024) ........ 5

Seth Stern,
*Herridge case shows the need to pass the PRESS Act*,
Freedom of the Press Found. (Apr. 4, 2024) ........ 5

Seth Stern,
*Prominent journalists' union risks harming reporter's privilege*,
Freedom of the Press Found. (Oct. 25, 2023) ........ 5

Caitlin Vogus,
*Congress has reintroduced the PRESS Act. Now lawmakers must pass it.*,
Freedom of the Press Found. (June 21, 2023) ........ 5

## INTRODUCTION

The public's right of access to judicial records is "fundamental [to the] rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). This right of access "reflects the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). Yet here, the continued sealing of certain judicial records tramples on that important right.

The Freedom of the Press Foundation ("Press Foundation") thus seeks leave to intervene in this proceeding for the limited purpose of unsealing two Department of Defense documents (the "DOD Files"), which together memorialize the Department's decision to terminate the University of Management and Technology ("UMT") from the Department's Tuition Assistance Program "on national security grounds."

As shown below, the public and the press have a right of access to these records under the First Amendment and the common law. The public has an interest in these files, because they relate to how the public's financial resources have been used. More relevant here, though, the public and the press have an interest in the DOD Files because, after non-party Catherine Herridge reported on an investigation into national security concerns involving Plaintiff Yanping Chen and UMT, DOD terminated the University's participation in DOD's tuition program, this litigation ensued, and this court rejected Herridge's reliance on the reporter's privilege—instead holding Herridge in civil contempt. The DOD Files are relevant to understanding how the court should have applied the balancing test when determining whether Chen could overcome Herridge's reliance on the reporter's privilege.

Because the DOD Files are pivotal to Herridge's defense, she sought to unseal them. *See* ECF No. 174. This Court denied that request because Herridge made the same request with the

D.C. Circuit. *See* Min. Order (July 17, 2024). But in the D.C. Circuit, the Government agreed to their unsealing. *See* Ltr. from Brad Hinshelwood, U.S. Dep't of Just., to Clifford Cislak, Clerk of Court, U.S. Ct. of Appeals for D.C. Cir. at 1, 2, *Chen v. FBI*, No. 24-5050 (D.C. Cir. May 29, 2025) (public version filed May 30, 2025) ("Gov't Ltr."). For its part, the D.C. Circuit originally denied Herridge's motion to unseal without explanation as moot, Order, *id.* (D.C. Cir. Sep. 30, 2025) (per curiam), after holding on the same day that Herridge may not rely on the reporter's privilege, *Chen v. FBI*, 153 F.4th 1289 (D.C. Cir. 2025). The D.C. Circuit has since vacated that decision and referred the motion to unseal back to this Court. *See* Order, *Chen v. FBI*, No. 24-5050 (D.C. Cir. May 22, 2026) (per curiam).

Now that the question of unsealing is back in front of this Court, the Court should allow the Press Foundation to intervene, and the Court should grant the request to unseal the DOD Files, because the public has an interest in those documents.

## BACKGROUND

Plaintiff Yanping Chen is allegedly a former colonel in China's People's Liberation Army who was suspected of passing information about U.S. military personnel to China. Herridge reported about a counterespionage investigation into Chen, *see* Herridge Mot. Quash Exs. B, D, E (ECF Nos. 96-3, 96-5, 96-6), and that reporting relied in large part on information already in the public record or provided by a UMT whistleblower. Chen later claimed the reporting also relied on information from government files, thereby violating the Privacy Act.

In 2018, DOD publicly announced that it was terminating UMT from the Department's tuition assistance program for "national security" reasons. Herridge's Mem. in Resp to Order Show Cause at 1 & n.1 (ECF No. 176) (citing Natalie Gross, *DoD bans popular TA school from accepting the benefit*, Military Times (Apr. 6, 2018)). The Department explained the decision in the DOD Files, which Chen chose not to challenge. Instead, she sought damages under the Privacy Act and

demanded that Herridge divulge her confidential source(s). *Id.* at 1. After Herridge refused to provide those sources—relying on the well-established reporter's privilege—the Court held her in contempt, and the D.C. Circuit affirmed.

During earlier proceedings in this Court, Herridge filed a motion to unseal the DOD Files, which Chen had claimed were subject to the protective order in place during the district court proceedings. ECF No.174. That motion remained pending for months, at which point Herridge sought unsealing of the DOD Files during her appeal of this Court's contempt order. *See* Appellant's Mot. to Unseal, *Chen v. FBI*, No. 24-5050 (D.C. Cir. July 2, 2024). As Herridge explained, the DOD Files should be unsealed because they are vital to the public's understanding of how the Court should apply the balancing test when deciding whether Chen can overcome Herridge's First Amendment reporter's privilege. *Id.* at 1. Because Herridge filed a motion to unseal in the D.C. Circuit, this Court denied without prejudice the motion to unseal Herridge filed in this Court. *See* Min. Order (July 17, 2024).

On September 30, 2025, the D.C. Circuit issued its Opinion, affirming this Court's civil-contempt order against Herridge. *See Chen v. FBI*, 153 F.4th 1289 (D.C. Cir. 2025). That Opinion did not discuss Herridge's motion to unseal. *See id.* Instead, the Court issued a separate, one-line order, which stated without explanation that Herridge's motion to unseal is "moot in light of the court's decision[.]" Order, *Chen v. FBI*, No. 24-5050 (D.C. Cir. Sep. 30, 2025) (per curiam).

On November 20, 2025, Herridge filed a petition for en banc rehearing. Pet. for Reh'g & Reh'g En Banc, *Chen v. FBI*, No. 24-5050 (D.C. Cir. Nov. 20, 2025). In that petition, Herridge not only explained why the D.C. Circuit's Opinion was incorrect on the merits, she explained why the court incorrectly held that the motion to unseal was moot. *Id.* at 15–17.

The Press Foundation subsequently filed a motion to intervene in the D.C. Circuit for the limited purpose of unsealing the DOD Files. Mot., *Chen v. FBI*, No. 24-5050 (D.C. Cir. Dec. 2, 2025). After vacating its dismissal of Herridge's motion to unseal, the D.C. Circuit denied the Press Foundation's motion to intervene and for unsealing as moot—"without prejudice to any intervention motion that the [Press Foundation] may wish to file in the district court." Order, *Chen v. FBI*, No. 24-5050 (D.C. Cir. May 22, 2026) (per curiam). The D.C. Circuit further "referred to the district court" the motion to unseal. *See id.*

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24(b)(1)(B) governs permissive intervention and states that a court "may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." And "'every circuit court that has considered the question'—including this one—'has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.'" *League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998)).

Once a party has been granted permissive intervention, "the intervenor may assert the common-law right of public access 'to records of [the] judicial proceeding.'" *Id.* (quoting *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980)). And "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)).

Finally, when the common-law right of access to judicial proceedings attaches to judicial records, the burden of proof shifts to the party seeking to maintain closure. *See Leopold*, 964 F.3d at 1129. And, under the D.C. Circuit's *Hubbard* test, a "seal may be maintained only 'if the district

court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *MetLife*, 865 F.3d at 665–66 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

## ARGUMENT

### I. The Court Should Allow the Press Foundation to Intervene.

The Court should allow the Press Foundation to intervene for the limited purpose of unsealing the DOD Files. The Press Foundation is a national non-profit organization dedicated to press freedom, government accountability, and the public's right to know. As relevant here, the Press Foundation has published articles about Herridge's reporting on the UMT matter and on the importance of the reporter's privilege.[1]

Through that reporting, the Press Foundation has emphasized the important role the reporter's privilege plays in enhancing journalists' ability to inform the public about the Government's actions. For several decades, courts and legislatures have debated the scope of the First Amendment's protections for reporters. And the Press Foundation has contributed significantly to that debate, advocating for state and federal shield laws that provide statutory protection to journalists against compelled production of confidential information.[2]

As the Press Foundation shows below, continued sealing of the DOD Files is a violation of the public's First Amendment and common law rights of access to judicial records. The Press

[1] Seth Stern, *Crucial transparency case may be heard in secret*, Freedom of the Press Found. (Nov. 8, 2024), https://tinyurl.com/5cv2shja; Seth Stern, *Herridge case shows the need to pass the PRESS Act*, Freedom of the Press Found. (Apr. 4, 2024), https://tinyurl.com/3ntznyvu.

[2] *See, e.g.*, Seth Stern, *Prominent journalists' union risks harming reporter's privilege*, Freedom of the Press Found. (Oct. 25, 2023), https://tinyurl.com/4xwfmbmm; Caitlin Vogus, *Congress has reintroduced the PRESS Act. Now lawmakers must pass it.*, Freedom of the Press Found. (June 21, 2023), https://tinyurl.com/5hevfe47.

Foundation seeks permission to intervene to be heard on the important matter of the public's interest in the sealed files. Intervention is thus warranted because no party will adequately represent the distinct public interest in the DOD Files. While Herridge seeks unsealing, she does so to support her basis for relying on the reporter's privilege. And, while that is an important reason to unseal the records, the public's interest in the DOD Files is broader, it is not currently represented, and courts routinely allow press organizations to intervene to assert the public's right of access. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 370–71 (1979) (discussing access for "members of the public"); *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 508 (1984) (discussing access for "everyone in the community").

Additionally, the Press Foundation has standing to enforce the press and public's constitutional and common law rights of access to court records and proceedings. *See, e.g.*, *El-Sayegh*, 131 F.3d at 160 ("The First Amendment guarantees the press and the public access to aspects of court proceedings[.]"); *Wash. Post v. Robinson*, 935 F.2d 282, 288–90 (D.C. Cir. 1991) (recognizing standing of news media to enforce public right of access).

In fact, the Supreme Court and the D.C. Circuit have emphasized that a news organization moving to intervene to assert the public access right must be afforded a prompt and full hearing. *See Globe Newspaper Co. v. Super. Ct. Norfolk Cnty.*, 457 U.S. 596, 609 n.25 (1982) (representatives of press must be given a chance to be heard on restrictions to constitutional access right); *Wash. Post*, 935 F.2d at 288–90 (vacating sealing order where court failed to provide notice and an opportunity to express views on sealing of plea agreement); *see also Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986).

Intervention is also the appropriate mechanism for the Press Foundation to assert its right of access to court records. *See, e.g.*, *Nat'l Children's Ctr.*, 146 F.3d at 1045–46 (allowing intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order"); *United States v. Moussaoui*, 65 F. App'x 881, 884, 891 (4th Cir. 2003) (granting news organizations' motion to intervene in appeal for limited purpose of obtaining access to records); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 5 (D.D.C. 2009) (allowing press applicants to intervene to oppose sealing motion). This is also the appropriate time for intervention, with the D.C. Circuit recently referring the issue back to this Court.

Intervention typically requires a showing of three things: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Nat'l Children's Ctr.*, 146 F.3d at 1046. For the first two factors, the D.C. Circuit has explained that in cases involving a right of public access, those requirements are lessened: In such cases, "[a]n independent jurisdictional basis [for intervention] is simply unnecessary," and "intervention … may take place long after a case has been terminated." *Id.* at 1047. Additionally, for the final factor, it is satisfied when "the only common question is whether certain materials are properly sealed." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19, 21 (D.D.C. 2010). The Court should thus grant this motion to intervene, because the Court is currently considering unsealing the DOD Files. And the public has an important interest in accessing those Files.

## II. The Court Should Order Unsealing of the DOD Files.

Whether analyzed under the common-law right of access or the First Amendment, the Court should unseal the DOD Files because there is a presumptive right of access to judicial records based on the public's desire to hold the government accountable. *Nixon v. Warner*

*Commn'cs, Inc.*, 435 U.S. 589, 597–98 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–75 (1980).

**A. The DOD Files are judicial records.**

There can be no dispute that the DOD Files are judicial records, because "judicial records" include documents—like the DOD Files—that are filed with an "inten[t] to influence" a court. *Leopold*, 964 F.3d at 1128; *accord United States v. Munchel*, 567 F. Supp. 3d 9, 14 (D.D.C. 2021) ("in all cases," materials that a party "intend[s] to influence the court qualify as judicial records" (cleaned up)). Moreover, if a court may have relied on a party's submission in making a substantive ruling, "that is more than enough to make them judicial records." *MetLife,* 865 F.3d at 668. And "[t]he fact that the court did not cite or quote portions of those documents does not mean that it did not 'rely' on them—if only to determine that they did not dissuade it from its bottom-line conclusion." *Id.*

Indeed, court documents are routinely deemed judicial records *precisely because* the court did not rely on them. That is because the public's right of access is not limited to "materials [that] persuaded the court," but also to materials "which failed to do so (and why)." *Id.*; *accord Vanda Pharms., Inc. v. FDA*, 539 F. Supp. 3d 44, 53 (D.D.C. 2021) (holding that "the public also has a transparency interest in knowing what record evidence the Court saw fit to exclude from its explanation of the reasons underlying its ultimate decision"); *Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11, 26 (D.D.C. 2022) (stating that "[t]he public interest therefore covers both material that the court found persuasive and material that it did not").

The question is simply whether a document was filed with the *intent* to influence the court. *See In re Appl. for Access to Certain Sealed Video Exhibits*, 546 F. Supp. 3d 1, 4 (D.D.C. 2021) ("In *all cases*, though, materials filed in court *and intended to influence the court* qualify as judicial records" (emphases added and cleaned up)); *Leopold*, 964 F.3d at 1128 (documents "intended to

influence the court" are judicial records); *In re Chodiev*, No. 18-mc-13 (EGS/RMM), 2021 WL 1795423, at *3 (D.D.C. Mar. 23, 2021) (judicial records include those that "were filed to … influence the court's resolution" of a motion), *R&R adopted*, No. 1:18-mc-13 (EGS), 2021 WL 6805642 (D.D.C. May 7, 2021). The DOD Files were unquestionably filed with the intent to influence the Court's decision about the scope of the reporter's privilege.

**B. The *Hubbard* factors support unsealing.**

The *Hubbard* factors favor unsealing the DOD Files under the common law right of access. *See MetLife*, 865 F.3d at 665 (citing *Hubbard*, 650 F.2d at 317–22). Under *Hubbard*, courts must consider the following six factors:

> (1) the need for public access to the documents at issue;
>
> (2) the extent of previous public access to the documents;
>
> (3) the fact that someone has objected to disclosure, and the identity of that person;
>
> (4) the strength of any property and privacy interests asserted;
>
> (5) the possibility of prejudice to those opposing disclosure; and
>
> (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665 (citing *Hubbard*, 650 F.2d at 317–22). Under this test, the party seeking to keep records sealed has the burden of demonstrating the need for sealing, and must show that "disclosure will work a clearly defined and serious injury[.]" *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

1. As to the first factor, which considers the public's need for access to the requested documents, the public has a strong interest in learning whether Chen's claimed damages are the result of a reporter's First Amendment activity or, more likely, the result of DOD's independent conclusion about national security issues raised by Chen's actions. *FTC v. Standard Fin. Mgmt.*

*Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."). Indeed, that question is core to the underlying dispute here, as Herridge has argued that the DOD Files break the causal chain between any Privacy Act violation and Chen's alleged injury. Without the DOD Files, the public cannot assess the strength of this Court's conclusion that the reporter's privilege was outweighed. And the public cannot assess the balance the Court struck when demanding that Herridge disclose confidential sources.

Moreover, the public needs access to the DOD Files to assess the national security implications of Chen's demand that Herridge divulge her sources. The public would likely be concerned to learn that a person who is affiliated with a foreign adversary and presents "national security concerns" is attempting to use discovery to learn who within the U.S. Government is speaking with a national security reporter. After all, the Court has not yet determined that Chen has a viable Privacy Act claim. But under the court's reasoning, nothing would stand in the way of others like Chen filing weak lawsuits and using those lawsuits to issue subpoenas to reporters to uncover confidential sources.

This factor weighs in favor of unsealing, and there is a "strong presumption" in favor of public access to court records. *MetLife*, 865 F.3d at 665 (quoting *Hubbard*, 650 F.2d at 317); *accord Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's

case."). In fact, the Government agrees, noting that unsealing these *Government records* is in the public's interest.[3] *See* Gov't Ltr. at 1.

2. The second *Hubbard* factor considers whether the requested materials have previously been released, and this factor also favors unsealing. The crux of the DOD Files has already been released—DOD terminated UMT "on national security grounds." *See* ECF No.174-1 at 7–8 & n.6. And, as Herridge explained previously, this fact has been reported and discussed in unsealed filings. *See id.* It's the details that led to this decision that the Press Foundation seeks for the public to better understand how the reporter's privilege should have been analyzed in this case.

Yet if the Court disagrees, this factor is, at most, neutral. *See Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 24 (D.D.C. 2013) ("[T]he second *Hubbard* factor is 'neutral' where there has been no previous access.").

3. As to the third factor, Chen's objection should be afforded minimal weight. To begin, Chen's objection should be considered alongside the fact that the records in question are *Government records*, and the Government believes unsealing is appropriate. *See* Gov't Ltr. Indeed, the Government agrees that unsealing is appropriate, and these records are not classified. *See id.* Moreover, Chen herself only partially opposes unsealing.[4] *See id.* at 1. It cannot be the case that private parties may demand sealing of non-classified Government records where the Government favors unsealing.

---

[3] It is also of no moment that the DOD Files were designated confidential pursuant to a protective order. *See Aristotle Int'l v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 20 (D.D.C. 2010) (a court may not "'abdicate its responsibility to … determine whether filings should be made available to the public' by allowing the parties to control public access pursuant to a protective order.") (quoting *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996)). Designating a document as confidential under a protective order does not mean a court has concluded the document should be sealed.

[4] On appeal, Chen stated that she did not oppose unsealing one of the two DOD Files.

For her opposition to unsealing, this concededly weighs against disclosure, but it is due little weight because each of the other factors so clearly favors unsealing. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) (reversing a decision to seal documents when the only factor favoring sealing was the other party's objection).

4. As to the fourth and fifth factors, privacy interests and the risk of prejudice do not outweigh the public's interest. At most, Chen has a privacy interest in avoiding embarrassment and public scrutiny surrounding her activities. But concerns about reputation or embarrassment are insufficient to prevent unsealing. *In re McCormick & Co., Inc.*, No. 15-mc-1825 (ESH), 2017 WL 2560911, at *2 (D.D.C. June 13, 2017) ("[S]imply showing that the information would harm [one's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." (cleaned up)).

Even if some privacy interests are at play, "this factor does not serve as a blanket excuse to keep the public from accessing entire judicial records[.]" *Vanda Pharms.*, 539 F. Supp. 3d at 55 (citing *Hubbard*, 650 F.2d at 324). Moreover, Chen cannot rely on this factor, because any underlying investigation related to the DOD Files is complete, and there is thus no danger of an investigation being thwarted if the Court releases the documents. *See Appl. of N.Y. Times Co.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008).

5. Finally, the purpose for which the DOD Files were introduced strongly supports unsealing. *See Hubbard*, 650 F.2d at 321. The DOD Files are important for Herridge's arguments about the proper scope of the balancing test that should be used in evaluating the First Amendment reporter's privilege. As the D.C. Circuit has explained, "[a] brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *MetLife*, 865 F.3d at 667. Thus, the filing need not be expressly relied on by a court to tilt this factor in favor of

unsealing. It is enough when a party "intended the Court" to rely on the documents. *Vanda Pharms.*, 539 F. Supp. 3d at 57; *accord Munchel*, 567 F. Supp. 3d at 14 ("in all cases," materials that a party "intend[s] to influence the court qualify as judicial records" (cleaned up)). In fact, as the D.C. Circuit has explained: "Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)." *MetLife*, 865 F.3d at 668.

### C. The First Amendment Also Requires Unsealing.

In addition to the common-law right of access, the public has a First Amendment right to the DOD Files. Although the Court need not reach this question, because the common-law right of access to relief should be dispositive, *see Leopold*, 964 F.3d at 1126–27 (not reaching First Amendment right of access because the common-law right of access provided sufficient relief), the public's First Amendment right of access also requires disclosure of the DOD Files.

To determine whether the public has a First Amendment right of access to judicial documents, the Supreme Court applies an "experience and logic" test. Under that test, the First Amendment is implicated when: (1) the types of records sought have historically been available to the public; and (2) public access plays a "significant positive role" in the functioning of those processes. *See Press-Enter. Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 8–9, 11 (1986); *Globe Newspaper*, 457 U.S. at 605–07; *Wash. Post*, 935 F.2d at 287–92; *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (applying the experience and logic test).

As to experience, records of government decisions are generally public. These documents reflect DOD's final agency action, which should be released. *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) (explaining that the Government's "final opinions" should be subject to release when requested); *Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 23 (D.C. Cir. 1978). And the Government agrees that the DOD Files should be unsealed. *See* Gov't Ltr. Moreover, while there

is a tradition of keeping properly classified records away from the public eye, there is no similar tradition for non-classified records, like the DOD Files.

As to logic, this requirement considers whether access to the sealed documents would serve a "significant positive role in the functioning of the particular process in question." *Press-Enter.*, 478 U.S. at 8 (citing *Globe Newspaper,* 457 U.S. at 606). This prong is easily satisfied here, because the public is otherwise prevented from evaluating the reasonableness of the Court's decision limiting the scope of the reporter's privilege, to which the DOD Files directly relate.

Transparency concerning judicial documents ensures fairness, decreases bias, improves public perception about the judicial system, and it enhances the likelihood that court orders will be well-justified and narrowly tailored. *See Nixon*, 435 U.S. at 597–98 (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies, and ... the operation of government"); *see also N.Y. Times*, 585 F. Supp. 2d at 90 ("[W]ith respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage.").

In contrast, there is no compelling reason that the DOD Files should remain sealed, as the Government agrees, and their complete sealing is not narrowly tailored. *See Press-Enter.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion[.]"). Indeed, a document may not be sealed in its entirety if the privacy interests can be accommodated through some less drastic alternatives to sealing, such as redaction of specific information. *Id.* at 14; *accord N.Y. Times*, 585 F. Supp. 2d at 91 (holding that "the goal of protecting the confidentiality of informants can be accomplished by means less restrictive than prohibiting access to the warrant materials altogether"); *Appl. of WP Co.*, No. 16-mc-351 (BAH), 2016 WL 1604976,

at *2 (D.D.C. Apr. 1, 2016) ("While these interest[s] do not militate in favor of full secrecy, these interests may be protected through less restrictive means (*i.e.*, redacting this information prior to unsealing the relevant materials).").

**CONCLUSION**

The public and the press have important interests in understanding more about why the Court refused to honor the reporter's privilege here. The DOD Files serve an important role in understanding that decision. Accordingly, the Court should allow the Press Foundation to intervene for the limited purpose of unsealing the DOD Files.

August 25, 2026

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. CHRISTOPHER BARTOLOMUCCI
D.C. Bar No. 453423
BRIAN J. FIELD
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel.: (202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Counsel for Proposed Intervenor-Interested Party Freedom of the Press Foundation*